**Tab 6**

**Westlaw.**

954 F.Supp. 1206 Page 1
954 F.Supp. 1206
(Cite as: 954 F.Supp. 1206)

C

United States District Court,
N.D. Ohio,
Western Division.
Peter DOUGLAS, et al., Plaintiffs,
v.
MODERN AERO, INC., et al., Defendants.
No. 3:96CV7654.

Feb. 13, 1997.

Ohio partnership that purchased airplane that was allegedly "unairworthy" due to undisclosed defects brought negligence and breach of contract action against Minnesota corporation that sold airplane through Minnesota airplane broker, Minnesota corporation that contracted with seller to conduct annual inspection of airplane, and Minnesota corporation that conducted prebuy inspection. Defendants moved to dismiss for lack of personal jurisdiction. The District Court, Carr, J., held that: (1) Ohio long-arm statute provided court with statutory power over plaintiffs' claims, but (2) defendants lacked minimum contacts with Ohio to warrant exercise of personal jurisdiction under due process clause.

Case transferred.

West Headnotes

[1] Courts 12(2.1)
106k12(2.1) Most Cited Cases
General Assembly did not intend Ohio's long-arm statute to give Ohio courts jurisdiction to limits of due process clause. U.S.C.A. Const.Amend. 14; Ohio R.C. § 2307.382(A).

[2] Federal Courts 79
170Bk79 Most Cited Cases

[2] Federal Courts 81
170Bk81 Most Cited Cases
Minnesota corporation that sold airplane to Ohio partnership, and Minnesota corporation that conducted prebuy inspection of that airplane, thereby "transacted business" in Ohio, for purposes of establishing personal jurisdiction in partnership's negligence and breach of contract action against Minnesota corporations based on their failure to inform partnership of various defects in airplane. Ohio R.C. § 2307.382(A)(1).

[3] Federal Courts 84
170Bk84 Most Cited Cases
Minnesota corporations that sold and conducted prebuy inspection of airplane purchased by Ohio partnership engaged in conduct "causing tortious injury" in Ohio by failing to inform partnership of various defects that allegedly rendered airplane unairworthy; thus, Ohio's long-arm statute provided court
with statutory power over partnership's claims against Minnesota corporations. Ohio R.C. § 2307.382(A)(6).

[4] Constitutional Law 3964
92k3964 Most Cited Cases
    (Formerly 92k305(5))
Whether nonresident defendants have purposefully availed themselves of privilege of "acting in" or "causing a consequence" in Ohio is base line requirement for personal jurisdiction under due process clause. U.S.C.A. Const.Amend. 14.

[5] Constitutional Law 3964
92k3964 Most Cited Cases
    (Formerly 92k305(5))
"Purposeful availment" requirement for personal jurisdiction under due process clause is satisfied if plaintiff demonstrates that either defendants' connections with Ohio are either "substantial" or "significant" enough such that defendants should have reasonably anticipated being haled into Ohio court, or defendants created "continuing obligations" between themselves and residents of forum. U.S.C.A. Const.Amend. 14.

[6] Federal Courts 81
170Bk81 Most Cited Cases
Minnesota corporation that sold airplane to Ohio

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

partnership did not have "substantial" or "significant" contacts with Ohio, thus precluding finding that they "purposely availed" themselves of privilege of acting in Ohio, and, consequently, precluding personal jurisdiction over seller in buyer's negligence and breach of contract action arising from seller's alleged failure to disclose defects in airplane; seller's contacts with Ohio prior to formation of sales agreement consisted of marketing airplane through Minnesota broker, who "advertised" availability of airplane to broker in California, and foreseeability that airplane might be sold to Ohio residents was insufficient to implicate personal jurisdiction. U.S.C.A. Const.Amend. 14.

[7] **Constitutional Law** 3965(4)
92k3965(4) Most Cited Cases
   (Formerly 92k305(6))

[7] **Federal Courts** 81
170Bk81 Most Cited Cases
Minnesota corporation that sold airplane to Ohio partnership did not thereby create "continuing obligation" to partnership that would warrant exercise of personal jurisdiction over corporation under due process clause in partnership's action against corporation in Ohio federal court for breach of contract and negligence in failing to inform partnership of defects that allegedly rendered airplane "unairworthy"; corporation's "marketing" of airplane through Minnesota broker, who in turn "advertised" outside of Minnesota, communicated with partnership in Ohio, and executed sales agreement with partnership, involved contacts of "short and fleeting character" that were insufficient to create realistic and foreseeable impact on commerce of Ohio. U.S.C.A. Const.Amend. 14.

[8] **Constitutional Law** 3965(5)
92k3965(5) Most Cited Cases
   (Formerly 92k305(6))

[8] **Federal Courts** 84
170Bk84 Most Cited Cases
Minnesota corporation that contracted with Ohio partnership for prebuy inspection in Minnesota of airplane that partnership was to purchase did not create sufficient contacts with Ohio to satisfy due process, thus precluding exercise of personal jurisdiction over corporation in action alleging that it negligently failed to disclose defects that rendered airplane "unairworthy." U.S.C.A. Const.Amend. 14.

[9] **Federal Courts** 84
170Bk84 Most Cited Cases
Minnesota corporation that contracted with airplane owner for annual inspection of airplane that corporation subsequently sold to Ohio partnership lacked sufficient minimum contacts with Ohio, thus precluding exercise of personal jurisdiction over corporation in partnership's action alleging that corporation negligently failed to inform partnership of defects that rendered airplane "unairworthy"; even though annual inspection was completed after date of sales agreement, and even though documentation of inspection travelled with airplane to Ohio when sale was complete, contacts of that fleeting and attenuated character were insufficient to create realistic and foreseeable impact on commerce of Ohio. U.S.C.A. Const.Amend. 14.

*1207 J. Mark Trimble, Diane J. Knoblauch, Rohrbacher, Nicholson & Light, Toledo, OH, for Peter Douglas, Tom Corwin, Dock Treece.

Kenneth J. Walsh, Robert S. Stone, McDonald, Hopkins, Burke & Haber, Cleveland, OH, for Modern Aero, Inc.

Paul W. Chamberlain, Chamberlain, Neaton & Johnson, Wayzata, MN, for Frank Hancock, Inca, Inc.

Donald Chance Mark, Jr., Kerry M. Evensen, Meagher & Geer, Minneapolis, MN, for Earl Joseph Waugh, Buffalo Aviation.

*1208 **Memorandum & Order**
CARR, District Judge.

This is a case involving contract and tort claims arising out of the sale of an aircraft. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332, because there is complete diversity among the parties and the amount in controversy, exclusive of interest and costs, exceeds $50,000. [FN1] Pending,

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

*inter alia,* are defendants' Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction. (Docs. 5, 8, & 18). [FN2] For the following reasons, defendants' motions to dismiss for lack of personal jurisdiction shall be granted, and the case shall be transferred to the District Court of Minnesota. Defendants' pending motions, in the alternative, for change of venue and to quash service of process shall be overruled as moot. (Docs. 5, 8, & 18).

> FN1. This case was filed before the new amount in controversy requirement of $75,000 took effect.
>
> FN2. Also pending are defendants' motions for change of venue and to quash service of process. (Docs. 5 & 18). Even if any or all of the defendants had sufficient minimum contacts with the State of Ohio to satisfy due process and supply this court with the constitutional authority to exercise personal jurisdiction, considerations of convenience favor the transfer of the case to the District of Minnesota. This court has the power, pursuant to 28 U.S.C. § 1404(a), to transfer a civil action to any other district where it could originally have been brought "[f]or the convenience of parties and witnesses. in the interest of justice." In exercising this power, the court gives great deference to the plaintiff's choice of forum, and will not transfer the case unless the moving party shows that transfer is strongly favored by equity. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Gdovin v. Catawba Rental Co.,* 596 F.Supp. 1325, 1327 (N.D.Ohio 1984).

In the case at bar, it is likely that transfer of venue to the State of Minnesota would be proper for several reasons. First, all defendants are residents of Minnesota, thus satisfying the "any other district or division where it might have been brought" requirement of § 1404(a). Further, the events giving rise to this action occurred in Minnesota (*i.e.,* alleged negligent representations and inspections), prior to transfer of the aircraft to the State of Ohio, thus indicating that a majority of witnesses to the events in this case are likely to be found in Minnesota. Finally, because contractual relations took place in multiple locations, including Minnesota, this factor supports the transfer to Minnesota as well.

Plaintiffs Peter Douglas, Tom Corwin, and Dock Treece are citizens and residents of the State of Ohio. The three plaintiffs are partners in N220BC Limited. This partnership owns the Piper Aerostar aircraft that is the subject of this litigation. N220BC Limited is located--and appears to have its principal place of business--in Ohio.

Plaintiffs sued three groups of defendants. First, defendant Inca, Inc., is a Minnesota corporation with its principal place of business in Minnesota, and its President, defendant Frank Hancock, resides in Minnesota. Inca and Hancock owned the plane prior to its sale to plaintiffs. Neither Hancock nor Inca own or lease any property in the State of Ohio, nor have they conducted or solicited any business within Ohio.

Second, defendant Buffalo Aviation, a Minnesota corporation with its principal place of business in Minnesota, and its President Earl J. Waugh, who resides in Minnesota, contracted with defendant Inca, the plane's original owner, to conduct an annual inspection on the aircraft. Waugh, acting as either an employee or agent of Buffalo Aviation, performed the inspection at Buffalo Aviation's facility in Minnesota. Neither Buffalo Aviation nor Waugh have conducted business, or have owned or leased property in Ohio.

Finally, defendant Modern Aero, incorporated in and with its principal place of business in Minnesota, "inspects and services aircraft at its sole place of business at the Flying Cloud Airport, Eden Prairie, Minnesota." (Doc. 8 at 5). Modern Aero performed a "pre-buy" inspection at this facility on the aircraft; this inspection is the subject matter of this litigation. (Doc. 8 at 5). Modern Aero neither

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

sells nor distributes to customers in Ohio.

In addition to the parties to this litigation, two other entities played a role in this dispute. First, Silver Wings Aviation, an aircraft broker located in California, acted as intermediary between plaintiffs and defendants Hancock and Inca throughout the sale of the aircraft. Second, Princeton Aviation, an aircraft broker doing business in the State of Minnesota, "advertised" the aircraft to *1209 Silver Wings in California (doc. 20 at 3), and acted as "representative" of defendants Hancock and Inca. (Doc. 20, Exh. A at ¶ 4).

In 1995 Princeton Aviation contacted Silver Wings in California to advertise the availability of a Piper Aerostar aircraft for sale in Minnesota. Plaintiff Tom Corwin had approached Silver Wings on a prior occasion in 1995 and expressed a desire to purchase a Piper Aerostar aircraft. Acting as an intermediary, Silver Wings contacted plaintiff Corwin and, in exchange for a finder's fee, conveyed the identity of the Minnesota broker, Princeton Aviation, and agreed to facilitate the sale of the aircraft.

Princeton Aviation sold the aircraft for the owner, defendant Inca. On November 9, 1995, the parties entered into an Aircraft Sales Agreement (Agreement) which was contingent on: 1) the interior and exterior of the Piper aircraft being in "good" condition; and 2) an annual inspection demonstrating the plane's airworthiness. (Doc. 20, Exh. B at 1). Silver Wings sent the finalized Agreement from California to plaintiff Corwin in Ohio for Corwin's signature. Corwin, in turn, forwarded the document to Princeton Aviation in Minnesota for its signature as "representative" of defendant Inca. (Doc. 20, Exh. A ¶ 4).

Earl J. Waugh performed the annual inspection of the aircraft "under the auspices of [defendant] Buffalo Aviation" in Minnesota. (Doc. 13 at 3). Defendant Waugh documented his inspection in the aircraft's logbook on December 21, 1995, which listed the maintenance and repairs performed on the plane. Waugh also included a certification in the logbook which stated that the aircraft was "ok for ferry flight from 8Y2 to Mil for compliance with AD94-17- 13 as set forth in ferry permit issued 12/20/95." (Doc. 13 at 3).

In addition to the annual inspection there was also to be a "pre-buy" inspection of the aircraft. (Doc. 20 at 3). Plaintiffs originally intended to have this inspection performed at Zane Pritz Aviation in Lorain, Ohio. Defendants Hancock and Inca, however, stated that they would not allow the aircraft to be removed from Minnesota before completion of the sale, and proposed that defendant Modern Aero perform the pre-buy inspection. [FN3] Plaintiff Corwin contacted defendant Modern Aero, which ultimately performed the "pre-buy" inspection at its facility in Minnesota. The results of the inspection, which included miscellaneous repairs authorized by plaintiff Corwin, were recorded in the aircraft's logbook by Modern Aero.

> FN3. Plaintiffs were informed by defendants Hancock and Inca, Inc. that when defendants allowed the aircraft to be flown out of state for pre-buy inspections in the past, the potential buyers attempted to renegotiate for a lower purchase price after the plane was removed from Minnesota.

On completion of the purchase and inspections, plaintiff Corwin flew the aircraft from Minnesota to Toledo Express Airport in Swanton, Ohio. Once in Ohio, plaintiffs undertook the repairs necessary in light of the Waugh and Modern Aero inspections. While doing so, the plaintiffs found several discrepancies between the reported condition of the aircraft at the times of the annual and pre-buy inspections and the plane's actual condition. Specifically, the plaintiffs found discrepancies with, *inter alia,* "corrosion in multiple areas of the plane including the fuselage longeron structural members, fuselage ribs, wheel well panels, emergency exit window top channel, battery box and surrounding area, and rear cabin hat shelf." (Doc. 14 at 4).

Plaintiffs' findings were corroborated by an inspector from the Federal Aviation Administration

954 F.Supp. 1206	Page 5
954 F.Supp. 1206
**(Cite as: 954 F.Supp. 1206)**

(FAA). In his report, the FAA inspector listed other deficiencies not identified in the previous inspections. These additional, undisclosed, and unidentified problems allegedly rendered the plane "unairworthy." (Doc. 1 ¶¶ 36, 49, 59, 70). Out of the alleged misrepresentations regarding the airworthiness of the aircraft at the time of sale and pre-sale inspection, plaintiffs bring this suit, claiming that each defendant was negligent, and that defendants Hancock, Inca, and Modern Aero are in breach of contract.

Without responding to the merits of plaintiffs' claims, defendants move for dismissal based on lack of personal jurisdiction. Defendants assert that this Court cannot exercise personal jurisdiction under either Ohio's *1210 long arm statute, O.R.C. § 2307.382, or the due process clause of the Constitution. For the following reasons, I agree with defendants that the contacts presented in this case do not meet the constitutional requirement of "minimum contacts" for personal jurisdiction as articulated by the Supreme Court and applied in this Circuit. Therefore, this case shall be transferred to the District of Minnesota.

*Personal Jurisdiction*

In a recent Sixth Circuit decision, the court noted that when "a district court rules on a jurisdictional motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996) *(citing Theunissen v. Matthews,* 935 F.2d 1454, 1458-59 (6th Cir.1991)). Moreover, "[d]ismissal in this procedural posture is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction." *Id.* Because there has been no evidentiary hearing in this case, I will determine whether plaintiffs make out a prima facie case of in personam jurisdiction without considering defendants' affidavits. [FN4]

> FN4. As the Sixth Circuit advised in *CompuServe,* consideration of defendants' affidavits for the purpose of this motion is improper under the circumstances. *CompuServe,* 89 F.3d at 1263 n. 7 ("[t]he district court clearly erred in considering [defendant]'s affidavit"). Therefore, I will not consider the affidavits of Frank Hancock, Michael Koenig, General Manager of defendant Modern Aero, Inc., Earl Joseph Waugh, or Susan Marsh, an officer of defendant Buffalo Aviation.

[1] As I recently stated in *Highway Auto Sales v. Auto-Konig of Scottsdale, Inc.* 943 F.Supp. 825, 828 (N.D.Ohio 1996), to establish a prima facie showing of personal jurisdiction over a defendant, the plaintiff must show: "(1) the defendant is amenable to suit under the forum state's long-arm statute; and (2) due process requirements of the Constitution are met." [FN5] *(Citing CompuServe,* 89 F.3d at 1262; *Reynolds v. International Amateur Athletic Fed'n,* 23 F.3d 1110, 1115 (6th Cir.1994); *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 224 (6th Cir.1972)). Therefore, plaintiff must establish that this court has the statutory power to hear this case, pursuant to Ohio's long-arm statute, as well as the constitutional right to hear this case because of defendants' "minimum contacts" with the State of Ohio.

> FN5. Plaintiffs argue that Ohio's long-arm statute extends to defendants because it should be read broadly "to the constitutional limits of the due process clause." (Doc.20). However, the Ohio Supreme Court has stated that the "claim that the General Assembly intended the long-arm statute 'to give Ohio courts jurisdiction to the limits of the Due Process Clause' is erroneous...." *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 238 n. 1, 638 N.E.2d 541 (1994) *(citing McCormac, Ohio Civil Rules Practice* 49 (2d ed.1992)). Therefore, rather than melding the "statutory" and "constitutional" analyses, I will consider separately whether the language of the long-arm statute confers this court with personal jurisdiction

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

954 F.Supp. 1206                                                                                                         Page 6
954 F.Supp. 1206
(Cite as: 954 F.Supp. 1206)

over the defendants, then whether the facts as stated by the plaintiffs bestow this court with the constitutional right to assert personal jurisdiction over the defendants.

The Ohio long-arm statute, O.R.C. § 2307.382(A) provides jurisdiction over a person or corporation:
> (1) transacting any business in this state; ... (6) causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state....

[2] The Ohio Supreme Court interprets the "transacting business" clause of the Ohio long-arm statute as meaning "to carry on business" and "to have dealings," and as being "broader than the word 'contract.'" Goldstein v. Christiansen, 70 Ohio St.3d 232, 236, 638 N.E.2d 541 (1994) (quoting Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc., 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990)). In a recent decision, this Court pointed out that "if the phrase 'transacting business' is 'broader than the word contract,' 'transacting business' must logically subsume the narrower act of contracting." Highway Auto Sales, Inc., 943 F.Supp. at 829. Because defendants Hancock, Inca, and Modern Aero contracted directly with plaintiffs, their *1211 actions are subsumed within the "transacting business" clause of Ohio's long-arm statute.

Notwithstanding its contract with plaintiffs, the actions of defendant Modern Aero constitute sufficient "dealings" so as to fall within the "transacting business" clause of the Ohio long-arm statute. As described by plaintiffs, Modern Aero entered into an oral contract in which it agreed to--and eventually did--perform the pre-buy inspection. Modern Aero submitted an invoice for payment, and plaintiffs submit a copy of a check indicating that Modern Aero accepted payment. Such interactions properly may be characterized as "dealings," thus bringing the actions of Modern Aero under the long-arm statute. [FN6] See Highway Auto Sales, 943 F.Supp. at 829.

> FN6. It is questionable whether the actions of defendants Earl Waugh and Buffalo Aviation come within the "transacting business" clause of Ohio's long-arm statute. There is no contractual basis for such a holding, as the annual inspection was conducted pursuant to a contract with defendant Inca, rather than plaintiffs. (Doc. 1 ¶ 64).

[3] In any event, the alleged tortious conduct of all defendants comes within the second listed long-arm category. In their complaint, plaintiffs allege that the negligence of each of the defendants in this case caused plaintiffs' injury. More specifically, plaintiffs indicate that omissions by the nonresident defendants (*i.e.*, failure to inform plaintiffs of various defects in the aircraft) caused injury to plaintiffs in Ohio. *Id.* Therefore, as described by plaintiffs, defendants' conduct comes within the sixth category of Ohio's long-arm statute because it caused plaintiffs tortious injury in Ohio "when [defendants] might reasonably have expected that some person would be injured thereby in this state."

In conclusion, the "transacting business" prong of Ohio's long-arm statute provides this Court with the statutory power over plaintiffs' claims against defendants Hancock, Inca, and Modern Aero. Likewise, the sixth category of the long-arm statute, which addresses conduct "causing tortious injury in this state," vests this Court with the statutory power to hear plaintiffs' claims against all defendants. Therefore, the first requirement of in personam jurisdiction is satisfied.

*Constitutional Due Process: Minimum Contacts*
The due process clause of the Constitution requires that a defendant have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). [FN7] The Sixth Circuit, in determining whether personal jurisdiction may be exercised over action arising from a single act, requires three considerations:

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

FN7. As the Court noted in *International Shoe,* due process is satisfied if two requirements are met: (1) does the defendant have "minimum contacts" with the forum state such that (2) the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." 326 U.S. at 316, 66 S.Ct. at 158. The issue of "minimum contacts" is dispositive in this case, and it is therefore unnecessary to consider whether the exercise of personal jurisdiction in this case would offend traditional notions of fairness.

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.
*CompuServe,* 89 F.3d at 1263. *Reynolds,* 23 F.3d at 1116; *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1299 (6th Cir.1989); *In-Flight Devices,* 466 F.2d at 226; *Southern Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir.1968).

[4] The first inquiry, whether the nonresident defendants have purposefully availed themselves to the privilege of "acting in" or "causing a consequence" in Ohio is the "baseline requirement" for personal jurisdiction. *Highway Auto Sales,* 943 F.Supp. at 830 (citing *In-Flight Devices,* 466 F.2d at 228; *Mohasco Indus.,* 401 F.2d at 381-382). The *1212 purposeful availment requirement is satisfied if a defendant's "contacts create a 'substantial connection' with the forum state such that defendant should reasonably anticipate being haled into court there." *Highway Auto Sales,* 943 F.Supp. at 830 (citing *CompuServe,* 89 F.3d at 1263 (citations omitted)). Furthermore, as explained by the Supreme Court:

[W]here the defendant "deliberately" has engaged in significant activities within a state or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in the forum as well.
*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475-76, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (citations omitted); *Stump & Co. v. Delta Metalforming Co.,* 793 F.Supp. 157, 159 (N.D.Ohio 1992).

[5] Thus the "purposeful availment" requirement for personal jurisdiction is satisfied if plaintiff demonstrates that either: (1) defendants' connections with Ohio are either "substantial" or "significant" enough such that defendants should have "reasonably" anticipated being haled into an Ohio court; or (2) defendants created "continuing obligations" between themselves and residents of the forum. *Highway Auto Sales,* 943 F.Supp. at 830. In this case, plaintiff fails to meet this test: none of the defendants have contacts with Ohio that are "substantial or significant" and none of the defendants has created "continuing obligations" to the plaintiffs. Because plaintiffs' allegations do not satisfy the "purposeful availment" requirement so as to establish minimum contacts with the Ohio, defendants' alternative motions to transfer for lack of personal jurisdiction shall be granted.

[6] First, the contacts between defendants Hancock and Inca [FN8] were not so "substantial" that those defendants could have reasonably anticipated being haled into an Ohio court. As pointed out in *Highway Auto Sales:*

FN8. Defendants Frank Hancock and Inca, Inc. will be considered together because Frank Hancock is a party to this suit in his capacity as President of Inca, Inc. (Doc. 1 ¶ 82).

In exploring the outer limits of what constitutes "substantial" or "significant" minimum contacts, the Supreme Court has determined that merely

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

entering into a contract with a resident of the forum state, without more, does not "automatically establish sufficient minimum contacts," because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transactions." 943 F.Supp. at 830 (*quoting Burger King,* 471 U.S. at 478, 105 S.Ct. at 2185 (citations omitted)). To find purposeful minimum contacts with the forum state, the court must look to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185; *Stump,* 793 F.Supp. at 159.

In this case, defendants Hancock and Inca, prior to the "intermediate step" of contracting, did not have sufficient contacts with the State of Ohio that could be considered "substantial" or "significant." This Court recently stated that "the use of national advertising ... and other 'secondary or ancillary' lines of communication ... 'cannot alone provide the minimum contacts required by due process.'" *Highway Auto Sales,* 943 F.Supp. at 831 (*quoting Reynolds,* 23 F.3d at 1119 (citations omitted)). According to plaintiffs, Hancock and Inca's contacts with Ohio prior to the formation of the Agreement consisted of marketing the aircraft through a broker, who "advertised" the availability of the defendants' aircraft to Silver Wings in California. [FN9] (Doc. 20 at 3). The contact between plaintiffs *1213 and these defendants regarding purchase of the aircraft began with plaintiff Corwin: he contacted Silver Wings in California, who was contacted by Princeton Aviation regarding the sale of the aircraft. Even though the sale of the aircraft to Ohio residents--or residents of any other state--may have been foreseeable to Hancock or Inca, [FN10] such foreseeability alone is insufficient to implicate personal jurisdiction. Aside from the "marketing" of the aircraft through the broker, plaintiffs fail to allege any pre-contract contacts between defendants Hancock and Inca and the forum state.

> FN9. Plaintiffs also note that the Piper Aerostar was flown outside of the State of Minnesota on two prior occasions for pre-buy inspections. (Doc. 20, at 11). However, plaintiffs were also informed by defendants Hancock and Inca, Inc. that those flights were to "Florida and the northeast." (Doc. 20. at 3). As such, neither of those prior flights constitutes a connection between the defendants and the State of Ohio.

> FN10. It is plaintiffs' contention that, having placed the aircraft in the stream of commerce, which ultimately led to Ohio, it was foreseeable to defendants Hancock and Inca that they would be haled to this state to defend a claim based on various representations concerning the airworthiness of the aircraft. (Doc. 20 at 12, 13). As is pointed out by plaintiffs, however, "[t]he 'foreseeability' that is incumbent to due process analysis in determining 'stream of commerce' personal jurisdiction questions is *not* the 'mere likelihood that a product will find its way into the forum State.' Rather, the nature of the 'foreseeability' in a jurisdictional sense is found in the defendant's conduct and connections with the forum state and his reasonable anticipation therefrom that he may be haled into court there." *Mellott v. Dico Co.,* 7 Ohio App.3d 52, 54, 454 N.E.2d 146 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980)). This conclusion, I find, is more consistent with this Court's analysis of the purposeful availment requirement than with plaintiffs' allegation that these defendants have purposefully availed themselves to the privilege of "acting in" or "causing a consequence in" the State of Ohio.

Defendants Hancock and Inca do not have sufficient contacts with the State of Ohio after the "intermediate step" of contracting to indicate purposeful availment. There is no allegation that any of the communications between the parties took place

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

while the defendants were in Ohio. All communications seemingly were either conducted personally between the parties in Minnesota, or by telephone, fax, ordinary mail, or other "ancillary" networks. [FN11] Such ancillary forms of communication do not form minimum contacts with the forum state to satisfy due process. In sum, the transaction between plaintiffs and defendants Hancock and Inca did not involve "substantial" or "significant" connections with the State of Ohio to such an extent that Hancock or Inca could reasonably expect to be haled into an Ohio court.

> FN11. This is evidenced by plaintiffs' statement that the sales agreement was executed by plaintiff Corvin in Ohio. then "forwarded" to Princeton Aviation in Minnesota for their signature as representatives of defendant Inca, Inc. (Affidavit of Thomas A. Corwin, at 2).

[7] Second, in addition to not purposefully availing themselves through "substantial" or "significant" connections to Ohio, defendants Hancock and Inca have not created "continuing obligations" to, or an ongoing relationship with, plaintiffs such that defendants would reasonably anticipate being haled into an Ohio court. "A defendant establishes an ongoing relationship with a resident of a forum state when contractual obligations create 'a realistic and foreseeable impact upon the commerce of the forum state.' " *Highway Auto Sales,* 943 F.Supp. at 831 (*quoting Stump,* 793 F.Supp. at 159). This case presents a single, isolated transaction between plaintiffs and Hancock and Inca for the sale of a plane. Without more, such isolated, unique contact does not, for purposes of a minimum contacts analysis, create "continuing obligations" between the parties. [FN12] *Highway Auto Sales,* 943 F.Supp. at 831 ("Cases involving 'continuing obligations' revolve around contacts of a greater intensity and duration than the 'one-shot deal' in the case at bar.") (citations omitted). "Marketing" of the aircraft by defendants Hancock and Inca through a broker--who, in turn, "advertised" outside the State of Minnesota, communicated with plaintiffs in Ohio, and executed a sales agreement with Ohio residents-

-involves contacts of a "short and fleeting character--contacts which are insufficient to create a 'realistic and foreseeable impact' on the commerce of Ohio." *Highway Auto Sales,* 943 F.Supp. at 832. In sum, the contacts at issue between defendants Hancock and Inca are insufficient to pass muster under the minimum contacts analysis. *1214 Therefore, Hancock and Inca's motion to dismiss for lack of personal jurisdiction shall be granted.

> FN12. Plaintiffs do not claim that any prior transactions occurred between themselves and any of the defendants, nor do they claim that future dealings were to take place with any of the parties.

[8] If the contacts between defendants Hancock and Inca and the State of Ohio are insufficient to grant this court with constitutional power to exercise personal jurisdiction over them, it follows that the more fleeting contacts between the other defendants and this state will likewise be insufficient. As described by plaintiffs, the extent of defendant Modern Aero's contacts with the State of Ohio consists mainly of its contract with plaintiffs to perform the pre-buy inspection. [FN13] Merely contracting with a resident, without more, does not create sufficient contacts with the forum state to satisfy due process. Therefore, this Court does not have the constitutional authority necessary to exercise personal jurisdiction over defendant Modern Aero.

> FN13. Plaintiffs also claim that the documentation of the pre-buy inspection in the aircraft's logbook, which is considered part of the aircraft and therefore traveled to Ohio after the purchase, constitutes further contact between defendant Modern Aero and the State of Ohio. However, as I fail to find a bona fide contract between the parties sufficient for minimum contracts, I also find that this allegation is not sufficient for due process purposes.

[9] Finally, defendants Waugh and Buffalo Aviation [FN14] are arguably the least "connected" to the State of Ohio. There was no contractual rela-

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

tionship between plaintiffs and Waugh or Buffalo Aviation. Defendant Inca contracted with defendant Buffalo Aviation regarding the annual inspection of the aircraft. (Doc. I at ¶ 64). Plaintiffs argue that significant impact on the commerce of Ohio occurred because the annual inspection was completed after the date of the Agreement and documentation of the inspection traveled with the aircraft to Ohio when the sale was complete. I disagree. Contacts of this fleeting and attenuated character are insufficient to create a "realistic and foreseeable impact" on the commerce of Ohio. *Highway Auto Sales,* 943 F.Supp. at 832. Therefore, this Court lacks personal jurisdiction over defendants Waugh and Buffalo Aviation.

> FN14. Plaintiffs describe defendant Earl Waugh as acting "under the auspices of Buffalo Aviation." Therefore, for the purpose of determining whether they have sufficient minimum contacts with the State of Ohio, both of these defendants will be considered at once.

Plaintiffs, because they have not shown that any defendant purposefully availed himself or itself of the privilege of doing business in the State of Ohio, fail to state a prima facie case for personal jurisdiction. In lieu of dismissal, this case shall be transferred to Minnesota. For the foregoing reasons, it is

**ORDERED THAT** this case be, and it hereby is, transferred to the District of Minnesota.

**So ordered.**

954 F.Supp. 1206

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.