**Tab 13**



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 910131 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

C
Hyundai Space & Aircraft Co., Ltd. v. Boeing Co.
N.D.Cal.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
HYUNDAI SPACE & AIRCRAFT CO., LTD.,
Plaintiff,
v.
THE BOEING COMPANY, and McDonnell Douglas Corporation, Defendants.
No. C 99-3255 SI.

Oct. 12, 1999.

ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE AND TRANSFERRING CASE TO CENTRAL DISTRICT OF CALIFORNIA

ILLSTON, J.

*1 On October 8, 1999, the Court heard argument on Defendants' 28 U.S.C. § 1404(a) motion to transfer venue. Having carefully considered the arguments of the parties and the papers submitted, the Court GRANTS Defendants' motion and TRANSFERS this case to the Central District of California.

BACKGROUND

Plaintiff Hyundai Space and Aircraft Co., Ltd. ("HYSA") is a Korean-based manufacturer of aircraft and aerospace products. See Complaint, ¶ 6. Defendants The Boeing Company ("Boeing"), a Delaware corporation based in Seattle, and McDonnell Douglas Corporation ("MDC"), a Maryland corporation based in Missouri, merged on August 1, 1997. Seeid., ¶¶ 7-8; Counterclaim, ¶¶ 1-2. Boeing and MDC (collectively "Defendants") are both leading manufacturers of commercial aircraft. See Counterclaim, ¶¶ 6-7. Among other locations, Defendants conduct activities in both the Northern and Central Districts of California, specifically at Long Beach. See Ryan Decl., ¶¶ 4-7. Although HYSA has no branch office in the United States, it maintains shared office space with Boeing at Boeing's Long Beach facility. See Chung Decl., ¶¶ 3-4.

In February of 1996, HYSA and MDC entered into a Novation Agreement whereby HYSA assumed the rights and duties of third party Halla Engineering and Heavy Industries, Ltd., a Korean corporation ("Halla").See Complaint, ¶¶ 10-13; Counterclaim, ¶¶ 7-12. Under a "Basic Agreement" and related contracts, Halla was to provide aircraft wings and related products and services to MDC for the MD-95-30 jet aircraft. Seeid.The term of this relationship was for the life of the MD-95-30 program. See Murphy Decl., Exh. A (Basic Agreement), § 4. The Novation Agreement was discussed and negotiated by HYSA and MDC representatives during meetings in Long Beach and Korea in January and February of 1996. See Counterclaim, ¶ 13; Min Decl., ¶ 3. HYSA's performance is guaranteed by its parent company, Hyundai Precision & Industry Co ., Ltd., also a Korean corporation ("Hyundai Precision").See C. Kim Decl., ¶¶ 1-2.

After Boeing and MDC merged, the MD-95-30 was redesignated as the Boeing 717-200 aircraft. See Complaint, ¶ 14; Counterclaim, ¶ 14. The Boeing 717-200 Program is headquartered at Boeing's facilities in Long Beach, California. See Ryan Decl., ¶ 5. Approximately 1,900 Boeing employees work on the 717-200 Program in the Central District of California, and no Boeing employee works on this program in the Northern District of California. Seeid., ¶¶ 6-7.All of HYSA's principal contacts with Defendants' employees have been in Long Beach, and HYSA stations several of its own employees at Boeing's Long Beach facility. See Murphy Decl., ¶ 9-10. These stationed employees inspect and oversee the operations of HYSA's subcontractors on the 717-200 project and serve to facilitate communication between HYSA and Boeing. Seeid., ¶ 10; Chung Decl., ¶¶ 3, 7. Because its employees are stationed only at Boeing's facility, HYSA has no private office space in Long Beach. See Chung Decl., ¶ 4. Defendants claim that HYSA has no employees or facilities in the Northern District of California. See Murphy Decl., ¶ 21. HYSA does not refute this claim. Hyundai Precision, however, does have an office in San Francisco, and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03539-SI   Document 25-14   Filed 10/18/2007   Page 3 of 7

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 1999 WL 910131 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

has no offices in the Central District. *See* Chung Decl., ¶ 2.

*2 For the 717-200 project, HYSA produces wing halves in Korea and delivers them to Tracor, Inc. in Palmdale, California. *See* Murphy Decl., ¶ 11. These wing halves are joined at Tracor and delivered to Boeing's Long Beach facility for final assembly and installation into the aircraft. *See id.* For this project, HYSA utilizes subcontractors in many parts of the world, including the Central District. *See id.*, ¶ 12. Under the Basic Agreement, HYSA agrees to deliver all notices to MDC's Long Beach facilities. *See id.*, ¶ 8, Exh. A, § 36. In the event of a dispute, both parties expressly consent to jurisdiction of the courts of the United States sitting in the city and county of Los Angeles. *See id.*, ¶¶ 6-7, Exh. A, § 18.E.

Per the Basic Agreement, the price for the first 400 wing shipsets is fixed. *See* Murphy Decl., Exh. A, § 5. On March 1, 1996, MDC issued a purchase order to HYSA for 50 wing shipsets under the terms of the Basic Agreement. *See id.*, ¶ 11. HYSA had delivered nine sets of wing halves as of the filing of the instant motion. *See id.* On January 29, 1999, Boeing issued an Advance Notice of Award ("ANA") to HYSA for an additional 30 wing shipsets under the terms of the Basic Agreement. *See* Murphy Decl., ¶ 14, Exh. B(ANA). On February 5, 1999, HYSA replied that it would not build any wing shipsets after the initial 50 without a price increase. *See id.*, ¶ 15, Exh. C. Boeing responded claiming reasonable grounds for insecurity and requesting that HYSA provide written assurance of its acceptance of the ANA. *See id.*, ¶ 16, Exh. D. After a meeting regarding this dispute, HYSA formally affirmed its position not to accept the ANA without a price increase. *See id.*, ¶¶ 17-18, Exh. E. Boeing then notified HYSA that it was exercising its rights to partially terminate the Basic Agreement. *See id.*, ¶ 19, Exh. F.

On July 6, 1999, HYSA filed the instant action in this district alleging eight causes of action [FN1] and seeking $750,000,000 in damages. HYSA accuses Defendants of acting in a consistent pattern of bad faith and unfair conduct, and claims that Defendants frustrated HYSA's performance of their contracts. *See* Complaint, ¶ 1. On August 4, 1999, Defendants submitted their Answer and Counterclaim, [FN2] alleging several similar claims for relief [FN3] and seeking $850,000,000 in damages. Defendants allege that HYSA anticipated losses before entering the contracts, that Defendants have fully performed under the contracts, and that HYSA's actions constitute anticipatory repudiation and breach of contract. *See* Counterclaim, ¶¶ 13-17, 28. On July 30, 1999, Defendants filed this motion to transfer venue to the Central District of California.

> FN1. Breach of contract and of the covenant of good faith and fair dealing, intentional and negligent interference with economic advantage, intentional and negligent misrepresentation, and statutory and common law unfair competition.

> FN2. Counterclaims as required under F.R.C.P. Rule 13(a).

> FN3. Anticipatory breach of contract, breach of contract and of the covenant of good faith and fair dealing, and intentional and negligent misrepresentation.

DISCUSSION

The parties dispute whether this action should be transferred to the Central District of California pursuant to 28 U.S.C. § 1404(a). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809 (1964) (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26-27, 80 S.Ct. 1470, 1474-75 (1960)).

*3 Section 1404(a) essentially is a codification of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 3
Not Reported in F.Supp.2d, 1999 WL 910131 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

the common law doctrine of forum non conveniens that allows transfer, rather than requiring dismissal, when the alternative forum is another federal district. See*Norwood v. Kirkpatrick,* 349 U.S. 29, 31, 75 S.Ct. 544, 546 (1955) ( section 1404(a)"revis[ed] as well as codif[ied]" the doctrine of forum non conveniens). While the relevant factors are the same, the district court's discretion to transfer under § 1404(a) is broader than its discretion to dismiss for forum non conveniens. See*id.,* at 32,75 S.Ct. at 546-47 ("Congress ... intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader."); see,e.g.,*Creative Technology, Ltd. v. Aztech Sys. Pte, Ltd.,* 61 F.3d 696, 699 (9th Cir.1995) ( "The forum non conveniens determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.") (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266 (1981)).

To support a motion for transfer, the moving party must establish (1) that venue is proper in the transferor district, (2) that the transferee district is one where the action might have been brought, and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice. See*Goodyear Tire & Rubber Co. v. Mc-Donnell Douglas Corp.,* 820 F.Supp. 503, 506 (C.D.Cal.1992). Where jurisdiction is founded only on diversity of citizenship, venue is proper "in a judicial district where any defendant resides, if all defendants reside in the same state."See28 U.S.C. § 1391(a)(1). Venue is also proper "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."§ 1391(a)(2). Since Boeing resides in the Northern District, venue in this district is proper pursuant to § 1391(a)(1). Venue would also be proper in the Central District under §§ 1391(a)(1) or (2), since Boeing also resides in that district and a substantial part of the events giving rise to the current dispute occurred in that district. Thus, venue is proper in the transferor district, and the transferee district is one where the action might have been brought.

Having addressed these threshold questions, the Court turns to the central inquiry of a § 1404(a) motion: the convenience of the parties and witnesses and the interests of justice. The Ninth Circuit has outlined several factors to be considered in analysis of a motion to transfer venue. See*Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986). Factors relevant to this case include: (1) plaintiff's choice of forum, (2) availability of compulsory process, (3) burdening citizens in an unrelated forum with jury duty, (4) relative ease of access to sources of proof, and (5) convenience to the parties and witnesses. See*id.*Ultimately, the court "must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum."*Id.*

1. Plaintiff's Choice of Forum

*4 HYSA has chosen the Northern District as its preferred forum. Courts should generally afford considerable weight to a plaintiff's choice in determining a motion to transfer. See*id.*A plaintiff's choice of forum, however, is not dispositive, and must be balanced against other factors. See*id.*If the transactions giving rise to the action lack a significant connection to the plaintiff's chosen forum, then the plaintiff's choice of forum is given considerably less weight. See Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (TRG, 1985), § 4:284 (citing *Chrysler Capital Corp. v. Woehling,* 663 F.Supp. 478 (D.De.1987) and *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 990 (E.D.N.Y.1991)). Also, a "plaintiff's choice of forum commands only minimal consideration where he is not a resident of the district where he instituted suit, the operative facts have not occurred within the forum, and the forum has no particular interest in the parties or subject matter."*Allegiance Healthcare Corp. v. London Int'l Group,* 1998 U.S. Dist. LEXIS 8953, *5 (N.D. Cal. June 16, 1998)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(citing *Pacific Car And Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir.1968)).

Defendants assert that HYSA's choice of the Northern District is entitled to no deference, while HYSA suggests that its choice of forum is entitled to substantial deference. Defendants argue that this action has no connection with this district. Indeed, HYSA is not a resident nor does it allege any significant nexus to this forum. Discussions and negotiations between the parties took place in Long Beach and Korea. Communications between the parties occurred between Defendants' Long Beach facility and HYSA's offices in Korea. Deliveries of components took place only in Korea and the Central District, ultimately at Defendants' Long Beach facility. Nothing in the course of the parties' business took place in the Northern District. The nexus of this action is clearly in Korea and Long Beach.

Since HYSA is not a resident of this district, the operative facts are not alleged to have occurred within this forum, and this forum has no particular interest in the resolution of the pending 717-200 litigation, HYSA's choice of forum weighs against transfer, but is given minimal consideration.

2. Availability of Compulsory Process

The availability of compulsory process is significant for any non-party witnesses that may be unwilling to testify. HYSA anticipates calling non-party witnesses, including employees of Halla (Korea) and HYSA's subcontractors. HYSA's subcontractors include: Fleet Industries, Ltd. (Canada), Andalucia Aeroespacial, S.A. (Spain), Daewoo (Korea), the Flight Systems Division of Parker Hannifin Corporation's Aerospace Group (Orange County), and High Tech West, Inc. (Long Beach).*See* Kim Decl., ¶ 5; Murphy Decl., ¶ 12. Five of HYSA's listed non-party witnesses are located in the Central District, while none are located in the Northern District. *See* Defendants' Reply, 6:1-5. Defendants have identified another five non-party witnesses located in the Central District, and none in the Northern District. *Seeid.*

\*5 Defendants argue that there are no Northern District witnesses and that this Court would not have subpoena power over the Central District witnesses. Thus, argue Defendants, this factor weighs in favor of transfer to a court that would have such power. HYSA replies that this Court would have subpoena power under Rule 45 of the Federal Rules of Civil Procedure. "[A] subpoena may be served ... at any place within the state where a state statute ... permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the [trial]."F.R.C.P. Rule 45(b)(2). Because the California state courts in this district would have the power to subpoena the Central District witnesses, HYSA is correct that this Court does have the power to subpoena these witnesses. Accordingly, the factor of availability of compulsory process weighs neither for nor against transfer.

3. Burden of Jury Duty

Although it was not argued in the briefs, Defendants referred to the burden of jury duty at oral argument. The Court agrees that this is a factor to be considered. Given that plaintiff HYSA neither resides nor has any presence in this district,[FN4] that Defendants' presence in this district is entirely unrelated to this dispute, that no witnesses or evidence exist in this district, and that none of the events related to this dispute occurred in this district, the Court finds the imposition of jury duty on the citizens of this district to be an unnecessary burden. Such a burden is better left to the citizens and courts of the district where plaintiff contracted to do business, where the subject of the dispute is headquartered, where most of the witnesses and evidence are located, and where many of the events related to this dispute occurred. This factor thus weighs in favor of transfer.

> FN4. The Court does not find Hyundai Precision's 1080 square foot office to constitute a significant HYSA presence.

4. Access to Sources of Proof

HYSA asserts that relevant documents are located throughout the world, while Defendants maintain that many relevant documents are located at Boe-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03539-SI   Document 25-14   Filed 10/18/2007   Page 6 of 7

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 1999 WL 910131 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

ing's Long Beach facility and elsewhere within the Central District. Although Defendants object, HYSA alleges that other relevant documents can be found at Defendants' Washington and Missouri offices.[FN5] Both parties agree that relevant documents exist at HYSA's Korean offices. Third parties claimed to have relevant documents are located in Korea, Canada, Spain, Long Beach, and Orange County. No documents or other sources of proof are alleged to be in the Northern District.

> FN5. Because neither result bears on this analysis, resolution of this dispute is unnecessary.

While many documents and sources of proof are scattered, the disparity between what is located in each district is glaring. Nothing is located in the Northern District, but a substantial amount of evidence is located in the Central District. The Court finds it obvious that access to sources of proof only within these districts would be much easier if this action were tried in the Central District. This Court also sees no reason to find either district more convenient for access to documents located elsewhere. Accordingly, this factor weighs in favor of transfer.

### 5. Convenience to the Parties and Witnesses

*6 Defendants argue that the Northern District is an entirely inconvenient forum, largely due to the 717-200 program being headquartered, directed, and administered from its Long Beach facilities. Many material party and non-party witnesses thus work and reside in the Long Beach area. Furthermore, a substantial number of relevant documents are kept at the Long Beach facility. Comparing conveniences, Defendants argue that no documents or witnesses exist in the Northern District, and that transfer would therefore not inconvenience HYSA.

HYSA argues that Defendants simply prefer to litigate on their home turf, that litigating here would not inconvenience Defendants, and that the Northern District is the only district HYSA finds to be convenient. Despite its lack of presence, HYSA claims that its motive in desiring a more neutral forum is legitimate. HYSA also asserts that the Northern District is the California home of Hyundai Precision, which HYSA anticipates will be an important witness and potential party to this litigation. HYSA claims that Hyundai Precision's San Francisco office will be its litigation headquarters and also provide temporary work space for HYSA employees. Significantly, HYSA employees brought over from Korea for this litigation would not have such a readily available place to work in the Central District. HYSA claims that it thus stands to save a substantial amount by proceeding in this district.

Defendants reply that this office space is only 1,080 square feet, rendering suspect HYSA's claims to depend on this space. Defendants point out that no case law supports the proposition that access to office space outweighs the inconvenience placed on other parties and witnesses forced to travel to another forum. Defendants also assert that HYSA and Hyundai Precision belong to the Hyundai Group, a worldwide conglomerate with offices in many cities, including Los Angeles. Additionally, Defendants reference that HYSA's counsel has a 50,000 square foot office in the Central District, and that a substantial amount of additional space is available in the building housing this office.

Defendants also argue that the 717-200 program and virtually all United States witnesses are located in the Central District,[FN6] while no witness is located in the Northern District, demonstrating that the Central District is the most convenient forum. HYSA responds that most witnesses are not located in the Central District and that Defendants have not shown that the Northern District is inconvenient to Central District witnesses.[FN7] Although HYSA cites to several cases in support of these arguments, Defendants factually distinguish each case. Primarily, Defendants point out that these cases involve situations where evidence or witnesses also exist in the transferor forum.

> FN6. The Court notes that HYSA has listed 23 witnesses from the Central District, with five of them being non-party, and that Defendants claim another five non-party Central District witnesses.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN7. HYSA simply asserts that Central District witnesses would not be inconvenienced by being forced to travel to San Francisco rather than remain in the Central District.

Finally, Defendants assert that the parties expressly consented to jurisdiction of the courts of the United States sitting in the city and county of Los Angeles. HYSA counters that this is a non sequitur since this "consent" was neither a forum selection clause nor exclusive. Defendants reply that while this consent clause is not binding, it served advance notice to the parties as to where any disputes should be litigated. Because their claims are related and therefore compelled, Defendants also claim that their right to pursue claims in the Central District has been preempted by HYSA's filing in the Northern District, thus eviscerating this express consent to jurisdiction.

*7 The Court finds HYSA's claim that Hyundai Precision's office space in San Francisco provides a significant Northern District connection to be dubious. In reality, HYSA has no significant or convenient presence in either the Northern or Central Districts. Although witnesses are scattered throughout the world, several dozen are located within the Central District and none is located in the Northern District. As in the access to documents section above, witnesses located only within these two districts would find it more convenient if this action were tried in the Central District. Of heightened concern are the significant number of non-party witnesses residing in the Central District who need not be unreasonably burdened. The Court also finds that HYSA has long been on notice of the likely location for litigation regarding this matter. Thus, the factor of convenience to the parties and witnesses weighs heavily in favor of transfer.

6. Remaining factors

Although *Decker Coal,* recited several other transfer analysis factors, these are negligible. The possibility for view of premises does not appear relevant to this case, and neither party has addressed this factor. Congestion and delay in court dockets do not appear to favor either party. Because both districts are in California, comparable familiarities with applicable state law and potential conflicts of law are not apparent. Accordingly, the remaining factors cited in *Decker Coal* have no bearing on this analysis.

CONCLUSION

In balancing the above factors, the Court is mindful that HYSA's choice of forum should be afforded some deference. It cannot, however, be the only factor. No party, witness, or document is located in the Northern District. None of the negotiations, transactions, or events that form the basis of this dispute occurred in this district. Instead, a significant number of material events occurred in Long Beach and elsewhere in the Central District. Although witnesses and relevant documents are scattered, many documents and party and non-party witnesses reside in the Central District. Tellingly, litigating in this district would incur inconveniences in procuring many witnesses and documents located in the Central District, while litigating in the Central District would impact nothing in the Northern District. Finally, the parties expressly consented to jurisdiction in the Central District, which served notice as to where any disputes should be litigated. Except for plaintiff's original choice of forum, all factors are either neutral or point away from this district. Under these circumstances, the most appropriate forum for the parties' dispute is not the Northern District, but the Central District. Defendants' motion to transfer venue is therefore GRANTED, and this case is hereby TRANSFERRED to the Central District of California.

IT IS SO ORDERED.

N.D.Cal.,1999.
Hyundai Space & Aircraft Co., Ltd. v. Boeing Co.
Not Reported in F.Supp.2d, 1999 WL 910131 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.