**Tab 16**



555 F.Supp. 9
555 F.Supp. 9
(Cite as: 555 F.Supp. 9)

Page 1

**H**
Nai-Chao v. Boeing Co.
D.C.Cal.,1982.

United States District Court,N.D. California.
Lui Su NAI-CHAO, et al., Plaintiffs,
v.
The BOEING COMPANY, et al., Defendants.
No. C-81-4235 WHO.[FN*]

[FN*] And Consolidated or Related Case Nos. C-81-3702 WHO, C-81-3703 WHO, C-81-4710 who, c-81-4711 who, c-81-4712 who, c-81-4713 who, c-81-4714 who, c-81-4715 who, c-81-4716 who, c-81-4717 who, c-81-4718 who, c-81-4719 who, c-81-4720 who, c-81-4721 who, c-81-4722 who, c-81-4723 who, c-81-4724 who, c-82-0401 WHO.

April 12, 1982.

Upon motions of airplane manufacturer and seller seeking dismissal on ground of forum non conveniens or transfer of wrongful death actions arising from crash of American-manufactured aircraft in Taiwan, the District Court, Orrick, J., held that Taiwan was appropriate forum for litigation of wrongful death claims arising out of crash in Taiwan of American-manufactured airplane which was sold five and one-half years earlier to Chinese owner and therefore action would be dismissed on ground of forum non conveniens upon certain conditions.

Motion granted upon specified conditions.
West Headnotes
[1] Federal Courts 170B €→45

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
            170Bk45 k. Forum Non Conveniens. Most Cited Cases
Under principle of forum non conveniens a court may resist imposition of jurisdiction even if jurisdiction is authorized by a general venue statute.

[2] Federal Courts 170B €→45

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
            170Bk45 k. Forum Non Conveniens. Most Cited Cases
Common-law doctrine of forum non conveniens remains applicable when the action should have been brought abroad.

[3] Federal Courts 170B €→45

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
            170Bk45 k. Forum Non Conveniens. Most Cited Cases
"Private interests" factors to be considered in determining whether to grant a motion to dismiss on grounds of forum non conveniens include relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling and the costs of obtaining attendance of willing witnesses, possibility of view of premises and all other practicable problems that make trial of the case easy, expeditious and inexpensive and "public interest factors" include administrative difficulties flowing from court congestion, local interest in having localized controversies at home, interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, avoidance of unnecessary problems in conflicts of law, or in application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty.

[4] Federal Courts 170B €→45

170B Federal Courts
    170BI Jurisdiction and Powers in General

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

170BI(B) Right to Decline Jurisdiction; Abstention Doctrine
 170Bk45 k. Forum Non Conveniens. Most Cited Cases
Taiwan was appropriate forum for litigation of wrongful death claims arising out of crash in Taiwan of American-manufactured airplane which was sold five and one-half years earlier to Chinese owner and therefore action would be dismissed on ground of forum non conveniens upon certain conditions.

*10 Paul H. Dué, Dué, Dodson, DeGravelles, Robinson & Caskey, Baton Rouge, La., Frederick A. Cone, San Francisco, Cal., for plaintiff Lui Su Nai-Chao.
Austin T. Smith, Jensen, Smith & Associates, Los Angeles, Cal., Vasilios B. Choulos, San Francisco, Cal., Floyd A. Demanes, Burlingame, Cal., Marc S. Moller, Kreindler & Kreindler, New York City, for plaintiffs in related cases.
Michael R. Marron, Marron, Reid & Sheehy, San Francisco, Cal., Keith Gerrard, Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., for defendant Boeing Co.
Edwin D. Green, Bronson, Bronson & McKinnon, San Francisco, Cal., for defendant United Airlines.
Frank A. Silane, Condon & Forsyth, Los Angeles, Cal., for defendant Far Eastern Air Transport.

OPINION AND ORDER
ORRICK, District Judge.
The complaints that comprise these consolidated or related actions arise from the crash of a Far Eastern Air Transport ("FEAT") Boeing 737 aircraft in Taiwan, Republic of China, on August 22, 1981. Of the one hundred ten passengers and crew killed in the crash, eighty-seven were citizens and residents of Taiwan, eighteen were citizens of Japan, four were citizens of Canada, and one was a citizen of the United States. To date, five hundred sixty-four plaintiffs, seven of whom are United States citizens and four of whom are Taiwanese citizens presently residing in the United States, have filed suit in this Court [FN1] asserting wrongful death claims based on theories *11 of strict liability and negligence against The Boeing Company ("Boeing"), the manufacturer of the aircraft, and United Airlines, Inc. ("United"), which sold the aircraft to FEAT in 1976.

> FN1. To date, nineteen separate actions arising from the accident have been filed in this Court: *Chiuen v. Boeing Co.*, No. C-81-3702 WHO (Sept. 18, 1981); *Chang v. Boeing Co.*, No. C-81-3703 WHO (Sept. 18, 1981); *Nai-Chao v. Boeing Co.*, No. C-81-4235 WHO (Oct. 29, 1981); *Harada v. Boeing Co.*, No. C-81-4710 WHO (Dec. 18, 1981); *Miyao v. Boeing Co.*, No. C-81-4711 WHO (Dec. 18, 1981); *Mukoda v. Boeing Co.*, No. C-81-5712 WHO (Dec. 18, 1981); *Shiwachi v. Boeing Co.*, No. C-81-4713 (Dec. 18, 1981); *Suzuki v. Boeing Co.*, No. C-81-4714 WHO (Dec. 18, 1981); *Suzuki v. Boeing Co.*, No. C-81-4715 WHO (Dec. 18, 1981); *Takahashi v. Boeing Co.*, No. C-81-4716 WHO (Dec. 18, 1981); *Takahashi v. Boeing Co.*, No. C-81-4717 WHO (Dec. 18, 1981); *Tatsumi v. Boeing Co.*, No. C-81-4718 WHO (Dec. 18, 1981); *Tamada v. Boeing Co.*, No. C-81-4719 WHO (Dec. 18, 1981); *Yoshiwara v. Boeing Co.*, No. C-81-4720 WHO (Dec. 18, 1981); *Zayasu v. Boeing Co.*, No. C-81-4721 WHO (Dec. 18, 1981); *Hasegawa v. Boeing Co.*, No. C-81-4722 WHO (Dec. 18, 1981); *Kuno v. Boeing Co.*, No. C-81-4723 WHO (Dec. 18, 1981); *Mimura v. Boeing Co.*, No. C-81-4724 WHO (Dec. 18, 1981); *Cheng v. Boeing Co.*, No. C-82-0401 WHO (Jan. 21, 1982).

The first complaints filed by the Chinese plaintiffs on September 18, 1981, and October 29, 1981, named as defendants Boeing, The Garrett Corporation, The Signal Companies, Inc., Air Research Manufacturing Company of California, and Air Research Aviation Company. Boeing filed its motion to dismiss on grounds of *forum non conveniens* on December 9, 1981. The Japanese complaints were first filed on December 18, 1981, and named as defendants Boeing, United, and FEAT. On Janu-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ary 11, 1982, plaintiffs in the Chinese actions filed an amended complaint, dismissing from the action all the defendants named in the original complaint with the exception of Boeing, and adding United as a defendant.

Defendant Boeing, acting also for defendant United,[FN2] has moved to dismiss these actions on the ground of *forum non conveniens* or, alternatively, to transfer the actions pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Western District of Washington.[FN3] For the reasons set forth below, this Court finds that Taiwan is the appropriate forum for this litigation and that the recent Supreme Court decision in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), mandates the dismissal of these actions. Accordingly, defendants' motion to dismiss is granted, and will become effective when the Court receives undertakings satisfactory to the Court from defendants Boeing and United that the following conditions have been or will be met, namely, that (1) the courts of Taiwan have, and will assert, jurisdiction to adjudicate the claims alleged in these actions; (2) defendants consent to submit themselves to personal jurisdiction in the appropriate Taiwanese court and to make their employees available to testify in Taiwan; (3) defendants agree to waive any statute of limitations defenses arising during the pendency of these actions; and (4) defendants consent to satisfy any judgment rendered against them in Taiwan.

> FN2. The motion to dismiss on grounds of *forum non conveniens* was briefed and argued by Boeing, on behalf of both Boeing and United, and was taken under submission on January 22, 1982. Pursuant to a stipulation of the parties, United was given until March 2, 1982, to respond to the complaints. On February 26, 1982, this Court granted United's motion for a further extension of time to plead and ordered all matters stayed as to all parties until such time as the Court rendered its decision on the motion to dismiss.

Despite this Court's order staying any further action by the parties, plaintiffs continued to conduct informal discovery in support of their opposition to defendants' motion, and submitted additional documents to the Court pertaining to the cause of the accident and the circumstances and terms of the sale of the aircraft from United to FEAT in 1976. On March 8, 1982, the Japanese plaintiffs filed a motion for inclusion in the record of such additional documents, and on March 12, 1982, the Chinese plaintiffs filed a motion seeking permission to file affidavits and additional documents, or in the alternative, for an evidentiary hearing on certain issues relevant to the *forum non conveniens* motion.

Recognizing that further discovery might yield additional information which could assist the Court in arriving at a conclusive determination of the many issues raised by defendants' motion, the Court notes that the very nature and purpose of the *forum non conveniens* doctrine precludes unlimited discovery. As the Supreme Court observed in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258, 102 S.Ct. 252, 267, 70 L.Ed.2d 419 (1981), "[r]equiring extensive investigation would defeat the purpose of their motion. Of course, defendants must provide enough information to enable the District Court to balance the parties' interests." This Court has reviewed the additional documents submitted by plaintiffs, in order to ascertain whether those documents raise any new issues which might affect the Court's decision on defendants' motion. The Court is satisfied that the additional evidence presented by plaintiffs would not in any event affect the Court's ultimate determination, and thus that an evidentiary hearing or further briefing by the parties would serve no useful purpose. Accordingly, these additional documents are not included in the record, and the Court does not rely on the issues raised in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

said documents in arriving at its decision.

FN3. Seattle, Washington is Boeing's principal place of business and is where the subject aircraft was originally designed, assembled, and tested.

I

On August 22, 1981, a Boeing 737 owned and operated by FEAT crashed on a flight between the Taiwanese cities of Taipei and Kaohsiung. Radar contact with the aircraft was lost about twelve minutes after takeoff from Taipei, after the aircraft reached its assigned cruise altitude of 22,000 feet. A number of Taiwanese reportedly observed the aircraft break up in the air. The wreckage was scattered over a seven-mile area in rugged terrain approximately sixty miles southwest of Taipei. All one hundred four passengers and six crew members aboard the aircraft were killed.

The Chinese Civil Aeronautics Administration ("CCAA") initiated an accident investigation, in which Boeing, United, and other American officials participated. The CCAA issued a preliminary report, but has made no final report and no finding of the probable cause of the accident. The United States National Transportation and Safety Board ("NTSB") performed an analysis of critical parts of the wreckage, and the CCAA is currently in the process of building a mock-up of the aircraft with the wreckage pieces to aid in its investigation.

FEAT purchased the aircraft from United in 1976, and owned, operated, and maintained the aircraft in the five-and-a-half years prior to the accident. All major maintenance of the aircraft was performed by FEAT personnel at Shungshan Airport in Taipei, pursuant to a maintenance program developed by Boeing in the United States, and licensed and approved by the CCAA.

The complaints charge defendants with negligence and strict liability based on the allegedly defective design, manufacture, and/or assembly of the aircraft, and on the allegedly improper inspection and maintenance of the aircraft prior to the sale to FEAT in 1976. Plaintiffs assert that of the possible causes of the crash-defective design or manufacture, pilot error, bad weather, or sabotage-the most likely cause was a crack in the forward cargo compartment frame and skin which led to a loss of pressurization. Plaintiffs have submitted documentary evidence indicating that such cracks were discovered in several 737's operated in the United States, and that an investigation conducted by the NTSB revealed massive corrosion and metal fatigue of the lower forward cargo hold frame which appears consistent with plaintiffs' theory of the accident.FN4

FN4. In the time since January 22, 1982, when this Court took defendants' *forum non conveniens* motion under submission, plaintiffs have submitted additional evidence, including FAA Airworthiness Directives and Boeing Service Bulletins. This evidence suggests that the aircraft was manufactured with a certain sidewall frame defect and a certain bonded skin panel defect which, alone or together, could be a probable cause of the accident, and that both Boeing and United learned of these defects prior to the sale in 1976. Plaintiffs have also submitted documents pertaining to the sales contract between United and FEAT which, plaintiffs claim, demonstrates that United sold the aircraft with knowledge of its defective condition. The facts asserted in these documents, though relevant for purposes of establishing a *prima facie* case of defect, do not affect this Court's decision on defendants' motion. *See* note 2, *supra*.

II

A

[1][2] Under the principle of *forum non conveniens,* a court may resist the imposition of jurisdiction, even if jurisdiction is authorized by a general venue statute. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The common law

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

555 F.Supp. 9
555 F.Supp. 9
(Cite as: 555 F.Supp. 9)

Page 5

doctrine of *forum non conveniens* was partly displaced by the provisions of 28 U.S.C. § 1404(a), which require transfer rather than dismissal if the case can be heard in a more convenient district or division within the United States; [FN5] the common law doctrine remains applicable, however, when the action should have been brought abroad. *13 *Yerostathis v. A. Luisi, Ltd.,* 380 F.2d 377, 379 (9th Cir.1967); *Paper Operations Consultants International, Ltd. v. SS Hong Kong Amber,* 513 F.2d 667, 670 (9th Cir.1975).

> FN5. 28 U.S.C. § 1404(a) provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

[3] The factors which the Court must consider in determining whether to grant a motion to dismiss on grounds of *forum non conveniens* were set forth by the Supreme Court in *Gilbert, supra,* 330 U.S. at 508-09, 67 S.Ct. at 843. The Court enumerated both the "private interest factors" affecting the convenience of the litigants and the "public interest factors" affecting the convenience of the forum. The private interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508, 67 S.Ct. at 843. The public interest factors include the administrative difficulties flowing from court congestion; the local interest in having localized controversies at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 509, 67 S.Ct. at 843.

The Court in *Gilbert* noted that the plaintiff's choice of forum should not be disturbed "unless the balance is strongly in favor of the defendant." *Id.* at 508. The Court of Appeals for the Ninth Circuit has recently indicated that the standard to be applied is whether, in light of the factors, defendants have made a "clear showing" so as to establish either "(1) such oppression and vexation of a defendant as to be out of all proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." *Miskow v. Boeing Co.,* No. 79-3904 (9th Cir. Oct. 28, 1981), [FN6] quoting *Paper Operations, supra,* 513 F.2d at 670. Where the issue is whether to dismiss the action or whether to transfer it to another district or division within the United States, the Ninth Circuit indicated in *Miskow* that dismissal is appropriate where the district court weighs the *Gilbert* factors and determines that transfer to another district or division will not significantly alleviate the burden that retention of jurisdiction would impose on private and public interests. *Id.*

> FN6. *Miskow v. Boeing Co.,* No. 79-3404 (9th Cir. Oct. 28, 1981), was initially designated as a memorandum opinion, but was designated as an opinion for publication by order dated November 30, 1981.

On December 8, 1981, after the filing of Boeing's motion to dismiss, the Supreme Court issued its first decision addressing the doctrine of *forum non conveniens* in over thirty years, and applied the doctrine in a factual context strikingly similar to that now before this Court. In *Reyno, supra,* the Court elaborated further on the considerations set forth in *Gilbert* and applied the doctrine of *forum non conveniens* to dismiss a products liability action arising out of an airplane crash in Scotland on the grounds that Scotland was the proper forum. Because this Court finds that *Reyno* is dispositive of Boeing's motion to dismiss these actions, a detailed examination of the *Reyno* decision is appropriate.

In *Reyno,* the respondent, acting as representative

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the estates of several Scottish citizens killed in an air crash in Scotland during a charter flight, instituted wrongful death actions in California state court against Piper Aircraft, which had designed and manufactured the plane in Pennsylvania, and Hartzell Corporation, which had manufactured the propellers in Ohio. At the time of the crash the plane was registered in Great Britain and was owned and operated by companies organized in the United Kingdom. The pilot and all of the decedents' heirs and next of kin were Scottish subjects and citizens, and the *14 investigation of the accident was conducted by British authorities. Respondent sought to recover from petitioners on the basis of negligence or strict liability, the latter not recognized by Scottish law, and admitted that the action was filed in the United States because its laws regarding liability, capacity to sue, and damages are more favorable to respondent's position than those of Scotland.

On petitioners' motion, the action was removed to the United States District Court for the Central District of California, and was then transferred to the United States District Court for the Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a). The district court granted petitioners' motion to dismiss the action on the ground of *forum non conveniens.* Relying on the test set forth in *Gilbert,* and analyzing the private interest factors affecting the forum's convenience, the district court concluded that Scotland was the appropriate forum. The Court of Appeals for the Third Circuit reversed, holding that the district court had abused its discretion in conducting the *Gilbert* analysis and that, in any event, dismissal is automatically barred where the law of the alternative forum is less favorable to the plaintiff than the law of the forum chosen by the plaintiff.

The Supreme Court granted a petition for a writ of *certiorari* and reversed the court of appeals. The Court held first that the fact that the substantive law that would be applied in the alternative forum is less favorable to plaintiffs than that of the chosen forum does not preclude dismissal and should ordinarily not be given even substantial weight in the *forum non conveniens* inquiry. *Reyno, supra,* 454 U.S. at 244-253, 102 S.Ct. at 260-264. Second, the Court held that plaintiff's choice of forum deserves less deference when the plaintiff or the real parties in interest are foreign, because, where the plaintiff is not suing in the home forum, the assumption that the plaintiff's choice of forum is convenient is much less reasonable. Third, the Court held that the district court did not abuse its discretion in weighing the private and public interests under the *Gilbert* analysis and determining that the trial should be held in Scotland.[FN7]

FN7. Justice Marshall delivered the opinion of the Court, in which Chief Justice Burger and Justices Blackmun and Renquist joined. Justices Stevens and Brennan dissented on the grounds that the only issue properly before the Court was whether dismissal on the ground of *forum non conveniens* is barred where the law of the alternate forum is less favorable to recovery than that of the forum chosen by plaintiffs, and that the case should be remanded to the Court of Appeals for further consideration of whether the district court correctly concluded that Pennsylvania was not a convenient forum in light of the factors set forth in *Gilbert.* Justice White concurred in part and dissented in part on the grounds that the issue of whether Pennsylvania was not a convenient forum was not properly before the Court. Justices Powell and O'Conner did not participate in the decision of the case.

With regard to the district court's analysis of the private interest factors, the Court found that the district court reasonably concluded that fewer evidentiary problems would be posed if the trial were held in Scotland, because a large proportion of the relevant evidence was located there, and that the problems posed by the plaintiff's inability to implead potential Scottish third-party defendants (the pilot's estate, the plane's owners, and the charter company) supported holding the trial in Scotland. The Court also found the district court's analysis of the public

interest factors to be reasonable, noting that, even apart from the question whether Scottish law might be applicable in part to the action, all other public interest factors favored trial in Scotland. The Court found that Scotland had a very strong interest in the litigation, because the accident occurred there, and all potential parties were either Scottish or English. The Court rejected respondent's argument that the United States' interest in deterring the production of defective products in this country justified retention of the litigation, noting that any additional deterrence that might be obtained from trial in an American court, where the manufacturer could be sued on strict liability as well as negligence theories, was not sufficient to justify the enormous commitment of judicial time and resources that would be *15 required. *Id.* 454 U.S. at 258, 102 S.Ct. at 267.

B

[4] We turn now to the application of the several factors which must be considered in determining whether the applicable law mandates a dismissal or transfer of the case pursuant to the doctrine of *forum non conveniens* as set forth above.

1. *The Availability of an Alternative Forum*

The Supreme Court held in *Reyno* that, "[a]t the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum." *Reyno, supra,* 454 U.S. at 254-255 n. 22, 102 S.Ct. at 265 n. 22. An alternative forum is ordinarily considered "adequate" if the defendant is amenable to process there. *Gilbert, supra,* 330 U.S. at 507, 67 S.Ct. at 842. This Court's consideration of defendants' motion to dismiss for *forum non conveniens* is premised on the condition that defendants submit to the jurisdiction of the Taiwanese court.[FN8]

> FN8. Several courts have conditioned *forum non conveniens* dismissals upon the submission of defendants to the jurisdiction of the foreign court where such jurisdiction might otherwise be uncertain, and some courts have added the further conditions that defendants must waive any statute of limitations defenses in the forum, and that, if the court refuses jurisdiction, plaintiffs may move the court to restore their action. Such an approach assures the availability of an alternative forum for plaintiffs. *See, e.g., Paper Operations Consultants International, Ltd. v. SS Hong Kong Amber,* 513 F.2d 667, 672 (9th Cir.1975); *Schertenleib v. Traum,* 589 F.2d 1156, 1166 (2d Cir.1978); *Macedo v. Boeing Co.,* 15 Av.Cas. (CCH) 18,032 (N.D.Ill.1980), *appeal pending,* No. 80-1559 (7th Cir.).

The Court recognized in *Reyno,* however, that where the remedy afforded by the alternative forum is so clearly unsatisfactory as to be no remedy at all, the district court may conclude that dismissal would not be in the interest of justice:

"In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute."

*Reyno, supra,* 454 U.S. at 254-255 n. 22, 102 S.Ct. at 265 n. 22.

Plaintiffs suggest that, under the reasoning in *Reyno,* Taiwan is not an adequate forum on the grounds that (1) a Taiwanese court would not have jurisdiction over these actions; (2) the plaintiffs here would not have easy access to a Taiwanese court, because Chinese law requires that plaintiffs pay a filing fee amounting to one percent of the claim; and (3) United States law would govern these actions, and the application of foreign law would pose serious difficulties for a Taiwanese Court.

Plaintiffs rely heavily on the affidavit of Judge Yu Ching Wang, a former district court judge in Taiwan, who is currently an appellate judge and a member of the Judicial Yuan, the highest judicial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

body of the Republic of China. After careful consideration of plaintiffs' arguments, however, the Court finds that Taiwan is an adequate forum and, indeed, is the most appropriate forum for these plaintiffs.

Plaintiffs first argument is that Taiwan is an inadequate forum because the Chinese courts cannot at this point assume jurisdiction over these cases. According to Judge Wang, a Chinese court would have jurisdiction if these actions were originally filed in Taiwan, but can no longer assert such jurisdiction because the case has already been brought in the United States: "[S]hould the United States District Court send the case to the Republic of China with only the defendants' agreement, the Chinese court would not be competent to hear the case." Affidavit of Judge Yu Ching Wang attached to plaintiffs' motion filing affidavit filed January 22, 1982, at 2.

Judge Wang's conclusion is based on a misapprehension as to the nature of a dismissal for *forum non conveniens*. This Court clearly is not empowered to "send the *16 case to the Republic of China with only the defendants' agreement"; this Court would simply dismiss the case, leaving the plaintiffs free to file these actions in Taiwan if they choose to do so. The affidavit of defendants' expert, Dr. Charng-Ven Chen, a practicing attorney and law professor in Taipei, who has received Masters and Doctorate degrees from Harvard Law School, states that a *forum non conveniens* dismissal would not foreclose these plaintiffs from initiating actions in Taiwan, and that there is no law or case authority to the contrary. Dr. Chen's affidavit further states that the Taiwan court would have jurisdiction over these cases pursuant to the Civil Code of Procedure of the Republic of China, because the damage resulting from the allegedly tortious conduct occurred in China. Affidavit of Charng-Ven Chen in support of Boeing's motion to dismiss filed February 2, 1982, at 2.

The next argument advanced by plaintiffs is that Taiwan is not an adequate forum because the Chinese courts require payment of a filing fee amounting to one percent of the claim, and an additional fee of one-half percent is required for each appeal. The Court does not find this argument persuasive. Judge Wang himself notes that a party may obtain procedural relief from payment of the fee if the party is "devoid of the means to pay the cost." Judge Wang suggests that such relief is granted only in those cases where the plaintiff is completely destitute, but the Court notes that the plaintiffs here have not asserted that the filing fee requirement would make it impossible for them to prosecute this action in China, or even that the fee would be a serious hardship to them. Moreover, as Dr. Chen points out in his affidavit, under Chinese law the prevailing party may by court judgment recover the court costs from the losing party. Finally, the Court notes that the utilization of a filing fee is simply the method chosen by the Taiwanese government to finance its court system, and it seems fundamentally unfair to compel United States' citizens to "subsidize" an action which should have been brought in another forum, at least, where as here, the plaintiffs have not even attempted to argue that the requirements of the foreign judicial system constitute a serious obstacle. This Court rejects plaintiffs' contention that, should foreign laws require advancement of funds by a litigant not necessary in the United States, the foreign court must be deemed an inadequate forum, finding such a position without support in the case law or in common sense.[FN9]

> FN9. *See Dobson v. Amoco (U.K.) Exploration Co.,* No. 78-C-2203 (N.D.Ill. Mar. 21, 1979), mem. op. at 5 ("Plaintiffs also argue that they should be allowed to escape the English practice of charging attorneys fees and costs to the losing party. * * * [W]e can see no reason why this action, which has every connection with England and none with the United States, should be brought here simply to except it from rules which ordinarily govern English lawsuits."); *cf. Fiorenza v. U.S. Steel International, Ltd.,* 311 F.Supp. 117 (S.D.N.Y.1969) (Where Italian plaintiff asserted claim for injuries sustained on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Grand Bahama Island while employed by defendant, a Delaware corporation with its principal place of business in New York, and plaintiff could not bring suit in the Bahamas because of Bahamian prohibition against contingent fee arrangements, uncertainty as to whether a Bahamian court would have jurisdiction, and the possibility that plaintiff would be deported to Italy, the court found that the prospective unavailability of the alternative forum outweighed the other factors considered in *Gilbert* and denied defendants' motion to dismiss for *forum non conveniens.*); *D'Angelo v. Petroleos Mexicanas, 398 F.Supp. 72 (D.Del.1975)* (Delaware plaintiff, receiver of a Delaware corporation, who brought action against Mexican government agency would not be dismissed on *forum non conveniens* where plaintiff could not afford to travel to Mexico to prosecute the action and where issues involving Mexican law could be determined primarily on the basis of expert testimony.).

Finally, plaintiffs contend that Taiwan is not an adequate forum because, under Chinese choice of law rules, a Chinese court would be required to apply United States law to these actions, and the application of foreign law would be extremely difficult. Judge Wang asserts that:

As all of the wrongful acts allegedly occurred in the United States and only the result occurred in the Republic of China, our jurisprudential interpretations of 'lex *17 loci delicti' mandates that the law of the United States be applied in this case. * * * From my experience as a District Judge and High Court Judge, I personally feel it would be nearly impossible for our court system to adequately adjudicate this massive case against American defendants according to American law."

Wang affidavit, *supra,* at 2.

Under *Gilbert,* the choice of law issue is properly considered in the context of the Court's analysis of the "public interest factors," *infra.* For purposes of plaintiffs' contention that the choice of law problem renders Taiwan an inadequate forum, it is sufficient to note that no case known to this Court has held an alternative forum to be inadequate simply because of the potential difficulties in applying foreign law, and this Court is unwilling to accept the proposition that a Chinese court is less competent than an American court in application of foreign law. The Court agrees with the reasoning of Dr. Chen that:
"Assuming for the sake of argument that the court of the R.O.C. would apply the law of the place of commission, i.e. U.S. laws etc., the court of the R.O.C. will apply such laws without difficulty, otherwise the very existence of the Law of 6 June 1953 ["Law Governing the Application of Laws in Civil Matters Involving Foreign Elements"] loses its meaning. Any suggestion that the court of the ROC is not competent to analyse any foreign law is subject to criticism of prejudice."

Chen affidavit, *supra,* at 2-3.

Thus, this Court finds that the threshold requirement of an adequate alternative forum is satisfied in this case, and proceeds to an analysis of the private and public interest factors set forth in *Gilbert,* and reaffirmed in *Reyno.*

2. *The Private Interest Factors*

Perhaps the most important private interest factor is the relative availability of evidence and witnesses. Although relevant evidence and witnesses in this case are located both in the United States and Taiwan, it appears to the Court that discovery and trial on the issues of liability and damages will be greatly facilitated if this action proceeds in Taiwan.

Plaintiffs maintain that all of the documentary and physical evidence necessary to establish that the aircraft was defective is located in the United States. It appears that the evidence relating to the design and manufacture of the aircraft, maintenance records for the period that the aircraft was operated by United, documentation pertaining to 737 certification, and Boeing Airworthiness Directives and Service Bulletins, are all located in this country.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Evidence pertaining to FEAT's maintenance, under the supervision of the CCAA, of the aircraft during the five-and-a-half-year period preceding the crash, however, is located in Taiwan.[FN10] Evidence pertaining to the investigation of the accident by the CCAA, as well as the critical parts of the wreckage itself, appear to be in Taiwan.[FN11] A view of the premises is obviously available only in Taiwan, and might assist defendants in establishing that the accident was caused wholly or in part by something other than a *18 defective airframe. Moreover, virtually all of the evidence relating to proof of damages is in Taiwan, where the overwhelming majority of claimants reside, and the difficulties of adjudicating these foreign damage claims would be compounded by the presence of language barriers and the necessity for translation.[FN12]

> FN10. Defendants maintain that evidence concerning FEAT's maintenance of the aircraft in the five-and-a-half years prior to the crash is of much greater relevance to plaintiffs' claim than is evidence concerning United's maintenance of the aircraft prior to 1976, particularly in view of the Boeing Service Bulletins recommending periodic inspections of the airframe, and FEAT's claim to have inspected the aircraft repeatedly in accordance with Boeing Service Bulletins in the two months preceding the accident. However, plaintiffs contend that Boeing personnel present in Taiwan immediately after the accident had ample opportunity to gather evidence pertaining to FEAT's maintenance of the aircraft, and did in fact collect significant amounts of such evidence.

> FN11. Plaintiffs claim that critical parts of the wreckage were brought to the United States for examination by Boeing and the NTSB; it appears, however, that the parts given to Boeing by the CCAA have since been returned to Taiwan and are presently under the control of the CCAA. Defendants also point out that the CCAA is currently in the process of constructing a mock-up of the forward area of the aircraft fuselage in Taiwan to assist in their investigation.

> FN12. Plaintiffs properly point out that, as a practical matter, the possibility of settlement in the event that defendants are found liable may render discovery and trial of damages unnecessary.

As to the availability of witnesses, the Court must consider both the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining willing witnesses. Plaintiffs assert that all of the witnesses who can testify as to the design and manufacture of the aircraft, and the maintenance of the craft prior to the sale, are located in the United States. All these witnesses are clearly subject to process in this Court, and it is clearly more convenient for such witnesses to attend trial in this country than in Taiwan. On the other hand, all witnesses to the air crash, all witnesses who could testify as to the inspection and maintenance of the aircraft by FEAT and to supervision by the CCAA, and all witnesses who could testify regarding the investigation of the accident by Taiwanese authorities, as well as witnesses who knew the decedents and whose testimony would be necessary to ascertain damages, are located in Taiwan. It is doubtful whether this Court could enforce process compelling the attendance of persons with relevant knowledge who are not parties to this litigation, and compelling the litigants to try their case without the benefit of live testimony from important witnesses would impose a serious hardship upon them and upon this Court. The Supreme Court in *Gilbert* emphasized the importance of this factor, and said that:

"[t]o fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants."

*Gilbert, supra,* 330 U.S. at 511, 67 S.Ct. at 844. Although mechanisms for obtaining necessary documents and testimony from abroad exist, various

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

procedural obstacles would no doubt limit the availability and scope of foreign discovery to the parties if trial were conducted in the United States.[FN13]

> FN13. The problems inherent in conducting discovery abroad are well described in *Pain v. United Technologies Corp.*, 637 F.2d 775 (D.C.Cir.1980).

Another critical private interest factor, in addition to the availability of evidence and witnesses, is the Court's ability to assert jurisdiction over all parties to the litigation, including potential third-party defendants. The Court said in *Reyno* that the aircraft manufacturer should not be compelled to go to trial in a forum where the owner and operator of the aircraft cannot be joined:

"Joinder of the pilot's estate, Air Navigation, and McDonald is crucial to the presentation of petitioners' defense. If Piper and Hartzell can show that the accident was caused not by a design defect, but rather by the negligence of the pilot, the plane's owners, or the charter company, they will be relieved of all liability. It is true, of course, that if Hartzell and Piper were found liable after a trial in the United States, they could institute an action for indemnity or contribution against these parties in Scotland. It would be far more convenient, however, to resolve all claims in one trial."

*Reyno, supra,* 454 U.S. at 259, 102 S.Ct. at 267.

In the case at bar, the presence at trial of FEAT, the owner and operator of the aircraft for the five-and-one-half years preceding the accident, and of the CCAA, the Chinese regulatory authority, is critical to the defense. It is highly unlikely that the CCAA, as a foreign governmental agency, could be joined as a party in this action, and it is uncertain whether FEAT would be subject to general jurisdiction or specific tort jurisdiction based on its transaction of *19 business in California.[FN14] Plaintiffs' offer to indemnify the defendants for any liability apportioned by this Court to FEAT and the CCAA does not, in the opinion of this Court, eliminate the prejudice to defendants arising from their potential inability to implead third-party defendants, because, as a practical matter, the trier of fact cannot be expected to evaluate fairly the relative liability of parties not present at the trial.

> FN14. Although no United States court has yet attempted to assert jurisdiction over FEAT, certain documents recently submitted by plaintiffs describing the circumstances and terms of the sales contract between FEAT and United raise the possibility that FEAT might be subject to California's specific tort jurisdiction in this case. The documents indicate that FEAT and United conducted negotiations in California, and that the sales agreement provided for continuing servicing transactions in this state and for the training of FEAT maintenance personnel in this state. Thus, the case at bar appears distinguishable from *Donahue v. Far Eastern Transport Corp.*, 652 F.2d 1032 (D.C.Cir.1981), in which the court found that FEAT's activities within the state were insufficient to support the exercise of the Court's general jurisdiction, and that FEAT's isolated and relatively minor activities within the state were insufficient to support the exercise of that state's specific tort jurisdiction because those activities were totally unrelated to the accident for which recovery was sought in that case. The *Donahue* court specifically noted, however, that the commission of "some single or occasional acts" in a state might be sufficient to render a corporation liable to suit in the state with respect to claims arising from those acts, which appears to be the situation in the instant case. *Id.* at 1036. Although this Court recognizes that jurisdiction over FEAT might be obtained if this case were to proceed to trial in California, the Court declines to rule on this issue at the present time and does not rely on the unavailability of FEAT as a necessary ground for granting defendants' *forum non conveniens* motion.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

### 3. *The Public Interest Factors*

A consideration of the public interest factors enumerated by the Supreme Court in *Gilbert* place beyond all doubt any question that this Court might have had regarding the proper forum for the trial of this lawsuit. Clearly the balance tips decidedly against the plaintiffs' choice of forum.

The three principles underlying the public interest factors have been aptly summarized by the D.C. Circuit in *Pain v. United Technologies Corp., 637 F.2d 775 (1980)*, a decision which the Supreme Court cited with approval in *Reyno:*

"[F]irst, that courts may validly protect their dockets from cases which arise within their jurisdiction, but which lack significant connection to it; second, that courts may legitimately encourage trial of controversies in the localities in which they arise; and third, that a court may validly consider its familiarity with governing law when deciding whether or not to retain jurisdiction over a case. *Thus, even when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant forum non conveniens upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute, or that foreign law will predominate if jurisdiction is retained.*"

(Footnotes omitted; emphasis added). *Id.* at 791-92.

It is beyond dispute that the docket of this Court is heavily congested, and that the Court can ill afford the time and expense of adjudicating a controversy which does not have significant connections to this forum, particularly where, as here, the case will require a massive expenditure of judicial resources. The Supreme Court in *Reyno* emphasized the principle that "there is a local interest in having localized controversies decided at home,"*Reyno, supra, 454 U.S. at 260, 102 S.Ct. 268;* and found that Scotland had a "very strong interest" in the case because "the accident occurred in its airspace, the decedents were Scottish and, apart from Piper and Hartzell, all potential plaintiffs and defendants were either Scottish or English." *Id. at 454 U.S. at 260, 102 S.Ct. at 268.* Applying this reasoning to the case at bar, which involves an accident in Taiwan airspace, a Taiwan-registered aircraft operated by a Taiwan airline, and predominantly (87 of 110) Taiwanese decedents, it would appear that Taiwan has a strong local interest in this litigation.

*20 Plaintiffs seek to establish a nexus with the United States by characterizing these actions as American products liability actions, stressing that the aircraft was designed and manufactured in this country and that the aircraft was inspected and maintained in accordance with the United States regulatory scheme. Plaintiffs suggest that, because Boeing aircraft are utilized extensively in the United States, this country has a predominant interest in retaining this litigation in order to deter the production of defective aircraft in the future.

The Supreme Court in *Reyno* expressly rejected the position urged by plaintiffs here, indicating that the interest of the United States in deterring the production of defective products was not sufficient to justify retention of the litigation:

"Respondent argues that American citizens have an interest in ensuring that American manufacturers are deterred from producing defective products, and that additional deterrence might be obtained if Piper and Hartzell were tried in the United States, where they could be sued on the basis of both negligence and strict liability. However, the incremental deterrence that would be gained if this trial were held in an American court is likely to be insignificant. The American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here."

*Id. at 454 U.S. at 260-261, 102 S.Ct. at 268.* The case at bar would require a much greater "commitment of judicial time and resources" than *Reyno;* and plaintiffs cannot, by characterizing their causes of action as product liability claims against American defendants, escape the fact that these claims arise in the context of a Taiwanese accident and that Taiwan has the predominant interest in this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

litigation.[FN15]

> FN15. The reasoning relied upon by the court in *Macedo, supra* note 8, 15 Av.Cas. at 18,034, is equally applicable here:
> "The fact that the aircraft was manufactured in the United States does not make the accident, involving a Portuguese airline, an airport in Portugal, predominantly Portuguese plaintiffs and Portuguese witnesses, any less a matter of local Portuguese interest. Plaintiffs cannot, by characterizing their causes of action as products liability claims, eliminate the very intimate relation of Portugal to the accident; the products liability claims arise in the context of a Portuguese accident."

The Supreme Court indicated in *Gilbert* and *Reyno* that another public interest factor supporting dismissal for *forum non conveniens,* in addition to the administrative burden on a forum which has only minimal contact with the controversy, and the local interest which another forum may have in the controversy, is the necessity of applying foreign law or of grappling with difficult choice of law questions. This Court must apply the choice of law rules of the California state courts, *Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941),* and follow the "governmental interest" approach to determine whether the law of Taiwan or that of the United States would govern this action. *Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967).*

In *Hurtado v. Superior Court, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974),* the California Supreme Court enumerated the three distinct governmental interests which may be implicated in wrongful death actions: (1) compensation for resident survivors; (2) deterrence of wrongful conduct within the jurisdiction; and (3) limitations upon the amount of damages recoverable. The parties have not suggested that the third factor, limitations upon damages, is of concern in the instant case. With regard to the most important governmental interest, the interest in compensating resident survivors, it is clear that Taiwan has the much greater interest since the vast majority of the beneficiaries are Taiwanese and the burden of supporting those survivors would fall upon the government of Taiwan.[FN16] *21 With regard to the governmental interest in deterring wrongful conduct, plaintiffs correctly note that the United States has an interest in deterring the production of defective aircraft which are heavily used in this country. In view of the relatively limited weight which the Supreme Court accorded to this interest in *Reyno,* however, and the fact that Taiwan has by far the predominant interest in assuring that its residents receive compensation, this Court finds it quite possible that Chinese law would be applied to this action, and thus that the action is more appropriately tried by a court familiar with Chinese law.

> FN16. *See Bouvy-Loggers v. Pan American World Airways, Inc.,* 15 Av.Cas. (CCH) 17,153, 17,155 (S.D.N.Y.1978) ("Here, The Netherlands has a strong interest in ensuring that this Dutch decedent's heirs are adequately compensated, for if they are not, it is The Netherlands and its citizens who will bear the financial responsibility for supporting them.").

Finally, plaintiffs contend that the presence of United States plaintiffs in this action precludes the granting of defendants' motion to dismiss under the circumstances presented here. Plaintiffs attempt to distinguish *Reyno* on the grounds that all the plaintiffs in that case were foreign, and that an American plaintiff's choice of forum must be accorded greater deference.

The Supreme Court noted in *Reyno* that there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum, and indicated that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. *Reyno, supra,* 454 U.S. at 257-259, 102 S.Ct. at 264-266. The Supreme Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

went on to stress, however, that a plaintiff's right to sue in his home forum is by no means absolute, but rather must be evaluated in the context of the many other factors relevant to the convenience of the parties and of the Court:

"A citizens forum choice should not be given disposition weight, however. * * * Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. *As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.*"

Id. at 255-256 n. 23, 102 S.Ct. at 266 n. 23.(emphasis added). The federal courts have not felt constrained to retain jurisdiction over predominantly foreign cases involving American plaintiffs where an examination of the *Gilbert* factors demonstrated that the action is more appropriately brought in a foreign forum.[FN17]

> FN17. One of the most recent decisions addressing this issue, *Dasi v. Air-India,* No. 79 Civ. 4898 (RWS) (S.D.N.Y. Jan. 26, 1981), slip op. at 5, dismissing for *forum non conveniens* on the grounds that France was the appropriate forum for the action, noted:
> "No special or 'talismanic' significance is attached to the fact that an American plaintiff who brought the action in a United States District Court would otherwise be relegated to a foreign forum. While it is said that the courts are 'reluctant' to sanction sending an American citizen abroad to litigate on the ground of forum non conveniens, that reluctance has not been so profound in practice, and such cases are to be analyzed according to the same *Gulf Oil* factors, with the American plaintiff sufficiently protected by the admonition of the *Gulf Oil* court that 'unless the balance [of conveniences] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed,' and the burden thus placed upon the movant-defendant. In deciding a motion to dismiss on the ground of forum non conveniens, the court properly considers affidavits submitted by the parties." (Citations omitted.)

Although recognizing the deference properly accorded to a plaintiff's choice of forum, particularly in regard to the American plaintiffs in this action, the Court finds that the plaintiffs' choice of an American forum is here outweighed by the private and public interest factors pointing towards dismissal of this action, and that the presence of a handful of American plaintiffs does not preclude such dismissal.[FN18] The Court finds *22 that defendants have satisfied the standard set forth by the Ninth Circuit in *Paper Operations, supra,* 513 F.2d at 670, by making a "clear showing" that "trial in the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," and thus it is not necessary for defendants to establish "such oppression and vexation * * * as to be out of proportion to the plaintiff's convenience."

> FN18. Insofar as plaintiffs have vigorously asserted that the existence of treaties between the United States and China and Japan regarding access by citizens of those countries to the United States courts renders this Court's consideration of the plaintiffs' residence improper, the Court notes that such treaties do not immunize foreign citizens from application of the *forum non conveniens* doctrine and that the residency of the parties is a relevant factor in a *forum non conveniens* inquiry to the extent that it bears upon the location of evidence and witnesses, the court's ability to exercise its jurisdiction over the parties, and the public interest in the litigation.

The Court also finds that the Western District of Washington is not a significantly more convenient forum, on the grounds that transfer would not significantly alleviate the burden that retention of juris-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

diction would impose on private and public interests. While it is true that the principal place of business of defendant Boeing is in the Seattle area, the Court's analysis of the pertinent private and public interest factors compels the conclusion that Taiwan is the appropriate forum for these actions.

Accordingly, IT IS HEREBY ORDERED that defendant Boeing's motion to dismiss on the ground of *forum non conveniens* is granted and will become effective when this Court receives undertakings satisfactory to this Court from defendants Boeing and United that the following conditions have been or will be met, namely, that:

1. The courts of Taiwan have, and will assert, jurisdiction over these actions.

2. Defendants will submit themselves to the jurisdiction of the Taiwanese court, and will make their employees available to testify in Taiwan.

3. Defendants agree to waive any statute of limitations claims arising from the date that these actions were filed to the date that this Order dismissing the complaints becomes effective.

4. Defendants consent to satisfy any judgment that may be rendered against them in Taiwan.

IT IS FURTHER ORDERED that all actions filed in this Court against Boeing and/or United arising from the airplane crash which is the subject of this Opinion and Order not heretofore consolidated with these actions be and they are hereby so consolidated for all purposes and are accordingly DISMISSED. All motions filed in any or all of said actions are DENIED.

No motion or motions for reconsideration will be entertained by this Court.

Defendant Boeing will prepare and lodge with the Court on or before April 26, 1982, a judgment consistent with this Opinion and Order.

D.C.Cal.,1982.
Nai-Chao v. Boeing Co.
555 F.Supp. 9

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.