**Tab 23**



Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2006 WL 2433416 (N.D.Cal.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

C  
Stuart v. Mobile ESPN  
N.D.Cal.,2006.  
Only the Westlaw citation is currently available.  
United States District Court,N.D. California.  
Chad STUART, et al., Plaintiffs,  
v.  
Mobile ESPN, et al., Defendants.  
No. C 06-02094 SI.

Aug. 21, 2006.

Steven Ames Brown, Entertainment Law, San Francisco, CA, for Plaintiffs.  
Scott D. Baker, Adaline J. Hilgard, Reed Smith LLP, San Francisco, CA, for Defendants.

SUSAN ILLSTON, District Judge.  
*1 On August 18, 2006, the Court heard argument on defendants' motion to transfer venue. Having considered the arguments presented and the papers submitted, and for good cause appearing, the Court hereby GRANTS defendants' motion.

Plaintiffs Chad Stuart and Jeremy Clyde are professional singers who perform under the name "Chad & Jeremy." In 1964 they recorded "A Summer Song," which rose to the number seven position on Billboard's Top 40 chart and stayed there for nine weeks. On March 21, 2006, plaintiffs filed the instant complaint, alleging that defendants had improperly used "A Summer Song" without permission.

Defendant Mobile ESPN, LLC, is a Delaware limited liability company with one member: ESPN Enterprises, Inc. Mobile ESPN markets and operates a wireless phone service targeted at sports fans, which includes "personalized sports programming and entertainment from the ESPN family of networks," including "sports news, information, commentary, analysis, statistics, ring tones, graphics, photos, logos and streaming video."Taylor Decl., ¶ 2. Defendant Arnold Worldwide, LLC ("Arnold"), is an advertising company with its primary office in Boston, Massachusetts.

In 2006, Mobile ESPN broadcast a commercial entitled "Sports Heaven" on network television and the Internet. The commercial depicts a man walking along a busy city street gazing intently at his wireless phone, as various sports icons and generic athletes engage in their respective activities or simply appear here and there. Playing in the background throughout the "Sports Heaven" commercial is the musical composition, "A Summer Song," as performed and recorded by "Chad & Jeremy" in the 1960s.

Taylor Decl., ¶ 8. Arnold, Mobile ESPN's advertising agency, "handled most, if not all, aspects of creation and production of the 'Sports Heaven' commercial."*Id.* at ¶ 9.

On March 21, 2006, plaintiffs filed this lawsuit, claiming that "A Summer Song" was used in the commercial without their permission. Their complaint includes two causes of action. First, plaintiffs claim that the use of their song violates their rights under a Screen Actors Guild ("SAG") collective bargaining agreement. That agreement provides that if a recording made under the jurisdiction of the American Federation of Television and Radio Artists ("AFTRA") is used in a SAG commercial, then the employer must obtain permission from each performer on the recording. Plaintiffs allege that, while defendants received permission to use "A Summer Song" from the copyright holder, Ember Records, they failed to receive permission from plaintiffs. Plaintiffs' second cause of action is for violation of their California law right of publicity.

Defendants now move to transfer venue. For the following reasons, the Court agrees that this action should be transferred to the Southern District of New York.

28 U.S.C. § 1404 provides that a district court may transfer a civil action to any other district where it might have been brought "[f]or the convenience of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d         Page 2
Not Reported in F.Supp.2d, 2006 WL 2433416 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

parties and witnesses." 28 U.S.C. § 1404(a). The inquiry is fact-specific, and necessitates "an individualized, case-by-case consideration of convenience and fairness." Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (internal quotation marks omitted). In ruling on a motion to transfer, "a court must balance the preference accorded the plaintiff's choice of forum with the burden of litigating in an inconvenient forum.... The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir.1986) (internal citations omitted).

*2 The Ninth Circuit has identified a list of eight non-exclusive factors that may influence a district court's decision to transfer under § 1404(a):
(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir.2000).[FN1]

> FN1. The Ninth Circuit's factors derive from standards utilized in considering whether to dismiss a case based upon *forum non conveniens. See, e.g., Decker Coal*, 805 F.2d at 853; *Jones*, 211 F.3d at 499. Some courts and commentators have criticized this approach, arguing that motions to transfer venue within the federal system should be governed by a lesser standard. See Saleh v. Titan Corp., 361 F.Supp.2d 1152, 1156-57 (S.D.Cal.2005) (collecting authorities).

Defendants move to transfer this action to the Southern District of New York or the District of Massachusetts.[FN2] There are three primary reasons for defendants' motion. First, neither of the plaintiffs lives in this district. As alleged in the complaint, Stuart lives in Idaho and Clyde lives in the United Kingdom. Second, defendants argue that all of the relevant evidence is located in their offices in New York and Boston, where the commercials were negotiated and created. Finally, defendants argue that the costs of litigation for plaintiffs will not change if this matter is transferred, while the cost of litigation for defendants will significantly decrease.

> FN2. Plaintiffs do not contest defendants' assertion that this action "might have been brought" in either district, see 28 U.S.C. § 1404(a), and that transfer to either district is therefore permissible.

Defendants' argument is not wholly compelling. The problem with defendants' argument is that no jurisdiction has a particularly strong connection to this case. The conduct at issue-the broadcasting of a television commercial-occurred on a national scale. Thus, the injury occurred in every district in the country. See, e.g., Arbitron v. E.W. Scripps, Inc., 559 F.Supp. 400, 404 (S.D.N.Y.1983). In addition, from the parties' briefs it appears that the majority of facts in this matter are undisputed. Indeed, defendants do not contest[FN3] that their commercial used "A Summer Song" or that it was broadcast throughout the country. Thus, the primary question the Court must decide is whether "A Summer Song" falls outside the jurisdiction of the AFTRA/SAG Commercials Contract, a question that is purely legal in nature.

> FN3. Defendants admit these facts in their motion; they did not in their answer.

Of course, not all facts are undisputed. If defendants are found to have breached the contract the Court will have to determine whether their conduct was willful. See Compl., ¶ 14 (seeking exemplary damages for willfulness of conduct). To the extent that evidence bearing on willfulness exists, it will be found in defendants' offices in New York or Bo-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d								Page 3
Not Reported in F.Supp.2d, 2006 WL 2433416 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

ston, not in this district.

With these considerations in mind, the Court turns to the eight factors identified above. The Court finds that this district has only a minimal interest in this dispute, and that New York constitutes a somewhat more convenient forum.[FN4] Accordingly, the Court GRANTS defendants' motion to transfer venue.

> FN4. As a preliminary matter, the parties dispute the meaning of "forum" for purposes of a motion to transfer venue. Plaintiffs maintain that the Court should consider their contacts with California as a whole in deciding defendants' motion, while defendants argue that the Court must only consider plaintiffs' contacts with this district. The Court agrees with defendants. Plaintiffs' argument is heavily based on *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1197 (9th Cir.1988), but that case involved the question whether a court could exercise personal jurisdiction over a Swiss defendant. Thus, the defendant's contacts with the forum state as a whole were relevant. *See id.* at 1194-94. Because cases can be transferred between districts within the same state, however, it would make little sense to evaluate contacts with the state as a whole in the context of a motion to transfer. *See, e.g., Injen Tech. Co., Ltd. v. Advanced Engine Mgmt., Inc.*, 270 F.Supp.2d 1189 (S.D.Cal.2003) (transferring case to Central District of California).

### 1. The Location where the Relevant Agreements Were Negotiated and Executed

*3 Defendants argue that this factor weighs in favor of transfer, because the licensing agreements to use "A Summer Song" were negotiated from Arnold's Boston headquarters with an agent for Ember Records who was in the United Kingdom and Florida during the negotiations. Defendants' argument misses the mark. Plaintiffs' claim is not based upon the licensing agreement defendants negotiated to use "A Summer Song," it is based on the SAG Commercials Contract. Neither party has informed the Court where that contract was negotiated and executed, although it likely was negotiated and executed in either New York or Los Angeles, as both SAG and AFTRA have their national offices in those locations. *See* Tamarin Decl., Exhs. 6, 7. As there is no evidence before the Court as to where the Commercials Contract was negotiated and executed, the Court finds that this factor is neutral.

### 2. The State that Is Most Familiar with the Governing Law

Defendants argue that this factor is neutral because all federal courts are equally able to interpret the SAG Commercials Contract, which, as a collective bargaining agreement under the Labor Management Relations Act, must be interpreted and enforced according to federal common law. *See Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir.2001) (en banc). Plaintiffs contest this assertion, arguing that this district is more familiar with the SAG contract because two lawsuits have been filed under the contract in this district. The Court rejects plaintiffs' contention; federal courts in New York and Massachusetts are just as familiar with principles of contract interpretation as this Court. Moreover, both of the cases plaintiffs cite appear to have settled early in the process. Indeed, neither docket lists a single motion, and only one indicates that the defendant filed an answer to the complaint. Even accepting plaintiff's argument that this Court can be more familiar with interpreting a particular contract than another district, neither of the cases plaintiffs cite would be sufficient to generate this familiarity.

Plaintiffs also argue that a New York or Massachusetts court will be less familiar with their common law right of publicity claim, which they assert arises under California law. At oral argument, counsel for plaintiffs raised the specific concern that California law would not apply if this action were transferred to New York or Massachusetts. Plaintiffs' concern is unfounded. Where, as here, a court transfers a case that includes state law claims,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03539-SI    Document 25-24    Filed 10/18/2007    Page 5 of 6

Not Reported in F.Supp.2d                                                                                       Page 4
Not Reported in F.Supp.2d, 2006 WL 2433416 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

the transferee court applies the law of the state where the action was originally brought. *See Int'l Business Machines Corp. v. Bajorek, 191 F.3d 1033, 1036 (9th Cir.1999)* ("Generally where a defendant in a diversity case obtains a transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue.") (quoting *Van Dusen v. Barrack, 376 U.S. 612, 639 (1964)*). Thus, the transfer of this case will not affect the applicable law one bit.

*4 Even if California law applies to plaintiffs' state law publicity claim, and defendants suggest that it will not, the Court does not find this factor to be particularly compelling.[FN5] As with plaintiffs' breach of contract claim, most of the facts surrounding plaintiffs' publicity claim are undisputed, making it a fairly straightforward cause of action. Thus, plaintiffs' publicity claim weighs only weakly against transfer.

> FN5. There is also the possibility that plaintiffs' claims are preempted by the Copyright Act. *See Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134 (9th Cir.2006)*.

### 3. The Plaintiff's Choice of Forum

Defendants argue that plaintiffs' choice of this district as the forum is entitled to little or no weight because plaintiffs' lawsuit is only minimally related to this district. "If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, plaintiff's choice is entitled only minimal consideration." *DeFazio v. Hollister Employee Share Ownership Trust, 406 F.Supp.2d 1085, 1088 (E.D.Cal.2005)* (internal quotation marks omitted); *see also Ellis v. Costco Wholesale Corp., 372 F.Supp.2d 530, 544 (N.D.Cal.2005); Saleh v. Titan Corp., 361 F.Supp.2d 1152 (S.D.Cal.2005)* ("[N]umerous courts have given less deference to the plaintiff's choice of forum where the action has little connection with the chosen forum.").

Plaintiffs provide two reasons why this district has an interest in this matter. First, they claim that the "operative facts" occurred within this district because the "Sports Heaven" commercial was broadcast here. While true, plaintiffs' argument neglects to mention that the same is true of every other district in the nation. Thus, this Court possesses no special interest in adjudicating this matter.

Plaintiffs also argue that this district has an interest in this action because they have a number of contacts with California. For example, plaintiffs previously resided in California. Stuart in particular lived in California for 25 years and owned a home for nine of those years until he eventually left in 1988. In addition, plaintiffs argue that their business affairs continue to be managed from California, meaning that their injury was primarily felt here. *See Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1197 (9th Cir.1988)* (finding personal jurisdiction over Swiss defendant on misappropriate claim because "Sinatra conducts his business from California, he licenses his name in California, and the center of his business is in California"). Stuart Decl., ¶¶ 2-3. The problem with plaintiffs' argument is that they have not linked the contacts they mention, which would be useful in a personal jurisdiction analysis, to this particular district. Rather, it is much more likely that plaintiffs lived and worked in Los Angeles, in the Central District of California.

Accordingly, the Court finds that this district has little interest in the subject matter of plaintiffs' complaint, and that plaintiffs' choice of forum is entitled to minimal weight.

### 4. The Respective Parties' Contacts with the Forum

*5 As just discussed, plaintiffs have little to no contacts with this district. While both Arnold and Mobile ESPN do business in this district-indeed, both admit that this Court may exercise personal jurisdiction over them-neither have any offices in this district. Thus, defendants' contacts with this district, while not insignificant, are likely equivalent to their contracts with most other districts in this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:07-cv-03539-SI   Document 25-24   Filed 10/18/2007   Page 6 of 6

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2006 WL 2433416 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

country, and are assuredly substantially less significant than their contacts with the districts in which they maintain offices. The Court finds that this factor weighs in favor of transfer.

### 5. The Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum

To the extent that defendants have contacts with this district, the bulk of those contacts are unrelated to the torts at issue. Only one of defendants' contacts is relevant to this action: the broadcast of the "Sports Heaven" commercial, a contact that defendants have with every district in the country. As described above, other of defendants' actions related to this matter, such as the creation of the television commercial and the negotiation of the license with Ember Records, took place in New York and Boston. Thus, this factor weighs in favor of transfer.

### 6. The Differences in the Costs of Litigation in the Two Forums

Defendants argue that this district is likely to be a substantially more expensive forum because all their witnesses are located on the east coast. The Court agrees that, to the limited degree that witnesses are required, New York is a more convenient forum. Further, given that both plaintiffs live far outside of this district, their expenses are unlikely to increase substantially if this case is transferred.

As for legal expenses, transfer to New York will likely increase plaintiffs' expenses because their lawyer is located in this district, while keeping the case here is unlikely to increase defendants' legal expenses because they are represented by a national law firm. Nonetheless, the Court is confident that plaintiffs' counsel can take full advantage of e-filing and telephonic appearances in the Southern District of New York to minimize his expenses associated with this relatively straightforward matter. Accordingly, the Court finds that this factor is neutral.

### 7. The Availability of Compulsory Process

The Court does not envision compulsory process playing a significant role in this matter. It therefore finds that this factor is neutral.

### 8. The Ease of Access to Sources of Proof

As discussed above, the bulk of the evidence, to the extent any evidence is required, is located on the east coast. Thus, the Court finds that this factor weighs in favor of transfer.

\* \* \* \* \*

Based on the foregoing, the Court finds that the relative convenience of the Southern District of New York outweighs plaintiffs' interest in this forum. Simply put, this district has little connection to this lawsuit, and certainly no connection that is significantly greater than that of any other district in this country. The east coast, on the other hand, houses witnesses and evidence that may be presented in this action. It also has a much stronger connection to all of the actions that led to the airing of "Sports Heaven." Accordingly, the Court finds that this matter should be transferred to the Southern District of New York.

\*6 For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to transfer venue (Docket No. 6). This matter shall be transferred to the Southern District of New York.

**IT IS SO ORDERED.**

N.D.Cal.,2006.
Stuart v. Mobile ESPN
Not Reported in F.Supp.2d, 2006 WL 2433416 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.