Tammy B. Webb (SBN: 227593)
tbwebb@shb.com
H. Grant Law (SBN: 144505)
hlaw@shb.com
Amir Nassihi (SBN: 235936)
anassihi@shb.com
Mia O. Solvesson (SBN: 246291)
msolvesson@shb.com
SHOOK, HARDY & BACON L.L.P.
333 Bush Street, Suite 600
San Francisco, California 94104-2828
Telephone:    415.544.1900
Facsimile:    415.391.0281

Attorneys for Defendant
FORD MOTOR COMPANY

Douglas A. Sears (SBN: 48646)
dsears@mathenysears.com
MATHENY SEARS LINKERT & JAIME LLP
3638 American River Drive
Post Office Box 13711
Sacramento, California 95853-4711
Telephone:    916.978.3434
Facsimile:    916.978.3430

Attorneys for Defendant
BUDGET RENT A CAR SYSTEM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| SUSAN FARMER, ARTHUR FARMER, ESTATE OF VIRGINIA M. FARLEY, VIRGINIA M. FARLEY REVOCABLE TRUST,<br><br>            Plaintiffs,<br><br>    vs.<br><br>FORD MOTOR COMPANY, BUDGET RENT A CAR SYSTEM, INC., and DOES 1-100, inclusive,<br><br>            Defendants. | Case No. C 07-03539 SI<br><br>**DEFENDANTS FORD MOTOR COMPANY'S AND BUDGET RENT A CAR SYSTEM, INC.'S REPLY IN SUPPORT OF MOTION FOR TRANSFER OF VENUE PURSUANT TO 28 U.S.C. § 1404(A)**<br><br>Date:    November 30, 2007<br>Time:    9:00 a.m.<br>Judge:   Susan Illston<br>Courtroom:    10<br><br>Filed Concurrently Herewith: Reply Declaration of Amir Nassihi; Appendix ISO of Reply; Certificate of Service<br><br>Complaint filed: June 7, 2007 |

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................1

I.  Plaintiffs' choice of forum is entitled to minimal, if any, deference .........................2

    A.  Plaintiffs' choice of forum should be disregarded because there are indications of forum shopping. ...................................................................2

    B.  Plaintiffs' choice of forum should be accorded less weight because not all Plaintiffs reside here. ...................................................................................4

    C.  Plaintiffs' choice of forum is entitled to minimal consideration because the operative facts did not occur here. ........................................................5

II. The convenience of the witnesses weighs in favor of transfer ..................................7

    A.  Ohio's Northern District is more convenient to most of the critical witnesses in this case. ..................................................................................7

    B.  The testimony of the important witnesses primarily located in Ohio will be relevant to liability, damages, and comparative fault. .................................9

    C.  Requring the crucial witnesses to travel thousands of miles to testify in California would greatly inconvenience them. .............................................10

    D.  Mrs. Farmer's three treating physicians located in this District are not critical witnesses and are offset by relevant treaters located in Ohio. ....................11

III. The convenience of the parties weighs in favor of transfer ......................................12

IV. Plaintiffs' failure to address Defendants' arguments for five of the eight factors means that they have conceded those points.  The factors that Plantiffs failed to address either weigh in favor of transfer or are neutral factors as argued in Defendants' Motion ..................14

CONCLUSION..............................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Aldaba v. Ford Motor Co.*, No. C04-5369 MHP, 2005 WL 3560587 (N.D. Cal. Dec. 29, 2005) ...................................................................................................................... 7

*Alexander v. Franklin Res., Inc.*, No. C06-7121 SI, 2007 WL 518859 (N.D. Cal. Feb. 14, 2007) ....... 3

*Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622 (9th Cir. 1991) ...................................................... 2

*Barela v. Experian Info. Solutions, Inc.,* No. 04 C5144, 2005 WL 770629 (N.D. Ill, Apr. 4, 2005) .. 10

*Black v. JC Penny Life Ins. Co.,* No. C01- 4070 SI, 2002 WL 523568 (N.D. Cal. Apr. 1, 2002) ... 7, 13

*Cook v. Int'l Harvester Co.*, 610 F. Supp. 271 (E.D. Wis. 1985) .......................................................... 10

*Connors v. R & S Parts & Servs., Inc.,* 248 F. Supp. 2d 394 (E.D. Pa, 2003) ..................................... 12

*Dicken v. U.S.*, 862 F. Supp. 91 (D. Md. 1994) ............................................................................. 12, 14

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ......................................................................... 2

*Dwyer v. General Motors Corporation*, 853 F. Supp. 690 (S.D.N.Y. 1994) ........................................ 5

*Hancock v. Hitt*, No. C-98-960 MMC (ARB), 1998 WL 345392 (N.D. Cal. June 19, 1998) ............. 12

*In re Funeral Consumers Antitrust Litigation* (No. C05-01804 WHA, 2005 WL 2334362 (N.D. Cal. Spetember 23, 2005) .......................................................................................................... 9, 11, 13

*In re Volkswagen of Am., Inc. v. Volswagen AG*, No. 07-40058, 2007 WL 3088142 (5th Cir. October 24, 2007) ............................................................................................................................. 1, 2

*Italian Colors Rest. v. Am. Express Co.,* No. C03-3719 SI 2003 WL 22682482 (N.D. Cal. Nov. 10, 2003) ............................................................................................................................................ 2, 6

*Joe Boxer Corp. v. R. Siskind & Co.,* No. C98-4899 SI, 1999 WL 429549 (N.D. Cal. June 28, 1999) ..................................................................................................................................................... 5

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ............................................................. 6

*Moore v. AT&T Latin America Corp.,* 177 F. Supp. 2d 785 (E.D. Ill. 2001) ....................................... 4

*Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949 (9th Cir. 1968) ......................................................... 5

*Piper Aircraft v. Reyno*, 454 U.S. 235 (1981) ....................................................................................... 2

*Stewart v. AT&T, Inc.*, No. C06-7363 SI, 2007 WL 1031263 (N.D. Cal. Apr. 3, 2007) ...................... 3

*Strigliabotti v. Franklin Res., Inc.*, No. C04-0883 SI, 2004 WL 2254556 (N.D. Cal. Oct. 5, 2004) .... 4

*Stuart v. Mobile ESPN*, No. C06-02094 SI, 2006 WL 2433416 (N.D. Cal. Aug. 21, 2006) ................ 6

*STX, Inc. v. Trik Stik, Inc.,* 708 F. Supp. 1551 (N.D. Cal. 1998) ........................................................ 13

*Ugol v. Nemacolin Woodlands, Inc.*, No. Civ. WDQ-04-3398, 2005 WL 1230214 (D. Md. May 24, 2005) ..........................................................................................................................11, 14

*Williams v. Bowman*, 157 F. Supp. 2d 1103 (N.D. Cal. 2001) ............................................................10

**Statutes**

28 U.S.C. § 1391(b) (2007) ...............................................................................................................4

28 U.S.C. § 1404(a) (2007)..............................................................................................1, 2, 6, 13

Cal. Civ. Proc. § 395.5................................................................................................................4

**Rules**

Fed. R. Civ. P. 26 (a)(1)..................................................................................................................9

Fed. R. Civ. P. 45 (e) ..................................................................................................................13

**INTRODUCTION**

This action should be transferred to the Northern District of Ohio under 28 U.S.C. § 1404(a) because transfer will be more convenient for the parties and witnesses and will promote the interests of justice. Plaintiffs' Opposition only addresses three factors used in a Section 1404(a) determination and Plaintiffs, therefore, concede that Defendants are correct with respect to the remaining factors. And overall, the three factors that Plaintiffs address weigh heavily in favor of transfer despite Plaintiffs' best efforts to show otherwise.

First, Plaintiffs' choice of forum is entitled to minimal, if any, deference because (1) there are indications of forum shopping, (2) Gail F. Royster, the Plaintiff representative for two of the four Plaintiffs, resides in Ohio, and (3) the operative facts did not occur in this District.

Second, the convenience of the witnesses weighs in favor of transfer because the first responders, immediate post-accident treaters, Ford and Budget employees, and prior renters—located in Ohio, Michigan, and New Jersey—are key witnesses. It would be inconvenient for them to travel thousands of miles to testify at trial. Also, the three physicians that treated Mrs. Farmer's residual injuries in this District are not crucial witnesses and are more than offset by Ms. Farley's treating physicians and Mrs. Farmer's immediate post-accident treaters, all located in Ohio.[1]

Third, the convenience of the parties weighs in favor of transfer because the gain of convenience to the two Defendants and to Ms. Royster outweighs any resulting inconvenience to the two local Plaintiffs.

**ARGUMENT**

Plaintiffs do not refute that venue is proper in the transferor district. Nor do they refute that the transferee district, the Northern District of Ohio, is one where the action might have been brought. Thus, the only issue this Court must address is whether transfer will serve the convenience of the parties and witnesses and will promote the interests of justice.

In *In re Volkswagen of Am., Inc.*, the Fifth Circuit recently conducted a detailed analysis of the history and purpose of Section 1404(a), and the extensive caselaw interpreting it. The Fifth

---

[1] Ford expects to receive subpoenaed medical records to identify these individuals, but these records will not be available until after the filing of this reply brief.

Circuit concluded that the deference afforded to a plaintiff's choice of forum is not a presumption, but rather casts the burden of proof onto the defendant. *In re Volkswagen of Am., Inc.*, No. 07-40058, 2007 WL 3088142, at *10, *20–21 (5th Cir. Oct. 24, 2007). As a result, the moving party must only show "good cause" for the transfer. *Id.* at *20–21. In other words, when the "transferee forum is no more convenient than the chosen forum, the plaintiff's choice should not be disturbed. When the transferee forum is clearly more convenient, a transfer should be ordered." *Id.*

Plaintiffs' Opposition, however, misstates the appropriate standard for granting a motion for transfer based on Section 1404(a) by citing to *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002), which is a *forum non conveniens* case.[2] *See Piper Aircraft v. Reyno*, 454 U.S. 235, 253 (1981) ("District courts were given more discretion to transfer under §1404(a) than they had to dismiss on grounds of *forum non conveniens*.").

Plaintiffs also reference the unrelated *Mraz* and *Craggs* cases that Plaintiffs' counsel (Mr. Scott P. Nealey) litigated against a different manufacturer—DaimlerChrysler—who was defended by a different law firm. Tellingly, the *Mraz* plaintiffs claimed jurisdiction was proper in their selected venue primarily because the accident occurred in that venue.[3] And the *Craggs* plaintiffs claimed jurisdiction was proper in their selected venue primarily because "at least one defendant reside[d]" in that venue.[4]

**I.    Plaintiffs' choice of forum is entitled to minimal, if any, deference.**

    **A.    Plaintiffs' choice of forum should be disregarded because there are indications of forum shopping.**

First, Plaintiffs' choice of forum should be disregarded because there are indications of forum shopping. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). If "there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference." *Italian Colors Rest. v. Am. Express Co.*, No. C03-3719 SI, 2003 WL 22682482, at *3–5 (N.D. Cal. Nov. 10, 2003). There are three indications that Plaintiffs have

---

[2] *See* Opp. at 4.
[3] Reply Declaration of Amir Nassihi ("Nassihi Reply Decl.") ¶ 2, Exhibit J.
[4] Nassihi Reply Decl. ¶ 3, Exhibit K.

engaged in forum shopping: (1) the initial pursuit of this action in Ohio; (2) filing the complaint in Contra Costa County, when there is no connection to the Bay Area, no defendant resides there, and the omissions/accident did not occur there; and (3) the selection of a California forum to allow Plaintiffs to pursue a Consumer Legal Remedies Act ("CLRA") claim.

It is a logical inference that Plaintiffs initially retained Ohio counsel, contemplated pursuing the lawsuit in Ohio, and, therefore were willing to pursue the case in Ohio. That inference is based on a letter written by an Ohio attorney, Dean S. Hoover, on behalf of "Al Farmer, Susan Farmer, and Virginia Farley," in which he twice refers to all three as his "clients."[5] In that letter, not only does Mr. Hoover request that Budget preserve the rental car in its present condition but also requests confirmation that the request was received and would be complied with, disclosure of the subject car's location, information as to how Mr. Hoover and his "clients" could obtain access to examine the car, and a request that Budget's insurers be advised of this claim. These requests indicate an ongoing attorney–client relationship on behalf of all three Plaintiffs and not just a one-time request for Mr. Farmer. Therefore, Defendants' argument that Plaintiffs "initially attempted to pursue this case in Ohio" is not "based on entirely made up facts" as Plaintiffs suggest.[6] Rather, it appears that Plaintiffs retained Mr. Hoover and then later decided to change counsel since a nearly-identical evidence-preservation letter was sent by Plaintiffs' current attorneys after Plaintiffs retained them.[7]

Plaintiffs further assert that *Alexander* is distinguishable because they claim they never filed a lawsuit in Ohio. *Alexander v. Franklin Res., Inc.*, No. C06-7121 SI, 2007 WL 518859, at *3–4 (N.D. Cal. Feb. 14, 2007). But Plaintiffs are incorrect, and *Alexander* is analogous because Plaintiffs previously took affirmative steps that indicated their intention to pursue the same claims in another state and later decided that California would be a better forum in which to bring the claims.

Another indication of forum shopping exists when a plaintiff picks a jurisdiction because of its favorable law. *Stewart v. AT & T Inc.*, No. C06-7363 SI, 2007 WL 1031263, at *2. (N.D. Cal.

---

[5] Nassihi Declaration In Support of Defendant's Motion to Transfer ¶ 5, Exhibit B.
[6] Def. Motion at 8; Opp. at 4.
[7] Nassihi Reply Decl. ¶ 4, Exhibit L.

Apr. 3, 2007). Here, Plaintiffs filed in California in an attempt to bring a CLRA claim. Plaintiffs' counsel made a similar attempt in the *Craggs* case referenced in his declaration.[8]

Plaintiffs claim they chose a forum that "clearly meets the general venue requirements."[9] But Plaintiffs did not select this forum, Defendants removed this case to this forum. Plaintiffs could not have selected this forum because, under federal law, they could only have filed suit in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Therefore, federal law would have obligated Plaintiffs to file their action in Ohio, (or, accepting Plaintiffs' arguments, in Michigan, or New Jersey), *but not this District*.[10]

These three indications of forum shopping eliminate any deference afforded to Plaintiffs' choice of forum.

### B. Plaintiffs' choice of forum should be accorded less weight because not all Plaintiffs reside there.

Second, Plaintiffs' choice of forum is entitled to less deference because Plaintiff Gail Royster, acting as representative for two of the named Plaintiffs, does not reside in this District. *See Moore v. AT & T Latin Am. Corp.*, 177 F. Supp. 2d 785, 789 (E.D. Ill. 2001) (reducing weight accorded to plaintiffs' choice of forum because only one of the two plaintiffs resided there); *see also*, *Strigliabotti v. Franklin Res., Inc.*, No. C04-0883 SI, 2004 WL 2254556, at *2 (N.D. Cal. Oct. 5, 2004) ("Where plaintiff's choice of forum is a district other than one in which he resides, his choice may be given considerably less weight."). Here, two of the named Plaintiffs, represented by personal representative and trustee Plaintiff Gail Royster, are based in Ohio. Therefore, the deference accorded to Plaintiffs' choice should be diminished.

---

[8] Nassihi Reply Decl. ¶ 3, Exhibit K.

[9] *See* Opp. at 6.

[10] California state law likewise requires that lawsuits be filed where the injury occurred; where the defendant has its principal place of business; where the contract was made or is to be performed; or where the obligation or liability arose or the breach occurred. Cal. Civ. Proc. Code § 395.5.

**C. Plaintiffs' choice of forum is entitled to minimal consideration because the operative facts did not occur here.**

Third, a plaintiff's choice of forum is entitled to minimal consideration where, as here, the operative facts did not occur within the selected forum. *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). Plaintiffs concede that the operative facts did not occur in this forum. Specifically, in attempting to minimize this case's connections to Ohio, Plaintiffs argue that in a products-liability case like this one, the operative facts relate to where the design and manufacture of the product occurred.[11] But in assessing the location of the operative facts, it matters not if they are centered in Michigan, Canada, or Ohio. The relevant inquiry is whether the operative facts occurred in *this* District. *See Joe Boxer Corp. v. R. Siskind & Co.*, No. C98-4899 SI, 1999 WL 429549, at *9 (N.D. Cal. June 28, 1999) ("[W]here the transactions giving rise to the action lack a significant connection to the plaintiff's chosen forum, then the plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum.").

Plaintiffs also cite to *Dwyer v. General Motors Corp.*, 853 F. Supp. 690, 692–93 (S.D.N.Y. 1994), in arguing that "the place where Plaintiffs' injuries occurred are [*sic*] irrelevant compared to where the design and manufacture of the product took place."[12] But this proposition supports a finding that this case's operative facts have no connection to this District. In any event, the *Dwyer* court did not find the accident's situs to be "irrelevant" to determining transfer. Instead, the *Dwyer* court weighed the materiality of the witnesses' anticipated testimony and decided against transfer because it was not more convenient to a number of witnesses.

Next, Plaintiffs contend—through unsupported argument of counsel—that "the solicitation by Budget and the rental of the subject vehicle occurred in this district."[13] Defendants can only assume—given that the subject car was rented from Cleveland Hopkins Airport in Ohio—that Plaintiffs contend a "solicitation" occurred in California either via advertisements on the Internet, television, radio, or print media. Since Budget Rent A Car has a national presence and such

---

[11] Opp at 6.
[12] *Id.*
[13] *Id.* at 5.

advertisements are broadcast to every district in the country, such a so-called solicitation is insufficient to claim that "operative facts" occurred within this District. *See Stuart v. Mobile ESPN*, No. C06-02094 SI, 2006 WL 2433416, at *4 (N.D. Cal. Aug. 21, 2006) (granting a Section 1404(a) transfer to New York where this Court possessed "no special interest" in adjudicating the matter before it because the commercial at issue was broadcast to every other district in the nation).

Further, it would be a mischaracterization to say that the rental occurred anywhere other than in the Northern District of Ohio because that was where Mrs. Farmer picked up the car and entered into the rental agreement. The location where the relevant agreements were negotiated and executed is an additional factor relevant to a Section 1404(a) determination. *See Stuart*, 2006 WL 2433416, at *2 (*quoting Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).[14] As is the case with most national rental car companies, even if a reservation is made over the phone or Internet before picking up the car, the rental itself does not occur until the customer shows up at the rental car facility (here, Budget), signs the agreement, and provides a credit card number. Until then, Budget does not take a potential customer's credit card number, nor does it charge a fee for an uncompleted reservation for a car.[15] Indeed, Mrs. Farmer's rental contract shows that the car was rented in Cleveland, Ohio.[16]

Finally, Plaintiffs failed to show that California is significantly more affected by the alleged torts underlying Plaintiffs' claims. *See Italian Colors Rest.*, 2003 WL 22682482, at *5 (explaining that the plaintiff offered no evidence to show California was significantly more affected by the torts than other states, including the transferee state). Similarly, here, Plaintiffs have not responded to Defendants' showing that this action has extensive connections to Ohio.

In contrast, Defendants have shown that the allegations concerning the design process, testing, manufacture, sale, rental, maintenance, service, and the alleged malfunction of the car all occurred outside of California. And the sale, rental, maintenance, service, the alleged failure of the car, and injuries all occurred in the Northern District of Ohio. The negligence count for allegedly

---

[14] The Northern District and Ninth Circuit courts have relied on this as a ninth factor in a Section 1404(a) determination.
[15] Nassihi Reply Decl. ¶ 6.
[16] *Id.* ¶ 5, Exhibit M.

failing to use due care refers to acts performed by Ford in Michigan, Ohio, and Canada and by Budget in the Northern District of Ohio. And Plaintiffs' complaint is littered with other allegations centered in Ohio, including Defendants' failure to use due care in the inspection, maintenance, and servicing, and their failure to retrofit. And Budget's alleged CLRA violation purportedly relates to the rental agreement Mrs. Farmer entered into in the Northern District of Ohio.

In short, Plaintiffs' choice of forum should be given minimal deference because no acts allegedly giving rise to any particular cause of action occurred in this District.

## II.   The convenience of the witnesses weighs in favor of transfer.

### A.   Ohio's Northern District is more convenient to most of the critical witnesses in this case.

Here, the critical witnesses to the accident and the car's maintenance and performance, which include the responding officers, paramedics and physicians, employees of Budget, scene witnesses, and prior renters are located primarily in Ohio's Northern District. Plaintiffs are wrong to assert that these witnesses are "substantially irrelevant to the issues in this case."[17] Emergency personnel and police officer responders are necessary for determining liability. *See Aldaba v. Ford Motor Co.*, No. C04-5369 MHP, 2005 WL 3560587, at *5 (N.D. Cal. Dec. 29, 2005) ("[I]ndividuals such as emergency personnel and police officers who witnessed the aftermath of the accident are also important potential witnesses who would be crucial in any liability determination."). In *Black v. JCPenny Life Ins. Co.*, No. C01-4070 SI, 2002 WL 523568, at * 4 (N.D. Cal. Apr. 1, 2002), the plaintiff similarly argued that liability and causation witnesses (medical personnel) were irrelevant because the insurance case was centered around documents and experts. This Court found that argument "unpersuasive" because liability and causation were likewise in dispute. *Id.*

Plaintiffs claim that the testimony of first responders has not been sought in past products-liability cases is also wrong.[18] Plaintiffs rely on Plaintiffs' counsel's experience in *only one* park-to-reverse case *against a different manufacturer represented by different counsel* for the proposition

---

[17]   *See* Opp. at 7.

[18]   *See* Opp. at 3.

that such testimony is irrelevant in products-liability cases.[19] But the way another car manufacturer and law firm elect to defend one products-liability case is not an accurate barometer for how every other products-liability case with different facts, injuries, vehicles, and alleged defects will be defended by a multitude of different manufacturers and rental companies. In fact, responding personnel, scene witnesses, tow personnel, and prior renters are often critical if not dispositive witnesses in products-liability cases. For example, in two case Ford's counsel has recently defended in this District, the testimony of the responding officers, paramedics and physicians, employees of Budget, scene witnesses, towing personnel, and prior renters proved to be very important and necessitated many out-of-state trips. Notably, Ford did not move to transfer venue in either of those cases primarily because, unlike here, substantially stronger contacts with this District existed.

In *Pierson v. Ford Motor Co.*,[20] currently pending before Judge Hamilton, the plaintiff alleged that he sustained injuries in an Iowa crash because of the alleged defective design of a bench seat. There, the Ford vehicle was rented from a San Francisco-based rental company in San Francisco. Because the case is venued in this District and many crucial witnesses are located in Iowa, all sides have spent significant time and money to travel to Iowa to depose those witnesses, including at least nine responding personnel. Also deposed were prior renters of the subject Ford vehicle to obtain critical information for the liability determination—whether those prior renters had any similar experiences to that underlying the plaintiff's lawsuit.

*Lazar v. Ford*[21] was a products-liability case brought against Budget and Ford alleging airbag defects in a new rental vehicle. It was tried to a defense verdict before Judge Wilken. In *Lazar*, the parties made numerous trips to Washington State to depose emergency personnel, including firefighters/paramedics, a responding state trooper, and nurses and doctors who were involved in the immediate post-crash treatment. In addition, two Budget employees were flown down by Ford and Budget to testify at trial. And testimony was presented from these responding personnel and

---

[19] *See* Opp. at 2–3.
[20] Nassihi Reply Decl. ¶ 7.
[21] *Id.* ¶ 8.

immediate post-accident treaters, which included on-scene and post-accident admissions made by plaintiff, which were critical in refuting plaintiff's differing litigation claims.

These cases demonstrate that Defendants rely heavily on the testimony of the witnesses that Plaintiffs erroneously contend are "irrelevant."

### B. The testimony of the important witnesses primarily located in Ohio will be relevant to liability, damages, and comparative fault.

Plaintiffs are also wrong to assert that "Defendants failed to provide factual information relative to the substance and relevance of [the witnesses'] testimony.[22] Defendants' Motion explained the relevance of expected testimony from the responding officers, paramedics, employees of Budget, scene witnesses, and prior renters to determinations of liability and damages, including comparative fault. In addition, the parties' Rule 26(a) initial disclosures, which were exchanged two weeks after Defendants' opening brief was filed, confirmed that most witnesses are either in Ohio's Northern District or located substantially closer to Ohio than to this District.

In *In re Funeral Consumers Antitrust Litigation*, this Court requested that the parties provide Rule 26(a) disclosures of potential witnesses so that the "prospective witnesses, as disclosed by counsel themselves, could be, in effect, imagined on a map of the United States." *In re Funeral Consumers Antitrust Litig.*, No. C05-01804 WHA, 2005 WL 2334362, at *4 (N.D. Cal. Sept. 23, 2005). Upon review, this Court concluded that the "final trial witnesses (on liability) are very likely to be drawn in this case from Houston and east of the Mississippi." *Id.* at *5. Based significantly on this, the Court found the convenience of the witnesses favored transfer. *Id.* Here, Ford's counsel's accompanying declaration lists all the witnesses identified in Ford's, Budget's, and Plaintiffs' Rule 26(a) initial disclosures, along with the substance of their expected relevant testimony and their distances from both this District and Ohio's Northern District. This listing demonstrates that most of the key nonparty witnesses are located either in or close to Ohio's Northern District. For example, at least nine are located in Ohio, and one is located in Michigan, about 68 miles from Ohio's Northern District, Toledo Division (within subpoena range), and about 180 miles from the Akron Division. By contrast, only three nonparty witnesses are located in California.

---

[22] Opp. at 7.

Other important witnesses are Ford and Budget employees who, as conceded by Plaintiffs, will testify as to the design, manufacture, rental, and maintenance of the subject car. These employees are located in Ohio—and in Michigan, a short drive from Ohio's Northern District and likely within subpoena range—as identified in the parties' initial disclosure witness lists. *See Barela v. Experian Info. Solutions, Inc.*, No. 04 C5144, 2005 WL 770629, at *4 (N.D. Ill. Apr. 4, 2005) ("[P]recedent teaches that it is still sensible to consider the residence of witnesses employed by parties, and to consider related travel cost and lost-work issues attendant to a distant trial, when trying to make a pragmatic assessment of whether a venue transfer is warranted."). *See also*, *Cook v. Int'l Harvester Co.*, 610 F. Supp. 271, 275 (E.D. Wis. 1985) (When possible, "products-liability actions" should be tried "in close proximity to the point of manufacture and sale of the product, the situs of the subject accident, [and] the residence of the critical design engineers.").

In addition, Plaintiffs have identified five expert witnesses they plan to use in this case.[23] Two are based in Detroit, one in Phoenix, one in Irvine, and one in Washington D.C. Notably, none of Plaintiffs' experts are in this District and, on balance, most reside substantially closer to Ohio. In aggregate, Plaintiffs' five experts are about 8,000 miles away from this District but only 5,145 miles away from the Northern District of Ohio. While Defendants have not yet retained any experts, Defendants anticipate that most of their experts will be based in Michigan, a short drive from Ohio's Northern District. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1108 (N.D. Cal. 2001) (noting that location of expert witnesses is given little weight).

**C.  Requiring the crucial witnesses to travel thousands of miles to testify in California would greatly inconvenience them.**

Defendants again highlight the extreme inconvenience that testifying in California would cause these highly relevant witnesses. Assuming they could even be persuaded to attend trial, they would have to take at least three days from their busy schedules in order to travel to California, testify, and return to Ohio, Michigan, and elsewhere.

---

[23] Declaration of Scott P. Nealey In Support of Plaintiffs' Opposition to Defendants' Motion to Transfer Venue.

In *In re Funeral Consumers Antitrust Litigation*, this Court conducted an examination to determine where the action's center of gravity lay. 2005 WL 2334362, at *2. There, this Court determined that (1) only one plaintiff resided in California and the remainder lived elsewhere, (2) the defendants' principal places of business were in Texas, Louisiana, and Ohio, and (3) corporate representatives could be reasonably expected to attend various hearings and trial. *Id.* at *2–4. Based on these findings, this Court granted transfer to Texas, as requested, since travel to Texas would be considerably shorter than travel to San Francisco. *Id.* at *4–5. This Court described the inconveniences experienced by witnesses who appear at trial as follows:

> These individuals must take time out of their work and private time to travel to and from the place of trial, to live away from home and to wait around windowless corridors on call to testify. Back home, they have children to get to school, elderly parents to care for, jobs to do and lives to lead—all of which must be managed somehow or put on hold. Although lawyers tend to underestimate this burden, it is genuine, all the more so in a distant city. Even where a witness is an employee of a party and will be paid, the disruption is still a hard fact. The expenses of transportation, housing and meals, even if borne by a party, are nonetheless authentic outlays.

*In re Funeral Consumers Antitrust Litig.*, 2005 WL 2334362, at *4 (internal cites omitted).

Transfer of this litigation to Ohio would minimize any inconvenience to the nonparty and employee witnesses and minimize any disruption to their lives.

### D. Mrs. Farmer's three physicians located in this District are not critical witnesses and are offset by relevant treaters located in Ohio.

Plaintiffs only refer to three nonparty witnesses in this District: Mrs. Farmer's treaters who will testify about her residual injuries. Their testimony will not be relevant to liability or causation issues or Defendants' knowledge and conduct. Nor will it be relevant to the factual issues underlying the accident, alleged defect, design, and rental, or to comparative fault issues.

Such treaters are more suitable for videotaped depositions at trial than the other identified witnesses because, if called to testify, they would only relate information about the relatively noncontentious issue of Mrs. Farmer's ongoing treatment. *See Ugol v. Nemacolin Woodlands, Inc.*, No. Civ. WDQ-04-3398, 2005 WL 1230214, *2 (D. Md. May 24, 2005) ("These physicians, however, are not as crucial as the other medical personnel located [where the accident occurred because these] physicians only rendered follow-up care, not immediate medical attention.

Additionally, such testimony could be presented at trial by means of a videotaped deposition."); *see also*, *Dicken v. U.S.*, 862 F. Supp. 91, 93 (D. Md. 1994) ("Moreover, unless and until Plaintiff establishes otherwise, the only Maryland-based witnesses who might have to travel to Kansas are herself and her doctor—and the doctor's testimony could easily be presented at trial by means of a videotaped deposition."). Therefore, there is less need for jurors to assess these treaters' credibility and reliability, or weigh any conflicting accounts, reports, or purported admissions. *See Connors v. R & S Parts & Servs., Inc.*, 248 F. Supp. 2d 394, 396 (E.D. Pa. 2003) ("[T]he use of a doctor's videotaped deposition at trial is well-accepted and widespread.").

Furthermore, in pointing only to Mrs. Farmer's treaters in California, Plaintiffs ignore Ms. Farley's treaters from her five-day hospitalization after the accident and her subsequent treatment. Plaintiffs also ignore the fact that Mrs. Farmer received over $40,000 in treatment and surgery during her 16 days of post-accident treatment at Akron City Hospital in the Northern District of Ohio.[24] Those treaters are at least as relevant as Mrs. Farmer's three current treaters, if not more so.

### III.    The convenience of the parties weighs in favor of transfer.

Plaintiffs' sole argument that transfer would be "very inconvenient for the living Plaintiffs and their treatment doctors" ignores the fact that these doctors are not parties; they are witnesses. And Plaintiffs' personal inconvenience claim fails for three reasons. First, Plaintiffs have made no showing that they would be unduly inconvenienced by transfer. *See Hancock v. Hitt*, No. C-98-960 MMC (ARB), 1998 WL 345392 (N.D. Cal. June 19, 1998) ("[T]he convenience of the parties does not appear to be dispositive as one party or the other will suffer inconvenience whether or not the Court transfers this action."). Second, Plaintiffs ignore Plaintiff Gail Royster's residence in Ohio. Plaintiffs have not addressed Ms. Royster's inconvenience in traveling to California. Instead, Mrs. Farmer offers a hearsay declaration claiming Ms. Roytser will "voluntarily appear in California" for deposition and trial." Third, Plaintiffs' indication that they would be inconvenienced because they "plan to participate in most, if not all, the hearings"[25] ignores the fact that Ohio's Northern District

---

[24] Nassihi Reply Decl. ¶ 9, Exhibit N.

[25] Opp. at 8; Declaration of Susan Farmer In Opposition to Defendants' Motion to Transfer Venue ¶ 2; Declaration of Arthur Farmer In Opposition to Defendants' Motion to Transfer Venue ¶ 2.

permits—and in some cases encourages—parties to attend hearings via telephone.[26] In addition, motions are generally submitted on the briefs rather than set for oral argument.

In fact, the combined gain of convenience to both Defendants and Plaintiff Gail Royster is not offset by the added inconvenience to Mr. and Mrs. Farmer. *See STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1998). The Northern District of Ohio is more convenient for most of the parties. Ms. Royster lives in Ohio, and Defendants' principal places of business in Michigan and New Jersey are much closer to Ohio. In addition, the at-issue Budget facility is based in Ohio.

The Northern District of Ohio is also more convenient to the parties because it would allow better access to the witnesses and, as Plaintiffs did not dispute, the evidence. Venue in this District is inconvenient to the parties because they are unable to compel key witnesses to testify at trial. The availability of compulsory process to obtain witness testimony is relevant to a Section 1404(a) determination. *See Black*, 2002 WL 523568, at * 4. Witnesses cannot be compelled to attend trial unless they can be served with subpoenas within the trial district, or at any place outside the district that is within 100 miles of the place of trial. Fed. R. Civ. P. 45(e).

> "[L]ive testimony is easier to follow and comprehend than deposition read-ins or video clips. The difficulty is exacerbated by the fact that depositions are often taken before certain fact issues gather importance. They may, therefore, not fully address points decisive to the jury. Live testimony, therefore, always is to be preferred over deposition excerpts. A problem arises when witnesses are beyond trial subpoena range and they can only be compelled to attend via depositions.

*In re Funeral Consumers Antitrust Litig.*, 2005 WL 2334362, at *5.

> To be sure, a corporate defendant can be expected to arrange for some present and past employees to testify live and voluntarily but only if their testimony will be favorable on balance to the defense. Those with testimony favorable to the *other* side are often unwilling to appear except by deposition unless, of course, they are within subpoena range of the trial court. It would be better to try a case where any such unwilling but important witnesses [such as Budget's Cleveland facility's employees] could be compelled to appear in person. Plaintiffs' counsel may be prepared to proceed via deposition but we should not force a jury to suffer through it where there is a good alternative.

*In re Funeral Consumers Antitrust Litig.*, 2005 WL 2334362, at *5. In the Northern District of Ohio, all parties would have equal access to sources of proof, both during discovery and at trial. In

---

[26] Nassihi Reply Decl. ¶ 10, Exhibit O.

1  addition, Plaintiffs' nonparty witness Richard Keefer would be within the court's subpoena range, as
2  would Ford's engineers, assuming this case was assigned to the Toledo Division.

3   What's more, Mrs. Farmer (and presumably Mr. Farmer), lived in the Northern District of
4  Ohio *as recently as June 7, 2004*.[27] Taken together with Mrs. Farmer's previous travel to Ohio's
5  Northern District, (presumably to visit family), it is apparent that Plaintiffs would not be
6  substantially inconvenienced by transfer. *See Ugol*, 2005 WL 1230214, at *2 ("As the Plaintiff has
7  traveled to Pennsylvania on a previous occasion, it would not appear that he would be
8  inconvenienced by a transfer."); *see also Dicken*, 862 F. Supp. at 93 (explaining that plaintiff would
9  not be inconvenienced since "she was able to travel to the [transferee district] in the first place . . .
10 when the alleged injury occurred").

**IV.  Plaintiffs' failure to address Defendants' arguments for five of the eight factors means that they have conceded those points. The factors that Plaintiffs failed to address either weigh in favor of transfer or are neutral as set out in Defendants' Motion.**

By not addressing five of the factors Defendants raised in their opening brief, Plaintiffs concede those points. First, the ease of access to the evidence weighs heavily in favor of transfer. Second, the familiarity of each forum with the applicable law remains a neutral factor. Third, the feasibility of consolidation remains a neutral factor. Fourth, the local interest in this case remains heavily weighted toward transfer. Fifth, this District is considerably more congested than the Northern District of Ohio and therefore weighs heavily toward transfer.

**CONCLUSION**

This case should be transferred to the Northern District of Ohio because Plaintiffs failed to refute Defendants' showing that the totality of determinative factors support transfer.

• Plaintiffs have conceded that their choice of forum is entitled to minimal deference by offering no evidence that any of the operative facts are connected to this District. And for the other reasons provided by Defendants, that minimal deference should be reduced to no deference.

• Qualitative and quantitative analyses of all parties' disclosed witnesses demonstrates that the convenience of witnesses weighs heavily in favor of transfer.

---

[27] *Id.* ¶ 9, Exhibit N.

- The convenience of the parties weighs in favor of transfer since Ohio's Northern District is more convenient to all Defendants and Plaintiff Gail Royster. In addition, all parties will have better access to witnesses and sources of proof for pretrial and trial purposes.

- The ease of access to the evidence weighs heavily in favor of transfer because Plaintiffs have not addressed Defendants' points.

- The familiarity of each forum with the applicable law is a neutral factor because Plaintiffs have not addressed Defendants' points.

- The feasibility of consolidation with other claims is a neutral factor because Plaintiffs have not addressed Defendants' points.

- The local interest in the controversy and the burden of jury duty on citizens in an unrelated forum weigh in favor of transfer because Plaintiffs failed to address Defendants' points.

- The relative court congestion and time of trial in each forum weighs in favor of transfer because Plaintiffs have not addressed any of Defendants' points.

In addition, the availability of compulsory process and the location where the rental agreement was entered support transfer. And these factors are not only a part of a convenience of witnesses and parties analysis, they are also considered independently by Ninth Circuit courts. Therefore, Defendants respectfully submit that their burden has been met, and transfer should be ordered.

Dated: November 16, 2007

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/Amir Nassihi* \_\_\_\_
    AMIR NASSIHI
    Attorneys for Defendant
    FORD MOTOR COMPANY

MATHENY SEARS LINKERT & JAIME LLP

By: */s/Douglas A. Sears* \_\_\_\_
    DOUGLAS A. SEARS
    Attorneys for Defendant
    BUDGET RENT A CAR SYSTEM, INC.