**Exhibit J**

1  Fabrice Vincent (State Bar No. 160780)
   Scott P. Nealey (State Bar No. 193062)
2  Matthew S. Da Vega (State Bar No. 195443)
3  Lieff, Cabraser, Heimann & Bernstein, LLP
   Embarcadero Center West
4  275 Battery Street, 30th Floor
   San Francisco, CA 94111-3339
5  Telephone: (415) 956-1000
   Facsimile: (415) 956-1008
6
7  Charles D. Naylor (State Bar No. 62243)
   Law Offices of Charles D. Naylor
8  839 S Beacon St # 311
   San Pedro, CA 90731
9  Telephone: (310) 514-1200
   Facsimile: (310) 514-1837
10
11 Attorneys for Plaintiffs

**ORIGINAL**

**FILED**
LOS ANGELES SUPERIOR COURT

APR 2 6 2005

JOHN A. CLARKE, EXECUTIVE OFFICER/CLERK
BY_____
J. SUNGA, DEPUTY

Case assigned to
Judge. *med Ramua*

D. 45

12           SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                    COUNTY OF LOS ANGELES

14

15 ADRIANA MRAZ; ESTATE OF RICHARD      Case No.   BC 332487
   MRAZ; and minor plaintiffs ADDISON
16 MRAZ, JOE LOPEZ, ROY LOPEZ, through   **COMPLAINT**
   their Guardian Ad Litem Adriana Mraz,
17                                        Strict Products Liability: Failure To Warn
18 Plaintiffs,                            Strict Products Liability: Design Defect and
                                          Negligence
19 v.                                     Negligent Failure to Warn
                                          Exemplary Damages
20 DAIMLERCHRYSLER CORPORATION;          Wrongful Death and Survivorship
   AMERICAN PRESIDENT LINES LTD.;
21 and DOES 1-100, inclusively,
22 Defendants.                            **DEMAND FOR JURY TRIAL**
23

24

25

26

27

28

423099.1

NO SUMMONS ISSUED

## I.     INTRODUCTION

1.     Adriana Mraz; the Estates of Richard Mraz and minor plaintiffs Addison Mraz, Joe Rudy Lopez, and Roy Anthony Lopez, through their custodial parent and Guardian Ad Litem, Adriana Mraz, (hereinafter collectively "Plaintiffs"), allege causes of action against Defendants Daimler Chrysler Corporation (hereinafter "DAIMLERCHRYSLER"); American President Lines Ltd. (hereinafter "APL"), and DOES 1-100 for wrongful death, personal injury and emotional distress.

2.     These causes of action arise from the tragic death of Richard Mraz on May 1, 2004. Mr. Mraz's death was caused by injuries he suffered while he was working as a longshoreman and marine clerk for Eagle Marine Services (hereinafter "Eagle") at the Long Beach Shipyard, 614 Terminal Way, Terminal Island, CA 90731, on April 13, 2004. On April 13, 2004, Mr. Mraz stopped his work-assigned truck (owned by APL), a 1992 Dodge Dakota pickup truck, #MCL14, VIN # 1B7GL26X7NS53651, placed the truck in "displayed park" (i.e., where the vehicle appeared from the vehicle's "cues" to be in park) and exited the vehicle with the vehicle running. After a short delay, during which Mr. Mraz moved away from the truck, the vehicle's transmission self-shifted from park to reverse on its own and began moving backwards under engine power. Mr. Mraz attempted to stop the vehicle whereupon he was struck by the truck suffering fatal injuries which caused his death almost two weeks later on May 1, 2005.

3.     Plaintiffs allege the following based upon their own knowledge, publicly available information, and information and belief:

## II.     JURISDICTION AND VENUE

4.     This Court is proper because this is a complaint in products liability for an incident that occurred in Los Angeles County, injured and killed a Los Angeles County resident, and against Defendant APL which is incorporated and conducts substantial business in California. DAIMLERCHRYSLER's agent for service of process, CT Corp. is located in downtown Los Angeles. Venue in any California County Superior Court is therefore appropriate.

5.     The surviving members of the Mraz family, Adriana, Addison, Joe, and Roy, are and at all relevant times have been, California residents. For diversity purposes, the

423099.1                                              - 1 -

1   estate of Richard Mraz is also considered a California resident because Richard Mraz was a

2   California resident at the time of his deaths. See 28 U.S.C.A. § 1332(c)(2). Diversity jurisdiction

3   in federal district court does not exist as it requires "complete diversity," which does not exist if

4   any plaintiff is from the same state as any defendant. 28 U.S.C. § 1332. In this matter, Defendant

5   APL is a California entity.

6   **III.    PARTIES**

7          6.    Decedent Richard Mraz was at all relevant times a resident of San Pedro,

8   California. Mr. Mraz sustained fatal injuries due to defects present in the 1992 Dodge Dakota

9   pickup truck he was operating as part of his job as a longshoreman on April 13, 2004. These

10  injuries eventually lead to his death on May 1, 2004. He died at age 38, leaving behind a young

11  wife, plaintiff Adriana Mraz, a two-year-old child, plaintiff Addison Mraz, and two minor step-

12  sons, who relied upon him for financial support and comfort, plaintiffs Joe Lopez and Roy Lopez.

13         7.    Plaintiff Adriana Mraz is and at all relevant times has been a resident of

14  San Pedro, California. Adriana is the widow of Richard Mraz and the mother and Guardian Ad

15  Litem of minor plaintiffs Addison Mraz, Joe Lopez, and Roy Lopez. On May 1, 2004, she faced

16  the horror of watching her beloved husband die as result of injuries he suffered on April 13, 2004

17  while working as a longshoreman for Eagle. Adriana Mraz, is the personal representative and/or

18  successor in interest under C.C.P. §377.30 and heir to Decedent Richard Mraz and brings causes

19  of action alleged herein pursuant to C.C.P. § 377.60.

20         8.    Plaintiff Addison Mraz, age 2, is and at all relevant times has been a

21  resident of San Pedro, California. She is the daughter of decedent Richard Mraz and plaintiff

22  Adriana Mraz. She is represented by her custodial parent and Guardian Ad Litem Adriana Mraz.

23         9.    Plaintiff Joe Rudy Lopez, age 15, is and at all relevant times has been a

24  resident of San Pedro, California. He is the step-son and dependent of Decedent Richard Mraz

25  and natural child of plaintiff Adriana Mraz. He is represented by his custodial parent and

26  Guardian Ad Litem Adriana Mraz. Mr. Mraz supported Joe both financially and emotionally and

27  treated him like a son.

28         10.   Plaintiff Roy Anthony Lopez, age 13, is and at all relevant times has been a

423099.1                                      - 2 -

1  resident of San Pedro, California. He is the step-son and dependent of Decedent Richard Mraz

2  and natural child of plaintiff Adriana Mraz. He is represented by his custodial parent and

3  Guardian Ad Litem Adriana Mraz. Mr. Mraz supported Roy financially and emotionally and

4  treated him like a son.

5        11.   Each Plaintiff named above is a competent adult except the following

6  Plaintiffs: Estate of Decedent Richard Mraz; Addison Mraz, Joe Lopez, and Roy Lopez.

7  Addison, Joe and Roy are all minors, represented by their mother, sole custodial parent and

8  Guardian Ad Litem, Adriana Mraz.

9        12.   Defendant DAIMLERCHRYSLER is a corporation doing business in

10  California with its principal place of business in Auburn Hills, Michigan. Defendant

11  DAIMLERCHRYSLER designed, manufactured, tested, assembled, distributed, marketed,

12  advertised and sold the 1992 Dodge Dakota pickup truck which is the subject of this lawsuit. At

13  all relevant times, DAIMLERCHRYSLER has manufactured and continues to manufacture

14  automobiles, sport utility vehicles, trucks and vans that are sold throughout the United States and

15  in foreign countries.

16        13.   Defendant APL is a corporation doing business in California with its

17  headquarters and principal place of business in Oakland, California. Defendant APL is the owner

18  of the 1992 Dodge Dakota pickup truck and the property which is the subject of this lawsuit.

19        14.   Plaintiffs are ignorant of the true names and capacities of Defendants sued

20  herein as DOES 1-100, inclusive, and therefore sues these Defendants by such fictitious names.

21  Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

22  Plaintiffs are informed and believe and thereon allege that each of the fictitiously named

23  Defendants is an agent, employee or affiliate of Defendants and is responsible for the unlawful

24  conduct herein alleged, and that said Defendants proximately caused the harm alleged herein.

25        15.   Throughout this Complaint, Defendants DAIMLERCHRYSLER, APL,

26  and DOES 1-100 are referred to collectively as "Defendants."

27

28

## FIRST CAUSE OF ACTION
### (Strict Products Liability: Failure To Warn)
### (Against All Defendants)

16.     Plaintiffs incorporate by reference all preceding paragraphs and allegations as if fully set forth herein.

17.     On or about April 13, 2004, Plaintiffs were injured and Decedent suffered injuries leading to his death on May 1, 2004 by a defective 1992 Dodge Dakota pickup truck.

18.     Defendant DAIMLERCHRYSLER designed, engineered, manufactured, tested, assembled, marketed, advertised, sold and/or distributed 1992 Dodge Dakota pickup trucks throughout the world, including the 1992 Dodge Dakota Pickup truck which injured Plaintiffs and killed decedent.

19.     Defendant APL was the owner of the 1992 Dodge Dakota Pickup truck which injured Plaintiffs and killed Decedent.

20.     Defendants are strictly liable to Plaintiffs because the 1992 Dodge Dakota Pickup truck was defective and unreasonably dangerous for normal use due to its defective design, manufacture, and maintenance and due to Defendants' failure to provide adequate warnings of the substantial dangers known or knowable at the time of the 1992 Dodge Dakota Pickup truck's design, engineering, manufacturing, testing, assembly, marketing, advertising, inspection, maintenance, sale and/or distribution, and at the time of the vehicle's recall for a park-to-reverse defect.

21.     DAIMLERCHRYSLER and Doe Defendants designed, engineered, manufactured, tested, assembled, marketed, advertised, inspected, maintained, sold, distributed, and placed on the market and in the stream of commerce a defective product, the 1992 Dodge Dakota Pickup truck, unreasonably dangerous to the consumer, knowing that the product would reach and did reach the ultimate consumer without substantial change in the defective condition it was in from the date when it left each Defendants' control.

22.     Defendants knew or should have known that the ultimate users or consumers of this product would not, and could not, properly inspect the 1992 Dodge Dakota Pickup truck so as to discover the latent defects described above. The products were defective

423099.1                                                     - 4 -

1 │ when it left the control of each of these Defendants.

2 │ 　　　　23.　　Defendants knew or should have known of the substantial dangers involved

3 │ in the reasonably foreseeable use of the 1992 Dodge Dakota Pickup truck, whose defective

4 │ design, manufacturing and lack of warnings caused it to have unreasonably dangerous propensity

5 │ when left with the ignition on, to self shift into a powered reverse, from what a reasonable person

6 │ reasonably believes, and from what the vehicle's shift selector and "cues" indicate to be "park"

7 │ (hereinafter "park to reverse"), and thus has a high propensity to cause injury and/or death to the

8 │ driver and others.

9 │ 　　　　24.　　The 1992 Dodge Dakota Pickup truck, at the time of Decedent's injury was

10 │ being used in the manner intended by the Defendants and in a manner that was reasonably

11 │ foreseeable by Defendants as involving a substantial danger not readily apparent. Adequate

12 │ warnings of the danger were not given.

13 │ 　　　　25.　　Decedent was a foreseeable user of the 1992 Dodge Dakota Pickup truck.

14 │ 　　　　26.　　Plaintiffs' injuries and Decedent's death were the legal and proximate

15 │ result of Defendants' failure to provide adequate warnings of the risks of substantial harm

16 │ associated with the foreseeable use of the 1992 Dodge Dakota pickup truck. As a result,

17 │ Defendants are liable to Plaintiffs and Decedent for compensatory damages based on their

18 │ physical injuries, emotional distress, past and future lost wages and earning capacity, and past and

19 │ future medical expenses.

20 │ 　　　　　　　　　　　**SECOND CAUSE OF ACTION**
21 │ 　　　　　　**(Strict Products Liability: Design and Manufacturing Defect)**
　　│ 　　　　　　**(Against DAIMLERCHRYSLER and DOES 1-100)**

22 │ 　　　　27.　　Plaintiffs incorporate by reference all preceding paragraphs and allegations

23 │ as if fully set forth herein.

24 │ 　　　　28.　　Defendant DAIMLERCHRYSLER designed, engineered, manufactured,

25 │ tested, assembled, marketed, advertised, inspected, maintained, sold and/or distributed 1992

26 │ Dodge Dakota pickup trucks throughout the world, including the 1992 Dodge Dakota pickup

27 │ truck which caused injuries to Decedent on April 13, 2004, and eventually lead to his death on

28 │ May 1, 2004.

423099.1                                      - 5 -

29. Defendant DAIMLERCHRYSLER knew or should have known that the 1992 Dodge Dakota pickup truck was defective when it left its control.

30. Defendant DAIMLERCHRYSLER investigated and analyzed the park-to-reverse problem in the 1992 Dodge Dakota as a result of its own tracking of park-to-reverse incidents and an investigation by the National Highway Traffic Safety Administration, and then designed a purported "fix" and released that fix to be installed on 1992 Dodge Dakotas.

31. Defendant DAIMLERCHRYSLER is strictly liable to Plaintiffs because the 1992 Dodge Dakota pickup truck was defective and unreasonably dangerous for normal use due to its defective design and manufacturing, which were known or knowable at the time of the 1992 Dodge Dakota pickup truck's design, engineering, manufacturing, testing, assembly, marketing, advertising, sale and/or distribution and at the time of Defendants' design and release of a purported "fix."

32. Defendant DAIMLERCHRYSLER designed, engineered, manufactured, tested, assembled, marketed, advertised, sold, distributed, and placed on the market and in the stream of commerce a defective product, the 1992 Dodge Dakota pickup truck, which was unreasonably dangerous to the consumer, knowing that the product would reach and did reach the ultimate consumer without substantial change in its defective condition from the date when it left DAIMLERCHRYSLER's control.

33. The risks inherent in the design of the 1992 Dodge Dakota pickup truck with or without the fix significantly outweigh any benefits of such design. The 1992 Dodge Dakota pickup truck also failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. The 1992 Dodge Dakota pickup truck was a defective vehicle in that it had dangerous propensity to self shift, from what an reasonable individual reasonably believes to be park, into reverse. This defect was unreasonably dangerous to consumers, including Decedent.

34. The 1992 Dodge Dakota Pickup truck, at the time of Decedent's injury was being used in the manner intended by the Defendants and in a manner that was reasonably foreseeable by Defendants as involving a substantial danger not readily apparent. Adequate

423099.1

- 6 -

1     warnings of the danger were not given.

2        35.    Decedent was a foreseeable user of the 1992 Dodge Dakota Pickup truck.

3        36.    Plaintiffs' injuries and Decedent's death were the legal and proximate

4     result of the actions of DAIMLERCHRYSLER and the defective design and manufacture of the

5     1992 Dodge Dakota pickup truck. As a result, DAIMLERCHRYSLER is liable to Plaintiffs and

6     Decedent for compensatory damages based on their physical injuries, emotional distress, past and

7     future lost wages and earning capacity, and past and future medical expenses.

8                           **THIRD CAUSE OF ACTION**
                               (Negligence)

9                          **(Against All Defendants)**

10        37.    Plaintiffs incorporate by reference all preceding paragraphs and allegations

11     as if fully set forth herein.

12        38.    Defendants owed a duty to the Plaintiffs and Decedent to use reasonable

13     care in the design, engineering, manufacturing, testing, assembly, marketing, advertising,

14     inspecting, maintaining, selling, warning and distributing 1992 Dodge Dakota pickup trucks and

15     any "fix" for the park-to-reverse defect to be used by the public and ultimate users, like Decedent,

16     for the purpose for which they were intended.

17        39.    Defendants breached said duty and are guilty of one or more of the

18     following negligent acts and/or omissions:

19         a.     Failing to use due care in the design, engineering, manufacturing,

20     testing, assembly, marketing, advertising, inspection, maintenance, sale and/or distribution of

21     1992 Dodge Dakota pickup truck and/or to utilize and/or implement  reasonably safe designs in

22     the manufacture and retrofitting with a fix of the 1992 Dodge Dakota pickup truck;

23         b.     Failing to provide adequate and proper warnings to the public, the

24     Decedent and Plaintiffs of the 1992 Dodge Dakota pickup truck's tendency to be involved in park

25     to reverse incidents when used in the manner for which it was intended;

26         c.     Failing to manufacture and incorporate within the 1992 Dodge

27     Dakota pickup truck's design reasonable safeguards and protections against park to reverse

28     incidents and the consequences thereof when used in the manner for which it was intended;

423099.1                                 - 7 -

d.    Failing to adequately identify and mitigate hazards associated with park to reverse incidents in accordance with good engineering practices;

e.    Failing to notify the public of reported 1992 Dodge Dakota pickup truck park to reverse incidents and thus misrepresenting the safety of 1992 Dodge Dakota pickup truck;

f.    Failing to make timely and adequate corrections to the manufacture and design of the 1992 Dodge Dakota pickup truck's to prevent or minimize the problem of park to reverse incidents;

g.    Failing to use due care in the testing, inspection, maintenance and servicing of 1992 Dodge Dakota pickup trucks to avoid the aforementioned risks to individuals and the public;

h.    Otherwise being careless and negligent.

40.    Defendants knew or should have known from their testing of the production models of the 1992 Dodge Dakota pickup truck's, and/or its predecessors, and/or from other vehicles they manufactured, distributed, inspected and maintained that the vehicle was defective.

41.    Defendants knew or should have known that the 1992 Dodge Dakota pickup truck had a propensity to self shift from park to reverse. Defendants knew safer alternatives and adequate corrections were available which would have avoided Decedent's death and Plaintiffs' injuries had they been utilized.

42.    Defendants designed, engineered, manufactured, tested, assembled, marketed, advertised, inspected, maintained, sold, distributed, and placed on the market and in the stream of commerce a defective product, the 1992 Dodge Dakota pickup truck, in a condition unreasonably dangerous to the consumer, knowing that the product would reach and did reach the ultimate consumer without substantial change in the defective condition it was in from the date when it left each Defendants' control.

43.    Plaintiffs' injuries and Decedent's death were the legal and proximate result of the negligent actions of Defendants. As a result, Defendants are liable to Plaintiffs and

423099.1

- 8 -

1 | Decedent for compensatory damages based on their physical injuries, emotional distress, past and

2 | future lost wages and earning capacity, and past and future medical expenses.

3 | **FOURTH CAUSE OF ACTION**
**(Negligent Failure to Warn)**
4 | **(Against All Defendants)**

5 | 44.    Plaintiffs incorporate by reference all preceding paragraphs and allegations

6 | as if fully set forth herein.

7 | 45.    Decedent was a foreseeable user of the 1992 Dodge Dakota pickup truck

8 | and Defendants had a duty to adequately warn him that the 1992 Dodge Dakota pickup truck had

9 | a propensity to self shift from park to reverse, which made it unsafe and unreasonably dangerous.

10 | 46.    The hazards caused by the 1992 Dodge Dakota pickup truck's propensity

11 | to self shift from park to reverse and defective components were not obvious or reasonably

12 | apparent and were not known to Decedent.

13 | 47.    Defendants had knowledge of the latent defect of the 1992 Dodge Dakota

14 | pickup truck, and that these defects rendered the 1992 Dodge Dakota pickup truck unsafe and

15 | unreasonably dangerous.

16 | 48.    It was reasonably foreseeable to Defendants that Decedent and Plaintiffs

17 | would be injured as a result of the defects in the 1992 Dodge Dakota pickup truck.

18 | 49.    Defendants failed to provide adequate warnings to Decedent and Plaintiffs

19 | that the 1992 Dodge Dakota pickup truck had a propensity to self shift from park to reverse,

20 | rendering the 1992 Dodge Dakota pickup truck unsafe and unreasonably dangerous.  A

21 | reasonably prudent manufacturer, employer, owner, and operator would have known of and

22 | warned that the 1992 Dodge Dakota pickup truck was defective.

23 | 50.    Plaintiffs' injuries and Decedent's death were the legal and proximate

24 | result of the negligent actions of Defendants.  As a result, Defendants are liable to Plaintiffs and

25 | Decedent for compensatory damages based on their physical injuries, emotional distress, past and

26 | future lost wages and earning capacity, and past and future medical expenses.

27

28

423099.1                                          - 9 -

## FIFTH CAUSE OF ACTION
### (Exemplary Damages)
### (Against DAIMLERCHRYSLER)

51.    Plaintiffs incorporate by reference all preceding paragraphs and allegations as if fully set forth herein.

52.    DAIMLERCHRYSLER knew or should have known that the 1992 Dodge Dakota pickup truck would cause substantial number of injuries and deaths due to its defective design, and the inadequate correction of the known manufacturing and design defect to prevent or minimize the problem of park to reverse incidents;

53.    Defendants are guilty of oppression, fraud and/or malice as defined in Civil Code §3294. Defendants' actions and omissions in knowingly designing, manufacturing, and selling, and then failing to adequately fix a known and dangerous park-to-reverse defect were intentional, willful, wanton and showed a total conscious disregard for the rights and safety of Decedent and Plaintiffs.  Based upon the acts alleged herein, DAIMLERCHRYSLER knew or should have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in injury and damage.  However, DAIMLERCHRYSLER continued such conduct with malice and/or conscious disregard of the consequences, from which malice may be inferred.  Therefore, Plaintiffs and Decedent should be awarded punitive damages against DAIMLERCHRYSLER based upon the acts herein so as to punish DAIMLERCHRYSLER and deter similar conduct.

54.    The amount of exemplary damages sought is not shown, pursuant to Code of Civil Procedure § 425.10.

## SIXTH CAUSE OF ACTION
### (Wrongful Death and Survivorship)
### Against All Defendants

55.    Plaintiffs incorporate by reference all preceding paragraphs and allegations as if fully set forth herein.

56.    As a result of Defendants' actions and negligence, Plaintiffs have suffered pain and suffering, wage loss, loss of use of property, hospital and medical expenses, general damage, loss of earning capacity and emotional distress.

1    57.    The damages claimed for wrongful death and the relationships of Plaintiffs

2    to the deceased are as follows: Adriana Mraz, Plaintiff, wife of deceased, Richard Mraz:  loss of

3    consortium; loss of wages/financial support; loss of services; recovery for grief, mental anguish,

4    emotional pain, suffering and distress; loss of inheritance; and medical, funeral and burial

5    expenses.  Minor plaintiffs Addison Mraz, Joe and Roy Lopez, daughter and stepsons of

6    deceased, Richard Mraz: loss of services; loss of financial support; recovery for grief, mental

7    anguish, emotional pain, suffering and distress; and loss of inheritance.  Estate of Richard Mraz:

8    pain and suffering; loss of lifetime earnings; and punitive damages.

9                            **RELIEF REQUESTED**

10          WHEREFORE, Plaintiffs request of this Court the following relief:

11          Plaintiffs pray for general damages in an amount to be proven at trial;

12          For medical, incidental, hospital, and service expenses according to proof;

13          For loss of earnings and earning capacity, according to proof;

14          An award of pre-judgment and post judgment interest as provided by law;

15          For consequential damages in an amount to be determined at trial;

16          For exemplary and punitive damages;

17          An award providing for payment of costs of suit, including payment of experts'

18    fees and expenses; and

19

20

21

22

23

24

25

26

27

28

423090.1                            - 11 -

1    Such other and further relief as this Court may deem proper and just.

2    Dated: April 25, 2005                              Respectfully submitted,
                                                        LIEFF, CABRASER, HEIMANN &
3                                                       BERNSTEIN, LLP

4

5                                                       By: _____
                                                            Scott P. Nealey
6

7                                                       Fabrice Vincent (State Bar No. 160780)
                                                        Scott P. Nealey (State Bar No. 193062)
8                                                       Matthew S. Da Vega (State Bar No. 195443)
                                                        Embarcadero Center West
9                                                       275 Battery Street, 30th Floor
                                                        San Francisco, CA 94111-3339
10                                                      Telephone: (415) 956-1000
                                                        Facsimile: (415) 956-1008
11

12                                                      Charles Naylor (State Bar No. 62243)
                                                        Law Offices of Charles D. Naylor
13                                                      839 S Beacon St # 311
                                                        San Pedro, CA 90731
14                                                      Telephone: (310) 514-1200
                                                        Facsimile: (310) 514-1837
15

16                                                      Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

423099.1                              - 12 -

1

## JURY DEMAND

2          Plaintiffs demand a trial by jury on all issues which may be tried by a jury.

3    Dated: April 25, 2005                    LIEFF, CABRASER, HEIMANN &

4                                             BERNSTEIN, LLP

5

6                                             By: _____

7                                                 Scott P. Nealey

8                                             Fabrice Vincent (State Bar No. 160780)
                                              Scott P. Nealey (State Bar No. 193062)
9                                             Matthew S. Da Vega (State Bar No. 195443)
                                              Embarcadero Center West
10                                            275 Battery Street, 30th Floor
                                              San Francisco, CA  94111-3339
11                                            Telephone:  (415) 956-1000
                                              Facsimile:  (415) 956-1008
12

13                                            Charles Naylor (State Bar No. 62243)
                                              Law Offices of Charles D. Naylor
14                                            839 S Beacon St # 311
                                              San Pedro, CA 90731
15                                            Telephone: (310) 514-1200
                                              Facsimile: (310) 514-1837
16

17                                            Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

423099.1                          - 13 -

# Exhibit K

1  Clayeo C. Arnold (State Bar No. 65070)
   Kirk J. Wolden (State Bar No. 138902)
2  CLAYEO C. ARNOLD
   A Professional Corporation
3  608 University Avenue
   Sacramento, CA  95825
4  Telephone: (916) 924-3100
   Facsimile: (916) 924-1829
5
   Robert J. Nelson (State Bar No. 132797)
6  Scott P. Nealey (State Bar No. 193062)
   Nancy Chung (State Bar No. 225584)
7  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   Embarcadero Center West
8  275 Battery Street, 30th Floor
   San Francisco, CA  94111-3339
9  Telephone:  (415) 956-1000
   Facsimile:  (415) 956-1008
10
   Attorneys for Plaintiffs
11 ROBERT CRAGGS and BETTY CRAGGS

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                       COUNTY OF SACRAMENTO

14

15 ROBERT CRAGGS and BETTY CRAGGS,      | **Case No.  06AS03068**

16        Plaintiffs,                    | **SECOND AMENDED COMPLAINT FOR
                                         | PERSONAL INJURIES, EMOTIONAL**
17 v.                                    | **DISTRESS, LOSS OF CONSORTIUM,
                                         | AND EQUITABLE RELIEF INCLUDING**
18 DAIMLERCHRYSLER CORPORATION,          | **RESTITUTION**
19 and  DOES 1 through 100, inclusive,
                                         | **DEMAND FOR JURY TRIAL**
20        Defendants.

21

22

23

24

25

26

27

28

719553.2

SECOND AMENDED COMPLAINT

## I.    INTRODUCTION

1.    ROBERT CRAGGS and BETTY CRAGGS allege causes of action against Defendants DAIMLERCHRYSLER CORPORATION (hereinafter "DAIMLERCHRYSLER"); and DOES 1 through 100 for strict products liability, negligence, emotional distress, violations of Cal. Bus. & Pro. Code § 17200 et seq. and Cal. Civ. Code § 1750 et seq., and in the case of BETTY CRAGGS, loss of consortium.  In addition to compensatory damages, Plaintiffs further seek punitive and exemplary damages, injunctive relief, and restitution.

2.    Plaintiffs ROBERT and BETTY CRAGGS are the owners of one 2002 Dodge Caravan, Vin. #1B46P25342B705106 (hereinafter "VAN") equipped with a 41 TE transmission (also called a transaxle).  Plaintiffs purchased the VAN new from Magnussen Auburn Chrysler Jeep Dodge ("MAGNUSSEN").

3.    These causes of action arise from an incident which occurred on July 18, 2005 near Placerville, California when ROBERT CRAGGS placed the VAN in what he reasonably believed from the vehicle's "clues" to be park and alighted from the VAN with the engine running, so as to keep the vehicle's air conditioner on, and walked to the back of the VAN. As he prepared to open the rear hatch door to rearrange groceries, the VAN suddenly and without warning engaged powered reverse (i.e. it "self shifted"), knocking the elderly CRAGGS to the ground and running over him.  Plaintiff BETTY CRAGGS watched in horror as the VAN ran over and then stopped on top of the gravely injured ROBERT CRAGGS.  Plaintiffs allege the following based upon their own knowledge, publicly available information, and information and belief:

## II.    JURISDICTION AND VENUE

4.    This Court is proper because at least one defendant resides in the County of Sacramento.

5.    Plaintiffs are and at all relevant times have been, California residents. Prior Defendants MAGNUSSEN'S and BIG O are California entities.  Diversity jurisdiction in federal district court did not exist as "complete diversity" does not exist.

- 1 -

III.    **PLAINTIFFS**

6.      Plaintiff ROBERT CRAGGS is, and at all relevant times herein was, a resident of Grizzly Flats, California, and the lawful husband of BETTY CRAGGS.

7.      Plaintiff BETTY CRAGGS is, and at all relevant times herein was, a resident of Grizzly Flats, California, and the lawful wife of ROBERT CRAGGS.

IV.     **ALLEGATIONS REGARDING THE PARK-TO-REVERSE DEFECT AND DAIMLERCHRYSLER'S KNOWLEDGE AND CONDUCT**

8.      A "park-to-reverse" defect can exist in a vehicle equipped with an automatic transmission when there is inadequate mechanical force (called "detenting force") provided by the automatic transmission system to ensure that a vehicle always defaults into an intended gear position (such as park or reverse) when an operator does not fully shift into that intended gear position.

9.      In a vehicle with a park-to-reverse defect an operator of the vehicle in normal use can inadvertently place the shift selector *between* the intended park and reverse gear positions. The shift selector will remain for a period of time between the intended gear position and from this position the vehicle then may (or may not) have a delayed engagement of powered reverse.

10.     Because of the possible delay in the engagement of reverse gear when an operator places the vehicle into what, from the vehicle's "cues," the operator would reasonably believe to be park, the park-to-reverse defect is unreasonably dangerous because an operator may have exited the vehicle, or be exiting the vehicle, when the vehicle suddenly and unexpectedly moves backwards in powered reverse.

11.     As a result of injuries and deaths resulting from park-to-reverse accidents (sometimes referred to as "inadvertent rearward movement") from at least the 1950's and 1960's the Automobile Industry has been aware of the defect, and the need to design vehicles so as to prevent the vehicle's shift selector being placed in a position *between* the intended gear positions from which the vehicle can then have a delayed engagement of reverse.

12.     Defendant DAIMLERCHRYSLER in specific was well aware of the need

1    to design its automatic transmission system so that an operator could not leave the vehicle

2    between park and reverse from which there could be a delayed engagement of reverse. Notice to

3    Defendant DAIMLERCHRYSLER, well prior to the CRAGGS' injuries, of the need to avoid a

4    park-to-reverse defect included:

5                a.    numerous park-to-reverse incidents on various vehicles made by

6    Defendant DAIMLERCHRYSLER in the 1960's, 1970's, and 1980's with both front wheel drive

7    transaxles such as the 31 TE, and rear wheel drive transmissions such as the 727, and the 40-49

8    RE and RH transmissions;

9                b.    numerous reports of injuries and deaths and an investigation by the

10    National Highway Traffic Safety Administration ("NHTSA") of Defendant

11    DAIMLERCHRYSLER's K car vehicles in 1990-91 (EA 91-010), vehicles which had a

12    functionally identical and substantially similar design to the 41 TE transmission on the Craggs'

13    vehicle. By the closing of EA 91-010 in 1991, Defendant DAIMLERCHRYSLER had received

14    notice of 318 field reports of the defect and had been sued 23 times while receiving notice of

15    217 accidents involving property damage, 111 accidents involving injuries, and reports of

16    7 fatalities Daimler intentionally took no action so as to save money knowing that its failure to act

17    would lead to further injuries and deaths;

18                c.    numerous reports of park-to-reverse accidents and injuries in Dodge

19    Dakota pickups beginning in model year 1988. These reports continued through the opening of

20    an NHTSA investigation of the park-to-reverse problem in the Dakotas (EA 96-06) which was

21    only closed when in 2000 Defendant DAIMLERCHRYSLER executed a voluntary recall of

22    certain Dodge Dakotas in an effort to attempt to prevent further NHTSA action. By the time EA

23    96-06 was closed in 2000, Defendant DAIMLERCHRYSLER had received reports of

24    152 incidents, 95 crashes, 20 injuries, and 5 fatalities in 1991 and 1992 Dodge Dakotas, as well as

25    numerous accidents and injuries in other model year Dodge Dakotas. As to the Daimler initiated

26    "fix" it knew the "fix" would not remedy the park-to-reverse defect;

27                d.    in 2001, NHTSA opened another investigation, this time of the Jeep

28    Grand Cherokee for park-to-reverse problems (EA 01-017). By the time that

719553.2                                        - 3 -

1    DAIMLERCHRYSLER instituted another voluntary recall in order to prevent further NHTSA

2    action, DAIMLERCHRYSLER had received 1,038 complaints involving 428 crashes,

3    192 injuries, and 4 fatalities on certain model Jeep Grand Cherokees. In addition

4    DAIMLERCHRYSLER received reports of park-to-reverse accidents and injuries in additional

5    model years (1999-forward) of the Jeep Grand Cherokee before and after this recall;

6            e.      in 2004, again prior to the CRAGGS' injury, NHTSA opened a

7    further investigation of Defendant DAIMLERCHRYSLER's 2003-2005 Ram pickups (EA 04-

8    025). In response to this NHTSA investigation Defendant DAIMLERCHRYSLER voluntarily

9    recalled the vehicles and installed an "out-of-park alarm" which sounded the vehicle's theft

10    deterrent system (flashing the vehicle's lights and sounding the vehicle's car alarm) if the vehicle

11    operator placed the vehicle into "false park" and then attempted to open the driver's side door

12    with the vehicle running. This simple "fix" had earlier been installed in model year 2005 Ram

13    pickups;

14            f.      numerous reports of accidents and injuries as a result of the park-to-

15    reverse defect, all again prior to the CRAGGS' injuries, on vehicles in its fleet including Dodge

16    Neons, Dodge Durangos, Ram Vans; as well as model years of Grand Cherokees, Rams, and

17    Dakotas which were not recalled by DAIMLERCHRYSLER; and

18            g.      over one hundred reports of park-to-reverse incidents on Grand

19    Caravans equipped with the same 41 TE transaxles and shift system found on the CRAGGS'

20    vehicle.

21          13.     Despite many thousands of accidents, injuries, and deaths in park-to-

22    reverse accidents, Defendant DAIMLERCHRYSLER adopted a consistent policy of refusing to

23    admit the existence of a defect in the vehicle, test its vehicles including but not limited to the

24    Grand Caravan for any park-to-reverse problem prior to their sale, or to test its vehicles under the

25    "read across" process once park-to-reverse defects were identified in other of its vehicles.

26    Defendant instead chose to falsely blame any resulting accidents, injuries, and deaths on

27    "operator error."

28          14.     The standard of care in the automobile industry is to fully investigate

719553.2                 - 4 -

1    complaints or reports received by an automobile manufacturer which appear to pose a potential or

2    actual safety risk.

3              15.    The investigative process by which complaints or incident reports are

4    investigated is a technique called "root cause analysis" in which the vehicle manufacturer's

5    engineering staff or outside consultants will (a) determine if the issue is safety-related;

6    (b) carefully analyze the complaint to fully understand it; (c) attempt to reproduce the complaint

7    on the subject vehicle or an exemplar; (d) determine if the problem is a manifestation of a unique

8    vehicle feature (*e.g,* a vehicle manufacturing defect); (e) if the problem is not so identified

9    identify the engineering feature of the product which allows for the mechanical system to perform

10   in the manner complained of; and (f) determine if there is an engineering solution through

11   redesigning the product which will prevent it as a mechanical system from manifesting the

12   complaint in the system or if an adequate redress is not feasible, then warn adequately to prevent

13   injury.

14             16.    Despite the engineering standard being to conduct all necessary root cause

15   analysis, and the fact that DAIMLERCHRYSLER conducted numerous root cause analyses on

16   other potential and actual defects, DAIMLERCHRYSLER intentionally and purposefully avoided

17   conducting any adequate root cause analysis on the park-to-reverse defects on any of its vehicles,

18   including the Grand Caravan, so as to avoid identifying a defect which would require Defendant

19   DAIMLERCHRYSLER to undertake expensive measures to fix defective and dangerous vehicles

20   which had been, and were being, sold to its customers and the public such as BETTY AND

21   ROBERT CRAGGS.

22             17.    Defendant DAIMLERCHRYSLER's refusal over a period of over 20 years

23   to conduct appropriate and necessary "root cause analysis" was purposeful and intentional and

24   was done with the understanding that its failure to conduct root cause analysis and identify and

25   fix the park-to-reverse defect on its vehicles would result in injuries and deaths, including the

26   injuries suffered by Plaintiffs BETTY AND ROBERT CRAGGS.

27             18.    It is appropriate engineering practice in the automobile industry to conduct

28   a Design Failure Mode and Effects Analysis (DFMEA) any time a manufacturer or a supplier of

719553.2                                    - 5 -

1    the product creates a new design, makes a design change to an existing design, or has a different

2    application of an existing component or subsystem.

3              19.    In a DFMEA, engineers engage in a process by which they attempt to

4    identify potential issues that may be presented by the design, redesign, or pairing of components.

5    In a DFMEA all prior complaints, campaigns, warranty data or other documentation available on

6    a specific component or system company-wide is reviewed and analyzed to identify potential

7    failure modes of a product, develop a test protocol to test for each of the potential failure modes,

8    and through completing such tests to rule out (or identify) the ability of a design, redesign or

9    pairing of components to fail as have earlier designs.

10             20.    Had a DFMEA been conducted on the transmission systems on Defendant

11    DAIMLERCHRYSLER's other vehicles, or the VAN purchased by Plaintiffs, it would have

12    easily identified the park-to-reverse defect in the VAN.

13             21.    Yet despite the fact that DFMEA is a standard procedure conducted by

14    Defendant DAIMLERCHRYSLER, DAIMLERCHRYSLER at no time conducted any DFMEA

15    on the transmission system of the VAN, or of other of its vehicles.

16             22.    The decision not to conduct a DFMEA on the transmission system of the

17    VAN, or other of Defendant DAIMLERCHRYSLER's vehicles, was purposeful and intentional

18    so as not to identify the park-to-reverse defect which would require its being remedied and expose

19    DAIMLERCHRYSLER to having to fix at considerable expense prior defective vehicles.

20             23.    Once a defect in or on a system of parts (such as the shift system at issue in

21    this case) designed and/or manufactured by an automotive manufacturer is identified, under

22    TS16949 Standard 8.5.2.3, it is the professional standard in the industry to inspect and analyze

23    other similar systems so as to ensure that the non conformity does not also exist in related or

24    similar systems.  At DAIMLERCHRYSLER this is called the "read-across" process.

25             24.    Despite knowing of the danger posed by the park-to-reverse defect, and

26    having identified the defect in numerous of its vehicles, DAIMLERCHRYSLER purposefully and

27    intentionally, at the direction of the safety office and general counsel, elected not to and/or

28    ordered that no "read-across" process should be conducted on park-to-reverse issues as such a

719553.2                                         - 6 -

1  process would have identified the defect in numerous vehicles, which would have then required

2  the problem to be remedied at considerable expense.

3        25.    As discussed below Defendant DAIMLERCHRYSLER's acts in failing to

4  design so as to prevent the park-to-reverse defect, test its vehicles to determine if the park-to-

5  reverse defect existed, to apply what it learned on other vehicles to the VAN, or to remedy the

6  park-to-reverse defect in the VAN once it was produced was intentional and purposeful and

7  demonstrated a conscious disregard for public safety in that Defendant DAIMLERCHRYSLER

8  knew that accidents and serious injuries, such as those suffered by ROBERT AND BETTY

9  CRAGGS would result from Defendant DAIMLERCHRYSLER's actions and omissions.

10        26.    These actions constituted malice, oppression, and/or fraud and were

11  undertaken with the approval of, and were ratified by officers, directors, and managing agents of

12  the company on behalf of Defendant DAIMLERCHRYSLER.

13  **FIRST CAUSE OF ACTION**
**(Strict Products Liability)**

14

15        27.    Plaintiff ROBERT CRAGGS incorporates by reference all preceding

16  paragraphs and allegations as if fully set forth herein.

17        28.    On or about July 25, 2005, Plaintiff ROBERT CRAGGS suffered severe

18  physical and emotional injuries when the VAN, after being placed in what he reasonably believed

19  from the vehicle's "cues" to be park by him, suddenly and without warning engaged powered

20  reverse, striking and then running over him.

21        29.    Defendant DAIMLERCHRYSLER designed, engineered, manufactured,

22  tested, assembled, marketed, advertised, sold and/or distributed the VAN.

23        30.    Defendant DAIMLERCHRYSLER is strictly liable to Plaintiff ROBERT

24  CRAGGS because the VAN was defective and unreasonably dangerous for normal use due to its

25  defective design, manufacture, production, assembly, marketing, advertising, testing, sale,

26  maintenance and service, and due to said Defendants' failure to provide adequate warnings of the

27  substantial dangers known or knowable at the time of the VAN's design, engineering,

28  manufacturing, testing, assembly, marketing, advertising, inspection, maintenance, sale and/or

719553.2                                    - 7 -

1    distribution, up to the time of the incident.

2           31.    DAIMLERCHRYSLER and the Doe Defendants designed, engineered,

3    manufactured, tested, assembled, marketed, advertised, inspected, maintained, sold, distributed,

4    and placed on the market and in the stream of commerce a defective product, the VAN,

5    unreasonably dangerous to the consumer, knowing that the product would reach and did reach the

6    ultimate consumer without substantial change in the defective condition it was in from the date

7    when it left each Defendant's control.

8           32.    DAIMLERCHRYSLER and the Doe Defendants  knew or should have

9    known that the ultimate users or consumers of this product would not, and could not, inspect the

10    VAN so as to discover the latent defects described above.  The VAN was defective when it left

11    the control of each of these Defendants.

12           33.    DAIMLERCHRYSLER and the Doe Defendants knew or should have

13    known of the substantial dangers involved in the reasonably foreseeable use of the VAN, whose

14    defective design, manufacturing and lack of warnings caused it to have an unreasonably

15    dangerous propensity in normal use to have a delayed engagement of a powered reverse, from

16    what a reasonable person reasonably believes, and from what the vehicle's "cues" indicate, is

17    "park" (hereinafter "park-to-reverse defect"), and thus has a high propensity to cause injury

18    and/or death to the driver and others.

19           34.    The VAN was, at the time of Plaintiff ROBERT CRAGGS' injury, being

20    used in the manner intended by DAIMLERCHRYSLER and the Doe Defendants, and in a

21    manner that was reasonably foreseeable by Defendants as involving a substantial danger not

22    readily apparent if adequate warnings of the danger were not given.

23           35.    Plaintiff ROBERT CRAGGS was a foreseeable user of the VAN.

24           36.     Defendant DAIMLERCHRYSLER, despite clear knowledge of the

25    extreme and hidden danger posed by the park-to-reverse defect in the VAN (and other defective

26    DAIMLERCHRYSLER vehicles with the same defect) from its tracking of reports of accidents

27    and injuries due to the defect, failed to provide adequate warnings of the defect to operators so

28    that operators such as plaintiff ROBERT CRAGGS could protect themselves from the danger

719553.2                                    - 8 -

1  posed by the vehicle. DAIMLERCHRYSLER's decision to not warn of the danger posed by the

2  defect was made by managing agents of the company acting within their authority and on behalf

3  of DAIMLERCHRYSLER.

4      37.   As further alleged above, and in Paragraphs 8 through 26, Plaintiff

5  ROBERT CRAGGS is entitled to an award of punitive damages as a result of Defendant

6  DAIMLERCHRYSLER's conduct which constituted malice, oppression and/or fraud.

7      38.   Plaintiff ROBERT CRAGGS' damages and injuries were the legal and

8  proximate result of Defendants' failure to provide adequate warnings of the risks of substantial

9  harm associated with the foreseeable use of the VAN, and said Plaintiff has suffered

10  compensatory and general damages in excess of the jurisdictional minimum of this Court as a

11  result. As a result, Defendants are liable to Plaintiff ROBERT CRAGGS for compensatory

12  damages and Defendant DAIMLERCHRYSLER is liable for punitive and exemplary damages.

13                    **SECOND CAUSE OF ACTION**
                              **(Negligence)**
14

15      39.   Plaintiff ROBERT CRAGGS incorporates by reference all preceding

16  paragraphs and allegations as if fully set forth herein.

17      40.   Defendants, and each of them, owed a duty to the plaintiff ROBERT

18  CRAGGS to use reasonable care in the design, engineering, manufacturing, testing, assembly,

19  marketing, advertisement, inspection, maintenance, sale, warning and distribution of the VAN, as

20  well as any "fix" for the park-to-reverse defect to be used by the public and ultimate users, like

21  Plaintiffs, for the purpose for which they were intended.

22      41.   Defendants breached said duty and are guilty of one or more of the

23  following negligent acts and/or omissions:

24          a.   Failing to use due care in the design, engineering, manufacturing,

25  testing, assembly, marketing, advertising, inspection, maintenance, sale and/or distribution of the

26  VAN and/or to utilize and/or implement  reasonably safe designs in the manufacture of the VAN;

27          b.   Failing to provide adequate and proper warnings to the public and

28  to Plaintiffs of the VAN's propensity to be involved in park-to-reverse incidents when used in the

719553.2                              - 9 -

1    manner for which it was intended;

2          c.    Failing to design, manufacture and incorporate or to retrofit the

3    VAN with reasonable safeguards and protections against park-to-reverse incidents and the

4    consequences thereof when used in the manner for which it was intended;

5          d.    Failing to adequately prevent, identify, mitigate, and fix defective

6    designs and hazards associated with park-to-reverse incidents in accordance with good

7    engineering practices;

8          e.    Failing to notify and warn the public including Plaintiffs of reported

9    park-to-reverse incidents and thus misrepresenting the safety of VAN and the model van

10   generally;

11         f.    Failing to make timely and adequate corrections to the manufacture

12   and design of the VAN so as to prevent and/or minimize the problem of park-to-reverse incidents;

13         g.    Failing to use due care in the testing, inspection, maintenance and

14   servicing of the VAN at all times prior to the incident; and

15         h.    Otherwise being careless and negligent.

16        42.    Defendants knew or should have known from their testing of the

17   production models of the VAN, and/or its predecessors, and/or from other vehicles they

18   manufactured, distributed, inspected and maintained that the vehicle was defective.

19        43.    Defendants knew or should have known that the VAN had a propensity to

20   have a delayed engagement of reverse when an operator left the shift selector in a position

21   between park and reverse which was not park, but an operator would reasonably believe to be

22   "park" from the vehicle's "cues." Defendants knew safer alternatives and adequate corrections

23   were available which would have avoided the incident, and plaintiffs' damages and injury.

24        44.    Defendants designed, engineered, manufactured, tested, assembled,

25   marketed, advertised, inspected, maintained, sold, distributed, placed on the market and in the

26   stream of commerce, and/or maintained and serviced the VAN in a manner and in a condition

27   unreasonably dangerous to the consumer.

28        45.    Defendant DAIMLERCHRYSLER, despite knowledge of the extreme and

719553.2                                - 10 -

1   hidden damaged posed by the park-to-reverse defect created by the design of the VAN (and other

2   defective DAIMLERCHRYSLER vehicles with the same defect) from its engineering studies and

3   the tracking of reports of accidents and injuries, from this and other vehicle designs knowingly

4   and deliberately manufactured and sold the VAN with this defect and then failed to adequately fix

5   or otherwise warn of the defect. DAIMLERCHRYSLER's decision to fail to adequately correct

6   the danger posed by the defect, as well as all decisions regarding the design, manufacturing, and

7   sale were made by managing agents of the company acting within their authority and on behalf of

8   DAIMLERCHRYSLER.

9           46.    As further alleged above, and in Paragraphs 8 through 26, Plaintiff

10  ROBERT CRAGGS is entitled to an award of punitive damages as a result of Defendant

11  DAIMLERCHRYSLER's conduct which constituted malice, oppression, and/or fraud.

12          47.    Plaintiff's damages and injuries were the legal and proximate result of the

13  negligent actions of Defendants.  As a result, defendants are liable to Plaintiffs for compensatory

14  and general damages, and Defendant DAIMLERCHRYSLER is liable for punitive damages.

15                          **THIRD CAUSE OF ACTION**
                                **(Dillon v. Legg)**
16

17          48.    Plaintiff BETTY CRAGGS incorporates by reference all preceding

18  paragraphs and allegations as though fully set forth herein.

19          49.    Plaintiff BETTY CRAGGS is and at all relevant times was the wife of

20  ROBERT CRAGGS.

21          50.    Plaintiff BETTY CRAGGS was physically present in the vehicle's

22  passenger seat, within the zone of danger, and witnessed the incident and her husband ROBERT

23  CRAGGS' injuries while in progress.

24          51.    Plaintiff BETTY CRAGGS experienced a direct emotional impact upon

25  her as a result from the sensory and contemporaneous observance of the incident and her husband

26  ROBERT CRAGGS' injuries.

27          52.    Plaintiff BETTY CRAGGS is a direct and foreseeable victim of

28  defendants' conduct in placing a defective product in the stream of commerce (as alleged in the

719553.2                                  - 11 -

1    First Cause of Action, supra) and their negligence (as alleged in the Second Cause of Action,

2    supra), and has suffered severe and debilitating emotional distress and physical upset as a result

3    as a result of Defendants' wrongdoing.

4         53.    As a result of witnessing the incident and her husband Robert's injuries,

5    plaintiff BETTY CRAGGS has been hurt and injured in her health, strength, and activity,

6    sustaining injury to body and shock and injury to nervous system and person, all of which have

7    caused and continue to cause great mental and physical pain, suffering and nervousness. Plaintiff

8    BETTY CRAGGS is informed and believes and thereon alleges, that the injuries will result in

9    some permanent disability to her. Her damages are in an amount in excess of the jurisdictional

10   limits of this court, which will be shown according to proof at the time of trial.

11        54.    As a further proximate result of the said acts of the Defendants, and each of

12   them, plaintiff BETTY CRAGGS has and will continue to be required to employ physicians and

13   surgeons, therapists and counselors to examine, treat and care for her, incurring past and future

14   losses in an amount to be proven at the trial of this action.

15        55.    Prejudgment interest on the damages set forth herein should be awarded in

16   the event that judgment for plaintiff BETTY CRAGGS be rendered; said sum should be

17   calculated from the time that this action arose or as provided in California Civil Code.

18        56.    As further alleged above, and in paragraphs 8 through 26, Plaintiff BETTY

19   CRAGGS is further entitled to an award of punitive damages as a result of Defendant

20   DAIMLERCHRYSLER's conduct which constituted malice, oppression, and/or fraud.

21   **FOURTH CAUSE OF ACTION**
     **(Loss of Consortium)**

22

23        57.    Plaintiff BETTY CRAGGS incorporates by reference all preceding

24   paragraphs and allegations as set forth herein.

25        58.    Plaintiffs were at all times herein mentioned lawfully married.

26        59.    As a further legal result of the wrongful conduct and negligence of

27   Defendants, and each of them, Plaintiff BETTY CRAGGS lost and was deprived of the service,

28   love, companionship, comfort, affection, society, relations and solace of ROBERT CRAGGS as a

719553.2                                    - 12 -

1   husband. Plaintiff BETTY CRAGGS is informed and believes and therefore alleges, that because

2   of the permanent injuries sustained by Plaintiff ROBERT CRAGGS as herein alleged, Plaintiff

3   BETTY CRAGGS will in the future continue to lose all or a portion of the aforesaid items, all to

4   her damage in an amount in excess of the jurisdictional limits of this Court, which will be shown

5   according to proof at time of trial.

6               **FIFTH CAUSE OF ACTION**
                 **(Unfair Business Practices)**
7

8               60.    Plaintiffs hereby incorporates by reference all preceding paragraphs and

9   allegations as though fully set forth herein.

10              61.    California  Business & Professions Code section 17200  precludes unfair

11  competition, i.e. the employment of any unlawful, unfair or fraudulent business acts or practices;

12  and any unfair, deceptive, untrue or misleading  advertising violative of Ca. Bus. & Prof. Code

13  section 17500.  Said prohibition extends to any act, omission or conduct engaged in or affecting

14  the rights of consumers within the State of California.

15              62.    In designing, testing, developing, manufacturing, assembling, distributing,

16  supplying, marketing, advertising and/or selling the VAN, and failing to warn or rectify a known

17  dangerously defective automatic transmission system condition, defendant

18  DAIMLERCHRYSLER sold and made available to  consumers a dangerously defective and

19  unsafe vehicle – the Dodge Caravan.  Defendants misrepresented the Dodge Caravan as safe, and

20  failed to disclose or warn of the  transmission's propensity to have a delayed engagement of

21  active reverse and omitted the true facts regarding this dangerous safety problem even after

22  becoming aware that Dodge Caravans and other DAIMLERCHRYSLER vehicles like the VAN

23  were having delayed engagement of reverse when placed into what an operator would reasonably

24  believe from the vehicle's "cues" to be park.  In so conducting themselves, defendants engaged in

25  false and misleading advertising within the meaning of Ca. Bus. & Prof. Code section 17500.

26              63.    Were it not for the unfair competition of defendants, Plaintiffs would not

27  have been able to purchase and own the VAN, and would not have continued to operate it prior to

28  the time of the incident.

719553.2                                - 13 -

1        64.    Plaintiffs suffered injury in fact and lost money as a result of Defendants'

2    unfair competition in that each was caused to expend funds to purchase the dangerous VAN.

3        65.    As a result of Defendants' unfair competition, Plaintiffs are entitled to

4    appropriate equitable relief including injunctive relief, and available monetary relief in the form

5    of restitution.  Plaintiffs are also entitled to recover penalties as well as an award of attorneys'

6    fees for prosecuting this action.

7    **SIXTH CAUSE OF ACTION**<br>**(Violation of the Consumer Legal Remedies Act)**

8

9        66.    Plaintiff incorporates by reference all preceding paragraphs and allegations

10    as if fully set forth herein.

11        67.    California Civil Code Section 1750, et seq., precludes Defendants from

12    representing that goods have characteristics and benefits which they do not have in transactions

13    which were intended to result in the sale of the VAN to California consumers.

14        68.    In engaging in the conduct described herein including that specified above,

15    Defendant DAIMLERCHRYSLER violated the Consumer Legal Remedies Act including Civil

16    Code section 1770(a)(5).  Specifically, Defendant DAIMLERCHRYSLER designed,

17    manufactured, distributed, marketed, advertised for sale, provided written instruction materials

18    and warnings, and sold the VAN with the specific intention and purpose that the VAN be used by

19    California consumers.  In so conducting itself, defendant misrepresented that the VAN was safe,

20    of merchantable quality, and fit for its intended and reasonably foreseeable uses.  Said defendant

21    failed to disclose the true facts by way of written warning and/or instruction, inter alia, that the

22    VAN was designed in such a manner that the transmission had a dangerous propensity to have a

23    delayed engagement of powered reverse when an operator reasonably believed from the vehicle's

24    cues the vehicle was in park.

25        69.    As a result of the violations of the Consumer Legal Remedies Act engaged

26    in by defendant DAIMLERCHRYSLER, and each of them, plaintiffs, as well as their families,

27    friends, guests and innocent bystanders were placed in peril of their safety.  Plaintiffs paid in

28    excess of $20,000.00 for a dangerous and defective VAN, and thereafter suffered severe physical

719553.2

- 14 -

1    and emotional injuries as a result of its use.

2              70.    Plaintiffs have given notice in accordance with Ca. Civil Code Section

3    1780, and defendants have failed and refused to recall, retrofit the VAN, or otherwise remedy the

4    situation existing as a result of their purchase and ownership of the VAN.

5              71.    As a result of the violations of the Consumer Legal Remedies Act engaged

6    in by defendant DAIMLERCHRYSLER, Plaintiffs are entitled to monetary damages, penalties,

7    punitive and exemplary damages, and an award of attorneys' fees.

8                                    **RELIEF REQUESTED**

9              WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as

10   hereinafter follows:

11   **On ROBERT CRAGGS' FIRST CAUSE OF ACTION:**

12             1.    For medical and incidental expenses according to proof;

13             2.    For other special damages according to proof;

14             3.    For general and emotional distress damages;

15             4.    For prejudgment interest on the award for damages rendered in favor of

16   plaintiffs, calculated from the time the cause of action arose, or as provided in the California Civil

17   Code; and

18             5.    For punitive and exemplary damages.

19   **On ROBERT CRAGGS' SECOND CAUSE OF ACTION:**

20             1.    For medical and incidental expenses according to proof;

21             2.    For other special damages according to proof;

22             3.    For general and emotional distress damages;

23             4.    For prejudgment interest on the award for damages rendered in favor of

24   plaintiffs, calculated from the time the cause of action arose, or as provided in the California Civil

25   Code; and

26             5.    For punitive and exemplary damages.

27   **On BETTY CRAGGS' THIRD CAUSE OF ACTION:**

28             1.    For medical and incidental expenses according to proof;

719553.2                            - 15 -

2.     For other special damages according to proof;

3.     For general and emotional distress damages;

4.     For prejudgment interest on the award for damages rendered in favor of plaintiffs, calculated from the time the cause of action arose, or as provided in the California Civil Code; and

5.     For punitive and exemplary damages.

**ON BETTY CRAGGS' FOURTH CAUSE OF ACTION:**

1.     For loss of consortium

2.     For prejudgment interest on the award for damages rendered in favor of plaintiffs, calculated from the time the cause of action arose, or as provided in the California Civil Code.

**ON PLAINTIFFS' FIFTH CAUSE OF ACTION:**

1.     For equitable and/or injunctive relief as appropriate;

2.     For restitution; and

3.     For attorneys' fees.

**ON PLAINTIFFS' SIXTH CAUSE OF ACTION:**

1.     For damages including punitive and exemplary damages;

2.     For penalties; and

3.     For attorneys' fees.

**ON ALL CAUSES OF ACTION:**

1.     For costs of suit; and

2.     For such other and further relief as the court deems proper.

719553.2

1    Dated: August 13, 2007

CLAYEO C. ARNOLD
A Professional Law Corporation

By:_____
     KIRK J. WOLDEN
     Attorney for Plaintiffs

17

**Re:  Craggs v. DaimlerChrysler Corporation, et al.**
**Sacramento County Superior Court**
**Case No.: 06AS03068**

## **PROOF OF SERVICE**

I, Connie McComb, declare and state:

I am a citizen of the United States, over 18 years of age, employed in the County of Sacramento, and not a party to the within action.  My business address is 608 University Avenue, Sacramento, CA 95825.

On August 13, 2007, I served the within **SECOND AMENDED COMPLAINT FOR PERSONAL INJURIES, EMOTIONAL DISTRESS, LOSS OF CONSORTIUM, AND EQUITABLE RELIEF INCLUDING RESTITUTION** on the following parties in said action by placing a true copy thereof enclosed in a sealed envelope by:

[X]    (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Sacramento, California.  I am familiar with my firm's practice whereby the mail is given the appropriate postage and is placed in the designated area to be deposited in a U.S. mail box in Sacramento, California, in the ordinary course of business;

[]    (BY EXPRESS MAIL) I caused such envelope to be placed in the U.S. Mail/UPS depository at Sacramento, California: overnight service;

[]    (BY PERSONAL SERVICE) delivered by hand by Kirk J.  Wolden to addressee at the address listed below;

[]    (BY FACSIMILE/TELECOPIER) I personally sent to the addressee's telecopier number (stated above) a true copy of the above-described documents.

| | |
|---|---|
| Erik R.  Seidlitz, Esq.<br>Micki S.  Singer, Esq.<br>SEDGWICK DETERT, MORAN & ARNOLD LLP<br>One Market Street, Steuart Tower 8th Floor<br>San Francisco, CA 94105 | Attorneys for Defendant,<br>DAIMLERCHRYSLER CORPORATION<br>Tel: (415) 781-7900<br>Fax: (415) 781-2635 |
| Dominic Lanza, Esq.<br>GIBSON, DUNN & CRUTCHER, LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197 | Associate Attorneys for Defendant,<br>DAIMLERCHRYSLER CORPORATION<br>Tel: (213) 229-7000<br>Fax: (213) 229-7520 |
| Alison Rodney, Esq.<br>MILLER, CANFIELD, PADDOCK & STONE, PLC<br>840 West Long Lake Road, Suite 200<br>Troy, MI 48098 | Discovery Counsel for Defendant,<br>DAIMLERCHRYSLER CORPORATION<br>Tel: (248) 879-2000<br>Fax: (248) 879-2001 |
| Scott P. Nealey, SBN 193062<br>LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 30th Floor<br>San Francisco, CA 94111-3339 | Associate Attorneys for Plaintiffs<br>Tel: (415) 956-1000<br>Fax: (415) 956-1008 |

18

1    I declare under penalty of perjury under the laws of the State of California that the
2    foregoing is true and correct.  Executed on August 13, 2007, at Sacramento, California.

3                                           _Connie McComb_
                                            CONNIE McCOMB
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        19

# Exhibit L

JUL-18-06   03:34PM   FROM-                                                 T-410   P.008/013   F-494

## LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

ATTORNEYS AT LAW
EMBARCADERO CENTER WEST
275 BATTERY STREET, 30TH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3339
TELEPHONE: (415) 956-1000
FACSIMILE: (415) 956-1008
mail@lchb.com
www.lchb.com

NEW YORK
WASHINGTON, D.C.
BEVERLY HILLS
NASHVILLE

June 30, 2006

<u>VIA FACSIMILE AND CERTIFIED MAIL</u>

Budget Rent A Car
19601 Maplewood Avenue
Cleveland, OH 44135
Phone: (216) 433-4434
Fax: (216) 362-2962/(216) 433-0467

*06B035088*
*SDeross*

Re:   <u>Vehicle Preservation: Budget Rent-A-Car: 2006 Ford Mercury Grand
Marquis, Ohio State License Plate #DRJ3613</u>

Dear Sir or Madam:

We are attorneys investigating claims on behalf of driver Susan Farmer and passenger
Virginia Farley of a vehicle currently in possession/owned/rented by Budget Rent-A-Car. The
vehicle is a 2006 Ford Mercury Grand Marquis, Ohio State License Plate #DRJ3613, and VIN#
2MEFM75V46X651709. This vehicle and all of it components are evidence in anticipated
litigation and <u>must be preserved for claim and litigation purposes and not disassembled,
destroyed, or disturbed in any manner</u>. Do not change, modify, or disturb the transmission,
linkages, or transmission. It is imperative that the vehicle <u>not</u> be driven, auctioned for salvage,
or altered in any manner.

We would like to visually inspect the vehicle, and likely purchase and/or have the vehicle
placed in a secure evidence facility. Please contact me at your earliest convenience to discuss.

Sincerely,

Matthew S. Da Vega

RECEIVED

JUL 0 7 2006

LIABILITY

888-F   810/800.P   344-T                                                 -FROM   800Z:80   800Z-20-JUL

# Exhibit M

CMXXXXXXXXXXXXX5873      07/07      19. / )LEWOOD AVENUE      CLEVELAND,OH,4413. ( ( )              1671

>>RETURN<< RA DOCUMENT 745647486      RENTED: 08JUN06/2024  AT: APO CLEVELAND,OH      PHONE: 216-433-4434      341V21
CAR# 8 5 6 0 3 0 0    GRP C            RETURN: 12JUN06/1501  AT: APO CLEVELAND,OH      RATE: E6/C    TIME:    3 DY  18 HR
                                      DUE IN: 12JUN06/1730  AT: APO CLEVELAND,OH      MIN   1 DAY
MI OUT: 9655        MI IN:  9830                                                      RATE NOT VALID AFTER MON 23:59
TOTAL MILES DRIVEN:  175                                                              FRIDAY NIGHT OVERSTAY REQUIRED
PLATE# OH DRJ3613    FUEL OUT: 8/8          ********OPTIONAL SERVICES******             0 MI @       .00
GRN MERC GRMA 4DR    FUEL IN:  8/8                                                      0 HR @      6.59
                                          LDW:      22.99/DAY DECLINED                  4 DY @     19.76         79.04
METHOD OF PAYMENT: MASTER       5873      PAE:       4.95/DAY DECLINED                   0 WK @     98.80
PHONE:925.254.8508 330656.9720            ESP:       4.00/DAY DECLINED                   0 MO @
DRIVERS LIC# USCAXXXX6164                 SLI:      12.44/DAY DECLINED                  E6/C    175FM
BCD# U004000                                                                           TIME & MILEAGE        =        79.04
RA DOCUMENT 745647486                                                                  FUEL SERVICE:   .3332/MI
                                                                                                      5.999/GAL
                                                                                      **11.11% FEE          +          8.78
                                                                                      #VLF FEE              +           .52
                                                                                      SUBTOTAL                        88.34
                                                                                      *TX 7.50% +10.20      +         16.83
                                                                                      TOTAL CHARGES                  105.17
                                                                                      AMOUNT DUE   CV   USD          105.17
                                                                                      #VEHICLE LICENSE FEE      $ .13/DY
                              FARMER,SUSAN                                             * $6 CLEVELAND VEHICLE LESSOR TAX +
                              679 TAHOS RD                                             $4.20 TRANSPORTATION FEE
                              ORINDA,CA,94563,US                                       **CONCESSION RECOVERY FEE

---------NOTICES----------NOTICES----------NOTICES----------NOTICES----------NOTICES ----------NOTICES----------NOTICES
~~~THE AMOUNT THAT APPEARS IN "AMOUNT DUE" HAS BEEN          ~~~00-74 MILES, $ 9.50 REFUELING SERVICE CHGE WILL
BILLED TO YOUR MASTER CARD.                                 APPLY.
~~~ALL CHARGES ARE SUBJECT TO AUDIT AND CHANGE IF ANY       ~~~FUEL SERVICES ADD'L IF CAR IS RETURNED WITH LESS
ERRORS ARE FOUND.                                           FUEL THAN WHEN RENTED.
~~~THANK YOU FOR RENTING FROM BUDGET.                       ~~~I HAVE READ AND AGREE TO THE TERMS AND CONDITIONS
~~~MINIMUM CHARGE IS 1 DAY (24 HRS) PLUS MILEAGE.           SHOWN ON THIS RENTAL DOCUMENT AND ON THE SEPARATE
43E1/0403/06174/14:33/F                                     RENTAL DOCUMENT JACKET DELIVERED TO ME WITH THIS
                                                            RENTAL DOCUMENT.

                                                            X_____
                                                                                       RENTAL #745647486
                                                                                       RES # 32671324-US-0G
                                                            PREPARED BY: 03269          CLOSED BY: 52442

# Exhibit N

**INVESTIGATION LOGIC, INC.**
565 COMMERCIAL STREET, 4TH FLOOR
SAN FRANCISCO, CA 94111
(V) 415-627-9117 (F) 415-627-9076

www.investigationlogic.com
admin@investigationlogic.com

CA PI 21289 SF RPS 653

# FARMER, et al. V. FORD MOTOR COMPANY, et al.

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### Case No. C 07 03539 SI
### 27-2440-2B

## CUSTODIAN OF RECORDS

### AKRON CITY HOSPITAL
### (BILLING RECS) (SUSAN F. FARMER)

### RECORDS PRODUCED PURSUANT TO SUBPOENA
Date Issued: October 19, 2007

### Vol. 1 of 1
### PAGES (14)

## AFFIDAVIT OF DEPOSITION OFFICER-B&P SEC. 22462, et seq.

I, Patricia Alvarez, affirm under penalty of perjury under the laws of the State of California that all
of the records delivered to me by the Custodian of Records will be delivered to the authorized
persons or entities.

Executed at San Francisco, California
Date: 11/15/07

Signature: _____

```
   SUMMA HEALTH SYSTEM                                              PG#    1
   P.O. BOX 71-4097           TELEPHONE 330-996-8505       DATE: 11/02/07
   COLUMBUS , OH. 43271-4097  FEI#34-0714755               ACCT TYPE: E
   ----------------------------------------------------------------------
   PATIENT NAME: FARMER ,SUSAN               PATIENT NUMBER:   29471455  FC: R
   ADMIT DATE: 06/14/06  DISCHARGE DATE: 06/25/06   BIRTH: 09/26/1941   PT: R
```

| | PATIENT BAL: | .00 |
|---|---|---|
| | INS 1  A14 : | .00 |
| FARMER              SUSAN | INS 2        : | |
| 679 TAHOS ROAD | INS 3        : | |
| ORINDA              CA  945632919 | INS 4        : | |

| SVC DATE | QTY | SERVICE DESCRIPTION | SERVICE CODE | SERVICE AMOUNT |
|---|---|---|---|---|
| 061406 | 1 | BACITRACIN 500U | 7011901 | 12.15 |
| 061406 | 1 | FAMOTIDINE TAB | 7018047 | 1.25 |
| 061406 | 2 | HYDROCOD/APAP T | 7019771 | 2.50 |
| 061406 | 1 | ATROVENT SOL | 7039357 | 10.00 |
| 061406 | 1 | OXYCODONE SR TA | 7040751 | 16.15 |
| 061406 | 1 | ALBUTEROL 0.083 | 7010580 | 3.25 |
| 061406 | 1 | MORPH SULF INJ | 7024060 | 6.60 |
| 061406 | 1 | INHALATION TX; | 12002325 | 190.00 |
| 061406 | 1 | ROOM  1372-A | 2000222 | 1152.00 |
| 061506 | 2 | DOCUSATE SOD CA | 7016850 | 2.50 |
| 061506 | 2 | FAMOTIDINE TAB | 7018047 | 2.50 |
| 061506 | 2 | ATROVENT SOL | 7039357 | 20.00 |
| 061506 | 1 | ATROVENT SOL | 7039357 | 10.00 |
| 061506 | 1 | ATROVENT SOL | 7039357 | 10.00 |
| 061506 | 1 | OXYCODONE SR TA | 7040751 | 16.15 |
| 061506 | 1 | OXYCODONE SR TA | 7040751 | 16.15 |
| 061506 | 2 | PERCOCET 5MG/32 | 7044407 | 2.50 |
| 061506 | 2 | ALBUTEROL 0.083 | 7010580 | 6.50 |
| 061506 | 1 | ALBUTEROL 0.083 | 7010580 | 3.25 |
| 061506 | 1 | ALBUTEROL 0.083 | 7010580 | 3.25 |
| 061506 | 2 | MORPH SULF INJ | 7024060 | 26.40 |
| 061506 | 1 | PROMETHAZINE IN | 7027469 | 9.50 |
| 061506 | 3 | SOD CHL 0.9%BAC | 7029002 | 6.00 |
| 061506 | 1 | CHEST 1 VIEW FR | 70006994 | 213.00 |
| 061506 | 2 | INHALATION TX; | 12002325 | 380.00 |
| 061506 | 1 | INHALATION TX; | 12002325 | 190.00 |
| 061506 | 1 | INHALATION TX; | 12002325 | 190.00 |
| 061506 | 2 | PT TX ACTIV FUN | 3001013 | 225.00 |
| 061506 | 1 | PT EVAL | 3002318 | 194.25 |
| 061506 | 1 | PT WHLCHAIR MGT | 3002474 | 72.00 |
| 061506 | 1 | OT TX PROC Q 15 | 3202017 | 97.50 |
| 061506 | 2 | OT TX ACTIV FUN | 3202389 | 225.00 |
| 061506 | 1 | OT EVAL | 3203338 | 203.75 |
| 061506 | 1 | ROOM  1372-A | 2000222 | 1152.00 |
| 061606 | 2 | DOCUSATE SOD CA | 7016850 | 2.50 |
| 061606 | 2 | FAMOTIDINE TAB | 7018047 | 2.50 |
| 061606 | 1 | ATROVENT SOL | 7039357 | 10.00 |
| 061606 | 1 | ATROVENT SOL | 7039357 | 10.00 |
| 061606 | 1 | ATROVENT SOL | 7039357 | 10.00 |
| 061606 | 2 | OXYCODONE SR TA | 7040751 | 32.30 |

**THESE ARE TRUE AND COMPLETE COPIES**

```
E04457                      PAGE #    1
```

```
 SUMMA HEALTH SYSTEM                                                    PG#   1
 P.O. BOX 71-4097              TELEPHONE 330-996-8505      DATE: 11/02/07
 COLUMBUS , OH. 43271-4097     FEI#34-0714755              ACCT TYPE: E
-----------------------------------------------------------------------------
 PATIENT NAME: FARMER ,SUSAN              PATIENT NUMBER:    20932844  FC: R
 ADMIT DATE: 06/07/04  DISCHARGE DATE: 06/09/04 | BIRTH: 10/30/1973   PT: S
-----------------------------------------------------------------------------
```

| | | | PATIENT BAL: | .00 |
| --- | --- | --- | --- | --- |
| FARMER | SUSAN | | INS 1  580 : | .00 |
| 13520 HILL STREET NW | | | INS 2 : | |
| UNIONTOWN | OH  44685 | | INS 3 : | |
| | | | INS 4 : | |

```
-----------------------------------------------------------------------------
 SVC      QTY   SERVICE        SERVICE   SERVICE
 DATE           DESCRIPTION    CODE      AMOUNT
-----------------------------------------------------------------------------
 060704     1  BICITRA SOL 30M  7012339       1.60☐
 060704     1  MINRL OIL LIQ 3  7023773       1.50☐
 060704     1  I*ERYTHROMYCIN   7039761       3.70☐
 060704     1  DOCUSATE CALC S  7040025       1.05☐
 060704     1  IBUPROFEN 200MG  7046535       3.80☐
 060704     1  LC 1% PF INJ 30  7021843       2.00☐
 060704     4  OXYTOCIN INJ 10  7025497      26.72☐
 060704     1  PHYTONDADIONE I  7026412      11.70☐
 060704     2  PENICILLIN GK 3  7043169      28.40☐
 060704     1  SUPP: VACUUM EX  25001595    176.00☐
 060704     1  HEMOGRAM, PLT A  65001604     69.25☐
 060704     1  LABOR ROOM FIRS  25001736    216.00☐
 060704     1  BIRTHING ROOM-A  25001785    162.00☐
 060704     1  BIRTHING ROOM-F  25001793   1904.75☐
 060704     1  ROOM  1254-01    2000461     960.00☐
 060804     1  ROOM  1254-01    2000461     960.00☐
 061604     1  C/M CONTRACTUAL   450247   -1728.47☐
 071204    -1  MANAGED CARE PA   700104   -2520.00☐
 090804    -1  CREDIT CARD PAY   600403    -280.00☐
```



```
                         -------------------------------------------
                         PAGE #   1
```

THESE ARE TRUE AND
COMPLETE COPIES
CITY HOSPITAL (Billing Recs) (Susan)
13

**INVESTIGATION LOGIC, INC.**
565 COMMERCIAL STREET, 4TH FLOOR
SAN FRANCISCO, CA 94111
(V) 415-627-9117 (F) 415-627-9076

www.investigationlogic.com
admin@investigationlogic.com

CA PI 21289 SF RPS 653

## FARMER, et al. V. FORD MOTOR COMPANY, et al.

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### Case No. C 07 03539 SI
### 27-2440-3B

## CUSTODIAN OF RECORDS

### AKRON CITY HOSPITAL
### (BILLING RECS) (VIRGINA FARLEY)

### RECORDS PRODUCED PURSUANT TO SUBPOENA
Date Issued: October 19, 2007

### Vol. 1 of 1
### PAGES (22)

### AFFIDAVIT OF DEPOSITION OFFICER-B&P SEC. 22462, et seq.

I, Patricia Alvarez, affirm under penalty of perjury under the laws of the State of California that all
of the records delivered to me by the Custodian of Records will be delivered to the authorized
persons or entities.

Executed at San Francisco, California
Date: 11/15/07

Signature: _____

```
SUMMA HEALTH SYSTEM                                        PG#    2
P.O. BOX 71-4097                                   DATE: 11/02/07
COLUMBUS , OH. 43271-4097    FEI#34-0714755        ACCT TYPE: E
                            TELEPHONE 330-996-8505
```

```
PATIENT NAME: FARLEY ,VIRGINIA M      PATIENT NUMBER:    29433224  FC: Q
ADMIT DATE: 06/10/06 DISCHARGE DATE: 06/14/06  BIRTH: 01/09/1913   PT: S
```

```
                                        PATIENT BAL:          .00
                                        INS 1  M01 :          .00
      FARLEY             VIRGINIA        INS 2  498 :          .00
      200 LAUREL LAKE DRIVE             INS 3      :
      HUDSON                OH  44236   INS 4      :
```

| SVC DATE | QTY | SERVICE DESCRIPTION | SERVICE CODE | SERVICE AMOUNT |
|---|---|---|---|---|
| 061106 | 1 | APTT | 63000509 | 68.50☐ |
| 061106 | 1 | PROTHROMBIN TIM | 63000707 | 43.00☐ |
| 061106 | 1 | DECALCIFY | 66003351 | 102.75☐ |
| 061106 | 1 | SURG PATH-IV | 66003476 | 246.50☐ |
| 061106 | 1 | HIP 1 VIEW UNIL | 70005889 | 191.25☐ |
| 061106 | 10 | SURGICAL RESOUR | 75000216 | 2098.30☐ |
| 061106 | 10 | SURGICAL RESOUR | 75000216 | 2098.30☐ |
| 061106 | 1 | ANES-SPINAL ASA | 6000673 | 313.24☐ |
| 061106 | 8 | ANES-SPINAL ASA | 6000681 | 211.04☐ |
| 061106 | 1 | PACU 3 - FIRST | 17009473 | 691.22☐ |
| 061106 | 2 | PACU 3 - EA ADD | 17009481 | 97.70☐ |
| 061106 | 1 | ROOM  2721-A | 2001535 | 1152.00☐ |
| 061206 | 1 | DILTIAZEM CD CA | 7016546 | 6.65☐ |
| 061206 | 1 | ENALAPRIL MAL T | 7017288 | 1.25☐ |
| 061206 | 1 | ENALAPRIL MAL T | 7017288 | 1.25☐ |
| 061206 | 1 | FUROSEMIDE TAB | 7018708 | 1.25☐ |
| 061206 | 1 | FUROSEMIDE TAB | 7018724 | 1.25☐ |
| 061206 | 1 | FUROSEMIDE TAB | 7018724 | 1.25☐ |
| 061206 | 6 | HYDROCOD/APAP T | 7019771 | 7.50☐ |
| 061206 | 2 | HYDROCOD/APAP T | 7019771 | 2.50☐ |
| 061206 | 1 | PRAVASTATIN TAB | 7042153 | 1.25☐ |
| 061206 | 1 | ALBUTEROL 0.083 | 7010580 | 3.25☐ |
| 061206 | 1 | ALBUTEROL 0.083 | 7010580 | 3.25☐ |
| 061206 | 1 | ALBUTEROL 0.083 | 7010580 | 3.25☐ |
| 061206 | 1 | ALBUTEROL 0.083 | 7010580 | 3.25☐ |
| 061206 | 2 | SOD CHL 0.9%BAC | 7029002 | 4.00☐ |
| 061206 | 1 | SOD CHL 0.9%BAC | 7029002 | 2.00☐ |
| 061206 | 1 | FRAGMIN 5M IU O | 7043318 | 87.95☐ |
| 061206 | 1 | GLUCOSE MICRO | 61003257 | 51.50☐ |
| 061206 | 1 | GLUCOSE MICRO | 61003257 | 51.50☐ |
| 061206 | 1 | INHALATION TX; | 12002325 | 190.00☐ |
| 061206 | 1 | INHALATION TX; | 12002325 | 190.00☐ |
| 061206 | 1 | INHALATION TX; | 12002325 | 190.00☐ |
| 061206 | 1 | INHALATION TX; | 12002325 | 190.00☐ |
| 061206 | 1 | PT TX ACTIV FUN | 3001013 | 112.50☐ |
| 061206 | 1 | PT EVAL | 3002318 | 194.25☐ |
| 061206 | 1 | ROOM  2721-A | 2001535 | 1152.00☐ |
| 061306 | 4 | ACETAMINOPHEN T | 7010143 | 2.52☐ |
| 061306 | 1 | DILTIAZEM CD CA | 7016546 | 6.65☐ |
| 061306 | 1 | DOCUSATE CALC C | 7016827 | 1.25☐ |

THESE ARE TRUE AND
COMPLETE COPIES

```
E04457                        PAGE #    2
```

**Exhibit O**

# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT
# OF OHIO

## LOCAL RULES

### January 1, 1992

(Revised: 6/9/92; 12/15/92; 3/3/93; 5/4/93; 7/13/93;
8/10/93; 12/1/93; 2/8/94; 11/1/94; 3/7/95;
5/9/95; 7/10/95; 10/2/95; 6/3/96;
Renumbered: 4/7/97; revised 7/9/97; 10/20/97; 11/5/97;
1/15/98; 4/6/98; 8/10/98; 10/5/98; 2/1/99; 5/25/99; 1/1/00; 6/5/00; 10/3/00; 12/4/00; 5/4/01
6/4/01; 12/3/01; 4/2/02; 5/29/02; 9/23/02; 12/4/02; 3/1/04; 6/7/04; 11/1/04; 5/1/05; 9/29/05; 1/1/06; 6/5/06
7/24/06; 11/1/06; 1/1/07; 2/1/07; 2/5/07; 4/12/07; 6/4/07)

### *Local Civil Rules -- Northern District of Ohio*

**Rule 7.2  Dispositive Motions**

      **(a)** Motions that dispose of any claim or defense shall usually be heard and determined by the District Judge assigned to the case.  When such Judge concludes that final adjudication of such motion will be expedited if it is referred to a Magistrate Judge for report and recommendation, such motion may be referred to the Magistrate Judge, whose report and recommendation shall be filed consistent with the provisions of Local Rule 7.3(b).

      **(b)** In those cases in which a summary judgment motion is pending, the Judicial Officer may consider scheduling the case for oral argument.

25

Last revised 5/29/02.  *See* Historical Notes for full revision history.

## Local Civil Rules -- Northern District of Ohio

**Rule 16.3** Track Assignment and Case Management Conference

   **(a)** Notice of Track Recommendation and Case Management Conference.

        (1)  The Court may issue a track recommendation to the parties in advance of the Case Management Conference, or may reserve such determination for the Case Management Conference. If the notice of Case Management Conference does not contain a track recommendation, counsel must confer to determine whether they can agree to a track recommendation, which shall be subject to the Judicial Officer's approval at the Case Management Conference.  The track recommendation shall be made in accordance with the factors identified in Local Rule 16.2(b).

        (2)  In any action in which the defendant (or all defendants in any action with multiple defendants) is in default of answer, no track recommendation will be made and no Case Management Conference held so long as such default continues.  In such a case the plaintiff shall go forward and seek default judgment within one hundred and twenty (120) days of perfection of service (or of sending of a request for a waiver of service under Fed. R. Civ. P. 4(d)), or show cause why the action should not be dismissed for want of prosecution.  If such default occurs and the party/parties in default is/are thereafter granted leave to plead, issuance of a track recommendation and scheduling of the Case Management Conference shall proceed in accordance herewith, based upon the date set for the filing of the responsive pleading.

   **(b)** Case Management Conference.

        (1)  The Judicial Officer shall conduct the Case Management Conference.  Lead counsel of record must participate in the Conference and parties must attend unless, upon motion with good cause shown or upon its own motion, the Judicial Officer allows the parties to be available for telephonic communication.  Counsel, upon good cause shown, may seek leave to participate by telephone.

        (2) The agenda for the Conference shall include:

        (A)    Determination of track assignment;

        (B)    Determination of whether there is any impediment to putting the case in the Court's electronic filing system;

        (C)    Determination of whether the case is suitable for reference to an ADR program;

        (D)    Determination of whether the parties consent to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c);

        (E)    Disclosure of information that may be subject to discovery, including key documents and witness identification;

        (F)    Determination of the type and extent of discovery, including the discovery of electronically stored information. If the parties have not agreed on how to conduct electronic discovery, the default standard for discovery of electronically stored information attached as Appendix K shall apply;

        (G)    Setting of a discovery cut-off date;

        (H)    Setting of a deadline for joining other parties and amending the pleadings;

        (I)    Setting of deadline for filing motions; and

        (J)    Setting the date of the Status Conference.

        (3) Except in categories of proceedings exempted from initial disclosure under Fed. R. Civ. P. 26(a)(1)(E), the parties must confer before the Fed. R. Civ. P. 16(b) conference.  In addition to discussing the items identified in Fed. R. Civ. P. 26(f), counsel for all parties are directed to engage in

Last revised 6/4/07. *See* Historical
Notes for full revision history.

### Local Civil Rules -- Northern District of Ohio

If, for any reason, the assigned Judicial Officer is unable to hear the case within one week of its assigned trial date, the case shall be referred to the Chief Judge for reassignment to any available District Judge or, upon consent of the parties, Magistrate Judge for prompt trial.

(e) **Final Pretrial Conference**. A Final Pretrial Conference, if any, may be scheduled by the Judicial Officer at the Status Conference. The parties and lead counsel of record must be present at the conference. When the United States of America or any officer or agency thereof is a party, the federal attorney responsible for the case shall be deemed the authorized representative for the purpose of the Final Pretrial Conference. The Final Pretrial Conference shall be scheduled as close to the time of trial as reasonable under the circumstances. The Judicial Officer may, in the Judicial Officer's discretion, order the submission of pretrial memoranda.

(f) **Video and Telephone Conferences**. The use of telephone conference calls and, where appropriate, video conferencing for pretrial and status conferences is encouraged. The Court, upon motion by counsel or its own instance, may order pretrial and status conferences to be conducted by telephone conference calls. In addition, upon motion by any party and upon such terms as the Court may direct, the Court may enter an order in appropriate cases providing for the conduct of pretrial and status conferences by video conference equipment.

Last revised 6/4/07. *See* Historical Notes for full revision history.