**Tab 27**

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2005 WL 770629 (N.D.Ill.)
**(Cite as: 2005 WL 770629 (N.D.Ill.))**

**C**Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
Romulo BARELA, Plaintiff,
v.
EXPERIAN INFORMATION SOLUTIONS, INC.,
and Wfnnb/American Home Furnishings,
Defendants.
No. 04 C 5144.

April 4, 2005.
Larry Paul Smith, Krohn & Moss, Ltd., Chicago, IL,
for Plaintiff.

Michelle Leigh Miller, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER
TRANSFERRING CASE PURSUANT TO 28 U.S.C. §
1404*

FILIP, J.

**\*1** Plaintiff Romulo Barela ("Barela" or "Plaintiff")
sued defendants Experian Information Solutions, Inc.
("Experian"), and WFNNB/American Home
Furnishings ("WFNNB"). Barela alleged violations of
the Fair Credit Reporting Act (Count I) and
defamation (Count II) against Experian, and
violations of the Fair Credit Reporting Act against
WFNNB (Count III). Barela has since settled his
claim against Experian, which is no longer a party to
the suit. The case is before the Court on the motion
("Motion") of WFNNB to dismiss pursuant to
Federal Rules of Civil Procedure 12(b)(3) and
12(b)(6), or in the alternative, to transfer this matter
to the United States District Court for the Southern
District of Ohio pursuant to 28 U.S.C. § 1404(a).
(D.E.20.) [FN1] As explained below, the Motion is
granted in that the Court finds the balances of
conveniences and the interests of justice clearly
support the transfer of the case to the Southern
District of Ohio.

> FN1. The various docket entries in this case
> are cited as "D.E. ___."

BACKGROUND FACTS

The plaintiff, Mr. Romulo Barela, is a citizen of New
Mexico, and the defendant, WFNNB, is a national
bank association whose principal place of business is
in Ohio. (D.E. 4 ¶¶ 3, 5.) Plaintiff alleges that
WFNNB "regularly conducts business in all cities
and counties in the United States." (*Id.* ¶ 5.)

Plaintiff alleges, in Count III of his complaint,
violations of the Fair Credit Reporting Act
("FCRA"), 15 U.S.C. § 1681*et seq.,* against WFNNB.
(D.E. 4, Count III.) Plaintiff alleges that Defendant
failed, *inter alia,* to conduct an investigation
regarding disputed credit information, to review
relevant information concerning Plaintiff's account
provided by a credit reporting agency, and to
participate, investigate and comply with
reinvestigations. (D.E. 1, Count III ¶ 33.) Plaintiff
further alleges that Defendant furnished and
disseminated inaccurate credit information about
him. (*Id.*)

Plaintiff's complaint states that venue is proper in the
Northern District of Illinois "pursuant to 28 U.S.C. §
1391(b)." (D.E. 1 ¶ 2.) The complaint does not
elaborate further as to why venue is proper in this
particular district.

DISCUSSION

1. The Court Will Assume *Arguendo* That Venue Is
Proper In Both The Northern District of Illinois and
the Southern District of Ohio.

Section 1391(b) of Title 28 provides in relevant part
that venue properly rests in: (1) a judicial district
where any defendant resides, if all defendants reside
in the same state; or (2) a judicial district in which a
substantial part of the events or omissions giving rise
to the claim occurred. *See*28 U.S.C. § 1391(b)(1), (2).
If the propriety of venue is questioned, the burden of
establishing that venue is appropriate rests with the
plaintiff. *See, e.g. Pepsico, Inc. v. Marion Pepsi-Cola
Bottling Co.,* No. 99 C 3939, 2000 WL 263973, at *3
(N.D.Ill. March 6, 2003) (Williams, J.). The court
accepts all well-pleaded facts in the complaint as
true, unless they are contradicted by affidavits or
other appropriate evidence from the defendant. *Id.*
(collecting cases). Any factual disputes are resolved
in the light most favorable to the plaintiff. *Id.*

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 770629 (N.D.Ill.)
(Cite as: 2005 WL 770629 (N.D.Ill.))

Page 2

**\*2** Defendant WFNNB argues that venue is improper here because it is a national bank which for jurisdictional citizenship purposes is located in, and thus a citizen of, the state of its principal place of business (*i.e.,* Ohio) and the state listed in its organizational certificate (which is also Ohio). Defendant explains that Ohio is identified in its organizational certificate as the place where its operations of deposit and discount are to be conducted, and Defendant explains that it has no offices outside of Ohio. From this, Defendant argues that venue is not proper under 28 U.S.C. § 1391(b)(1). Defendant also explains that, based on Plaintiff's allegations, venue is not proper under 28 U.S.C. § 1391(b)(2) because no material events concerning the claim took place in the Northern District of Illinois, as opposed to in either Ohio or New Mexico. Specifically, the challenged events took place in Ohio, and the impact of any alleged harm was felt in New Mexico.

Plaintiff does not meaningfully respond to this argument, but instead proceeds immediately to an argument as to why transfer under Section 1404(a) is not required. Given that the Plaintiff bears the burden of establishing the propriety of venue, one perhaps might fairly find that Plaintiff has not carried his burden in the first instance.

The Court is reluctant to take that view because such an outcome would, at a minimum, seem to be in substantial tension with Seventh Circuit teaching in a related area of law. Specifically, in *Firstar Bank, N.A. v. Faul,* 253 F.3d 982 (7th Cir.2001), the Seventh Circuit explained how citizenship issues are properly analyzed for national banks in diversity cases. *Firstar Bank* instructed that such issues for national banks are properly analyzed as though such banks are ordinary corporations. *Id.* at 993-94; *see also id.* at 988 (stating that "a national bank appears to be analogous in most respects to a corporation rather than some other kind of business organization ...."); *id.* at 993 (explaining that the Seventh Circuit was resolving the issue in a manner that "maintain[ed] jurisdictional equality between national banks and state banks or other corporations.").

For ordinary corporations, venue is proper in a district where the minimum contacts of that corporation are such that it would be appropriate to assert personal jurisdiction over the corporation in the district at issue. *See* 28 U.S.C. § 1391(c). Plaintiff asserts for Defendant WFNNB (and also asserted for

presently dismissed Defendant Experian) that the corporations "regularly conduct[ ] business in all cities and counties in the United States." (D.E. 4 ¶ ¶ 4-5.) If that is the case, then venue might at least be permissible (even if it might not be most appropriate) in the Northern District of Illinois. *See* 28 U.S.C. § 1391(b)(1).

The issue is sufficiently unclear on the record presented that the Court thinks it most prudent to assume, at least for present purposes, that venue would at least be acceptable in the Northern District of Illinois. *Accord, e.g., Spherion Corp. v. Cincinnati Fin. Corp.,* 183 F.Supp.2d 1052, 1057 (N.D.Ill.2002) (assuming the propriety of jurisdiction in the Northern District of Illinois before finding transfer was appropriate in any event under 28 U.S.C. § 1404(a)). The Court turns to the Section 1404(a) analysis.

2. Transfer to the Southern District of Ohio Is Appropriate Under 28 U.S.C. § 1404(a).

**\*3** The Court will set forth the various factors identified in precedent as guiding the Section 1404(a) analysis. The Court notes, however, that two prior courts in this district have analyzed situations involving substantially similar transfer motions and have found, in both instances, that transfer was appropriate. *See Kapeluck v. Experian Info. Solutions, et al,* No. 03 C 3777, 2003 WL 23509647 at *2-3 (N.D.Ill.Dec.18, 2003) (Gettleman, J.); *Heston v. Equifax Credit Info. Servs., et al,* No. 03 C 2476, 2003 WL 22243986, at *2 (N.D.Ill. Sept.26, 2003) (Bucklo, J.) After considering the various factors and considerations in play in the instant case, this Court sides with the two prior decisions from this district and finds that transfer is appropriate.

Where venue is proper in two judicial districts and a party requests a transfer under Section 1404(a), the trial court looks at various factors. These factors include

both the private interests of the parties and the public interest of the Court. Private interests include (1) plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof in each forum including the Court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses, [and] (4) convenience to the parties--specifically, their respective residences and abilities to bear the

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 770629 (N.D.Ill.)
**(Cite as: 2005 WL 770629 (N.D.Ill.))**

expense of trial in a particular forum. Public interest factors include the Court's familiarity with applicable law and the desirability of resolving controversies in their locale. *Vein Clinics of Am., Inc. v. Tex. Phlebology Assocs., P.A.,* No. 94 C 5267, 1995 WL 257869, at *3 (N.D.Ill. May 1, 1995) (Castillo, J.) (citations omitted). A district court's assessment of the propriety of transfer is reviewed for clear abuse of discretion. *See, e.g., Cont'l Ins. Co. v. M/V Orsula,* 354 F.3d 603, 608 (7th Cir.2003) (collecting cases). A transfer under Section 1404(a) is not designed to simply shift inconveniences between equally situated parties; rather, the overall balance of inconveniences, and the broader public interests at play, must clearly weigh in favor of transfer. *See, e.g., Fogelson v. Iatrides,* No. 99 C 6892, 2000 WL 631293, at *4 (N.D.Ill. May 12, 2000) (Kocoras, J.); *Publ'n Mgmt. Inc. v. Am. Def.Preparedness Ass'n,* No. 89 C 1110, 1989 WL 165056, at *2-3 (N.D.Ill.Dec.29, 1989) (Kocoras, J.).

A review of the applicable factors leads this Court to the same conclusion reached by Judges Gettleman and Bucklo in similar cases--namely, that transfer is appropriate. The reasons for that conclusion are discussed below.

While a plaintiff's choice of forum normally carries substantial weight, the significance of that choice is materially diminished when, as here, "no significant connection to the chosen forum exists." *Heston,* 2003 WL 22243986, at *1;*accord, e.g., Commercial Union Ins. Co. v. Auto Europe, L.L.C.,* No. 01 C 6961, 2002 WL 47026, at *2 (N.D.Ill. Jan.10, 2002) (Darrah, J.) ("[T]he weight granted to the plaintiff's choice of forum is significantly diminished when the events giving rise to the cause of action took place outside the plaintiff's choice of forum."); *Binz v. Iowa Interstate R.R., Ltd.,* No. 98 C 6381, 1999 WL 90642, at *1 (N.D.Ill. Feb.10, 1999) (Kocoras, J.) (stating that the choice of forum "has minimal value" under such circumstances) (internal quotations and citations omitted).

*4 Analysis of the situs of material events cuts clearly and substantially against this district. The relevant events and the effects thereof took place in the Southern District of Ohio and in New Mexico. Although the effects of a bad credit report arguably reach, in some generic sense, everywhere in nation (and perhaps even beyond), that analysis is too vague to be meaningful. The generic impact of a bad credit

report cuts equally in favor of Seattle, Maine, and the Florida Keys as it does Chicago. Any realistic assessment of the relevant events and alleged harms points clearly and strongly to the Southern District of Ohio (or perhaps New Mexico) and not here.

No one suggests that any relevant evidence is naturally situated here in Chicago, as opposed to, in substantial part, in Ohio. The Court does not put substantial weight on the fact that any and all documentary evidence is located elsewhere, at least where, as in this case, the relevant evidence does not appear to include substantial amounts of documentary material. *See, e.g., Dortch v. Fin. Alternative, Inc.,* No. 01 C 7416, 2002 WL 598518, at *4 (N.D.Ill. Apr.17, 2002) (Darrah, J.) (explaining that documents could be photocopied and transferred). Still, it appears clear that none of the relevant witnesses are located in this district. Most (if not virtually all) of those witnesses appear to be in the Southern District of Ohio, and Plaintiff is in New Mexico. One can safely assume the WFNNB could require its employees to travel here from Ohio for trial. Nonetheless, as one might expect, precedent teaches that it is still sensible to consider the residence of witnesses employed by parties, and to consider related travel cost and lost-work issues attendant to a distant trial, when trying to make a pragmatic assessment of whether a venue transfer is warranted. *See, e.g., Martz v. Archer-Daniels-Midland Co.,* No. 94 C 5057, 1995 WL 348046, at *1 & n. 4 (N.D.Ill. June 6,1995) (Aspen, J.) (citing *Gothelf v. Cal. Ivy, Inc.,* No 90 C 6976, 1992 WL 33928, at *1-2 (N.D.Ill. Feb.13, 1992)).

Barela's attorneys also note that the plaintiff was unable to locate suitable consumer law counsel in New Mexico, and as a result, he retained the services of his present attorneys, who are based in Chicago. But precedent addressing this question, including decisions involving Plaintiff's own counsel (who are from a respected consumer law firm that has an office Chicago in addition to offices in several other places, including Ohio), teaches that the location and conveniences of the attorneys are not material. Thus, in *Kapeluck,* Judge Gettleman instructed that the convenience of plaintiff's counsel (who also represent Plaintiff here) was "not ... a factor [in the Section 1404(a) analysis], especially when plaintiff's only connection to Illinois is her choice of counsel." *Id.,* 2003 WL 23509647, at *2 (collecting cases). Similarly, in *Heston,* where the plaintiff's counsel (who also represent Plaintiff here) argued that a

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Case 3:07-cv-03539-SI    Document 40-2    Filed 11/16/2007    Page 5 of 27

Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 770629 (N.D.Ill.)
**(Cite as: 2005 WL 770629 (N.D.Ill.))**

transfer to California would inconvenience them, Judge Bucklo held that "the location of counsel is, at best, of minor consideration when evaluating a transfer." *Id.,* 2003 WL 22243986, at *2 (citation omitted). These decisions are in accord with other precedent from this district. *See, e.g., Murphy v. Avon Prods., Inc.,* 88 F.Supp.2d 851, 853 (N.D.Ill.1999) (holding that "the location of counsel is not traditionally considered significant in § 1404 analysis, and we shall therefore disregard it") (citation omitted); *Binz,* 1999 WL 90642, at *3 (collecting cases and stating that "the convenience of counsel is not a factor relevant to a Section 1404(a) determination"). In this regard, the Court notes that Judge Gettleman explained that the firm of Plaintiff's counsel also has an office in Ohio, as well as attorneys admitted there. *See Kapeluck,* 2003 WL 23509647, at *3;*accord Heston,* 2003 WL 22243986, at *2. As a result, transfer of the case to Ohio should not require any change of counsel for Plaintiff.

**\*5** One final factor in the private interests analysis is the ability of the parties to bear the expenses of trial in the two putative venues. Neither party suggests that it cannot bear such costs, which should be relatively similar between the two fora (at least if one excises the substantial additional travel costs that Defendant would face if its witnesses needed to come to a trial here--that factor cuts in favor of transfer). *See also Avon Prods.,* 88 F.Supp.2d at 853 (costs of counsel not viewed as particularly material). Plaintiff also suggests that Chicago is a materially easier place to reach than Ohio. (*See* D.E. 23 at 7 (Plaintiff describing Chicago as the "central transportation point of the Midwest").) Although convenience to a plaintiff is certainly part of the Section 1404(a) analysis, in this particular case it does not weigh meaningfully in favor of this district. Perhaps the situation might be different if the proposed transfer involved some dramatically far-away place, like Alaska, or Hawaii, or Guam, but trading one Midwestern transportation center (Northern Illinois, with Chicago) for another (Southern Ohio, with access in the judicial district to the transportation facilities of Cincinnati, Columbus, and Dayton) does not involve that sort of concern.

Public and systemic interest factors weigh in favor of transfer, to the extent they point either way. The Court respectfully rejects any suggestion that the Northern District of Illinois is potentially more familiar with the Fair Credit Reporting Act than the Southern District of Ohio. Both federal fora are more than capable of addressing any legal questions that might arise.

Precedent also teaches that, when assessing the public interest in a putative transfer, "the guiding principle behind an inquiry into the 'interests of justice' is that the administration of justice will be served more efficiently when the action is brought before a court that is 'closer to the action.' ' *Binz,* 1999 WL 90642, at *3 (collecting cases; certain internal quotation marks omitted for clarity). This factor cuts strongly in favor of Ohio, as literally nothing material concerning this dispute occurred in Chicago or elsewhere in Illinois.

In sum, the Court believes that the overall balance of private and public interests align as they did in *Kapeluck* and *Heston* and warrant transfer to the Southern District of Ohio. *See Kapeluck,* 2003 WL 23509647, at *3 (stating that "only one factor, plaintiff's choice of forum, favors against transfer. All other factors ... strongly favor transfer to the Southern District of Ohio."); *accord Avon Prods.,* 88 F.Supp.2d at 853 (transferring case and stating, "[i]n sum, this case has no connection to Illinois of which we are aware besides the residence of ... [plaintiff's] attorney"); *Heston,* 2003 WL 22243986, at *2 (similar). The overall balance of private and public interests reveals that transfer will not simply shift equal inconveniences from one side to another. Instead, transfer will promote a resolution of the dispute that is clearly less expensive and more efficient overall without sacrificing fairness for either party, and will allow for the litigation to proceed in a forum that actually has some meaningful connection to the dispute.

**\*6** Plaintiff concedes that venue is appropriate in the Southern District of Ohio. Plaintiff does not suggest that this Court should consider a transfer to his home state of New Mexico. Because the balance of interests clearly favors transfer, the Court grants the Motion.

### CONCLUSION

For the foregoing reasons, Defendant's Motion in the alternative to transfer venue to the Southern District of Ohio (D.E.20) is granted.

Not Reported in F.Supp.2d, 2005 WL 770629 (N.D.Ill.)

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 770629 (N.D.Ill.)
**(Cite as: 2005 WL 770629 (N.D.Ill.))**

Page 5

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**Tab 28**

Westlaw.

Not Reported in F.Supp.2d                                                   Page 1
Not Reported in F.Supp.2d, 2002 WL 523568 (N.D.Cal.)
(Cite as: 2002 WL 523568 (N.D.Cal.))

C Only the Westlaw citation is currently available.

United States District Court, N.D. California.
Bettie Virginia BLACK., Plaintiff,
v.
JCPENNY LIFE INSURANCE COMPANY, et al.,
Defendants.
**No. C 01-4070 SI.**

April 1, 2002.

ORDER TRANSFERRING VENUE TO THE
SOUTHERN DISTRICT OF CALIFORNIA

ILLSTON, District J.

*1 Defendant's motion to dismiss for improper venue or, in the alternative, to transfer venue to the Southern District of California came on for hearing on March 29, 2002. Having considered the papers submitted and the arguments of counsel, the motion to dismiss is DENIED, the motion to transfer venue is GRANTED, and this action is TRANSFERRED to the Southern District of California.

BACKGROUND
A. Factual Background

Plaintiff Bettie Virginia Black ("Black") seeks to recover benefits from an Accidental Death and Dismemberment Insurance policy issued to her mother, Bettie Virginia Black ("insured") in 1995. Def.'s Mot. at 4. Insured was a resident of San Diego County when she purchased the policy and at all times when the policy was effective up until her death. Def.'s Mot. at 4. Black was also a resident of San Diego County at the time of her mother's death. Def.'s Mot. at 4.

Defendant JC Penney Life Insurance Company ("JC Penney Life") is a corporation incorporated in the state of Vermont and its principal place of business is in the state of Texas. Def.'s Mot. at 5.

The parties dispute whether insured's death was due to an accident or natural causes. Def.'s Mot. at 4. If the insured's death was due to an accident, Black would be able to receive benefits from the insurance policy. However, if the cause of death were not an accident, she would not be able to recover benefits from the policy.

B. Procedural Background

Black originally filed this action in San Francisco Superior Court. Def.'s Mot. at 3. She alleges five causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith; (3) negligence; (4) violation of California Business and Professions ("B & P") Code, § 17200; and (5) violation of B & P Code, § 17500. Defendant JC Penney Life removed this action to the United States District Court for the Northern District of California based on diversity of citizenship. Def.'s Mot. at 2. JC Penney Life now moves to dismiss this action for improper venue. In the alternative, JC Penney Life moves to transfer this action to the United States District Court for the Southern District of California for convenience, pursuant to 28 U.S.C. § 1404(a).

LEGAL STANDARD
A. Improper Venue

Pursuant to Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a case for improper venue. Venue is generally proper in a district where the defendant resides. 28 U.S.C. § 1391(a) (2001). "[A] defendant that is a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c) (2001). However, 28 U.S.C. § 1441(a) governs the venue of removed actions. Polizzi v. Cowles Magazine, Inc., 345 U.S. 663, 665 (1953). Section 1441(a) states:

  Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
*2 28 U.S.C. § 1441(a) (2001). Thus, venue is proper when a case is removed to the district where the state action was pending.

A federal district court may also "assert jurisdiction over a matter removed from a state court where

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 523568 (N.D.Cal.)
**(Cite as: 2002 WL 523568 (N.D.Cal.))**

Page 2

venue was improper under state law, but compliant with § 1441.... Subsection (e) clearly allows a federal court to hear matters without needing jurisdiction derived from the state court." *IBC Aviation, Inc. v. Compania Mexicana de Aviacion,* 125 F.Supp.2d 1008, 1014 (N.D.Cal.2000).

B. Transfer for Convenience

A party may move to transfer the case pursuant to 28 U.S.C. § 1404(a), which states: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2001). The purpose of § 1404(a) "is to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.' ' *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19, 26-27 (1960)).

To support a motion for transfer, the moving party must establish: "(1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice." *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.,* 820 F.Supp. 503, 506 (C.D.Cal.1992).

### DISCUSSION
A. Improper Venue

JC Penney Life has moved to dismiss this action on the grounds that the Northern District is an improper venue for this action because the venue requirements of 28 U.S.C. § 1391(c) are not satisfied. Def.'s Mot. at 5. JC Penney Life argues that the statutory venue requirements are not met because it is not subject to personal jurisdiction in this district. Def.'s Mot. at 6.

Black argues that venue in the Northern District is proper for various reasons, most notably, that removal of this action automatically satisfied venue in accordance with § 1441(a) and that by removing the case, JC Penney Life waived any objection to venue, citing *Polizzi v. Cowles.* JC Penney Life contends that *Polizzi v. Cowles* does not hold that removal constitutes a waiver to any objection to venue.

It is true that *Polizzi v. Cowles* does not explicitly hold that removal constitutes a waiver of any venue objection. However, § 1441(e) allows this Court to exercise jurisdiction over this matter, even if venue were improper in San Francisco County, so long as the requirements of § 1441(a) are satisfied. *See IBC Aviation Services, Inc.,* 125 F.Supp.2d at 1014.

As stated above, § 1441(a) provides that venue is satisfied if the case is removed to the district in which the state action was pending. *Polizzi v. Cowles,* 345 U.S. at 665. Black initially filed this action in San Francisco County Superior Court, and JC Penney Life removed it to the Northern District, which is the district where the state action was pending. The venue requirements of § 1441(a) are satisfied. Therefore, the Court DENIES defendant's motion to dismiss for improper venue.

B. Transfer for Convenience

**\*3** JC Penney Life requests in the alternative that this Court transfer this case to the Southern District for the convenience of the parties and witnesses. As discussed above, venue in the Northern District, the transferor district, is proper pursuant to 28 U.S.C. § 1441(a). Thus, the first prong of this test is satisfied.

To satisfy the second prong of the test, which requires that the case could have been brought in the transferee court, that court must have personal jurisdiction over the defendant and subject matter jurisdiction over the claim. *Hoffman v. Blaski,* 363 U.S. 335, 343-344 (1960). In addition, venue must be proper. *Id.* JC Penney Life asserts that the transferee court satisfies all three requirements because it has purposefully availed itself to the Southern District, there is complete diversity between the parties and the amount in controversy exceeds $75,000, and venue is proper. Black does not dispute this. The Court finds that this case could have been brought in the Southern District.

Hence, the central dispute over whether transfer should be granted lies with the third prong of the test: whether the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice. The Ninth Circuit has outlined several factors to be considered in applying this prong, including: (1) the plaintiff's choice of forum; (2) the availability of

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

compulsory process; (3) the relative ease of access to sources of proof; (4) the convenience of witnesses and parties; and (5) judicial economy. *See Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986). Ultimately, the court "must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Id.*

1. Plaintiff's Choice of Forum

Courts generally should afford considerable weight to a plaintiff's choice of forum in determining a motion to transfer. *Decker Coal Co.,* 805 F.2d at 843. A plaintiff's choice of forum, however, is not dispositive, and must be balanced against other factors. *Id.* The deference afforded to plaintiff's choice of forum is considerably less if the plaintiff does not reside in the forum where the action was commenced. Schwarzer, Tashima, & Wagstaffe, Federal Civil Procedure Before Trial, § 4:282 (citing *New Image, Inc. v. TravelersIndem. Co.,* 536 F.Supp. 58 (E.D.Pa.1981)). Furthermore, if the transactions giving rise to the action lack a significant connection to the plaintiff's chosen forum, then the plaintiff's choice of forum is given considerably less weight. *Id.* § 4:284 (citing *Chrysler Capital Corp. v. Woehling,* 663 F.Supp. 478 (D.Del.1987) and *Hernandez v. Gaebel Van Lines,* 761 F.Supp. 983, 990 (E.D.N.Y.1991)).

JC Penney Life does not address this factor in its papers. Black argues that her choice of forum should be given substantial weight. Oppo. at 6-7. However, Black is not a resident in the Northern District, but resides in the Southern District. Further, the transactions giving rise to Black's action have no connection to the Northern District; the life insurance policy was purchased by the insured in the Southern District, she received all medical care there, and her death occurred there. Therefore, the Court, in evaluating this motion to transfer for convenience, affords Black's choice of forum relatively little weight.

2. Availability of Compulsory Process

**\*4** JC Penney Life argues that the availability of the right to compel process should be considered by the Court, and suggests that Rule 45(b)(2) of the Federal Rules of Civil Procedure would prevent this Court from issuing subpoenas to the medical personnel who

treated the insured because those witnesses reside 100 miles or more outside the Northern District. Def.'s Mot. at 12. [FN1] Black asserts that cases involving insurance are centered around documents, rather than witness testimony, and that the expert witnesses who may be expected to testify in this case are "uniquely suited to travel," or could be presented via deposition testimony. Oppo. at 9.

> FN1. Defendant asserts that Rule 45(b)(2) "provides in relevant part that '[a] subpoena may be served at any place ... without the district that is within 100 miles of the place of the ... trial ...' " Defendant omits to quote the rest of that very same sentence, which states: "or at any place within the state where a state statute or rule of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the ... trial." In California, state statute permits state-wide service of trial subpoenas. C.C.P. § 1989.

The Court finds both parties' arguments unpersuasive. With respect to Black's argument that experts and not the medical personnel are likely to testify in this case, the Court finds that JC Penney Life could reasonably expect to call the medical personnel who treated the insured to testify. The actual cause of the insured's death is in dispute and her treating physicians are in a position to testify about the cause. However, contrary to JC Penney Life's assertions, those witnesses are not beyond the subpoena power of this Court. Rule 45(b)(2) provides that "a subpoena may be served ... at any place within the state where a state statute ... permits service of a subpoena issued by a state court of general state jurisdiction sitting in the place of the [trial]." Fed.R.Civ.P. 45(b)(2). Furthermore, Rule 45(c)(3)(A)(ii) states that, unless there is a substantial expense, such witnesses shall "be commanded to travel from any such place within the state in which the trial is held ...." Fed.R.Civ.P. 45(c)(3)(A)(ii) (2001). Thus, the medical personnel witnesses are not beyond the subpoena range of this Court. Accordingly, the factor of availability of compulsory process weighs neither for nor against transfer.

3. The Relative Ease of Access to Proof

JC Penney Life asserts that relevant documents are located in the Southern District. Def.'s Mot. at 12. Black maintains that the relevant documents in this

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 523568 (N.D.Cal.)
(Cite as: 2002 WL 523568 (N.D.Cal.))

Page 4

case are the medical records of the insured and that JC Penney Life already possesses these records. Oppo. at 7. Thus, she argues, JC Penney Life's argument that it would be a great expense to obtain the relevant records is without merit. Oppo. at 7. It is unclear whether all the relevant documents in this case have been gathered by the parties. If they are, then this factor would weigh neither in favor of or against transfer. However, if not all the relevant documents have been obtained, then the factor would weigh in favor of transfer because the most of the documents relevant to this case would be located in the Southern District, not the Northern District.

### 4. Convenience of the Witnesses and Parties

JC Penney Life argues that the witnesses and plaintiff are located in the Southern District. Def.'s Mot. at 11-12. It argues that requiring witnesses to travel to the Northern District would impose unnecessary expenses and would severely inconvenience the witnesses. Def.'s Mot. at 11-12. Black argues that she would bear the expenses of deposing witnesses residing in the Southern District, if the depositions prove to be necessary at all. Oppo. at 8. She also argues that the actual number of witnesses residing in the Southern District who would be deposed is significantly less than what JC Penney Life anticipates because it would be experts rather than the treating medical personnel who would testify at trial. Oppo. at 8.

*5 The Court finds that there are a number of potential witnesses who reside in the Southern District. While it is likely that experts will also testify in deposition or at trial, this does not preclude JC Penney Life from calling the treating medical personnel to testify. Furthermore, that neither plaintiff nor any witnesses reside in the Northern District is troubling. This action appears to have no real connection to the Northern District except that plaintiff's counsel is located here. Thus, the Court finds that this factor weighs in favor of transfer.

### 5. The Interests of Justice

JC Penney Life argues that the interests of justice favor the transfer of this case to the Southern District. Reply at 6. It maintains that the court and potential jurors should not be burdened by this action because nothing connects this action to the Northern District. Reply at 6-7. JC Penney Life further contends that

there is no local interest in this case. Reply at 7. Black argues the Northern District does have an interest in retaining this case because many residents in the Northern District have purchased the same insurance policy in dispute here from JC Penney Life. Decl. of Stephen Booth at 3. However, the fact that residents of the Northern District have purchased the same insurance policy does not necessarily mean that they have an interest in this dispute. The Court is persuaded by JC Penney Life's arguments, and finds that this factor weighs in favor of transfer.

The relevant factors in this case either weigh in of favor transfer to the Southern District or carry no weight at all. While plaintiff's choice of forum is generally afforded considerable weight, because Black is not a resident of the Northern District, her choice of forum is afforded less weight. Thus, balancing all of the relevant factors in this case favors transfer of this case to the Southern District. This Court therefore GRANTS JC Penney Life's motion to transfer.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion to dismiss for improper venue, GRANTS defendant's motion to transfer, and TRANSFERS this action to the Southern District of California.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2002 WL 523568 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**Tab 29**

Westlaw.

610 F.Supp. 271                                                            Page 1
610 F.Supp. 271
**(Cite as: 610 F.Supp. 271)**

**C**United States District Court,
E.D. Wisconsin.
Osie COOK, Jr., and Lisa A. Cook, his wife,
Plaintiffs,
v.
INTERNATIONAL HARVESTER COMPANY, a
foreign corporation, and Mid-Century
Insurance Company, a foreign corporation,
Defendants.
**No. 85-C-0609.**

June 12, 1985.

Products liability action was brought in state court against manufacturer of truck and climbing system, and the action was removed to federal court. Manufacturer moved for transfer of venue to Southern District of Indiana. The District Court, Warren, J., held that, although the question presented was close, proximity to point of manufacture and sale of the products, situs of the subject accident, and residence of critical design engineers signaled propriety of transfer to Southern District of Indiana.

Motion granted.

West Headnotes

**[1] Federal Courts ⊕101**
170Bk101Most Cited Cases
Change of venue statute [28 U.S.C.A. § 1404(a)] is properly invoked to prevent waste of time, money and energy in prosecution and defense of civil actions and to protect litigants, witnesses and public in general against unnecessary inconvenience and expense.

**[2] Federal Courts ⊕103**
170Bk103Most Cited Cases

**[2] Federal Courts ⊕104**
170Bk104Most Cited Cases
In resolving motion for change of venue for convenience of parties and witnesses and in interest of justice, trial judge is vested with broad discretion to weigh all relevant factors in determining if, on balance, the action would proceed more expeditiously and ends of justice would be better served if transfer

were effected; trial judge is not limited to factors of convenience of parties, witnesses, and interests of justice [28 U.S.C.A. §1404(a)], but may consider other factors subsumed for purposes of the statute, among them, ease of access to sources of proof, availability of compulsory process, amount of expense attendant upon production of willing witnesses, relative congestion of calendars of potential transferee and transferor courts, and other practical aspects of expeditiously and conveniently conducting the trial.

**[3] Federal Courts ⊕108**
170Bk108Most Cited Cases
Venue of products liability action against manufacturer of truck and climbing system would be transferred from Eastern District of Wisconsin to Southern District of Indiana where, although both plaintiffs resided in Wisconsin and plaintiffs' likely witnesses were residents of Wisconsin, Indiana was point of manufacture and sale of the product, situs of the subject accident, and place of residence of critical design engineers. 28 U.S.C.A. §§ 1391(a), 1404(a).
**\*272** Michael F. Hupy, Milwaukee, Wis., for plaintiffs.

Timothy J. McDermott and Michael D. Flanagan, Whyte & Hirschboeck, S.C., Milwaukee, Wis., for defendants.

**DECISION AND ORDER**

WARREN, District Judge.

Presently before the Court in this matter is the principal defendant's motion for a change of venue to the United States District Court for the Southern District of Indiana, pursuant to 28 U.S.C. § 1404(a). Having carefully considered the legal memoranda and affidavits filed by the parties in support of and in opposition to the present motion, the Court concludes, for the reasons articulated below, that the motion should be granted.

**BACKGROUND**

This action was initiated on April 2, 1985, when the plaintiffs, both citizens of the State of Wisconsin, filed their complaint in the Wisconsin Circuit Court for Milwaukee County against the principal

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Page 2

defendant, International Harvester Company, a foreign corporation with its principal office and place of business in Illinois, and its worker's compensation insurer, Mid-Century Insurance Company, also a foreign corporation with its principal office and place of business in California. According to the central factual averment of the complaint, plaintiff Osie Cook, Jr., was injured on or about July 26, 1983, in Indiana while using a certain truck and climbing system designed and manufactured by defendant International Harvester Company.

As a result of this accident, this plaintiff purportedly sustained severe and permanent injuries, including past and future medical expenses, a loss of earnings and earning capacity, and pain, suffering, and disability. In addition, his wife, co-plaintiff Lisa A. Cook, has allegedly suffered a loss of society, companionship, and the aid and comfort of her husband as a result of his injuries. By the three, discrete causes of action set forth in their complaint, the plaintiffs charge that defendant International Harvester Company was negligent in failing to safely design the subject truck and climbing system, in failing to adequately test and inspect that equipment to make it safe for its intended and foreseeable use, and in failing to provide users with adequate warning of the dangers attendant upon work with the system. They further allege that, when the truck left the possession of defendant International Harvester Company, it was in such a defective condition as to render it unreasonably dangerous *273 to the ordinary user. It is the plaintiffs' position that the negligence of the principal defendant and the defects in the truck and climbing system that it designed, manufactured, and sold were a substantial cause of their injuries. Accordingly, by their ad damnum clause, the plaintiffs together seek $3,150,000.00 in compensatory damages, along with the costs and disbursements of prosecuting this case and such other relief as the Court might deem just and equitable.

By its petition of April 18, 1985, defendant International Harvester Company removed this action to the United States District Court for the Eastern District of Wisconsin, based on the Court's diversity jurisdiction, as established by 28 U.S.C. § 1332(a). As required by 28 U.S.C. § 1446(d), the removing defendant filed with its petition a $250.00 surety bond, effectively guaranteeing payment of "all costs and disbursements incurred by reason of the removal proceedings should it be determined that the case was not removable or was improperly removed."

Some five days later, on April 23, 1985, International Harvester Company filed its answer to the plaintiffs' complaint, denying all material allegations incorporated therein and raising some five affirmative defenses—namely, that the complaint fails to state a claim upon which relief can be granted, that the plaintiffs have failed to mitigate their damages, that their injuries were further caused by their own negligence for which the defendant is not responsible, that they are barred from any recovery in this matter based on their assumption of risk with respect to the subject accident, and, significantly, that this lawsuit is not properly venued in the Eastern District of Wisconsin. Based on these general denials and affirmative defenses, the defendant seeks dismissal of this action with prejudice, in addition to its costs and expenses and such other relief as the Court might deem appropriate.

By its present motion, defendant International Harvester Company, as indicated above, seeks a change of venue to the United States District Court for the Southern District of Indiana, pursuant to 28 U.S.C. § 1404(a). Invoking the relevant standards to be applied by federal trial judges in assessing the merits of transfer requests such as this, the movant contends that the convenience of the parties and relevant witnesses and the paramount interests of justice warrant a change of venue for all further proceedings. The defendant neatly summarizes its position as follows:

The accident precipitating this action occurred in or near Attica, Fountain County, Indiana. The vehicle in question was manufactured at an International Harvester plant located in Fort Wayne, Indiana. Many of International Harvester's engineers are employed at International Harvester's offices in Fort Wayne, Indiana, including engineers that International Harvester may be required to call at trial to testify regarding the design of the truck in question. In addition, many of the transactional witnesses, such as police officers, accident witnesses, treating medical personnel or other individuals who may have witnessed or investigated the accident in question, in all likelihood reside in Indiana.

Defendants' *Memorandum in Support of Motion for Change of Venue* at 2 (May 3, 1985). Perhaps parenthetically, the movant also suggests that the significant legal issues raised by this lawsuit might be resolved with greater facility by an Indiana federal

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

court, arguably obliged to resolve the parties' claims under Indiana law; that the prosecution and defense of this matter in Indiana would promote the availability of compulsory process for the attendance of unwilling witnesses and decrease the appearance costs of potential willing witnesses; and that the prospect of a jury view of the accident site would be made more realistic if the trial were conducted in the Southern District of Indiana.

Predictably, the plaintiffs oppose the present motion for a change of venue. Noting, as a threshold matter, that there is no legal impediment to venue in this district *274 under the requirements set forth in 28 U.S.C. § 1391(a), the plaintiffs contend that the proposed transfer would not only substantially increase their inconvenience in prosecuting this case but would, moreover, place a considerable burden upon those lay and expert witnesses they will likely call to testify as to the personal impact of the subject accident and the scope and nature of the medical treatments necessitated thereby. In this context, it is the plaintiffs' position that the movant has failed to demonstrate any inconvenience to its own witnesses if this matter is permitted to proceed to trial in this district.

The plaintiffs also dispute the movant's contention that the interests of justice necessitate transfer: Citing those factors typically invoked by the federal trial courts in determining whether justice mandates a change of venue, the plaintiffs argue that, as the parties petitioning for relief, their choice of forum deserves paramount consideration; that the ease of access to relevant sources of proof--including the attendance of all witnesses--would not be promoted but would, in fact, be jeopardized by the proposed transfer; and that nothing about the trial in this matter, including its practical administration and the prospect for a view of the tractor itself, suggests that the trial in this matter would be expedited in the Southern District of Indiana. Finally, the plaintiffs identify nothing in the record to indicate that Indiana and not Wisconsin law would prove dispositive of the resolution of the parties' respective claims. Accordingly, the plaintiffs request that the pending motion be denied and the lawsuit be permitted to proceed as presently venued.

## 28 U.S.C. § 1404(a) AND THE DEFENDANT'S MOTION FOR A CHANGE OF VENUE

[1] As both parties to this action recognize, § 1404(a) of Title 28 of the United States Code empowers the trial judge to "transfer any civil action to any other district or division where it might have been brought ... [f]or the convenience of parties and witnesses, in the interest of justice...." The statute is properly invoked to prevent a waste of time, money, and energy in the prosecution and defense of civil actions and to protect litigants, witnesses, and the public in general against unnecessary inconvenience and expense. *Monihen v. Oliver Machinery Company,* 502 F.Supp. 36, 37-38 (E.D.Pa.1980); *Carter v. Houston Chronicle Publishing Company,* 514 F.Supp. 12, 15 (W.D.Okla.1980).

[2] In resolving a motion such as the present, the trial judge is vested with broad discretion to weigh all relevant factors in determining if, on balance, the action would proceed more expeditiously and the ends of justice would be better served if transfer were effected. *Kline v. Consolidated Rail Corporation,* 461 F.Supp. 326, 327 (E.D.Pa.1978); *Harley-Davidson Motor Company v. Strada,* 78 F.R.D. 521, 526 (E.D.Wis.1978). Although § 1404(a) incorporates only three factors to be considered in determining whether to grant or deny a motion to transfer-- namely, the convenience of the parties, the convenience of the witnesses, and the interests of justice--the trial judge is not limited to those rather broad generalities but may consider other factors subsumed by the broad purposes of the statute-- among them, the ease of access to sources of proof, the availability of compulsory process to compel the attendance of unwilling witnesses, the amount of expense attendant upon the production of willing witnesses, the relative congestion of calendars of the potential transferee and transferor courts, and other practical aspects of expeditiously and conveniently conducting the trial. *Securities & Exchange Commission v. Page Airways, Inc.,* 464 F.Supp. 461, 463 (D.D.C.1978); *Car-Freshner Corporation v. Auto Aid Manufacturing Corporation,* 438 F.Supp. 82, 85 (N.D.N.Y.1977).

Although, as a general rule, the plaintiff's choice of forum is favored in resolving disputes under § 1404(a), *Ginsey Industries, Inc. v. I.T.K. Plastics, Inc.,* 545 F.Supp. 78, 80 (E.D.Pa.1982); *275Burbank International, Ltd. v. Gulf Consolidated International, Inc.,* 441 F.Supp. 819, 822 (N.D.Tex.1977), it is no longer accorded the overriding consideration it may have once enjoyed under the former doctrine of forum non conveniens. *Y4 Design, Ltd. v. Regensteiner Publishing Enterprises, Inc.,* 428 F.Supp. 1067, 1070

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

610 F.Supp. 271
610 F.Supp. 271
(Cite as: 610 F.Supp. 271)

(S.D.N.Y.1977); _Herman v. Doug Frank Development Corporation, 385 F.Supp. 767, 769 (S.D.N.Y.1974)._ Indeed, the trial judge may justifiably find the effect of the plaintiff's choice to be outweighed by other, more compelling considerations, including convenience. _Moore v. Telfon Communications Corporation, 589 F.2d 959, 968 (9th Cir.1978); Monaco v. G.D. Searle & Company, 506 F.Supp. 695, 696 (N.D.Ill.1979)._

[3] Applying these general standards to the circumstances of the present action, the Court notes at the outset that the question presented is a close one. As plaintiffs' counsel states in his affidavit of May 15, 1985, both plaintiffs reside in Langlade County, Wisconsin, and the witnesses likely to be called to testify with respect to plaintiff Osie Cook, Jr.'s pain, suffering, and disability are likewise residents of the State of Wisconsin. In addition, counsel indicates that the principal medical testimony presented at trial will be that of physicians practicing within the state. With respect to these considerations, then, there is little doubt that transfer of this matter to the Southern District of Indiana may pose some inconvenience to the plaintiffs and their several witnesses.

At the same time, the Court opines that the plaintiff's choice of forum in this matter is properly overridden based on the considerable interests and contacts identified within the Southern District of Indiana. This Court's recent experience with personal injury and products liability actions such as this has convinced it of the wisdom of trying these matters, when possible, in close proximity to the point of manufacture and sale of the product, the situs of the subject accident, and, perhaps most significantly, the residence of the critical design engineers. In the present case, these three touchstones signal the propriety of transfer to the Southern District of Indiana.

While the plaintiffs' companion confirmations of no accident eyewitnesses and no medical treatment in the State of Indiana are plainly subject to some consideration, the Court is unprepared, at this pre-discovery stage of the proceedings, to determine conclusively that no additional relevant contacts or interests in Southern Indiana will not be identified prior to the time of trial. In this context, the Court is also of the view that the record compiled to date is not sufficiently clear to establish that a jury view of the scene--as opposed to the vehicle alone--might not

significantly aid the trier of fact in reaching a verdict. Likewise, the Court finds persuasive the prospect that the trial judge might well be compelled to invoke Indiana law in resolving the purely legal issues presented in this lawsuit; in this undertaking, the federal trial judges sitting in Indiana are surely more familiar with the procedural and substantive aspects of the state laws of that jurisdiction. In the end, the Court is convinced, if only narrowly, that the balance of party and witness convenience and the paramount interests of justice do, indeed, augur in favor of transfer of this action to the Southern District of Indiana.

Of course, as the movant accurately notes in its supporting memorandum, a fundamental requirement to transfer under § 1404(a) is a finding that the plaintiff had the unqualified right to bring the action in the transferee court at the time the lawsuit was commenced. _Bashir v. United States Attorney General, 508 F.Supp. 1108, 1109 (E.D.Va.1981); Pierce v. Atlas Powder Company, 430 F.Supp. 79, 81 (D.Del.1977)._ In addressing this critical issue for present purposes, the Court invokes the relevant portion of the federal venue statute, 28 U.S.C. § 1391(a), which reads as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district *276 where all plaintiffs or all defendants reside, or in which the claim arose.

Under this statute, it is generally held that a claim is deemed to have arisen in that judicial district where the relevant contacts are most significant or, stated differently, where a substantial part of the events or omissions giving rise to the cause of action occurred. _United States Fidelity & Guaranty Company v. Alexander, 463 F.Supp. 687, 690 (S.D.Ga.1979); Oce-Industries, Inc. v. Coleman, 487 F.Supp. 548, 552 (N.D.Ill.1980)._ More specifically, the place where injury from some tortious conduct is suffered is typically deemed to be the place where the claim arose for purposes of § 1391(a). _Aluminal Industries, Inc. v. Newtown Commercial Associates, 89 F.R.D. 326, 330 (S.D.N.Y.1980); Marder v. Dembinski, 498 F.Supp. 1323, 1324 (N.D.Ill.1980)._

Although there is no dispute that this action is properly venued for § 1391(a) purposes in this forum, it is equally clear that the action might have been initiated in the United States District Court for the Southern District of Indiana, where the truck accident

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

610 F.Supp. 271
610 F.Supp. 271
**(Cite as: 610 F.Supp. 271)**

occurred and the consequent injuries were apparently suffered. The Court's finding as to the propriety of venue in that forum thus removes the final hurdle to the transfer of this case to the Southern District of Indiana for all further proceedings.

## CONCLUSION

For the reasons stated above, the Court hereby GRANTS the motion of defendant International Harvester Company to transfer this action in its entirety to the United States District Court for the Southern District of Indiana, pursuant to 28 U.S.C. § 1404(a).

610 F.Supp. 271

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**Tab 30**

Westlaw.

248 F.Supp.2d 394
248 F.Supp.2d 394
(Cite as: 248 F.Supp.2d 394)

Page 1

**C**United States District Court,
E.D. Pennsylvania.
Kerry CONNORS, Sr. and Elizabeth Connors, h/w,
v.
R & S PARTS & SERVICES, INC., d/b/a Strauss
Discount Auto.
**Civil Action No. 02-1473.**

March 5, 2003.

Automobile accident victim brought negligence action against other driver's employer. On employer's motion to transfer venue, the District Court, Shapiro, J., held that discretionary transfer of venue was warranted.

Motion granted.

West Headnotes

**[1] Federal Courts** ☞102
170Bk102Most Cited Cases
Prerequisite for discretionary transfer of venue is that action could have been brought in transferee district. 28 U.S.C.A. § 1404(a).

**[2] Federal Courts** ☞101
170Bk101Most Cited Cases

**[2] Federal Courts** ☞104
170Bk104Most Cited Cases

**[2] Federal Courts** ☞105
170Bk105Most Cited Cases
Private interests to be considered when contemplating discretionary transfer of venue include: plaintiff's choice of venue; defendant's preference; where claim

arose; convenience of witnesses to extent they might be unavailable for trial in one forum; and, extent to which records or other documentary evidence would be available for production. 28 U.S.C.A. § 1404(a).

**[3] Federal Courts** ☞104
170Bk104Most Cited Cases
Public interests to be considered when contemplating discretionary transfer of venue include: enforceability of any judgment; practical considerations that could

make trial easy, expeditious or inexpensive; relative administrative difficulty resulting from court congestion; local interest in deciding controversy; relative importance of public policies; and, familiarity of trial judge with applicable state law in diversity cases. 28 U.S.C.A. § 1404(a).

**[4] Federal Courts** ☞144
170Bk144Most Cited Cases
Burden is on moving party to establish that balance of proper interests weighs in favor of discretionary transfer of venue. 28 U.S.C.A. § 1404(a).

**[5] Federal Courts** ☞144
170Bk144Most Cited Cases
Party seeking discretionary transfer of venue is not required to show truly compelling circumstances for change, but rather that, all relevant things considered, case would be better off transferred to another district. 28 U.S.C.A. § 1404(a).

**[6] Federal Courts** ☞113
170Bk113Most Cited Cases
Discretionary transfer of venue, from Pennsylvania where automobile accident plaintiffs resided to New Jersey where corporate defendant had its principal place of business and where accident occurred, was warranted; New Jersey law was applicable, and there was no showing that plaintiffs' medical witnesses would be unable to testify if case was transferred. 28 U.S.C.A. § 1404(a).
*394 Peter M. Hileman, Drake, Hileman & Davis, Doylestown, PA, for Plaintiffs.

*395 John Gerard Devlin, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

SHAPIRO, Senior District Judge.

### BACKGROUND

Plaintiffs Kerry and Elizabeth Connors, Pennsylvania residents, have asserted claims for negligence and vicarious liability arising out of a motor vehicle accident against R & S Parts & Services, Inc. ("R & S"), a corporation with its principal place of business in New Jersey and the

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

248 F.Supp.2d 394
248 F.Supp.2d 394
**(Cite as: 248 F.Supp.2d 394)**

Page 2

named defendant in this diversity action. The accident involved two vehicles, one driven by Kerry Connors and the other by Bruce Brighton, [FN1] alleged to have been an employee of R & S at the time. The two vehicles were traveling westbound on I-78 in Hunterdon County, New Jersey, and the accident was investigated by the New Jersey State Police. The drivers' conduct is governed by the New Jersey Motor Vehicle Code, N.J.S.A. 39:4-1 *et seq.* Before the court is the motion of R & S to transfer venue to the United States District Court for the District of New Jersey under 28 U.S.C. § 1404(a). The motion will be granted.

> FN1. Plaintiffs voluntarily dismissed Bruce Brighton. *See* court order dated November 6, 2002.

### DISCUSSION

[1] To transfer venue under § 1404(a), it is necessary that the action could have been brought in the transferee district. *See Tyler v. Rental Service Corp.,* No. 01-4644, 2002 WL 192590, at *1 (E.D.Pa. Jan. 24, 2002). In an action where jurisdiction is based on diversity of citizenship, as here, venue lies in a "judicial district where any defendant resides, if all defendants reside in the same State [or] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...." 28 U.S.C. § 1391(a). For purposes of venue, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Venue would have been proper in the District of New Jersey under either rationale because R & S maintained its principal place of business in New Jersey at the time this action was commenced, and the accident giving rise to the claims occurred in the transferee district.

[2][3] The court must determine whether a balancing of convenience and the interests of justice favor a trial in the proposed transferee forum. *See* 28 U.S.C. § 1404(a); *Id.* The relevant considerations in deciding a § 1404(a) motion include various public and private interests. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Private interests include the following: plaintiff's choice of venue; defendant's preference; where the claim arose; convenience of the witnesses to the extent they might be unavailable for trial in one of the fora; and, the extent to which records or other documentary evidence would be available for production. *See id.; Williams v. Wies*

*Mkts.,* 2002 WL 80309, at *1 (E.D.Pa. Jan. 18, 2002). Public interests are as follows: enforceability of any judgment; practical considerations that could make the trial easy, expeditious or inexpensive; relative administrative difficulty resulting from court congestion; local interest in deciding the controversy; relative importance of public policies; and, familiarity of the trial judge with the applicable state law in diversity cases. *See Jumara,* 55 F.3d at 879; *Williams,* 2002 WL 80309, at *1.

**\*396** [4][5] The burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer. *See In re United States,* 273 F.3d 380, 388 (3d Cir.2001); 15 Wright et al., Federal Practice and Procedure § 3848, at 383 (2d ed.1986). Though the burden is on the defendant, R & S is not required to show "truly compelling circumstances for ... change ... [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district." *In re United States,* 273 F.3d at 388.

### 1. *Private Interests*

[6] The plaintiff's choice of venue should not be lightly disturbed. *Jumara,* 55 F.3d at 879. "A plaintiff's choice is not conclusive, however, or the courts would not employ a multi-factor test, a defendant could never obtain a change of venue and § 1404(a) would be rendered meaningless." *Tyler,* 2002 WL 192590, at *1. Other than the Connors' choice of venue, the most significant private interest here is the location where the claim arose. The accident occurred in New Jersey and was investigated by New Jersey State Police. In addition, R & S has averred, and plaintiffs have not denied, that both the vehicle operated by Brighton and the vehicle operated by Kerry Connors are owned by New Jersey entities. (Def.'s Mot. to Trans. ¶¶ 8,9.)

The Connors claim that the private-interest witness factor weighs against granting the motion to transfer venue. They state that there are only two non-party witnesses who will testify at trial, both of them doctors with practices located in Pennsylvania, [FN2] and that those witnesses will be inconvenienced if the action were transferred to the District of New Jersey. But the convenience of the witnesses is relevant only if they might be unavailable for trial. *See Jumara,* 55 F.3d at 879. The Connors have not claimed that either physician would be *unable* to testify should the action be transferred; the use of a doctor's videotaped

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

248 F.Supp.2d 394
248 F.Supp.2d 394
**(Cite as: 248 F.Supp.2d 394)**

Page 3

deposition at trial is well-accepted and widespread.

> FN2. Plaintiffs claim that liability is not an issue in this action because of the contents of an accident investigation report made by police, and that the issue of damages alone will require testimony. It is premature of plaintiffs to conclude that liability witnesses will not be required.

**2. Public Interests**

The site of the accident was New Jersey, and the vehicles involved in the accident appear to be New Jersey-owned. Liability would be based on an application of the New Jersey Motor Vehicle Code. Not only are the local interests in the outcome of this action greater in the District of New Jersey, but a New Jersey District Judge would be more familiar with the applicable state law. Thus, the public interests also support the motion to transfer.

### CONCLUSION

The Connors' choice of venue is of significant import, but it is outweighed by the other relevant factors. R & S has established, based on pertinent public and private interests, that this matter should be transferred to the District of New Jersey. [FN3] An appropriate order follows.

> FN3. The Connors, in their response to the motion to transfer, state that, if the motion is granted, their claims against Bruce Brighton should be reinstated before transfer. (Plaintiffs' Ans. to Def.'s Motion, at 4.) Plaintiffs should address reinstatement of the dismissed co-defendant in the District of New Jersey.

### ORDER

AND NOW, this 5th day of March, 2003, upon consideration of Motion of Defendant R & S Parts & Services, Inc., Improperly **\*397** Pled as R & S Strauss, Inc., to Transfer Venue Pursuant to 28 U.S.C.A. § 1404(a) (Paper # 21) and Plaintiffs' Answer to Motion of Defendant R & S Parts & Services, Inc. to Transfer Venue (Paper # 22), it is hereby **ORDERED** that:

1. The Motion of Defendant R & S Parts & Services, Inc. to Transfer Venue Pursuant to 28 U.S.C.A. § 1404(a) (Paper # 21) is **GRANTED.** This action shall

be transferred to the United States District Court for the District of New Jersey, a venue in which the action could have been brought.

248 F.Supp.2d 394

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**Tab 31**

Westlaw.

862 F.Supp. 91
862 F.Supp. 91
(Cite as: 862 F.Supp. 91)

Page 1

**C**United States District Court,
D. Maryland.
Brenda Van Buren DICKEN, Plaintiff,
v.
UNITED STATES of America, Defendant.
**Civ. No. PJM 94-697.**

Aug. 31, 1994.

Prison visitor brought action in Maryland against federal government for injuries sustained due to fall on stairway in prison located in Kansas. On government's motion to transfer action to Kansas, the District Court, Messitte, J., held that transfer was appropriate in light of witness convenience, convenience of parties, applicability of Kansas law, and access to accident site.

Transfer ordered.

West Headnotes

**[1] Federal Courts ☜74**
170Bk74Most Cited Cases
Prison visitor's tort action against government was governed by venue provision specific to tort actions and not general venue provision. 28 U.S.C.A. §§ 1391(e), 1402(b).

**[2] Federal Courts ☜144**
170Bk144Most Cited Cases
Burden is on moving party to show that transfer to another forum under venue statute is proper. 28 U.S.C.A. § 1404(a).

**[3] Federal Courts ☜103**
170Bk103Most Cited Cases
Decision whether to transfer action under doctrine of forum non conveniens is committed to sound discretion of district court. 28 U.S.C.A. § 1404(a).

**[4] Federal Courts ☜104**
170Bk104Most Cited Cases
Factors to be considered in evaluating motion to transfer pursuant to statute include weight accorded plaintiff's choice of venue, witness convenience and access, convenience of parties, and interest of justice. 28 U.S.C.A. § 1404(a).

**[5] Federal Courts ☜113**
170Bk113Most Cited Cases
Transfer of Maryland resident's action to recover for injuries sustained while visiting Kansas prison was warranted by residence of majority of witnesses in Kansas, convenience of witnesses, application of Kansas law, and access to accident site, notwithstanding plaintiff's choice of forum in Maryland. 28 U.S.C.A. § 1404(a).

**[6] United States ☜78(14)**
393k78(14)Most Cited Cases
Under Federal Tort Claims Act (FTCA), negligence claims are governed by tort law of state where alleged wrongful act or omission occurred. 28 U.S.C.A. § 1346(b).

**[7] Federal Courts ☜104**
170Bk104Most Cited Cases
Plaintiff's assertion that docket conditions, possibility of unfair trial, and possibility of harassment weighed against transferring case would not be considered where claims were based on mere conjecture. 28 U.S.C.A. § 1404(a).
*91Robert L. Weinberg, Hyattsville, MD, for plaintiff.

Stuart A. Berman, Asst. U.S. Atty., Baltimore, MD, for defendant.

***OPINION***

MESSITTE, District Judge.

I.

Plaintiff Brenda Van Buren Dicken has filed a personal injury action in this Court in which she seeks damages from the United States for injuries she allegedly sustained when she fell on a stairway while visiting an *92 inmate incarcerated at the United States Penitentiary in Leavenworth, Kansas ("USP Leavenworth"). The United States has moved, pursuant to 28 U.S.C. § 1404, to transfer the action to the District of Kansas, a request which Plaintiff opposes. For the following reasons, Defendant's Motion to Transfer will be granted.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

862 F.Supp. 91
862 F.Supp. 91
**(Cite as: 862 F.Supp. 91)**

Page 2

## BACKGROUND

Plaintiff's action arises under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) and §§ 2671-2680. Plaintiff, a resident of Suitland, Maryland, alleges that on or about June 13, 1993, at approximately 2:00 p.m., while visiting USP in Leavenworth, she "tripped and fell on a staircase, ... thereby causing injury to herself." She contends that the "incident would not have occurred but for the fact that [the United States] negligently failed to properly maintain and inspect said stairway, by allowing said step to deteriorate, thereby creating a dangerous hazard, and/or by allowing the metal trip to become loose, thereby creating an additional dangerous hazard, and that [the United States] knew or reasonably should have known of the danger of maintaining the premises in this manner, but negligently failed to maintain said premises in the area where [she] tripped and fell." More specifically, Plaintiff submits that as a result of the government's negligence, she "caught her heel on the metal strip and fell down approximately five stairs, thereby causing injury to her body"--in the form of a fractured right ankle. She seeks $500,000 in damages.

[1] Plaintiff correctly pleads this Court has subject matter jurisdiction under 28 U.S.C. § 1346(b). She also alleges that venue is proper in this district. But while the District of Maryland is indeed one of the judicial districts in which this case may be pursued, venue arises not under 28 U.S.C. § 1391(e), the statute invoked by plaintiff, but under 28 U.S.C. § 1402(b). That section provides that:

(a)ny civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.

Even where venue is proper, however, an action may be transferred to another judicial district where venue is also proper, pursuant to 28 U.S.C. § 1404(a), which provides that:

(f)or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

[2][3]Section 1404 was intended to enlarge the common law power of the court under the well-established doctrine of *forum non conveniens* and was enacted to prevent the waste of time, energy and

money as well as to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *See Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). The burden is on the moving party to show that transfer to another forum is proper. *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp.582, 592 (E.D.Va.1992). The decision whether to transfer is committed to the sound discretion of the [district court. *Southern Ry. Co. v. Madden*, 235 F.2d 198, 201 (4th Cir.), cert. den. 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed.2d 244 (1956).

### II.

[4][5] Against this background, the Court evaluates the factors traditionally employed in evaluating motions under § 1404. These were well summarized in Judge Thomas Selby Ellis III's exhaustive opinion in *Board v. Trustees, Sheet Metal Workers National Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F.Supp. 1253 (E.D.Va.1988) (hereinafter *Baylor Heating* ), and include: (1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties and (4) the interest of justice. The Court reviews each of these considerations in turn.

#### 1. Plaintiff's Choice of Venue

While a plaintiff's choice of forum is ordinarily accorded considerable weight, "the **\*93** plaintiff's choice of forum is given little weight when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Mims v. Proctor and Gamble Distributing Co.*, 257 F.Supp. 648, 657 (D.S.C.1966) (collecting earlier cases); *see also Chedid v. BoardwalkRegency Corp.*, 756 F.Supp. 941, 945 and n. 5 (E.D.Va.1991). In this case, Plaintiff complains about allegedly unsafe conditions at a prison in Kansas; the accident giving rise to the cause of action occurred in Kansas; and virtually nothing other than plaintiff's convalescence took place in Maryland. Her choice of Maryland as a forum, therefore, is entitled to some deference, but it is limited, particularly to the extent that the remaining factors tend to support transfer.

#### 2. Witness Convenience and Access

A second factor supporting transfer is access in the

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

862 F.Supp. 91
862 F.Supp. 91
(Cite as: 862 F.Supp. 91)

transferee-forum to crucial witnesses and the convenience of these witnesses. In this case, Plaintiff has identified no witnesses other than herself (to relate her version of her fall and to describe her alleged pain and suffering) and her treating doctor (presumably on the issues of pain, suffering and damages). Other unspecified witnesses are said to be available to testify to pain and suffering.

On the other hand, the United States has indicated that it intends to call as possible witnesses up to five individuals who observed the plaintiff's accident or who purportedly have knowledge regarding the facts of the incident and still work at USP Leavenworth: Charles W. Terrell, senior officer specialist; Mike Barnes, a safety specialist; Lewis R. Stowers, a physician's assistant; Dwight Fondren, the safety manager; and Daryl McQuirk, a recreation specialist. Two other potential Government witnesses work near Kansas: David Duncan, a former USP Leavenworth employee who now works at the federal prison medical facility in Springfield, Missouri; and B.J. Harmon, a former safety employee at USP Leavenworth who now works in Kansas City, Missouri. No other potential defense witnesses live in Maryland.

Not only would a greater number of witnesses be convenienced by a transfer to Kansas, *see Mims, 257 F.Supp. at 655;* as witnesses to the fall, their testimony is central to the claim and their credibility likely to be an important issue, *see Baylor Heating, 702 F.Supp. at 1258.*

The District of Kansas, the Court finds, would be more convenient for the great majority of witnesses in this case than the District of Maryland.

3. *Convenience of Parties*

The relative convenience of the parties is also a relevant transfer factor. As Judge Ellis observed in *Baylor Heating,* "this factor is chiefly operative in cases where the plaintiff chooses a forum away from (either party's) home." 702 F.Supp. at 1259. Since in the present case Plaintiff has filed in her home forum, transfer to Kansas would, in the words of Judge Ellis, "only shift the balance of inconvenience from defendant(s) to plaintiff." *Id.* at 1259-1260. On the other hand, in contrast to the convenience of the liability witnesses, Plaintiff would not appear to be substantially inconvenienced by a transfer. Quite

obviously she was able to travel to the District of Kansas in the first place, viz., when the alleged injury occurred. Moreover, unless and until Plaintiff establishes otherwise, the only Maryland-based witnesses who might have to travel to Kansas are herself and her doctor--and the doctor's testimony could easily be presented at trial by means of a videotaped deposition taken in Maryland.

4. *Interest of Justice*

The broad category often referred to as "interest of justice" includes, among others, two factors favoring to transfer in the present case: "the court's familiarity with applicable law" and "access to premises that might have to be viewed." *Baylor Heating, 702 F.Supp. at 1260.*

A. *Familiarity With Applicable Law*

[6] Under the FTCA, negligence claims are governed by the tort law of the state where the alleged wrongful act or omission occurred. 28 U.S.C. § 1346(b). Consequently, the fact that the law of Kansas will **\*94** have to be applied is a factor to be considered in deciding a § 1404 motion. *Van Dusen, 376 U.S. at 643, 84 S.Ct. at 823.* While federal judges in Kansas are not necessarily better qualified than this Court to apply Kansas law, they are undoubtedly more familiar with it, a further consideration justifying transfer. *Cf. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)* (noting public interest in having diversity cases tried in forum familiar with governing law).

B. *Access to Accident Site*

The core issue in this case will be the condition of a staircase--a fixed object that was, is, and will be located at USP Leavenworth and which cannot be readily transported to the District of Maryland. Quite possibly this case will be one that warrants a viewing of the accident site by the finder of fact. Although photos or videotape of the *locus in quo* might suffice, an inspection of the premises may, according to the presiding judge's lights, be desirable. Since cases under the FTCA are tried by the Court without a jury, 28 U.S.C. § 2402, it would be far easier for a judge in the District of Kansas to devote part of a trial day to a view of the premises at USP Leavenworth than it would be for a judge of this

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

District to travel halfway across the country to view the same staircase.

## C. *Other Considerations in Interest of Justice Cited By Plaintiff*

[7] Plaintiff correctly challenges Defendant's limited citation to the "interest of justice" considerations discussed in *Baylor Heating*, since Judge Ellis, in fact, suggests as does Plaintiff here, that docket conditions, the possibility of an unfair trial, and the possibility of harassment are all factors that might weigh in favor of or against transfer. *Id.* at 1260. But Plaintiff does nothing more than assert the "possibility" that she might suffer from these conditions if the present case goes to Kansas. This Court thus has no basis, beyond mere conjecture, to conclude that such conditions would obtain and, accordingly, they reduce not at all the overall calculus favoring transfer.

## 5. *Prior Accident Cases Granting Transfers*

All factors considered, the Court concludes that transfer from the District of Maryland to the District of Kansas is warranted. Summing up, this case closely parallels prior cases in which transfer has been ordered. One prominent example, invoked in *Mims,* is *Southern R.R. Co. v. Madden,* 235 F.2d 198 (4th Cir.), *cert. denied,* 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed.2d 244 (1956), where a tort claim arising from an accident in North Carolina was filed and originally tried in South Carolina. The Fourth Circuit held that the district court's refusal to transfer the case to North Carolina under § 1404 was an abuse of discretion:

> On the question of transfer, it appeared not only that the plaintiff's injury occurred in Charlotte, North Carolina, and that the question of liability was governed by North Carolina law, but also that all of the witnesses to the occurrence and to the treatment of plaintiff in a Charlotte hospital following his injury lived in Charlotte, except one who had moved to West Virginia, and that a view of the locus in quo by the jury, which would be of importance in the trial of the case, could reasonably be had only if the case were tried in Charlotte.... The question of transfer under 28 U.S.C. § 1404(a) was, of course, a matter resting in the sound discretion of the District Judge, but we cannot imagine a case more clearly calling for the exercise of the power of transfer conferred by the statute; and not to transfer it was, we think not a sound exercise of discretion.

235 F.2d at 200-01. *Accord, Leppard v. Jordan's Truck Line,* 110 F.Supp. 811 (E.D.S.C.1953) (transferring from South Carolina to North Carolina personal injury case arising from accident in North Carolina). Following this precedent, the *Mims* court transferred from South Carolina to Tennessee a wrongful death action brought on behalf of South Carolina residents who were killed in an automobile accident that occurred in Tennessee. Later, in *Akers v. Norfolk and Western Railway Co.,* 378 F.2d 78 (4th Cir.1967), the Fourth Circuit granted a writ **\*95** of mandamus ordering the transfer to West Virginia of an action filed in Virginia by a railroad employee who was injured in West Virginia, where the significant witnesses resided. A more recent § 1404 case, *Chedid v. Boardwalk Regency Corp.,* 756 F.Supp. 941 (E.D.Va.1991), catalogues several other cases which were transferred from plaintiff's home state to a district in a state where the accident occurred, where most witnesses lived, and whose substantive law controlled. *Id.* at 945 (collecting cases). [FN1]

> FN1. *See, e.g., Karrels v. Adolph Coors Co.,* 699 F.Supp. 172, 177 (N.D.Ill.1988) granting a transfer motion in a case arising out of a swimming pool accident:
> ... [E]very event of interest to this case happened in Indiana. The plaintiff's accident occurred in Indiana, the events surrounding the accident took place in Indiana, and the plaintiff received emergency medical treatment at a hospital in Indianapolis. Only [plaintiff]'s resident in Illinois and rehabilitation treatment in Illinois provide any contact with Illinois. This case poses the following issues of local law: premises liability; negligence of the plaintiff; apportionment of liability among defendants; and, indemnity. While these issues may not be complex, we believe that the district court for the Southern District of Indiana will be more readily familiar with the applicable law.
> Second, the swimming pool is located in Indiana and the Indiana court will have greater access to this most important source of proof. Indeed, a transfer of a case to the district which encompasses the situs of the accident has been recognized in many cases....
> *Id.* at 177 (citation omitted).

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

862 F.Supp. 91
862 F.Supp. 91
**(Cite as: 862 F.Supp. 91)**

Page 5

In the case at bar, the accident occurred in Kansas on a site which can only be viewed in Kansas, Plaintiff's initial medical treatment took place in Kansas, most potential witnesses are located in or near Kansas, and Kansas law governs Plaintiff's claims and the Government's defenses. Under these circumstances, the United States has satisfied its burden of showing that transfer from the Plaintiff's chosen forum to a more convenient forum is appropriate.

### *CONCLUSION*

For all of these reasons, pursuant to 28 U.S.C. § 1404(a), this Court has determined to transfer this action to the United States District Court for the District of Kansas.

862 F.Supp. 91

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.