**Tab 32**

Westlaw.

303 F.3d 1104                                                                 Page 1
303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433
**(Cite as: 303 F.3d 1104)**

▷United States Court of Appeals,
Ninth Circuit.
DOLE FOOD COMPANY, INC., a Hawaiian
corporation, Plaintiff-Appellant,
v.
Malcolm WATTS; Carl Boenneken, Defendants-
Appellees,
and
Helag Warehousing, a corporation organized under
the laws of the Netherlands;
Helag Storage & Distribution B.V. a corporation
organized under the law of the
Netherlands; Helvetia Lagerhaus Gesellschaft AG,
Inc., a corporation organized
under the laws of the British Virgin Islands; Storerite
Ltd., a corporation
organized under the laws of the United Kingdom;
Eurostore N.V. a corporation
organized under the laws of the Dutch Antilles; Delta
Property Financing,
Ltd., a company organized under the laws of the
United Kingdom, Defendants.
**No. 01-55002.**

Argued and Submitted March 4, 2002.
Filed Sept. 10, 2002.

Corporation sued foreign former employees for fraud
and deceit, conspiracy, constructive fraud, breach of
fiduciary duty, and conversion. Former employees
moved to dismiss for lack of personal jurisdiction,
forum non conveniens, and defective service of
process. The United States District Court for the
Central District of California, A. Howard Matz, J.,
dismissed for lack of personal jurisdiction.
Corporation appealed. The Court of Appeals,
William A. Fletcher, Circuit Judge, held that: (1)
specific personal jurisdiction existed in California,
and (2) dismissal was not warranted on forum non
conveniens grounds.

Reversed and remanded.

West Headnotes

**[1] Federal Courts** ⚛776
170Bk776Most Cited Cases
Court of Appeals reviews de novo a district court's
determination that it does not have personal

jurisdiction over defendant.

**[2] Federal Civil Procedure** ⚛1825
170Ak1825Most Cited Cases
When defendants move to dismiss a complaint for
lack of personal jurisdiction, plaintiffs bear the
burden of demonstrating that jurisdiction is
appropriate. Fed.Rules Civ.Proc.Rule 12(b)(2), 28
U.S.C.A.

**[3] Federal Civil Procedure** ⚛1825
170Ak1825Most Cited Cases
When motion to dismiss for lack of personal
jurisdiction is based on written materials rather than
an evidentiary hearing, plaintiff need only make a
prima facie showing of jurisdictional facts, and, in
such cases, court only inquires into whether plaintiff's
pleadings and affidavits make a prima facie showing
of personal jurisdiction. Fed.Rules Civ.Proc.Rule
12(b)(2), 28 U.S.C.A.

**[4] Federal Courts** ⚛96
170Bk96Most Cited Cases
Although plaintiff seeking to establish personal
jurisdiction cannot simply rest on the bare allegations
of its complaint, uncontroverted allegations in the
complaint must be taken as true, and conflicts
between parties over statements contained in
affidavits must be resolved in plaintiff's favor.

**[5] Federal Courts** ⚛417
170Bk417Most Cited Cases
When there is no applicable federal statute governing
personal jurisdiction, the district court applies the law
of the state in which the district court sits.

**[6] Constitutional Law** ⚛3964
92k3964Most Cited Cases
    (Formerly 92k305(5))

**[6] Courts** ⚛12(2.1)
106k12(2.1)Most Cited Cases
Because California's long-arm jurisdictional statute is
coextensive with federal due process requirements,
the analyses for personal jurisdiction under state law
and federal due process are the same. U.S.C.A.
Const.Amend. 14; West's Ann.Cal.C.C.P. § 410.10.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

303 F.3d 1104                                                                    Page 2
303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433
**(Cite as: 303 F.3d 1104)**

**[7] Constitutional Law** 🔑**3964**
92k3964Most Cited Cases
    (Formerly 92k305(5))
For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least minimum contacts with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

**[8] Constitutional Law** 🔑**3964**
92k3964Most Cited Cases
    (Formerly 92k305(5))

**[8] Federal Courts** 🔑**76.10**
170Bk76.10Most Cited Cases
Even if defendant has not had continuous and systematic contacts with the state sufficient to confer general personal jurisdiction, a court may exercise specific jurisdiction when the following requirements are met: (1) nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof, or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) claim must be one which arises out of or relates to defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

**[9] Federal Courts** 🔑**76.25**
170Bk76.25Most Cited Cases
Purposeful direction or availment requirement for specific personal jurisdiction is analyzed in intentional tort cases under the "effects" test, which requires that defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that defendant knows is likely to be suffered in the forum state.

**[10] Federal Courts** 🔑**76.25**
170Bk76.25Most Cited Cases
"Express aiming" requirement under effects test for purposeful availment aspect of specific personal jurisdiction in intentional tort cases is satisfied when defendant is alleged to have engaged in wrongful conduct targeted at plaintiff whom defendant knows to be a resident of the forum state.

**[11] Federal Courts** 🔑**86**
170Bk86Most Cited Cases
Foreign former employees' alleged fraudulent acts, in

which former employees allegedly induced employer's California managers to implement new importing system and, as a consequence, to enter into significant and detrimental contractual arrangements, targeted employer in California, and thus satisfied "express aiming" requirement under effects test used to determine whether purposeful availment required for specific personal jurisdiction was met in intentional tort case, given that former employees knew that employer's principal place of business was in California, knew that its decisionmakers were located there, and communicated directly with those decisionmakers.

**[12] Federal Courts** 🔑**86**
170Bk86Most Cited Cases
Pursuant to effects test for evaluating purposeful availment requirement for specific personal jurisdiction in intentional tort cases, corporation with principal place of business in California suffered sufficient economic harm in California to support jurisdiction over foreign former employees who allegedly fraudulently induced corporation to implement new importing system to corporation's detriment; corporation was required to pay all costs associated with warehousing space and lease agreement in The Netherlands, and corporation's managers in California allegedly were induced to approve injurious transactions.

**[13] Federal Courts** 🔑**71**
170Bk71Most Cited Cases
Existence of personal jurisdiction in one forum does not necessarily negate the existence of jurisdiction in another forum.

**[14] Federal Courts** 🔑**79**
170Bk79Most Cited Cases
When a forum in which plaintiff corporation has its principal place of business is in the same forum toward which defendants expressly aim their acts, the "effects" test for evaluating purposeful availment aspect of specific personal jurisdiction in intentional tort cases permits that forum to exercise personal jurisdiction.

**[15] Federal Courts** 🔑**76.5**
170Bk76.5Most Cited Cases
Once it has been decided that defendant purposefully established minimum contacts with a forum, he must present a compelling case that the presence of some other considerations would render jurisdiction

303 F.3d 1104                                                                                                           Page 3
303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433
**(Cite as: 303 F.3d 1104)**

unreasonable to defeat personal jurisdiction.

**[16] Constitutional Law** 🔑3964
92k3964Most Cited Cases
     (Formerly 92k305(5))
Seven factors are considered in determining whether
the exercise of jurisdiction comports with fair play
and substantial justice, and is therefore reasonable:
(1) the extent of defendants' purposeful injection into
the forum state's affairs; (2) the burden on defendant
of defending in the forum; (3) the extent of conflict
with the sovereignty of defendant's state; (4) the
forum state's interest in adjudicating the dispute; (5)
the most efficient judicial resolution of the
controversy; (6) the importance of the forum to
plaintiff's interest in convenient and effective relief;
and (7) the existence of an alternative forum.

**[17] Federal Courts** 🔑417
170Bk417Most Cited Cases
Federal due process law, not state forum non
conveniens law, governs the limits of personal
jurisdiction. U.S.C.A. Const.Amend. 14.

**[18] Federal Courts** 🔑86
170Bk86Most Cited Cases
Specific personal jurisdiction existed in California in
corporation's action against former employees who
allegedly induced corporation's California managers
to implement new importing system and, as a
consequence, to enter into significant and detrimental
contractual arrangements, inasmuch as former
employees purposefully established minimum
contacts with California, claims arose out of those
forum contacts, and exercise of jurisdiction was
reasonable, despite burden imposed on former
employees, who were residents of European
countries, in that, during relevant time period, former
employees had employment relationships with
corporation and traveled to United States with some
frequency, California had strong interest in providing
forum for its residents and citizens who were
tortiously injured, and corporation would likely be
required to litigate separate actions in at least two
different countries if California was not proper
forum.

**[19] Federal Courts** 🔑612.1
170Bk612.1Most Cited Cases
Court of Appeals could decide issue of whether
dismissal of tort action was warranted pursuant to
doctrine of forum non conveniens, even though

district court did not reach issue, inasmuch as the
record was sufficiently developed and the issue was
presented and argued to Court of Appeals.

**[20] Federal Courts** 🔑45
170Bk45Most Cited Cases
A party moving to dismiss based on forum non
conveniens bears the burden of showing (1) that there
is an adequate alternative forum, and (2) that the
balance of private and public interest factors favors
dismissal.

**[21] Federal Courts** 🔑45
170Bk45Most Cited Cases
Plaintiff's choice of forum will not be disturbed, on
motion for dismissal under doctrine of forum non
conveniens, unless the private interest and public
interest factors strongly favor trial in the foreign
country.

**[22] Federal Courts** 🔑45
170Bk45Most Cited Cases
Forum non conveniens is an exceptional tool to be
employed sparingly, not a doctrine that compels
plaintiffs to choose the optimal forum for their claim.

**[23] Federal Courts** 🔑45
170Bk45Most Cited Cases
Dismissal was not warranted, on grounds of forum
non conveniens, in corporation's action against
foreign former employees for, inter alia, fraud and
deceit, breach of fiduciary duty, and conversion,
given that one of defendants had not agreed to submit
to jurisdiction of foreign court that purportedly
provided adequate alternative forum for case, and
California had stronger interest in adjudicating
claims.

**[24] Federal Courts** 🔑45
170Bk45Most Cited Cases
An alternative forum ordinarily exists, for purposes
of forum non conveniens doctrine, when defendants
are amenable to service of process in the foreign
forum.

**[25] Federal Courts** 🔑45
170Bk45Most Cited Cases
A foreign forum is adequate, in the context of motion
to dismiss on forum non conveniens grounds, when it
provides plaintiff with a sufficient remedy for his
wrong.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

303 F.3d 1104                                                                                    Page 4
303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433
**(Cite as: 303 F.3d 1104)**

**[26] Federal Courts** ☞45
170Bk45Most Cited Cases
Private interests of the litigants to be considered in
deciding motion to dismiss on forum non conveniens
grounds include ease of access to sources of proof,
availability of compulsory process for attendance of
unwilling witnesses and cost of obtaining attendance
of willing witnesses, and likelihood of a fair trial.

**[27] Federal Courts** ☞45
170Bk45Most Cited Cases
Public interest factors to be considered in deciding
motion to dismiss on forum non conveniens grounds
include court congestion, local interest in resolving
the controversy, and preference for having a forum
apply a law with which it is familiar.

**[28] Action** ☞17
13k17Most Cited Cases
Under California's "governmental interest" choice-of-
law test, the law of the sovereign with the greater
interest in having its law applied controls.
**\*1107** Robert H. Klonoff, Jones, Day, Reavis &
Pogue, Washington, DC, for the appellant.

Simon J. Frankel, Howard, Rice, Nemerovski,
Canady, Falk & Rabkin, San Francisco, California,
for the appellees.

Appeal from the United States District Court for the
Central District of California; A. Howard Matz,
District Judge, Presiding. D.C. No. CV-00- 05307-
AHM.

Before: WARDLAW, W. FLETCHER, Circuit
Judges, and FOGEL, [FN*] District Judge.

> FN* The Honorable Jeremy D. Fogel,
> United States District Judge for the Northern
> District of California, sitting by designation.

WILLIAM A. FLETCHER, Circuit Judge

Dole Food Company ("Dole" or "Dole U.S.")
appeals the district court's dismissal under Federal
Rule of Civil Procedure 12(b)(2) for lack of personal
jurisdiction in California of its suit against Malcolm
Watts and Carl Boenneken, citizens and residents of
European countries. Dole alleges that Watts and
Boenneken fraudulently induced Dole, headquartered
in California, to lease warehouse space in The **\*1108**
Netherlands on unfavorable terms without disclosing

that they had ownership interests in the property. We
reverse the district court's dismissal for lack of
personal jurisdiction, decline to uphold the dismissal
on the alternative ground of *forum non conveniens,*
and remand to the district court for further
proceedings.

I. Background

[1][2][3][4] We review de novo a district court's
determination that it does not have personal
jurisdiction over a defendant. SeeMyers v. Bennett
Law Offices, 238 F.3d 1068, 1071 (9th Cir.2001).
Where defendants move to dismiss a complaint for
lack of personal jurisdiction, plaintiffs bear the
burden of demonstrating that jurisdiction is
appropriate. See Sher v. Johnson, 911 F.2d 1357,
1361 (9th Cir.1990). Where, as here, the motion is
based on written materials rather than an evidentiary
hearing, "the plaintiff need only make a prima facie
showing of jurisdictional facts." Id. In such cases,
"we only inquire into whether [the plaintiff]'s
pleadings and affidavits make a prima facie showing
of personal jurisdiction." Caruth v. Int'l
Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th
Cir.1995). Although the plaintiff cannot "simply rest
on the bare allegations of its complaint," Amba
Marketing Systems, Inc. v. Jobar Int'l, Inc., 551 F.2d
784, 787 (9th Cir.1977), uncontroverted allegations
in the complaint must be taken as true. See AT & T v.
Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th
Cir.1996). Conflicts between parties over statements
contained in affidavits must be resolved in the
plaintiff's favor. See id.; see also Bancroft & Masters,
Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th
Cir.2000) ( "Because the prima facie jurisdictional
analysis requires us to accept the plaintiff's
allegations as true, we must adopt [plaintiff]'s version
of events for purposes of this appeal.").

Plaintiff-appellant Dole U.S. is incorporated under
the laws of Hawaii and has its headquarters and
principal place of business in California.

Defendant-appellee Watts is a citizen of the United
Kingdom and lives in France. According to Dole's
complaint, Watts was an employee of Dole Europe,
which is based and registered in Belgium, from 1971
to 1975, and was an employee of Dole Packaged
Foods ("DPF"), a division of Dole U.S., from 1975
until his retirement in 1998. At the time of all the
events that form the basis for this suit, Watts was
Vice President and Managing Director of European

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

303 F.3d 1104
303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433
(Cite as: 303 F.3d 1104)

Sales and Marketing for DPF. Watts' duties included management of Dole Holland B.V., a Dutch company, from its formation in 1989 until his retirement. Douglas Jocelyn, who worked at the California headquarters of Dole U.S. as Vice-President of International Sales, had direct supervisory responsibilities over Watts.

In his declarations, Watts describes his positions and duties slightly differently. He states that he was employed by Dole Europe from 1971 until his retirement, and that he was "Director of the Belgian and Dutch Dole companies" from an unspecified date until his retirement. Watts avers that he "reported to superiors at Dole in Paris, France" after 1994, but he does not deny that he was supervised by Jocelyn. Indeed, he states that at a time relevant to the events in this suit, Jocelyn gave him a "good" "performance assessment." It is uncontested that from 1971 to 1998, Watts attended management meetings in California once or twice each year, and that Watts currently has at least one California bank account, into which Dole U.S. deposits his pension payments.

Defendant-appellee Boenneken is a German citizen who currently lives in Spain. Dole alleges that Boenneken was employed by DPF as its regional in-house *1109 counsel from an unspecified date until 1987, and that after 1987 he continued to perform legal services as outside counsel for DPF, Dole Europe B.V., and Dole U.S. Boenneken states in a declaration that he was in-house counsel for Dole Europe from 1978 until 1987 or 1988, and that while so employed he visited Dole's California headquarters "two or three times" on matters unrelated to the events at issue in this suit. After that time, he "occasionally performed discrete legal jobs for Dole" until the end of 1992. Boenneken studied at New York University Law School from 1968 to 1971 and obtained a law degree from that institution.

Dole alleges that Watts and Boenneken engaged in an elaborate scheme to defraud Dole U.S. The centerpiece of the scheme was a plan, proposed by Watts and Boenneken, to change Dole's European distribution approach from a "cost and freight" system to a "landed duty paid" ("LDP") system. Dole alleges that, in February 1989, Boenneken attended a presentation on the feasibility of altering Dole's old cost-and-freight system. Dole alleges that Boenneken then outlined in a memorandum to Watts the advantages of the new LDP approach. According to a declaration by Jocelyn, Watts approached Jocelyn

with the idea of switching to the LDP system. Watts acknowledges in his declaration that Jocelyn was responsible for approving the plan.

Dole alleges that Watts and Boenneken communicated frequently with management in Dole's California's offices via telephone, fax, and mail about the design and implementation of the LDP system. Jocelyn states in his declaration that he had numerous communications with Watts regarding the switch, by telephone and fax while Jocelyn was in California, and in face-to-face meetings during Jocelyn's quarterly visits to the Dole Europe offices. Dole alleges that Watts also traveled to California on multiple occasions and, while in California, encouraged Dole managers to change to the LDP system, advising them that they could save up to $2 million annually. According to Dole, it relied on the information and advice presented by Watts and Boenneken in deciding to change to the LDP system.

Dole alleges that after it approved the change, Watts and Boenneken secretly joined with Aart van der Meer to create and own a new entity, Spedtrans Warehousing, to lease warehouse space to Dole at exorbitant rates. Dole alleges that Watts, Boenneken, and van der Meer signed a "Confidentiality Agreement" among themselves to ensure that their arrangement would not be disclosed to others.

Watts states in his declaration that van der Meer offered him an interest in the new warehousing entity, but that he refused for ethical reasons. According to Watts, van der Meer persisted, telling Watts that Boenneken had already drafted the Confidentiality Agreement; Watts then threatened to terminate Dole's dealings with van der Meer, but continued with the lease transactions because Jocelyn was pressuring him to complete the deal. Watts states that he never visited California in connection with the negotiation of these leases, but he does not deny communicating with Jocelyn about the leases by telephone and fax while Jocelyn was in California, and does not deny discussing the leases in California while visiting for other purposes.

Boenneken does not acknowledge what Dole alleges to be his role in initiating the proposed change. Rather, he states in his declaration that he was "informed and believed that sometime during 1988 Dole decided to make changes to its distribution system in Europe, including leasing additional warehouse space in Rotterdam. *1110 Dole was

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

303 F.3d 1104                                                                                          Page 6
303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433
**(Cite as: 303 F.3d 1104)**

negotiating with one Aart van der Meer concerning obtaining such additional space for Dole." Boenneken states that van der Meer retained him for "legal advice" with respect to negotiations with Dole to lease warehouse space, and that he engaged in "arms length" negotiations with Dole. Boenneken claims that he "do[es] not recall" having any communications with Dole employees in the United States concerning the leases at issue, but, in any event, "any communication I might have had would have been on behalf of Mr. van der Meer." Boenneken states that van der Meer told him that Watts agreed to the proposed partnership, and, on that basis, Boenneken drafted and signed the partnership agreement on their behalf.

Jocelyn states in his declaration that during a 1989 visit to California for Dole's International Management Meeting, Watts aggressively pitched to Jocelyn and other California managers the benefits of leasing warehouse space from Spedtrans Warehousing in order to implement the new LDP system. Jocelyn states that he relied on Watts and Boenneken to negotiate a lease on behalf of Dole with van der Meer. According to Jocelyn, neither Watts nor Boenneken ever disclosed any interest in Spedtrans Warehousing.

Dole formed a new subsidiary in Holland--Dole Holland, B.V.--to provide the necessary warehouse services to DPF. After approval by Jocelyn and Dole's in-house counsel in California, Dole Holland entered into a lease agreement for warehouse space with Spedtrans Warehousing on November 20, 1989, which Watts signed on behalf of Dole Holland. According to Dole, the rental rate in the lease substantially exceeded the fair market rate for such space in Rotterdam. On December 18, 1989, Jocelyn (for Dole U.S.) and Watts (for Dole Holland) entered into a "Service Agreement," under which Dole U.S. agreed to reimburse Dole Holland for costs associated with Dole Holland's lease of warehouse space. According to Jocelyn, Watts and Boenneken were "instrumental" in devising the terms of the Service Agreement. As a result of the Service Agreement, Dole U.S. was ultimately responsible for all of the costs associated with leasing the warehouse space. Watts later was given authority by Dole U.S. to approve amendments to the lease. According to Dole, Watts exercised this authority to rent additional space and to sign a second lease at above-market rates.

Dole sued Watts and Boenneken in federal district court in California, alleging (1) fraud and deceit, (2) conspiracy, (3) constructive fraud, (4) breach of fiduciary duty, and (5) conversion. Watts and Boenneken moved for dismissal on grounds of lack of personal jurisdiction, *forum non conveniens,* and defective service of process. The district court dismissed the action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, without reaching the other grounds. Dole timely appealed.

II. Personal Jurisdiction

[5][6][7] Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. *See Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir.1998). Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. *See id.* (citing Cal.Code Civ. Proc. § 410.10). For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *\*1111International Shoe Co. v. Washington,* 326U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks and citation omitted).

[8] Even if a defendant has not had continuous and systematic contacts with the state sufficient to confer "general jurisdiction," a court may exercise "specific jurisdiction" when the following requirements are met:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Caruth,* 59 F.3d at 127 (quoting *Core-Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1485 (9th Cir.1993))

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

303 F.3d 1104
303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433
**(Cite as: 303 F.3d 1104)**

(quoting _Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir.1987)_) (quotation marks omitted) (emphasis added). We analyze these three requirements in turn.

A. Purposeful Direction or Availment

[9] Under our precedents, the purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the "effects" test derived from _Calder v. Jones,_ 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In _Calder,_ the Supreme Court determined that California courts could exercise jurisdiction over an editor and a reporter who caused a defamatory article about a California resident to be published in Florida and circulated in California, on the ground that the tortious conduct was "expressly aimed" at the forum state in which harm occurred. _See id._ at 788-89, 104 S.Ct. 1482. As we have previously recognized, _Calder_ stands for the proposition that purposeful availment is satisfied even by a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." _Haisten v. Grass Valley Med. Reimbursement Fund,_ 784 F.2d 1392, 1397 (9th Cir.1986) (emphases omitted); _see also Bancroft & Masters,_ 223 F.3d at 1087 ("In _Calder,_ the Supreme Court held that a foreign act that is both aimed at and has effect in the forum state satisfies the purposeful availment prong of the specific jurisdiction analysis."). Based on these interpretations of _Calder,_ the "effects" test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. _Cf. Bancroft & Masters,_ 223 F.3d at 1087;_Caruth,_ 59 F.3d at 128.

1. Express Aiming at the Forum State

[10][11] Because it is clear that Dole has sufficiently alleged that Watts and Boenneken acted intentionally, we skip to the "express aiming" requirement. That requirement is satisfied when "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." _Bancroft & Masters,_ 223 F.3d at 1087. In _Bancroft & Masters,_ we found "express aiming" at California when the defendant sent a letter to Virginia with the alleged intent and result of disrupting the plaintiff's California business. _See id._

In this case, Dole alleges that Watts and Boenneken's acts "individually targeted Dole in California." The allegations of "targeting" the forum state in this case are stronger than in *1112_Bancroft & Masters,_ 223 F.3d at 1087, where the non-resident defendant was subject to personal jurisdiction based on his sending a letter to an entirely different forum. Because Watts and Boenneken knew that Dole's principal place of business was in California, knew that the decisionmakers for Dole were located in California, and communicated directly with those California decisionmakers, we conclude that their actions were "expressly aimed" at the forum state. _See Wien Air Alaska, Inc. v. Brandt,_ 195 F.3d 208, 212 (5th Cir.1999) (finding purposeful availment where the foreign attorney engaged in numerous contacts with a client residing in Texas [the forum state] in the form of letters, faxes, and phone calls which contained fraudulent misrepresentations and thereby caused foreseeable harm in the forum); _Data Disc, Inc. v. Sys. Tech. Assoc.,_ 557 F.2d 1280, 1288 (9th Cir.1977) ("The inducement of reliance in California is a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action arises out of that inducement."). Watts and Boenneken's fraudulent communications were not "untargeted negligence," but rather were "performed for the very purpose of having their consequences felt in the forum state." _Brainerd v. Governors of the Univ. of Alberta,_ 873 F.2d 1257, 1259-60 (9th Cir.1989) (finding specific jurisdiction in Arizona over Canadian defendants who had made allegedly defamatory statements in response to telephone calls directed to them in Canada).

A finding of "express aiming" in this case does not mean "that a foreign act with foreseeable effects in the forum states always gives rise to specific jurisdiction." _Bancroft & Masters,_ 223 F.3d at 1087. For example, we do not believe that the mere submission of a fraudulent time card by Dole employees in Europe would constitute a showing of express aiming at California. Nor do we believe that personal jurisdiction may be asserted whenever a foreign employee communicates with a corporation's headquarters about foreign operations. Here, however, Watts and Boenneken are alleged to have communicated directly with Dole's California managers to induce them to implement a new importing system, and, as a consequence, to enter into significant and detrimental contractual arrangements. Moreover, they are alleged to have communicated with Dole managers in California with

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

303 F.3d 1104                                                                                           Page 8
303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433
(Cite as: 303 F.3d 1104)

the specific intent to cause injury to Dole U.S. by means of those very communications.

2. Causing Harm in the Forum State

[12] Showing that the harm caused by Watts and Boenneken was suffered in California (rather than some other place) is not as straightforward as showing that their acts were expressly aimed at that state. At the outset, we are faced with the question of how much harm, or what proportion of the overall harm, must be suffered in California. In *Core-Vent,* one judge, writing for the majority as to the result, wrote that the "brunt of the harm" must be suffered in the forum state. *See* 11 F.3d at 1486. However, a dissenter in *Core-Vent* disagreed, writing that "[i]n *Calder,* the fact that the author and editor knew the brunt of the harm from their article would be suffered in California was a factor that weighed in favor of purposeful direction, but it was not a prerequisite." *Core-Vent, 11 F.3d at 1492* (Wallace, C.J., dissenting). As the dissenter correctly noted, the Supreme Court in *Keeton v. Hustler Magazine, 465 U.S. 770, 780, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984),* decided the same day as *Calder,* found jurisdiction proper even though it was "undoubtedly true that the bulk of the harm done to petitioner occurred outside [the forum]." Because the third judge joined the dissenter on the issue of purposeful availment, we believe that the dissenter's reading is controlling in *Core-Vent* as to the proportion *1113 of harm in the forum necessary to establish personal jurisdiction under the "effects" test. *See Core-Vent, 11 F.3d at 1491* (Fernandez, J., concurring) ("I agree with Chief Judge Wallace that purposeful availment can be found in this case."). We recognize, however, that our subsequent cases have employed the "brunt of the harm" language from *Core-Vent. See Bancroft & Masters, 223 F.3d at 1087* (citing *Panavision* ); *Panavision, 141 F.3d at 1321* (quoting *Core-Vent* ); *Caruth, 59 F.3d at 128* (quoting *Core-Vent* ).

Despite the apparent conflict between the *Core-Vent* line of cases and *Keeton,* we need not decide whether the effects test requires that the brunt of the harm have occurred within the forum state, or merely that some significant amount of harm have occurred there. *See Keeton, 104 S.Ct. at 1477-78* (holding that there was personal jurisdiction despite petitioner suffering only "a small proportion of her total claimed injury" within the forum state). We hold that under either standard, Dole suffered sufficient economic harm in California to give rise to

jurisdiction in California.

In this case, the harm appears to have been suffered by Dole U.S. rather than its European subsidiaries. Under the terms of the Service Agreement, Dole U.S., through Dole Holland, pays *all* of the costs associated with the warehousing space and lease agreement. Thus, Dole U.S. suffers sufficient harm from the lease to warrant jurisdiction, if the harm to Dole U.S. was suffered in California.

We therefore face the somewhat metaphysical question of where a corporation suffers economic harm. Several possibilities exist. The harm could be thought to have been suffered where the bad acts occurred; where most of (or at least a threshold fraction of) the corporation's shareholders are located; where the corporation has its principal place of business; or where the corporation is incorporated. However, these possibilities are not mutually exclusive. We need not choose one criterion as the predominant indicator of where a corporate plaintiff suffers economic injury. Nor do we need to choose a single forum, for jurisdictionally sufficient harm may be suffered in multiple forums. *See Core-Vent, 11 F.3d at 1486* ("A corporation does not suffer harm in a *particular* geographic location in the same sense that an individual does.") (emphasis added).

[13] Our precedents recognize that in appropriate circumstances a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business. In this case, most of the alleged bad acts appear to have been performed from Europe; indeed, based on such a "bad acts" analysis, Watts and Boenneken argue that jurisdiction is proper in Europe rather than here. But, as we have just noted, the existence of jurisdiction in one forum does not necessarily negate the existence of jurisdiction in another forum.

In *Panavision,* we held that jurisdictionally sufficient harm was suffered by Panavision (a Delaware limited partnership and subsequently a Delaware corporation) in California, where it maintained its principal place of business. *See* 141 F.3d at 1322 n. 2. Although the alleged trademark violations in that case occurred in cyberspace, we found ultimately that the scheme of registering Panavision's domain name in order to extort money from Panavision injured it in California. *Id.* at 1322. *See also Core-Vent, 11 F.3d at 1487* ("Core-Vent's principal place of business was in the forum state and thus any economic effects were

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

303 F.3d 1104
303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433
**(Cite as: 303 F.3d 1104)**

arguably ultimately felt there."). In a variety of contexts, other circuit courts have also relied in significant part on the principal place of business in determining the location of a corporation's \*1114 place of economic injury. _See, e.g., Dakota Indus., Inc. v. Dakota Sportswear, Inc.,_ 946 F.2d 1384, 1388-89 (8th Cir.1991) (The plaintiff corporation "has its principal place of business in the forum state and thus suffered the economic injury there."); _Weltover, Inc. v. Republic of Argentina,_ 941 F.2d 145, 152 (2d Cir.1991) (stating that a corporate plaintiff's financial injuries are directly felt in that plaintiff's principal place of business or place of incorporation); _Pittway Corp. v. Lockheed Aircraft Corp.,_ 641 F.2d 524, 528 (7th Cir.1981) ("The harm that Pittway suffered and for which it seeks to be compensated was purely economic and as such was sustained in Illinois, where Pittway's principal place of business is located and where the repair decision was made eventually resulting in all the damages claimed"); _Engine Specialties, Inc. v. Bombardier Ltd.,_ 605 F.2d 1,19 (1st Cir.1979) ("The place of injury is where plaintiff suffered the harm, i.e., at its place of business, Pennsylvania.").

[14] We find this line of cases applicable here. The principal place of business of Dole U.S. is California, and Dole managers in California were induced to approve the injurious transactions. Under these circumstances, we find that Dole U.S. suffered jurisdictionally sufficient economic harm in California. Because of the separate "express aiming" requirement, _see supra,_ our holding that Dole suffered economic harm in California does _not_ mean that the forum in which a corporation has its principal place of business will always have personal jurisdiction over foreign defendants. But when a forum in which a plaintiff corporation has its principal place of business is in the same forum toward which defendants expressly aim their acts, the "effects" test permits that forum to exercise personal jurisdiction.

B. Claims Arising Out of Defendants' Activities

It is obvious that Dole's claims against Watts and Boenneken arise directly out of their contacts with the forum. As recounted above, the contacts between Watts and Boenneken and the forum state are integral and essential parts of the alleged fraudulent scheme on which Dole bases its suit.

C. Reasonableness

[15][16] Once it has been decided that a defendant purposefully established minimum contacts with a forum, "he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" in order to defeat personal jurisdiction. _Burger King Corp. v. Rudzewicz,_ 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In determining whether the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," we consider seven factors under our case law: (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. _See, e. g., Caruth,_ 59 F.3d at 128-29. We consider these factors in turn.

1. Purposeful Injection

We have already determined that Watts and Boenneken directed their activities to the forum to a degree sufficient to satisfy the purposeful availment requirement. There may be circumstances under which \*1115 the level of purposeful injection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction, but this is not such a case. In _Panavision,_ we found that the purposeful injection factor weighed strongly in plaintiff's favor based only on the facts that defendant acted "knowing that [his registration of the domain name] would likely injure Panavision in California," and that the defendant sent a letter to Panavision in California to demand money in exchange for the registration. 141 F.3d at 1323. By comparison, Watts and Boenneken's alleged interjection into California in this case is significantly greater. Not only did they know that their scheme would injure Dole U.S., which they knew had its principal place of business in California, but they also engaged in repeated communications with Dole managers in California in furtherance of their alleged scheme.

2. Burden on Defendants

The fact that Watts and Boenneken live in Europe

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

303 F.3d 1104                                                                                                    Page 10
303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433
(Cite as: 303 F.3d 1104)

weighs against jurisdiction. *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). Both Watts and Boenneken state in their declarations (in identical wording) that "it would be impossibly expensive for me as an individual in Europe to defend myself against Dole's complaint, and I would simply be unable to participate in such litigation."

We recognize that it would be expensive and inconvenient for Watts and Boenneken to defend themselves in California. But this factor is not dispositive. "[M]odern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra v. Nat'l Enquirer, Inc.,* 854 F.2d 1191, 1199 (9th Cir.1988). Moreover, several facts mitigate the burden in this case. Both Watts and Boenneken are able to speak, read, and write English with ease. Boenneken has received a law degree from New York University and is intimately familiar with the U.S. legal system. Both Watts and Boenneken have traveled to the United States on several occasions in the past for business; indeed, as noted above, some of Watts' past travel is directly related to the events that gave rise to this suit.

### 3. Conflict with the Sovereignty of Defendant's State

The third factor, conflict with the sovereignty of a defendant's state, entails an examination of the competing sovereign interests in regulating Watts' and Boenneken's behavior. We begin by evaluating their U.S.-based relationships. Watts and Boenneken do not now have significant ongoing relationships with the United States, but during the time relevant to this suit both defendants had employment relationships with Dole U.S. and both traveled to the United States with some frequency.

The extent of conflict with a foreign state's interest in adjudicating this suit is unclear. At this time, Watts and Boenneken reside in France and Spain, but none of the acts in question have any connection to either of those countries. The Netherlands might have a sovereign interest because the warehouse space is located there, but the validity of the leases or title to any property in The Netherlands is not directly challenged in this case. In sum, this factor only

weakly favors defendants if at all.

### 4. California's Interest

[17] California has a strong interest in providing a forum for its residents and **1116** citizens who are tortiously injured. *See Panavision,* 141 F.3d at 1323. Since Dole's principal place of business is California, this factor favors Dole. The fact that Dole, both directly and through subsidiaries, conducts business in many countries does not alter this conclusion. We recognize that one California case suggests that the California state rule of *forum non conveniens* rule is intended primarily to benefit plaintiffs whose *sole* residence is in California, rather than corporations with substantial operations in many states. *See Gould, Inc. v. Health Sciences, Inc.,* 54 Cal.App.3d 687, 693, 126 Cal.Rptr. 726 (1976). However, in *Gould,* the corporation's principal place of business was Illinois, whereas Dole's principal place of business is California. Further, while *forum non conveniens* and personal jurisdiction analyses overlap, they are by no means identical. Finally, federal due process law, not California *forum non conveniens* law, governs the limits of personal jurisdiction.

### 5. Efficient Resolution

On the current record, it is difficult to determine whether California would be the most efficient forum for resolution of the dispute. The parties dispute which substantive law--California or Dutch-should govern this dispute. The complaint alleges misrepresentations against a California-based company by its fiduciaries based on communications to and from California, but the underlying concealment and damages involve lease transactions in Europe. There are some witnesses in Europe and some in California, so neither forum has a clear efficiency advantage with respect to witnesses. The choice-of-law analysis, discussed *infra* Part III.C, suggests that California law would be applicable, but at this stage this factor cannot be said to favor either party.

### 6. Convenience to Dole

If California is not a proper forum, then Dole would be required, in all likelihood, to litigate separate suits in at least two different countries, for there does not appear to be any other single forum that could exercise personal jurisdiction over both Watts and

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

303 F.3d 1104                                                                                                    Page 11
303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433
(Cite as: 303 F.3d 1104)

Boenneken. However, in this circuit, the plaintiff's convenience is not of paramount importance. *See Caruth,* 59 F.3d at 129. Further, Dole's status as a multinational corporation somewhat mitigates the inconvenience of litigating abroad, so this factor does not weigh overwhelmingly in Dole's favor.

7. Alternative Forum

Watts and Boenneken contend that Dole has the burden of proving the unavailability of an alternative forum and that it has failed to do so. *See Panavision,* 141 F.3d at 1324;*Core-Vent,* 11 F.3d at 1490;*but see Ballard v. Savage,* 65 F.3d 1495, 1502 (9th Cir.1995) (stating that defendant "erroneously assum[ed] that the burden is on [plaintiff] to prove the lack of an alternate forum"). In response, Dole contends that this factor should only be considered *after* defendants otherwise satisfy the burden of overcoming the presumption of reasonableness. *See Sinatra,* 854 F.2d at 1201 ("Whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." (quoting *Corporate Inv. Business Brokers v. Melcher,* 824 F.2d 786, 791 (9th Cir.1987) (alteration omitted))). Our case law appears to be split on this issue, but we need not resolve the split in this case. In their papers, defendants suggest that the District Court in Rotterdam is an adequate alternative forum; however, at oral argument, defendants' counsel conceded that there might not be any single alternative forum that has subject matter and personal jurisdiction over all parties and issues. *1117 Therefore, regardless of which side has the burden, this factor favors Dole.

8. Balancing the Reasonableness Factors

[18] Relying on our decision in *Core-Vent,* and considering all the relevant factors, Watts and Boenneken contend that the exercise of personal jurisdiction would be unreasonable in this case. The plaintiff in *Core-Vent* alleged that the defendants published articles in two internationally circulated dental journals that defamed dental implants manufactured by Core-Vent. *See Core-Vent,* 11 F.3d at 1484. Although *Core-Vent* also involved a California-based corporation as plaintiff and individual foreign citizens as defendants, that case is distinguishable in several important respects. First, the individual defendants in *Core-Vent* were Swedish doctors who had no U.S.-based relationships whatsoever. *See id.* at 1489. Second, the defendant doctors' only relevant contacts with the United States

were the defamatory effects of two articles that they wrote in the two dental journals. There was no allegation that California readers were the "primary audience" for what they wrote, or that defendants even knew that the journals would be circulated in California. *Id.* at 1486. In contrast, Watts and Boenneken had several U.S.-based relationships, including employment relationships with Dole. More importantly, the primary--indeed the only-- intended audience of the defendants' communication was Dole U.S., headquartered in California.

A number of our cases emphasize the heavy burden on both domestic and foreign defendants in proving a "compelling case" of unreasonableness to defeat jurisdiction. For example, in *Roth v. Garcia Marquez,* 942 F.2d 617 (9th Cir.1991), this court found personal jurisdiction in California over two foreign individual defendants, despite the fact that only two of the reasonableness factors favored plaintiff while three factors favored defendants, and despite the fact that defendants "ma[d]e a strong argument ... that the exercise of jurisdiction may be unreasonable." *Id.* at 625.*See also Panavision,* 141 F.3d at 1324 ("[Defendant] failed to present a compelling case that district court's exercise of jurisdiction in California would be unreasonable."); *Ballard,* 65 F.3d at 1502 (finding personal jurisdiction reasonable over foreign defendant bank); *Caruth,* 59 F.3d at 129 ("[G]iven the closeness of the factors, we conclude that [defendant] has not presented a 'compelling case' that exercising jurisdiction over it would be unreasonable."); *Sinatra,* 854 F.2d at 1201 (finding personal jurisdiction reasonable over foreign defendant clinic). In this case, only two of the seven factors--burden on defendants and sovereignty conflicts--favor Watts and Boenneken. By their very nature, these two factors are likely to favor foreign defendants every time personal jurisdiction in the United States is considered. *See Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1333 (9th Cir.1984) ("[I]f given controlling weight, [the sovereignty factor] would always prevent suit against a foreign national in a United States court."). When we consider all of the factors, we conclude that Watts and Boenneken have failed to overcome the strong presumption of reasonableness of the assertion of personal jurisdiction.

III. Forum Non Conveniens

[19] Because we find personal jurisdiction over defendants, we reach their contention that the action

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

303 F.3d 1104
303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433
**(Cite as: 303 F.3d 1104)**

Page 12

should be dismissed based on the doctrine of *forum non conveniens*. The district court did not reach this issue, but both parties agreed at oral argument that it is properly before us for decision. Because the record is sufficiently developed and the issue has been presented and argued to us, we agree that it *1118 is appropriate for us to decide the question.

[20][21][22][23] A party moving to dismiss based on *forum non conveniens* bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142-43 (9th Cir.2001). The plaintiff's choice of forum will not be disturbed unless the "private interest" and "public interest" factors strongly favor trial in the foreign country. *See Gates Learjet*, 743 F.2d at 1334. In *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir.1983), this court noted that "the standard to be applied [to a motion for dismissal on the ground of *forum non conveniens*] is whether ... defendants have made a clear showing of facts which ... establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." (internal quotation marks and citation omitted). *Forum non conveniens* is "an exceptional tool to be employed sparingly,[not a] ... doctrine that compels plaintiffs to choose the optimal forum for their claim." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir.2000). For the reasons that follow, we conclude that defendants have not shown that they are entitled to a dismissal for *forum non conveniens*.

A. Adequate Alternative Forum

[24][25] An alternative forum ordinarily exists when defendants are amenable to service of process in the foreign forum. *See Lueck*, 236 F.3d at 1143 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). A foreign forum is adequate when it provides the plaintiff with a sufficient remedy for his wrong. *See id.*

Watts and Boenneken argue that The Netherlands provides an adequate alternative forum to hear Dole's claims. The Municipal Court of Rotterdam is already hearing a dispute between Dole and the current lessor of the warehouse space in which the issue is the enforceability of the lease agreements. Defendants claim that the District Court of Rotterdam, which allegedly coordinates its proceedings with the Municipal Court, would have jurisdiction over any

claims that Dole could not assert in Municipal Court, including all the claims Dole has asserted in this action. Defendants argue that the adequacy of the Dutch forum is supported by the Service Agreement's choice-of-law/forum selection clause stating that the "validity, interpretation and performance of this [Service] Agreement is to be construed and enforced in accordance with the laws of The Netherlands and the courts in Rotterdam shall be competent."

Dole responds that while defendants have asserted the potential existence of subject matter jurisdiction in The Netherlands, they have failed to establish that they could be sued personally there. Neither defendant is a citizen or resident of The Netherlands, nor has either agreed to waive any statute of limitations defenses under the law of The Netherlands. Only Watts has agreed to submit to personal jurisdiction in The Netherlands. Thus, even assuming that there is no valid statute of limitations defense, it is unclear whether there is an alternative forum in The Netherlands, for it is unclear that Boenneken could be compelled to appear in a court there. *Cf. Lueck*, 236 F.3d at 1143 (holding that alternative forum was available because all defendants had indicated that they would be amenable to service of process in New Zealand); *Alpine View Co. Ltd. v. Atlas Copco*, 205 F.3d 208, 221 (5th Cir.2000) ("A foreign forum is available when the *entire case and all parties* can come within the jurisdiction of that forum.") (emphasis added); *1119 *Stangvik v. Shiley*, 54 Cal.3d 744, 752, 1 Cal.Rptr.2d 556, 819 P.2d 14 (1991) (relying on defendants' stipulations that they would all submit to jurisdiction in Sweden or Norway, as well as to tolling of the statute of limitations during pendency of the actions in California). Finally, the applicability of the purported "forum selection" clause to this action is uncertain, to say the least, because Dole does not challenge the terms of the Service Agreement, but rather alleges fraud and breach of fiduciary duty.

B. Private Interest Factors

[26] Private interests of the litigants include ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; and likelihood of a fair trial. *See, e.g., Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The relative ease of access to proof and cost of calling witnesses are close questions because

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

303 F.3d 1104                                                                                               Page 13
303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433
**(Cite as: 303 F.3d 1104)**

both sides have witnesses in California and Europe, and the relative numbers of witnesses are unclear from the record. Although the parties have not addressed the availability of formal compulsory process for unwilling witnesses in the respective forums, defendants have argued that it would be more difficult to convince its third-party witnesses (including European associates and Dutch experts) to travel to California than vice-versa, given that Dole's witnesses are (or were) its own employees. *See Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1451 (9th Cir.1990)* ("Because [defendant] cannot compel these witnesses to appear before U.S. courts, [defendant's] defense and trial preparation could suffer some impediment if the U.S. courts were to retain control of this litigation."). The possibility that litigation could be coordinated with the ongoing litigation in the Municipal Court of Rotterdam might favor dismissal, but the utility of such coordination (even if feasible) is in serious doubt given the apparent unwillingness of Boenneken to appear voluntarily in a Dutch court. Moreover, even if a single suit were possible in The Netherlands, the extent of overlap in witnesses and evidence with the Municipal Court suit is unclear from the record.

C. Public Interest Factors

[27][28] Public interest factors include court congestion, local interest in resolving the controversy, and preference for having a forum apply a law with which it is familiar. *See Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 771 (9th Cir.1991)*. There is no evidence before us about relative court congestion in The Netherlands and in California. Defendants argue that California has little interest in resolving this dispute "about Dole's European importation and distribution system." But Dole's core claims allege fraud and breach of fiduciary duty perpetrated against Dole U.S., and California has an interest in protecting corporations based in California. The Netherlands' interest in the litigation, stemming from the location of the warehouse space, seems secondary to California's interest in adjudicating claims of fraud and breach of fiduciary duty perpetrated against a company based in California. The determination of applicable law requires a choice of law analysis under California's "governmental interest" approach. *See Arno v. Club Med Inc., 22 F.3d 1464, 1467 (9th Cir.1994)*. Under this test, the law of the sovereign with the greater interest in having its law applied controls. *See id.* We

do not determine here which law applies, but we do note that it is not apparent that the relevant provisions of Dutch and California law actually conflict, and that at the very least it is not clear that Dutch law would be applicable in the event of a conflict.

**\*1120 Conclusion**

We reverse the district court's dismissal for lack of personal jurisdiction, decline to uphold the dismissal on the alternate ground of *forum non conveniens,* and remand to the district court for further proceedings.

REVERSED and REMANDED.

•DOLE FOOD COMPANY, INC., Plaintiff-Appellant, v. Malcolm WATTS and Carl Boenneken, Defendants-Appellees., 2001 WL 34121299 (Appellate Brief) (C.A.9 April 17, 2001), Appellant Dole Food Company, Inc.'s Opening Brief on Appeal

•DOLE FOOD COMPANY, INC., Plaintiff/Appellant, v. Malcolm WATTS and Carl Boenneken, Defendants/Appellees., 2001 WL 34121361 (Appellate Brief) (C.A.9 May 31, 2001), Appellees' Brief

•DOLE FOOD COMPANY, INC., Plaintiff-Appellant, v. Malcolm WATTS and Carl Boenneken, Defendants-Appellees., 2001 WL 34121360 (Appellate Brief) (C.A.9 July 3, 2001), Appellant Dole Food Company, Inc.'s Reply Brief on Appeal

303 F.3d 1104, 02 Cal. Daily Op. Serv. 9296, 2002 Daily Journal D.A.R. 10,433

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**Tab 33**

Westlaw.

853 F.Supp. 690                                                                                         Page 1
853 F.Supp. 690
**(Cite as: 853 F.Supp. 690)**

▷United States District Court,
S.D. New York.
Brian M. DWYER, As Personal Representative of the
Estate of Victor Lytle
Ridder, deceased, and on behalf of his surviving next
of kin, including his
children Victor Ridder, Karen Ridder, Kristin Ridder,
Maureen Ridder, Mark
Ridder, and
Brian M. Dwyer, As Personal Representative of the
Estate of Mary Jane Ridder,
deceased, and on behalf of her surviving next of kin,
including her children
Victor Ridder, Karen Ridder, Kristin Ridder,
Maureen Ridder and Mark Ridder,
Plaintiffs,
v.
GENERAL MOTORS CORPORATION, a foreign
corporation, Defendant.
**No. 93 Civ. 6933 (CBM).**

April 5, 1994.

Representative of estates of driver and passenger brought products liability action against car manufacturer stemming from automobile accident. Manufacturer moved to transfer venue to the District of Maryland. The District Court, Motley, J., held that although venue would be proper in the District of Maryland, transfer of case from the District of New York to that of Maryland would not be in best interests of the adjudication of the case.

Motion denied.

West Headnotes

**[1] Federal Courts** ⬲101
170Bk101Most Cited Cases
Purpose of statute providing that, for convenience of parties and witnesses and in the interest of justice, district court may transfer civil action to any other district where it might have been brought is to prevent waste of time, energy and money and to protect litigants, witnesses and public against unnecessary inconvenience and expense. 28 U.S.C.A. § 1404(a).

**[2] Federal Courts** ⬲144

170Bk144Most Cited Cases
Burden of demonstrating propriety of transfer of venue lies with movant who must make clear-cut showing that transfer is in best interests of the litigation. 28 U.S.C.A. § 1404(a).

**[3] Federal Courts** ⬲104
170Bk104Most Cited Cases

**[3] Federal Courts** ⬲105
170Bk105Most Cited Cases
Relevant factors for court to consider in making decision whether to change venue include convenience of the parties and witnesses, relative ease of access of proof, availability of process to compel attendance of unwilling witnesses, weight accorded to plaintiff's choice of forum, forums' familiarity with the governing law, trial efficiency and the interest of justice. 28 U.S.C.A. § 1404(a).

**[4] Federal Courts** ⬲101
170Bk101Most Cited Cases
In addressing transfer of venue motion, threshold question is whether action could have been brought in the proposed transferee district. 28 U.S.C.A. § 1404(a).

**[5] Federal Courts** ⬲113
170Bk113Most Cited Cases
Venue for products liability action against car manufacturer would be proper in the District of Maryland since automobile accident took place on Maryland highway, however, transfer of case from District of New York to that of Maryland would not be in the best interests of the adjudication; jurors' investigation of accident scene would not aid in their determination, manufacturer would be obligated to travel regardless of whether action was heard in New York or Maryland whereas plaintiffs resided in New York and Maryland was neither the locus of operative facts nor the locus of easier access to sources of proof. 28 U.S.C.A. § 1404(a).

**[6] Federal Courts** ⬲101
170Bk101Most Cited Cases
Convenience of parties and witnesses is generally the most important factor in court's determination of whether to grant motion to transfer venue. 28 U.S.C.A. § 1404(a).

853 F.Supp. 690
853 F.Supp. 690
(Cite as: 853 F.Supp. 690)

Page 2

**[7] Federal Courts ☜101**
170Bk101Most Cited Cases
It is not number of prospective witnesses that determines appropriateness of transfer of venue but, rather, materiality of their anticipated testimony. 28 U.S.C.A. § 1404(a).

**[8] Federal Courts ☜101**
170Bk101Most Cited Cases

**[8] Federal Courts ☜104**
170Bk104Most Cited Cases
Residence of the parties is factor to be considered in deciding whether to grant motion to transfer venue and transfer should not merely shift burden of inconvenience from one party to the other. 28 U.S.C.A. § 1404(a).

**[9] Federal Courts ☜104**
170Bk104Most Cited Cases
Court may consider relative means of the parties in deciding motion to transfer venue. 28 U.S.C.A. § 1404(a).

**[10] Federal Courts ☜104**
170Bk104Most Cited Cases
Ability to compel attendance of witnesses is important factor in court's determination of whether to grant motion to transfer venue. 28 U.S.C.A. § 1404(a).

**[11] Federal Courts ☜105**
170Bk105Most Cited Cases
Plaintiffs' choice of forum is significant and will not be disturbed unless balance of factors weighs heavily in favor of transfer of venue; however, plaintiffs' choice of forum is accorded less weight where plaintiffs' chosen forum is neither their home nor place where operative facts of action occurred. 28 U.S.C.A. § 1404(a).

**[12] Federal Courts ☜104**
170Bk104Most Cited Cases
Courts should consider practical problems that would make trial of a case easy, expeditious and inexpensive when determining whether to grant motion to transfer venue. 28 U.S.C.A. § 1404(a).

**[13] Federal Courts ☜104**
170Bk104Most Cited Cases

It is appropriate when deciding whether to grant motion to transfer venue to compare the relative state of trial calendar congestion in the relevant districts. 28 U.S.C.A. § 1404(a).

**\*691** Kreindler & Kreindler, New York City by Francis G. Fleming, Michael Le Strange, for plaintiffs.

Piper & Marbury, New York City by Joel Dewey, Diane C. McEnroe, for defendant.

*OPINION*

MOTLEY, District Judge:

This is a products liability action brought by Brian Dwyer as personal representative of the estates of Victor Lytle Ridder and Mary Jane Ridder, and on behalf of their surviving next of kin, including their children, against General Motors Corporation, ("GM"), for damages based on theories of negligence, strict liability and breach of warranty. GM now moves this court for an order pursuant to 28 U.S.C. @ 1404(a) transferring this action to the United States District Court for the District of Maryland. For the reasons stated below, the defendant's motion is denied.

BACKGROUND
The plaintiffs and decedents are and were residents of the state of New York. The defendant, GM, is a Delaware corporation with its principal place of business in the state of Michigan. GM does business in both Maryland and New York.

On October 6, 1991, decedents Victor Lytle Ridder and his wife, Mary Jane Ridder, were traveling northbound on Maryland Interstate 295 in the Linthicum area of Anne Arundel County, Maryland. Mr. Ridder was operating a 1989 Lincoln Continental 4-door and Mrs. Ridder was a passenger in the front seat of the vehicle. Eric David Stickland was traveling southbound on Interstate 295 in a 1987 Chevrolet Celebrity Eurosport 4-door hardtop. At some point in time, Mr. Stickland's vehicle crossed the median strip, entered the northbound lanes and collided with the Ridder's vehicle.

Mr. Ridder was declared dead at the scene of the accident. Mrs. Ridder was taken to the University of Maryland Hospital's Shock Trauma Center, located in Baltimore, to be treated for severe injuries, but died

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

853 F.Supp. 690
853 F.Supp. 690
(Cite as: 853 F.Supp. 690)

Page 3

shortly after her arrival. Eric Stickland also sustained serious injuries but survived the accident. The plaintiffs claim that GM's alleged negligence, strict liability and breach of warranty entitle them to wrongful death and survival damages in the amount of $10,000,000.

## DISCUSSION

[1] Title 28, @ 1404(a) of the United States code provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A "district or division where it might have been brought" has been interpreted to mean a *692 district where venue might have been proper and where the defendant would have been subject to process. _Hoffman v. Blaski_, 363 U.S. 335, 344, 80 S.Ct. 1084, 1090, 4 L.Ed.2d 1254 (1960). The purpose of section 1404(a) "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense....' " _Hernandez v. Graebel Van Lines_, 761 F.Supp. 983, 986 (E.D.N.Y.1991) (quoting _Van Dusen v. Barrack_, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964)).

[2] "Motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." _In re Cuyahoga Equipment Corp._, 980 F.2d 110, 117 (2d Cir.1992) (citing _Stewart Org., Inc. v. Ricoh Corp._, 487 U.S. 22, 29, 108 S.Ct. 2239, 2243, 101 L.Ed.2d 22 (1988)). The burden of demonstrating the propriety of a transfer lies with the moving party. _Factors Etc., Inc. v. Pro Arts, Inc._, 579 F.2d 215, 218 (2d Cir.1978), cert. denied,440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); _Arrow Electronics, Inc. v. Ducommun Inc._, 724 F.Supp. 264, 265 (S.D.N.Y.1989) (quoting _Morales v. Navieras De Puerto Rico_, 713 F.Supp. 711, 712 (S.D.N.Y.1989)). Accordingly, "[t]he moving party must make a clear-cut showing that a transfer is in the best interests of the litigation." _Schieffelin & Co. v. Jack Co. of Boca, Inc._, 725 F.Supp. 1314, 1321 (S.D.N.Y.1989).

[3] Relevant factors for the Court to consider in making this decision include: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the weight accorded to

plaintiff's choice of forum; (6) a forums' familiarity with the governing law; (7) trial efficiency and (8) the interest of justice. _See, e.g., Berry v. New York State Dept. of Correctional Services_, 808 F.Supp. 1106, 1110 (S.D.N.Y.1992) (quoting _Brierwood Shoe Corp. v. Sears Roebuck_, 479 F.Supp. 563, 565 (S.D.N.Y.1979)); _Gibbs & Hill, Inc. v. Harbert Int'l, Inc._, 745 F.Supp. 993, 996 (S.D.N.Y.1990); _Schieffelin & Co._, 725 F.Supp. at 1321;_Turner v. Hudson Transit Lines, Inc._, 724 F.Supp. 242, 243 (S.D.N.Y.1989); _Schneider v. Sears_, 265 F.Supp. 257, 263 (S.D.N.Y.1967).

I. Is Venue Proper in the District of Maryland.

[4][5] In addressing a transfer motion, the threshold question is whether the action could have been brought in the proposed transferee district. _Arrow Electronics_, 724 F.Supp. at 265. 28 U.S.C. @ 1391(a) provides that in a diversity action, venue is proper in a judicial district (1) where any defendant resides if all defendants reside in the same state, (2) where a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) in which defendants are subject to personal jurisdiction at the time the action is commenced. The accident took place on a Maryland highway. Therefore, the action could have been brought in Maryland, a district where a substantial part of the events or omissions giving rise to the claim occurred.

Having determined that venue would be proper in the District of Maryland, the court will now address the question of whether a transfer would be in the best interests of the litigation.

II. Convenience of Witnesses and Parties.

[6] The convenience of parties and witnesses is generally the most important factor in a court's determination of whether to grant a motion for transfer. _Arrow Electronics_, 724 F.Supp. at 265 (citing _Nieves v. American Airlines_, 700 F.Supp. 769 (S.D.N.Y.1988)).

A. Witnesses.

Defendant argues that since its proposed witnesses, including the sole survivor of the accident, most of the eye witnesses to the accident and all medical

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

personnel, investigating officers and insurance investigators involved in the accident, are located in Maryland and will provide crucial information for the defense, the case should be transferred *693 to Maryland. Plaintiffs, on the other hand, claim that most of the witnesses on the issue of damages reside in New York and that expert witnesses will be providing the critical testimony for the determination of liability.

[7] Defendant lists several prospective Maryland witnesses. However, it is not the number of prospective witnesses that determines the appropriateness of a transfer but, rather, the materiality of their anticipated testimony. *Catalano v. BRI, Inc.,* 724 F.Supp. 1580, 1584 (E.D.Mich.1989). Police reports and statements of eye witnesses indicate that it was the vehicle being driven by Eric Stickland that crossed the median strip into the northbound lanes causing the collision. Since the factual setting of the accident is not in dispute, it would not be harmful to the defendant's case if the witnesses who would testify to Stickland's fault were unavailable or unwilling to appear at this trial and, therefore, have their testimony presented to the jury by way of deposition.

In addition, it seems clear that the accident was the cause of the Ridder's injuries and deaths. Mr. Ridder was declared dead at the scene of the accident. Mrs. Ridder died shortly after being treated for critical injuries sustained in the accident. Accordingly, the materiality of the testimony of medical personnel is not apparent.

This is a product liability action which would necessitate the testimony of expert witnesses to determine liability. In light of the fact that the defendant's principal place of business is in Michigan, it is likely that its experts are located in Michigan. "It has been repeatedly held by courts that 'the convenience of expert witnesses is of little or no significance on a motion to transfer.' " *Studiengesellschaft Kohle MBH v. Shell Oil Co.,* No. 93 Civ. 1868, 1993 WL 403340, *3, 1993 U.S.Dist. LEXIS 14131, at *10 (S.D.N.Y. Oct. 7, 1993) (quoting *Bernal v. Du Pont,* No. 93 Civ. 1639, 1993 WL 378790, *2, 1993 U.S.Dist. LEXIS 13308, at *7 (S.D.N.Y. Sept. 24, 1993)). Therefore, the defendant cannot claim that Maryland would be a more convenient forum for such experts.

Defendant further argues that it might be appropriate

for the jurors to be able to view the accident scene. In *Ryer v. Harrisburg Kohl Brothers, Inc.,* 307 F.Supp. 276 (S.D.N.Y.1969), a case involving an automobile accident, the court determined that the case should be transferred from the plaintiff's choice of forum to the district in which the accident took place. However, an important distinction can be made between *Ryer* and the instant action. In the *Ryer* case, there was a "difficult question as to who was responsible for the accident," making it extremely useful to be able to view the accident scene and making live testimony of witnesses to the accident crucial. *Id.* at 280- 81. In this case, there is no such difficult question. Furthermore, it is unclear what other benefit would come from bringing jurors out to view the accident scene. Their investigation of the area would not aid in their determination as to whether a defective part in the vehicle or the driver's negligence caused the Ridders' death. Accordingly, this factor does not favor a transfer.

B. Parties.

[8] Another factor to be considered in a transfer motion is the residence of the parties. *Heyco, Inc. v. Heyman,* 636 F.Supp. 1545, 1550 (S.D.N.Y.1986) (citing *Copulsky v. Boruchow,* 545 F.Supp. 126, 128-29 (E.D.N.Y.1982)). A transfer should not merely shift the burden of inconvenience from one party to the other. *Schieffelin & Co.,* 725 F.Supp. at 1322. Defendant is a Delaware corporation with its principal place of business in Michigan. Accordingly, defendant will be obligated to travel regardless of whether this action is heard in the Southern District of New York or in the District of Maryland. Plaintiffs, on the other hand, reside in New York and would be inconvenienced if required to travel to Maryland for the adjudication of this case.

[9] A court may also consider the relative means of the parties in deciding a transfer motion. *Hernandez,* 761 F.Supp. at 989;*Arrow Electronics,* 724 F.Supp. at 266 (citing *Goldstein v. Rusco Industries, Inc.,* 351 F.Supp. 1314, 1318 (E.D.N.Y.1972)). Plaintiffs are individuals who are suing a large corporation which possesses considerably greater financial assets. To force plaintiffs *694 to travel to Maryland in order to go forward with their claim would merely increase the financial burdens they already face. Any added expenses that GM might incur as a consequence of defending itself in this District do not justify shifting these expenses to plaintiffs. Accordingly, transfer is not favored here.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

III. Locus of Operative Facts and Relative Ease of Access to Sources of Proof.

Defendant's claim that because the accident occurred in Maryland and all sources of proof, including the car, are located in Maryland, that District is the locus of operative facts and would provide the easiest access to all relevant evidence. The court disagrees. In light of the fact that plaintiffs have based this action on theories of product liability, conduct which could result in findings of negligence, strict liability or breach of warranties would have occurred in the District where the majority of defendant's business decisions such as design, marketing, testing and distribution were made. _E.g., Hodson v. A.H. Robins Co., Inc., 528 F.Supp. 809, 815 (E.D.Va.1981)._ Michigan is GM's principal place of business. It is most probable that defendant makes it most important business decisions in that District. Accordingly, the majority of the records and other sources of proof for the determination of liability on the product would be found in Michigan. Therefore, Maryland is neither the locus of operative facts nor the locus of easier access to sources of proof.

IV. Attendance of Witnesses.

[10] The ability to compel the attendance of witnesses is an important factor in the court's determination of a transfer motion. _Arrow Electronics, 724 F.Supp. at 266._ However, the fact that defendant's witnesses who could provide the most pertinent testimony on the subject of product liability would be their own experts who would be in their employ, renders it unnecessary to compel their testimony. Any of the Maryland witnesses' testimony deemed necessary in this case could be offered to the jury via deposition.

V. Weight Accorded to Plaintiffs' Choice of Forum.

[11] Defendant argues that plaintiffs' choice of forum should not be accorded much significance because their choice is not the locus of operative facts. Plaintiffs' choice of forum is significant and will not be disturbed, unless the balance of factors weighs heavily in favor of a transfer. _Seagoing Uniform Corp. v. Texaco, Inc., 705 F.Supp. 918, 936 (S.D.N.Y.1989)_ (citing _Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055_

(1947)). However, plaintiffs' choice of forum is accorded less weight where the plaintiffs' chosen forum is neither their home nor the place where the operative facts of the action occurred. _Reeder v. Yamaha Motor Corporation, No. 92 Civ. 5455, 1992 WL 370414, *4, 1992 U.S.District LEXIS 18263, at *11 (S.D.N.Y. Dec. 2, 1992)._ Given that 1) defendant is neither a New York resident nor a Maryland resident 2) plaintiffs are New York residents and 3) the operative facts in all likelihood occurred in Michigan, this factor dictates against transfer.

VI. Trial Court's Familiarity with the Governing Law.

Defendant argues that Maryland law would govern in this action and, therefore, the District Court in Maryland would be better suited to decide this action. "The fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer, however, especially in an instance such as this where no complex questions of foreign law are involved." _Vassallo v. Niedermeyer, 495 F.Supp. 757 (S.D.N.Y.1980); see also Nat. Patent Dev. Corp. v. American Hospital Supply, 616 F.Supp. 114, 119 (S.D.N.Y.1984)._ Therefore, whether the substantive law of New York or Maryland applies in the instant action is of little consequence in the determination of this motion.

VII. Trial Efficiency and the Interest of Justice.

[12] Courts should also consider the "practical problems that would make the trial of a case easy, expeditious and inexpensive." *695_Ryer,_307 F.Supp. at 729; _Hernandez, 761 F.Supp. at 991._ Defendant claims that the material circumstances and factors of this case weigh in favor of adjudicating this case in Maryland. However, records, investigative reports and other such documents could easily be brought into this District. Depositions of most of the non-party witnesses listed by defendant could be used. Additionally, as stated, _supra,_ it is conceivable that the majority of the necessary documentation concerning liability would be found at defendant's principal place of business and not in Maryland.

[13] It is also appropriate when deciding whether to transfer a case to compare the relative state of trial calendar congestion in the relevant districts. _Ryer, 307 F.Supp. at 278._ Defendant notes that, generally,

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

853 F.Supp. 690
853 F.Supp. 690
(Cite as: 853 F.Supp. 690)

Page 6

it takes more time for an action to reach the trial calendar in the Southern District of New York than in the District of Maryland.   While in most instances this may be true, this particular court's docket is not nearly as back-logged as the majority of the docket's in this District.   Indeed this case could conceivably go to trial sooner than it would in Maryland.   Given this situation, this factor does not favor a transfer.

Finally, while the residents of Maryland have an interest in this litigation in light of the fact that the accident occurred in their state, New York residents have a greater interest in seeing their fellow residents compensated for their losses.

## CONCLUSION

For the reasons set forth above, the court finds that the defendant has not met the burden of showing that a transfer is in the best interests of the adjudication of this case.   Accordingly, the motion to transfer this action to the United States District Court for the District of Maryland is denied.

853 F.Supp. 690

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**Tab 34**

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 345392 (N.D.Cal.)
(Cite as: 1998 WL 345392 (N.D.Cal.))

Page 1

**C**Only the Westlaw citation is currently available.

United States District Court, N.D. California.
Judith L. HANCOCK, Plaintiff,
v.
Abram C. HITT, Defendant.
**No. C-98-960 MMC (ARB).**

June 19, 1998.

ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS FOR LACK OF PERSONAL
JURISDICTION;
DENYING DEFENDANT'S MOTION FOR RULE
11 SANCTIONS; AND VACATING HEARING

CHESNEY, J.

INTRODUCTION

*1 Plaintiff, a California resident, has sued defendant, a resident of the State of Wyoming, alleging, *interalia,* breach of contract and fraud in connection with a failed romantic relationship. Defendant now moves to dismiss the complaint on the grounds that the Court lacks personal jurisdiction over defendant. In the alternative, defendant moves to transfer this action to the United States District Court for the District of Wyoming. The Court deems the instant motion appropriate for decision on the basis of the papers filed by the parties. Accordingly, hearing on the motion, presently set for June 19, 1998, is hereby VACATED.

BACKGROUND

Defendant, Abram Hitt, is a long-time resident of Wyoming, where he works as a forensic psychologist. Hitt Dec. at ¶ 2. Plaintiff is a resident of the State of California. Compl. at ¶ 2. The parties attended high school together during the late 1950s, and they became reacquainted through a mutual friend in Wyoming in 1995. Hitt Dec. at ¶ 4. Thereafter, the parties entered into a romantic relationship. Hitt Dec. at ¶ 4. In March 1995, defendant traveled to California to visit plaintiff. Hitt Dec. at ¶ 17. During his visit, defendant executed a promissory note payable to plaintiff in the amount of $1,500. *Id.* During the remainder of 1995 and 1996, the parties continued visiting each other in Wyoming and California. Hitt Dec. at ¶ 4.

Plaintiff alleges that in April 1996, the parties entered into an oral contract whereby defendant agreed that if plaintiff would move to Wyoming and pay the down payment on a house located in Evanston, Wyoming, defendant would pay the mortgage and upkeep on a house. Compl. at ¶ 5. [FN1] Plaintiff claims that in reliance on defendant's promise, she moved from California to Wyoming. *Id.* The parties purchased the house, plaintiff paying the down payment, and they held title jointly. Hitt Dec. at ¶ 7.

> FN1. Defendant asserts that in April 1996 plaintiff contacted him in Wyoming and told him employment opportunities in California were "drying up" and that she wanted to join him in Wyoming. Hitt Dec. at ¶ 5. He does not, however, specifically contradict plaintiff's allegation.

By the fall of 1996, the parties' relationship had soured, and plaintiff returned to California, but in January 1997, plaintiff returned to Wyoming in an attempt to reconcile. Hitt Dec. at ¶ 10. In March 1997, the parties agreed that their relationship was over for good, and plaintiff again returned to California. *Id.*

On March 10, 1998, plaintiff filed the instant diversity action wherein she alleges four claims for relief. Plaintiff's first claim is for breach of oral contract. Specifically, plaintiff alleges that defendant failed to pay the mortgage on and to properly maintain the house in Evanston. Plaintiff seeks $129,021.90 in general and special damages. Compl. at ¶ 9. Plaintiff's second claim is for fraudulent misrepresentation. Specifically, plaintiff alleges that defendant told her that if she agreed to move to Wyoming and furnish the down payment for the Evanston house, defendant would provide for plaintiff's support and maintenance, and that defendant knew these statements were false when he made them. Compl. at ¶¶ 11, 16.

*2 Plaintiff's additional claims are for recovery on a $1,500 promissory note and to recover $4,880 allegedly loaned by plaintiff to defendant.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 345392 (N.D.Cal.)
**(Cite as: 1998 WL 345392 (N.D.Cal.))**

Defendant now moves to dismiss the complaint on the grounds that the Court lacks personal jurisdiction over defendant. In the alternative, defendant requests that the action be transferred to the United States District Court for the District of Wyoming. Defendant also maintains that Rule 11 sanctions should be imposed on plaintiff because no reasonable basis exists for arguing that the Court may exercise jurisdiction over defendant.

## DISCUSSION

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss the complaint on the grounds that the court lacks jurisdiction over the defendant. While the defendant is the moving party in such a motion, plaintiff, as the party invoking the court's jurisdiction, bears the burden of proof with respect to the necessary jurisdictional facts. *Flynt Distrib. Co., Inc. v. Harvey, 734 F.2d 1389, 1392 (9th Cir.1984).*

In considering a motion to dismiss for lack of personal jurisdiction, the plaintiff must present admissible evidence to support the court's exercise of personal jurisdiction, and the court cannot assume the truth of allegations in the pleading unless such allegations are uncontroverted. *Data Disc, Inc. v.Systems Technology Ass'n., Inc., 557 F.2d 1280, 1284 (9th Cir.1977)* (citing *Taylor v. Portland Paramount Corp., 383 F.2d 634, 639 (9th Cir.1967)).* When a defendant's motion to dismiss for lack of personal jurisdiction is made in his initial response, however, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists. *Data Disc, 557 F.2d at 1285.* Under this standard, the plaintiff need only produce admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *WNS, Inc. v. Farron, 884 F.2d 200, 203-204 (5th Cir.1989).* Moreover, until an evidentiary hearing or trial on the merits is held, all pleadings and declarations submitted regarding personal jurisdiction are read in the plaintiff's favor. *United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp., 987 F.2d 39, 44 (1st Cir.1993).*

### B. Analysis

The Court begins by noting that plaintiff, who bears the burden of establishing personal jurisdiction over

defendant, has failed to offer admissible evidence, by affidavit or otherwise. Defendant, however, has provided evidence, which the Court has considered, and to the extent that the allegations in plaintiff's complaint are not contradicted thereby, the Court will consider those allegations as well.

In order to establish personal jurisdiction over defendant, plaintiff must first show that the forum state's jurisdictional statute confers personal jurisdiction over defendant, and that the exercise of such jurisdiction "accords with federal constitutional principles of due process." *Federal Deposit Ins. Corp. v. British-American Ins. Co., Ltd., 828 F.2d 1439, 1441 (9th Cir.1987).* California's "long-arm" statute extends jurisdiction to the maximum extent permitted by due process. *See* Cal.Civ.Proc.Code § 410.10 (West 1973). Accordingly, the jurisdictional inquiries under state law and constitutional due process principles can be conducted simultaneously. *Pacific Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1327 (9th Cir.1985).*

**\*3** "Due process requires that nonresident defendants have certain minimum contacts with the forum state, so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Doe v. American Red Cross, 112 F.3d 1048, 1050 (9th Cir.1997)* (citing *International Shoe Co. v.. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).* In cases where the defendant's activities in the forum state are "substantial" or "continuous and systematic," the court may exercise general jurisdiction over the defendant even if the cause of action is unrelated to the defendant's activities in the forum state. *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir.1986).* Plaintiff does not argue that defendant is subject to the Court's general jurisdiction.

Defendant nevertheless may be subject to the Court's "specific jurisdiction." In the Ninth Circuit, a three-part test determines whether specific jurisdiction may be applied to a defendant consistent with due process principles:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[;] (2)[t]he claim must be one which arises out of or results from the defendant's

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 345392 (N.D.Cal.)
(Cite as: 1998 WL 345392 (N.D.Cal.))

Page 3

forum-related activities[; and] (3) [e]xercise of jurisdiction must be reasonable." *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir.1995) (citations omitted). For personal jurisdiction over defendant to comply with due process, all of these requirements must be met. *Id.* The Court examines each of them below.

### 1. Purposeful Availment

" 'Purposeful availment' requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *American Red Cross,* 112 F.3d at 1051. "Isolated contacts, an attenuated affiliation, or the unilateral activity of another party in the forum state is insufficient." *Advideo, Inc. v. Kimel Broadcast Group, Inc.,* 727 F.Supp. 1337, 1340 (N.D.Cal.1989).

Although one of plaintiff's claims sounds in tort, all of plaintiff's claims arises out of an alleged contractual relationship. Plaintiff's chief arguments are that defendant purposefully availed himself of the privilege of conducting activities in California by reaching out to California to negotiate with a California resident for the purchase and upkeep of a home, and that the contract was negotiated and agreed upon in California. Plaintiff also argues that the two loans were negotiated and entered into in California. The Supreme Court has stated, however, "[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985). Rather, the Supreme Court has provided the following guidance to the courts in assessing whether the entry into a contract gives rise to personal jurisdiction over the contracting parties:

*4 [W]e have emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors--prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing--that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Rudzewicz,* 471 U.S. at 479, 105 S.Ct. at 2185.

In *Rudzewicz,* the Supreme Court concluded that exercise of personal jurisdiction by the United States district court in Florida over Michigan residents did not violate due process because, *interalia,* the Michigan residents had "purposefully established minimum contacts" with Florida by entering into a long-term franchise agreement with the Florida-headquartered corporation. Specifically, the franchise agreement "envisioned continuing and wide-ranging contacts with [the corporation] in Florida." *Id., 471 U.S. at 480, 105 S.Ct. at 2186.*

Upon evaluation of the factors enumerated in *Rudzewicz,* the Court concludes that defendant did not purposefully avail himself of the privilege of conducting activities with the State of California. First, the parties came to settle upon the alleged agreement after visits between the parties in both Wyoming and California. *See* Hitt Decl. at ¶ 4. Moreover, giving full credit to plaintiff's allegation that the contract was entered into while the parties were in California, the evidence before the Court, as well as the pleadings, indicate that the contract was to be performed in Wyoming. *Id.;* Compl. at ¶ 5. ("Plaintiff and Defendant for valuable consideration entered into an oral contract wherein Defendant agreed to undertake the payment of the mortgage and upkeep on a home [in] Evanston, WY...."). Finally, there is nothing in the parties' agreement to suggest that defendant intended to engage in significant activities within California or to create continuing obligations between himself and those residing within California. Indeed, the parties' agreement contemplated that the parties would permanently reside in Wyoming, not in California.

The instant case is analogous to the Ninth Circuit's decision in *Gray & Co. v. Firstenberg Machinery Co. Inc.,* 913 F.2d 758 (9th Cir.1990). In *Gray,* the plaintiff, an Oregon food processor ("Gray"), brought a suit for misrepresentation, rescission and breach of warranty against a California equipment broker ("Firstenberg"), and an Illinois corporation ("Polk"). Gray was interested in purchasing a used filter and Firstenberg located one in Illinois with the assistance of Polk. *Gray, 913 F.2d at 758.* Gray sent an employee to Illinois to inspect the filter. Gray agreed to purchase the filter and Firstenberg sent Gray an invoice stating that the filter was sold "as is, where is." *Id.*

*5 The filter proved to be defective, and Gray sued

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 345392 (N.D.Cal.)
(Cite as: 1998 WL 345392 (N.D.Cal.))

Page 4

Firstenberg and Polk in the federal district court in Oregon. The defendants moved to dismiss for lack of personal jurisdiction and the district court denied the motion. The Ninth Circuit reversed, finding that neither Firstenberg nor Polk had purposefully availed themselves of the privileges of conducting business within Oregon:

> Neither Firstenberg nor Polk had any contact with Oregon prior to this sale; neither of them had even sought or done business in Oregon, or had officers or agents there.... As we have said, the fact that a contract was consummated between Firstenberg and Gray does not establish purposeful availment. The course of negotiations consisted of a few phone calls, which Gray initiated. There was no formal written contract, only a return exchange of an invoice and a purchase order. There is no evidence the sale contemplated a continuing relationship between Gray and the defendants....

*Gray,* 913 F.2d at 761. The court also rejected Gray's argument that the defendants' knowledge that the filter would be taken into Oregon was insufficient to establish purposeful availment. "[F]oreseeability of injury in a forum does not in itself establish purposeful availment." *Id.*

Similarly, in the instant case, defendant owns no property in this state and has had no contact with California before beginning his relationship with plaintiff. While defendant traveled to California to visit plaintiff and exchanged telephone calls with her, the course of dealing between the parties and the terms of the contract indicates that defendant had no intention of forming a continuing contractual relationship with the plaintiff within California. Moreover, as discussed, the fact that the contract may have been executed in California is not controlling where the terms of the contract, the parties' course of dealing, and the contemplated future consequences of the agreement all indicate that the parties did not intend to enter into a continuing contractual relationship within the State of California.

Plaintiff relies principally on the Ninth Circuit's decision in *Data Disc. Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280 (9th Cir.1977). In that case, the court determined that the district court in California could exercise personal jurisdiction over a Virginia corporation that a California corporation alleged had breached its contract with the California corporation. *Data Disc,* however, is distinguishable. While the court recognized that the contract was negotiated in part and executed in California, the

court also found it important that the defendant's employees engaged in activities within California in furtherance of this contract after the contract was executed. *Data Disc,* 577 F.2d at 1287-88. By contrast, defendant has had no contacts with California since the alleged agreement was entered into. Hitt Decl. at ¶¶ 4, 6-10.

In short, defendant's conduct within the State of California is at best attenuated and thus is insufficient to establish that defendant has purposefully availed himself of the benefits and protections of California law.

2. Does the Claim Arise Out of Defendant's Forum-Related Activities

**\*6** The Ninth Circuit applies a "but for" test to determine whether the "arising out of" requirement has been satisfied. *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 385-86 (9th Cir.1990). The test is not satisfied here because it cannot be said that plaintiff's alleged injuries would have occurred but for defendant's forum-related activities. As discussed, the parties anticipated that the alleged agreements would be performed in the State of Wyoming and plaintiff's injuries therefore arise from defendant's activities within that state. Thus, it cannot be said that plaintiff would not have suffered injury but for defendant's activities in the State of California.

3. Reasonableness Determination

While reasonableness is considered as a separate factor in determining whether exercise of personal jurisdiction comports with due process, "a defendant need only prove the unreasonableness of a court's exercise of personal jurisdiction if it is shown that the defendant's activities were purposefully directed at the forum state ." *Doe v. American National Red Cross,* 112 F.3d at 1052 (citing *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1198 (9th Cir.1988)). As discussed, defendants did not purposefully avail himself of the privilege of conducting activities in California. The Court nevertheless finds that the exercise of jurisdiction would not be reasonable under the circumstances.

In the Ninth Circuit, there are seven factors that courts consider in determining whether the exercise of personal jurisdiction is reasonable:

> (1) The extent of the purposeful interjection into

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 345392 (N.D.Cal.)
(Cite as: 1998 WL 345392 (N.D.Cal.))

the forum state; (2) The burden on the defendant of defending in the forum; (3) The extent of conflict with the sovereignty of the defendant's state; (4) The forum state's interest in adjudicating the dispute; (5) The most efficient judicial resolution of the controversy; (6) The importance of the forum to plaintiff's interest in convenient and effective relief; (7) The existence of an alternative forum. *Federal Deposit Ins. Co. v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th Cir.1987) (*citingDecker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir.1986)). The weaker the plaintiff's showing of purposeful availment and relatedness to forum-related acts, the less that a defendant needs to show by way of unreasonableness to defeat personal jurisdiction. *Ticket Master--New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir.1994) ( "[T]he reasonableness prong of the due process inquiry evokes a sliding scale; the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction.").

With respect to the first factor, the Court has already found that defendant did not purposefully avail himself of the privilege of conducting activities within the State of California, and even if defendant could be said to have "purposefully interjected" himself into California, such interjection was minimal. Thus, this factor favors defendant.

*7 The second factor looks to the burden that would be imposed on the defendant should he be required to defend this action in California. With respect to this factor, it is insufficient to show that some other forum would be more convenient. Rather, it must be shown that jurisdiction in the forum chosen by the plaintiff would make the litigation "so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir.1990). Defendant, however, has presented uncontroverted evidence that defending this suit in California would impose a substantial burden upon him. Defendant's job requires him to travel frequently to remote areas of Wyoming where he rarely has access to fax machines or his mail. Hitt Decl. at ¶ 18. Moreover during several months of the year, defendant is unable to leave his home or the town in which he lives, due to inclement weather. *Id.* Defendant resides more than 100 miles from an airport. *Id.* Finally, it

seems clear that defending this action in California would impose a substantial financial burden on defendant. In sum, the evidence indicates that defendant would be placed at a severe disadvantage in comparison to plaintiff by being forced to defend this action in California. *SeeTerracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir.1995) ("Where the burdens are equal, the second factor tips in favor of [the defendant] because the law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden.").

The third factor also appears to favor defendant. While neither party has satisfactorily substantiated their respective arguments with respect to the law that controls the instant dispute, the alleged contract involves property located in Wyoming as well as obligations that the parties concede were to be performed in Wyoming.

The fourth factor favors the plaintiff because the State of California has an interest in providing its residents with a forum in which to litigate their claims arising from breach of contract and fraud.

The fifth factor favors defendant. The instant action involves property located in Wyoming, and defendant has offered evidence that witnesses and evidence regarding this action are located in that state. *See* Hitt Decl. at ¶¶ 4-13. It would be more efficient for this action to be tried in Wyoming.

The sixth factor appears to favor plaintiff slightly. Trying this action in California would likely be more convenient for plaintiff. Plaintiff has not, however, offered any evidence that trying the case in Wyoming would deprive her of effective relief.

Finally, the seventh factor favors defendant because there is an alternative forum. namely, the United States District Court for the District of Wyoming, in which this case may be tried.

Accordingly, for the reasons stated above, exercise of personal jurisdiction over defendant by the Court would not comport with due process, and the Court therefore lacks personal jurisdiction over defendant.

4. Motion to Transfer

*8 In light of the Court's resolution of defendant's motion to dismiss for lack of personal jurisdiction,

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                   Page 6
Not Reported in F.Supp., 1998 WL 345392 (N.D.Cal.)
**(Cite as: 1998 WL 345392 (N.D.Cal.))**

the Court need not address defendant's alternative motion to transfer this action to the United States District Court for the District of Wyoming pursuant to 28 U.S.C. § 1404(a). The Court nevertheless notes that if it did have personal jurisdiction over defendant, transfer of venue would be warranted.

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Thus, three factors guide the Court's discretion in considering a motion to transfer under § 1404(a): (1) convenience of the parties; (2) convenience of witnesses; and (3) the interest of justice.

With respect to the first factor, consideration of the convenience of the parties does not appear to be dispositive as one party or the other will suffer inconvenience whether or not the Court transfers this action.

The second factor, the convenience of the witnesses, clearly favors transfer of the action to the State of Wyoming. Defendant has presented uncontroverted evidence that most, if not all, of the relevant evidence and witnesses (other than plaintiff) with knowledge of the parties' relationship and alleged agreement, the purchase of the subject property, and the actions taken or not taken in furtherance of the alleged agreement, are located in the State of Wyoming. Hitt Decl. at ¶¶ 4, 6-9, 11, 13, and 17. Specifically, defendant states that the parties' mutual friends in Wyoming have knowledge of the parties' relationship and commitments to each other. Hitt Decl. at ¶ 4. Moreover, financial records relating to the parties' relationship are located at a bank in Wyoming, and a Wyoming real estate broker has specific information concerning the parties' purchase of the house in Wyoming. *Id.* at ¶ 7. Thus, most, if not all of the evidence and witnesses are located in the State of Wyoming.

For the foregoing reasons, the third factor, the interest of justice, would best be served were the case heard in Wyoming.

5. Motion for Rule 11 Sanctions

Defendant has also requested that the Court award his attorneys fees incurred in bringing the instant

motion as Rule 11 sanctions. The Court has fully considered the matter and concludes that Rule 11 sanctions are inappropriate under the circumstances of this case. Further, Rule 11 requires that a motion for sanctions be made separately from any other motion or request to the Court. Fed.R.Civ.P. 11(c)(1)(A); *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 150-51 (7th Cir.1996). Defendant has failed to comply with this express requirement.

CONCLUSION

For the reasons stated, defendant's motion to dismiss for lack of personal jurisdiction is GRANTED, and defendant's motion for Rule 11 sanctions is DENIED.

The Clerk is directed to close the file.

**\*9** IT IS SO ORDERED.

Not Reported in F.Supp., 1998 WL 345392 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**Tab 35**

Westlaw.

Not Reported in F.Supp.2d                                                                   Page 1
Not Reported in F.Supp.2d, 2005 WL 2334362 (N.D.Cal.)
**(Cite as: 2005 WL 2334362 (N.D.Cal.))**

C Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
In re FUNERAL CONSUMERS ANTITRUST
LITIGATION.
No. C 05-01804 WHA, C 05-02501 WHA, C 05-
02502 WHA, C 05-02792 WHA, C 05-03124
WHA, C 05-03305 WHA, C 05-02806 WHA.

Sept. 23, 2005.

Andrew G. Celli, Jr., Jonathan S. Abady, Katherine
Rosenfeld, Emery Celli Brinckerhoff & Abady LLP,
Constantine Cannon, Gordon Schnell, Jean Kim,
Kerin E. Coughlin, Matthew L. Cantor, S. Michael
Kayan, New York, NY, Jeffrey F. Keller, Kathleen
R. Scanlan, Law Offices of Jeffrey F. Keller, Steven
Marc Sherman, Law Offices of Steven M. Sherman,
San Francisco, CA, for Funeral Consumers Alliance
Inc., Gloria Jaccarino Bender, Anthony J. Jaccarino,
John Clark, Donna Sprague, Nancy Helman, Ira
Helman, Donald Sprague and Robert Chitel.

Andrew M. Edison, Bracewell & Giuliani LLP,
Houston, TX, John A. Mason, Gurnee Wolden &
Daniels, Roseville, CA, for Service Corporation
International.

Charles H. Samel, Howrey Simon Arnold & White,
Los Angeles, CA, for Stewart Enterprises Inc.

John F. Cove, Jr., Boies Schiller & Flexner LLP,
Oakland, CA, for Hillenbrand Industries, Inc., and
Batesville Casket Company.

Bryan L. Clobes, Melody Forrester, Michael S.
Tarringer, Miller Faucher and Cafferty LLP,
Philadelphia, PA, for Francis H. Rocha.

Juden Justice Reed, Robert C. Schubert, Willem F.
Jonckheer, Schubert & Reed LLP, San Francisco,
CA, for Francis H. Rocha, Marsha Berger and Caren
Speizer.

Dan Drachler, Seattle, WA, Paul Kleidman, Robert S.
Schachter, Stephen L. Brodsky, Zwerling, Schachter
& Zwerling, LLP, New York, NY, for Marsha
Berger.

Craig R. Spiegel, Elaine T. Byszewski, Steve W.
Berman, Hagens Berman Sobol Shapiro LLP, Los
Angeles, WA, George W. Sampson, Seattle, WA, for
Maria Magsarili and Tony Magsarili.

Melissa A. Immel, Iverson Yoakum Papiano &
Hatch, Los Angeles, CA, for Alderwoods Group Inc.

Hollis L. Salzman, Kellie Safar, Goodkind Labaton
Rudoff & Sucharow LLP, New York, NY, for Caren
Speizer.

Eugene A. Spector, Jeffrey J. Corrigan, Jeffrey L.
Kodroff, Simon Bahne Paris, Spector Roseman &
Kodroff PC, Philadelphia, PA, Jack F. Burleigh,
Jeffrey L. Raizner, Michael P. Doyle, Doyle Raizner
LLP, Houston, TX, William P. Klein, Law Offices of
William P. Klein, San Francisco, CA, for Frank
Moroz.

Jenelle Welling, Brian S. Umpierre, Robert S. Green,
Green Welling LLP, Christine G. Pedigo, Shannon P.
Cereghino, Finkelstein Thompson & Loughran, San
Francisco, CA, for Pioneer Valley Casket Co., Inc.

ORDER GRANTING MOTION TO TRANSFER

ALSUP, J.

INTRODUCTION

*1 In these antitrust cases, defendants jointly have
moved under 28 U.S.C. 1404(a) to transfer venue to
the Southern District of Texas. Defendants have
carried their burden of proving that the convenience
of parties and witnesses, and the interest of justice,
would clearly and substantially be improved by such
a transfer. The motion is therefore GRANTED.

STATEMENT

The complaint in the first of these cases was filed
May 2, 2005. Certain plaintiffs, a consumers group
and individual consumers, purchased caskets and
other funeral-industry products and services. Another
plaintiff, Pioneer Valley Casket Co, Inc., is an
independent, low-cost casket seller. Defendants are
funeral-home chains, a casket manufacturer and its
parent company. Plaintiffs accuse defendants of

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2334362 (N.D.Cal.)
(Cite as: 2005 WL 2334362 (N.D.Cal.))

violating Sections 1 and 2 of the Sherman Act, 15 U.S.C. 1-2, and the California Unfair Competition Law, Cal. Bus. & Prof.Code §§ 17200--210. The consumers group, Funeral Consumers Alliance, Inc., and the individual consumers, sue on behalf of a putative nationwide class of consumers who bought Batesville caskets from the funeral-home co-defendants, Service Corporation International (SCI), Alderwoods Group, Inc., and Stewart Enterprises, Inc. Pioneer Valley sues on behalf of a putative nationwide class of independent casket retailers. Specifically, plaintiffs claim defendants

• conspired through a group boycott to prevent independent casket retailers from selling caskets marketed under the Batesville brand and others,

• engaged in a campaign of disparagement against independent casket retailers and their wares, and

• jointly worked to restrict casket price competition and to coordinate casket pricing by restricting or preventing price advertising, sharing price information and promoting "sham" discounting.

On August 2, 2005, defendants jointly moved under 28 U.S.C. 1404(a) to transfer these cases (collectively, "In re Funeral Consumers Antitrust Litigation") to the Southern District of Texas. This motion applies to the following of cases, described here by plaintiff name and case number: *FCA* (No. C 05-01804 WHA), *Rocha* (No. C 05-02501 WHA), *Berger*, (No. C 05-02502 WHA), *Magsarili* (No. C 05-02792 WHA), and *Pioneer Valley* (No. C 05-02806 WHA).

## ANALYSIS
## 1. VENUE TRANSFER RULES.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). The section's purpose is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (internal quotation marks omitted) A district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citation omitted). A court must "balance the preference accorded plaintiff's choice of forum with the burden of

litigating in an inconvenient forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986).

*2 In weighing each case, a court also should consider:

(1) the relative ease of access to sources of proof, (2) availability of compulsory process for attendance of unwilling witnesses, (3) the cost of obtaining attendance of willing witnesses, (4) the possibility of view of premises, if appropriate to the action, (5) all other issues related to making a trial easy, expeditious and inexpensive, (6) the relative congestion of the two courts, (7) the local interest in having localized controversies decided at home, (8) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, (9) avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and (10) the unfairness of burdening citizens in an unrelated forum with jury duty, (11) the location where relevant agreements were negotiated and executed, (12) the respective parties' contacts with the forums, (13) contacts relating to the plaintiff's causes of action in the chosen forum, and (14) the differences in the costs of litigation in the two forums.

*Ibid.*; *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498--99 (9th Cir.2000).

## 2. ACTION COULD HAVE BEEN BROUGHT IN THE SOUTHERN DISTRICT OF TEXAS.

There is no dispute that plaintiffs could have brought this action either here or in the Southern District of Texas. The unfair competition claim could have been brought in any court of competent jurisdiction, although this does not mean the California law reaches extra-territorial conduct. *See* Cal. Bus. & Prof.Code § 17203. Antitrust venue may be laid in any district in which a corporate defendant "may be found or transacts business." 15 U.S.C. 22. That means that large corporations are subject to suit in virtually every corner of the country, given their commonly wide scope of operations these days. Such breadth of operations provokes motions such as the present one to transfer venue under 28 U.S.C. 1404(a).

The Court finds that venue would have been proper in the United States District Court for the Southern District of Texas. It would have had jurisdiction over the federal antitrust actions under 28 U.S.C. 1331 and

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                        Page 3
Not Reported in F.Supp.2d, 2005 WL 2334362 (N.D.Cal.)
**(Cite as: 2005 WL 2334362 (N.D.Cal.))**

supplemental jurisdiction over the state-law claim under 28 U.S.C. 1367.

### 3.     BALANCING     THE     FACTORS:     AN OVERVIEW.

No plaintiff resides in this district. Only one of the dozen or so plaintiffs even resides in California. Most reside on the East Coast. All of defendants' principal places of businesses are in Houston or points east. No operative fact is alleged to have occurred in this district. On the other hand, defendant funeral home companies operate 44 funeral homes in this district and 228 in California (as well as many others nationwide). The Rule 26(a) disclosures reveal some witnesses in California. Most, however, reside in Texas or on the other side of the Mississippi River. No district claims a majority of all witnesses, but the Southern District of Texas claims more than any other district.

**\*3** Section 1404(a) calls out three factors to guide a transfer motion: (i) the convenience of parties, (ii) the convenience of witnesses and (iii) the interest of justice. In volumes, the caselaw has illuminated the meaning of these three factors. This order will concentrate on the caselaw most pertinent to the record at hand.

Under Section 1404(a), a plaintiff's choice of venue is entitled to substantial weight, although this is often said to be less controlling in a purported nationwide class actions, as here. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir.1987). At all events, movants must make a clear-cut showing. The issue is not merely whether some other district would better serve the parties and witnesses. The burden is on the moving parties to show that the Section 1404(a) factors would clearly be better served by a transfer.

### 4. PARTY CONVENIENCE.

We may not use a transfer simply to shift the burden of venue from one side to the other. Here, however, no plaintiff resides in this district and only one resides in California. The clear center of gravity of the residences of all plaintiffs is well east of the Mississippi River.

Houston is the principal place of business of the largest of defendant funeral-home company, SCI, and is in the Southern District of Texas. Another defendant funeral-home company is Stewart, headquartered in New Orleans. In the wake of Hurricane Katrina, it has temporarily moved its headquarters to Irving, Texas. Alderwoods is the third defendant funeral-home company. It is headquartered in Cincinnati. All three own and operate outlets in this district. Given their nationwide scope, their connections to this district are similar to their connections to districts elsewhere in America. Their executive offices and the representatives supervising the defense, however, are in the cities stated--Houston, New Orleans and Cincinnati.

The three funeral-home chains are alleged to have entered into a horizontal conspiracy to stamp out independents who seek to sell low-priced caskets to bereaved families. Plaintiffs claim this forced consumers to pay exorbitant prices for caskets. The three allegedly pressured a prominent manufacturer, defendant Batesville Casket Company, to refuse to do business with the independents, thus cutting off the independents from a source of quality product. Batesville has its headquarters in Batesville, Indiana. The last defendant is Batesville's parent, Hillenbrand Industries, Inc., also located in Batesville.

How will the situs of this case affect the burden on the parties? In addition to litigation counsel, corporate representatives can be reasonably expected to attend various hearings and the trial. Given the complexity and scope of the case, more hearings can be expected than in the usual case, not counting mere discovery conferences with the judge that may be manageable by telephone. The trial can surely be expected to last longer than the usual case. All of this means that more days will be spent in court by the parties themselves than in the usual case.

**\*4** A transfer to the Southern District of Texas will drastically reduce the burden on the largest funeral-home defendant, SCI. And, it will significantly reduce the burden on the other defendants as well. The travel times from their locations to the Southern District are all markedly less than the travel times to San Francisco, as the record demonstrates in detail. The same is true for almost all of the plaintiffs. The Southern District seems to present a clear advantage over San Francisco. [FN1]

> FN1. Plaintiff Funeral Consumers Alliance, Inc., is located in Vermont (and incorporated in Pennsylvania). While it has many members in California, it has a nationwide

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2334362 (N.D.Cal.)
(Cite as: 2005 WL 2334362 (N.D.Cal.))

Page 4

membership (Compl.¶ 12). The members, however, are not parties. Their convenience does not matter. The leadership and executive officers of the association are in Vermont and will benefit, cost-wise, by a transfer to Texas.

Although a few decisions have given weight to the location of counsel, most have not saying that it is not to be considered at all or to be given very little weight. Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure*, § 3850 (2d ed.1986). One reason is that it would be easy to manipulate venue simply by obtaining counsel in the venue of choice. Be that as it may, it is worthwhile to note that the largest team of plaintiffs' counsel in this action is based in New York. Even for plaintiffs' counsel, therefore, the burden would be diminished by a transfer to the Southern District of Texas. [FN2]

> FN2. This order agrees with plaintiffs that the availability of modern imaging and copying methods greatly reduces the importance of the location of documents.

5. WITNESS CONVENIENCE.

In assessing a Section 1404(a) transfer motion, the matter of trial witnesses subdivides into two parts: the willing and the unwilling. Willing witnesses are those who can be expected to appear at trial voluntarily, meaning without the necessity of a subpoena. The unwilling are those who can be expected to testify live at trial only if they are within subpoena range of the courthouse.

As for the willing, the convenience-of-witnesses factor looms large. These individuals must take time out of their work and private time to travel to and from the place of trial, to live away from home and to wait around windowless corridors on call to testify. Back home, they have children to get to school, elderly parents to care for, jobs to do and lives to lead--all of which must be managed somehow or put on hold. Although lawyers tend to underestimate this burden, it is genuine, all the more so in a distant city. Even where a witness is an employee of a party and will be paid, the disruption is still a hard fact. The expenses of transportation, housing and meals, even if borne by a party, are nonetheless authentic outlays. *See, e.g., Decker Coal*, 805 F.2d at 843. Among other

things, Section 1404(a) prefers a venue where the burden on witnesses will be clearly reduced. *Belzberg*, 834 F.2d at 739. [FN3]

> FN3. In light of *Decker Coal* and the language of the statute itself, this order rejects the notion that inconvenience to *party* witnesses must be ignored or discounted. *See Decker Coal*, 805 F.2d at 843.

In order to better appreciate the comparative witness burdens associated with the two districts in question, the Court requested post-hearing supplemental information to include all Rule 26(a) disclosures of potential witnesses, among other things. This was invited so that the prospective witnesses, as disclosed by counsel themselves, could be, in effect, imagined on a map of the United States. These were submitted and reviewed by the Court.

The Rule 26(a) disclosures identified a large number of witnesses. Plaintiffs identified 69 individuals and organizations likely to have discoverable information that plaintiffs might use to support their claims. One is a resident of this district. A half-dozen live in other parts of California. The overwhelming majority are in Texas or east of the Mississippi River, including present and former employees of defendants. Plaintiffs also listed every state funeral-directors association. Plaintiffs also listed 161 casket retailers throughout the country, six of which are located in this district. Defendants listed 209 individuals throughout the United States, of which one resides in this district and 49 reside in Houston. Overall, the vast majority reside east of the Mississippi River.

*5 We all know that the final trial witnesses will be a much smaller subset. In a Sherman Act case, the key liability witnesses (on both sides) are usually present and former officers and employees of the accused. This is because they were the ones at various meetings alleged to be conspiratorial or with pricing and marketing responsibilities. When a nationwide antitrust conspiracy is alleged, the key witnesses usually work (or worked) at a national office or a regional office rather than a local retail outlet. Therefore, the final trial witnesses (on liability) are very likely to be drawn in this case from Houston and east of the Mississippi River, as plaintiffs' own Rule 26 disclosures bear out. The damages witnesses will likely be plaintiffs themselves (and retained experts as yet unknown).

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                                      Page 5
Not Reported in F.Supp.2d, 2005 WL 2334362 (N.D.Cal.)
**(Cite as: 2005 WL 2334362 (N.D.Cal.))**

Plaintiffs now showcase four California-based witnesses. One is the editor of the *Funeral Monitor*, an industry newspaper published in Monterey. The complaint (¶¶ 63, 68, 75--76) quotes from four or so articles therein. It is hard to see, however, how newspaper articles will be admissible at trial. The same is true as to any information possessed by the editor. It will be largely hearsay. As for Mark Blankenship, the record does not show that he resides in California. He may work for a chain with an outlet in Susanville, California, but his residence is not shown to be in the state. [FN4] On the other hand, plaintiffs may well be entitled to call the spokesperson for the California Funeral Directors Association who made the disparaging comment (Compl.¶ 80). For that California witness to appear in Texas will be more burdensome. The same is true for the president of the association. Against the larger picture of the far greater number of witnesses in Texas, as shown by the Rule 26 disclosures, the California witnesses shrink into insignificance.

> FN4. In fact, plaintiffs' Rule 26 disclosures show his address as "in care of" a funeral chapel in Carson City, Nevada.

6. THE INTEREST OF JUSTICE.

Unwilling witnesses present more of an "interest of justice" problem than a "convenience of witnesses" problem. In the conduct of the trial itself, any jury would prefer to see and hear important witnesses in person. In this way, the jury can better assess demeanor and credibility. And, live testimony is easier to follow and comprehend than deposition read-ins or video clips. The difficulty is exacerbated by the fact that depositions are often taken before certain fact issues gather importance. They may, therefore, not fully address points decisive to the jury. Live testimony, therefore, always is to be preferred over deposition excerpts. [FN5] A problem arises when witnesses are beyond trial subpoena range and they can only be compelled to attend via depositions.

> FN5. For this reason, this order rejects the argument by plaintiffs that defendants could save money by presenting their defense at trial via depositions.

To be sure, a corporate defendant can be expected to arrange for some present and past employees to testify live and voluntarily but only if their testimony will be favorable on balance to the defense. Those with testimony favorable to the *other* side are often unwilling to appear except by deposition unless, of course, they are within subpoena range of the trial court. It would be better to try a case where any such unwilling but important witnesses could be compelled to appear in person. Plaintiffs' counsel may be prepared to proceed via deposition but we should not force a jury to suffer through it where there is a good alternative.

**\*6** At this stage, it is impossible to predict exactly who the unwilling witnesses will be. Experience tells us, however, that they are likely to be present and former employees of defendants. If they have information favorable to the other side, such individuals are usually reluctant to testify against their former and present colleagues unless compelled to do so. So while we do not yet know who precisely will fall into this category, it is reasonably certain that such witnesses will emerge. Houston has the largest single concentration of such potential witnesses. Those witnesses will be subject to trial subpoenas only in the Southern District of Texas.

In terms of "local interest," *i.e.*, the connection of the respective districts to the subject of the action, the Southern District of Texas has a larger stake. Both districts, of course, have funeral homes operated by the alleged wrongdoers. Both districts have alleged victims (bereaved families and independent casket retailers) in the putative classes. What distinguishes them is that the largest of the defendant funeral-home chains is based in Houston, not San Francisco. That alone is a substantial connection. Moreover, conspiratorial events, if there were any, were likely to have occurred in Houston. None would have likely occurred in this district (and none is alleged to have occurred here).

Turning to another interest-of-justice consideration, plaintiffs argue that our district has less work than the Southern District of Texas and therefore this case could go to trial sooner here than there. The statistics submitted do not bear out this claim. In terms of "weighted" filings per judge, our district shows a heavier caseload per judge over the six-year period of data supplied by plaintiffs' counsel although, for 2003--04 and 2004--05, the Southern District had a slightly heavier load. The median time to trial for civil cases is faster in the Southern District than here.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2334362 (N.D.Cal.)
**(Cite as: 2005 WL 2334362 (N.D.Cal.))**

It is true that we have fewer criminal actions here but the majority of the criminal docket in the Southern District, especially in the divisions other than in the Houston division, are § 1326 illegal immigration cases, which almost always plead out without much burden on the judge. Overall, it is unfair to claim that the Southern District is not equipped to handle this large civil action as expeditiously as it could be handled here. In this regard, it should be added that counsel on both sides, at the initial case management conference, requested trial dates of November 2007 (plaintiffs' choice) and January 2008 (defendants' choice), both very far into the future. This Court required an earlier date in December 2006. The point is that neither side seemed to be in a hurry to go to trial; it is somewhat insincere not to express regret over a possibly longer timetable.

The basis for subject-matter jurisdiction is the federal antitrust law. Under the Court's supplemental jurisdiction, however, plaintiffs have alleged a claim under Section 17200 of California's Unfair Competition Law, at least on behalf of the general public in California. It is probably true that judges in this district will be better able to handle this state-law claim than judges in the transferee district. But the tail should not wag the dog. This is first and foremost a purported nationwide antitrust class action under the Sherman Act. The caselaw favoring the district "at home" on the controlling law has arisen in the *diversity* context, not the *federal-question* context. *Decker Coal,* 805 F.2d at 843. If the main *federal* event is clearly better served in the Southern District of Texas than in San Francisco, the pendency of a supplemental state-law claim should not override the indicated result. Moreover, the submissions indicate that federal judges in Texas are familiar with the Texas analogue to California Section 17200. Finally, Pioneer Valley has alleged Texas as well as California state-law antitrust and unfair-competition claims. In any case, this state-law question is a very small factor in the overall balance.

* * *

**\*7** In summary, the clear balance of the statutory factors favors transfer. The chief consideration the other way is plaintiffs' choice of forum. Although that choice is normally given substantial weight, the Ninth Circuit has qualified that rule:

If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to

minimal consideration.

*Pacific Car and Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir.1968). That this is brought as a nationwide class action further dilutes the deference due plaintiffs' choice. *Belzberg,* 834 F.2d at 739. Plaintiffs also argue that 15 U.S.C. 22, the law granting them a wide choice of venue in antitrust actions, entitles their choice to special deference upon a motion for transfer. This is not the law. Courts may transfer cases under Section 1404(a) even though they are filed pursuant to 15 U.S.C. 22. *United States v. Nat'l City Lines,* 337 U.S. 78, 84, 69 S.Ct. 955, 93 L.Ed. 1226 (1949). Furthermore, the questions of proper venue and transfer of venue have a different relationship in the instant case than plaintiffs suggest. *Cf. Ex parte Collett,* 337 U.S. 55, 60, 69 S.Ct. 959, 93 L.Ed. 1207 (1949) (holding, in the context of a similar venue statute, 45 U.S.C. 56, that the venue statute and Section 1404(a) "deal with two separate and distinct problems."). Title 15 U.S.C. 22 makes venue here in this case proper. Whether to transfer it under Section 1404(a) is, however, another matter. In this case, movants have carried their burden.

* * *

After the record was closed on this motion and as this order was being finalized, the Court received a further declaration from counsel for plaintiffs. It stated that, in about ten days, counsel would be adding a further-named plaintiff resident in this district. The record shows that the day after the hearing of this motion, plaintiffs' counsel sent out a solicitation letter. The letter was sent to families who had purchased caskets from funeral homes in the district. Counsel's letter invited them to join the suit as named plaintiffs, advising that "We are seeking a few more individuals to serve as class representatives." The letter added, "Being a class representative takes very little time, will cost you nothing, and may entitle you to compensation over and above any overcharge you paid for a casket." Evidently, someone from San Jose has answered the call.

The Court has carefully considered whether this potential development would change the outcome on this motion. The answer is no. *First,* we will take counsel at his word in his solicitation letter that "being a class representative takes very little time." If so, the inconvenience to the solicited potential new party will be minimal no matter where venue is laid. *Second,* even adding a new plaintiff to the dozen

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2334362 (N.D.Cal.)
**(Cite as: 2005 WL 2334362 (N.D.Cal.))**

already on board would not significantly shift the geographic center of gravity of all plaintiffs. *Third,* the solicitation of a new party after the fact to shore up local contacts for purposes of a pending § 1404 issue smacks of forum-shopping. The caselaw holds that if "there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference." *Williams v. Bowman,* 157 F.Supp.2d 1103, 1106 (N.D.Cal.2001) (Walker, J.); *Italian Colors Restaurant v. American Express Co.,* No. C 03-3719 SI, 2003 WL 22682482 at *3-5 (Nov. 10, 2003 N.D.Cal.) (Illston, J.). *Fourth,* as stated, plaintiffs' choice of forum is accorded less weight where the action is brought, as here, as a class action, all the more so when it is brought as a nationwide class action. *Belzberg,* 843 F.2d at 739.

                             * * *

**\*8** For the foregoing reasons, the motion to transfer is GRANTED in the following cases: *FCA* (No. C 05-01804 WHA), *Rocha* (No. C 05-02501 WHA), *Berger,* (No. C 05-02502 WHA), *Magsarili* (No. C 05-02792 WHA), and *Pioneer Valley* (No. C 05-02806 WHA). The Clerk shall transfer the files to the Clerk for the Southern District of Texas. Meanwhile, the amended complaint and follow-on motions to dismiss should be served on the timetable previously set. When the cases arrive in the Southern District of Texas, the pleadings and motions should be filed with the court. This will avoid any interruption in the prosecution of the cases, all of this, of course, being wholly subject to whatever new schedule will be set by the transferee court.

 IT IS SO ORDERED.

 Not Reported in F.Supp.2d, 2005 WL 2334362 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**Tab 36**

Westlaw.

Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 2003 WL 22682482 (N.D.Cal.)
**(Cite as: 2003 WL 22682482 (N.D.Cal.))**

**C**Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
ITALIAN COLORS RESTAURANT, on behalf of
itself and all similarly situated
persons, Plaintiffs,
v.
AMERICAN EXPRESS COMPANY and American
Express Travel Related Services Company,
Inc., Defendants.
**No. C 03-3719 SI.**

Nov. 10, 2003.

Merchants and small business owners brought action on behalf of nationwide class against credit and charge card issuer alleging violations of Clayton Act and Sherman Act. On issuer's motion to transfer venue, the District Court, Illston, J., held that transfer of action from Northern District of California to Southern District of New York was warranted.

Motion granted.

West Headnotes

**[1] Federal Courts** ⬤═106.5
170Bk106.5Most Cited Cases
(Formerly 170Bk106)
Transfer of potential nationwide class action from Northern District of California to Southern District of New York was warranted, since plaintiffs' choice of forum was disregarded due to forum shopping, plaintiffs' contacts with forum were of minimal value in context of nationwide class action, neither party had substantial contacts with present forum, litigation costs weighed heavily in favor of transfer to Southern District of New York with regard to both documentary and testamentary evidence, contract at issue had New York choice of law clause, although it did not have forum selection clause, and transfer would not offend California public policy. 28 U.S.C.A. § 1404(a).

**[2] Federal Civil Procedure** ⬤═8.1
170Ak8.1Most Cited Cases
Consolidation is a device constricted in scope to multiple cases pending in the same district. Fed.Rules Civ.Proc.Rule 42(a), 28 U.S.C.A.

Blaine H. Bortnick, Liddle & Robinson, L.L.P., Gary B. Friedman, Friedman & Shube, New York, NY, Christopher William Hellmich, Esq., Read K. McCaffrey, Patton Boggs, LLP, Washington, DC, David S. Markun, Edward Zusman, Kevin K. Eng, Markun, Zusman & Compton LLP, San Francisco, CA, for Plaintiffs.

Bruce Schneider, Heidi Balk, Esq., Stroock & Stroock & Lavan LLP, New York, NY, D. Wayne Jeffries, Stephen J. Newman, Strook & Strook & Lavan LLP, Los Angels, CA, for Defendants.

ORDER GRANTING DEFENDANTS' MOTION
TO TRANSFER VENUE TO THE SOUTHERN
DISTRICT OF
NEW YORK AND DENYING PLAINTIFFS'
MOTION TO CONSOLIDATE AND APPOINT
LEAD COUNSEL

ILLSTON, J.

*1 On November 7, 2003, this Court heard oral argument on defendants' motion to transfer venue and plaintiffs' motion to consolidate and appoint lead counsel. Having considered the arguments of counsel and the papers submitted, the Court hereby TRANSFERS venue to the Southern District of New York, and DENIES plaintiffs' motion as premature.

BACKGROUND
This action was filed in this Court on August 8, 2003. Months earlier, however, in June, 2003, a virtually identical action, based on a nearly verbatim complaint, was filed in the Eastern District of New York, on behalf of New York-based merchants and small business owners representing a proposed nationwide class ("*Phuong* Complaint"). Mot. to Transfer, Ex. A. The *Phuong* complaint was voluntarily dismissed at plaintiffs' behest on July 16, 2003, after defendants filed notice of their intent to file a motion to dismiss. Decl. of Schneider at 2. One day before the dismissal notice in the *Phuong* action, plaintiffs' counsel filed the same complaint in the Central District of California using a different local business as the named plaintiff ("*Il Forno* Complaint"). *Id.* The *Il Forno* complaint was filed

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22682482 (N.D.Cal.)
(Cite as: 2003 WL 22682482 (N.D.Cal.))

but never served on defendants. *Id.* Roughly three weeks later, the instant complaint was filed in the Northern District of California. All three actions, including the complaint currently before this Court, allege violations by defendants American Express Co. and American Express Travel Related Services (hereinafter collectively referred to as "American Express," unless required by context) of Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, and Section 1 of the Sherman Act, 15 U.S.C. § 1. Compl. ¶ 4.

Plaintiffs allege that certain provisions of the standard contract executed by all merchants who agree to accept American Express cards constitute anticompetitive tying arrangements. *Id.* at ¶ 45. The standard contract requires merchants who accept the American Express charge card to accept the American Express credit card. *Id.* Unlike a credit card, a charge card is not a means of financing, but a "method of payment." *Id.* at ¶ 18. Charge card users must pay their balance in full each month, as opposed to credit card users, who use their cards to access revolving credit based on a predetermined interest rate. *Id.* at ¶¶ 18, 28. Merchants are willing to pay higher fees to access the American Express charge card member base, based on perceptions that charge card users are more affluent. *Id.* at ¶ 23. These perceptions are supported by data indicating that the average purchase on an American Express charge card is 17% higher than the average credit card purchase. *Id.* at ¶ 24.

For every purchase made on a credit or charge card, merchants pay a "discount rate" to the credit or charge card company. The discount rate for competitor credit cards such as Visa and MasterCard is usually between 0.85 and 1.8%. *Id.* at ¶¶ 22, 43. According to plaintiffs, American Express unlawfully leverages its charge card member base to force merchants to accept its credit card at a "grossly supracompetitive" discount rate of 3.0%. *Id.* at ¶¶ 2, 21. Similar tying arrangements formerly employed by Visa and MasterCard were discontinued as part of a settlement agreement in a similar antitrust action. *Id.* at ¶ 43, *citing* *In re Visa Check/Mastermoney Antitrust Litigation, 2003 WL 1712568 (E.D.N.Y. Apr.1, 2003).* Plaintiffs allege that the American Express tying arrangement is an unlawful restraint of trade under federal antitrust laws. Compl. ¶ 3. Now before the Court are defendants' motion to transfer venue to the Southern District of New York, and plaintiffs' motion to consolidate cases and appoint lead counsel.

## LEGAL STANDARD

*2 "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to " 'prevent the waste of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964), citing Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26-27, 80 S.Ct. 1470, 1474-75, 4 L.Ed.2d 1540 (1960).* A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir.2000), citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988).*

To support a motion for transfer, the moving party must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice. *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp., 820 F.Supp. 503, 506 (C.D.Cal.1992).* In determining the convenience of the parties and witnesses and the interests of justice, the Ninth Circuit considers "multiple factors" including:

> (1) location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Jones, 211 F.3d at 498-99.* The existence of a forum selection clause, along with the forum state's relevant public policy, may also comprise "significant factor[s] in the court's § 1404(a) analysis." *Id.*

## DISCUSSION

I. Defendants' motion to transfer venue

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22682482 (N.D.Cal.)
(Cite as: 2003 WL 22682482 (N.D.Cal.))

Page 3

[1] On a motion to transfer, the moving party must first demonstrate that venue is proper in both the transferor and transferee courts, as required by the first two components of the *Goodyear* test. Thereafter, the Court uses the multi-factor determination set forth in *Jones* to establish the third element of *Goodyear:* convenience to the parties and witnesses, and the interests of justice. In this case, venue is proper in both the transferor and transferee courts under 15 U.S.C. § 22, which provides for the filing of an antitrust suit against a corporation in any district where it conducts business. Accordingly, the dispute centers on which party is favored by application of the ten *Jones* factors. As explained *infra,* this balance weighs heavily in favor of transferring the action to the Southern District of New York.

A. Location where the relevant agreements were negotiated and executed

*3 The parties do not dispute that the individual named plaintiff in this action executed the agreement from its place of business in California. Plaintiffs argue that more of the relevant tying agreements were executed by merchants in California than in any other state. Opp'n. at 5. Plaintiffs support this statement with state-by-state analyses of credit card receivables and overall retail sales. Decl. of Zusman, Ex. A, B. Neither of these statistics, however, is broken down by creditor, making it impossible to tell how much of the share belongs to American Express. Moreover, as the most populous state in the country, California has a disproportionate share of many economic activities. By this logic, as defendants illustrate, "virtually every significant class action case would need to be litigated in California," a logic that has been repeatedly rejected. *See,e.g.,Ho v. Ikon Office Solutions, Inc.,* 143 F.Supp.2d 1163, 1167-68 (N.D.Cal.2001).

Many merchants throughout every state in the nation negotiated and executed identical agreements. If the named plaintiff purports to act on behalf of a nationwide class of merchants, there is nothing unique or probative about the location of its place of business. Furthermore, while the agreements with respect to defendant TRS may have been mailed from its offices in Phoenix, Arizona, the New York office, as the principal place of business, is likely to have drafted the original agreement and developed the business policy behind it. Neither party alleges that every agreement was negotiated in person. The very

nature of this type of agreement, which is transmitted through the mail and executed by merchants at thousands of individual businesses throughout the country, deprives this factor of any weight in the analysis of proper venue.

B. Forum state most familiar with the governing law

Plaintiffs correctly state that where federal law governs all claims raised, "either forum is equally capable of hearing and deciding those questions." *DealTime.com Ltd. v. McNulty,* 123 F.Supp.2d 750, 757 (S.D.N.Y.2000). Although the merchant agreements at issue contain a New York choice of law clause, such a provision alone does not demonstrate that federal courts sitting in New York have a more well-developed body of antitrust law than those in California. Accordingly, this factor, like the last, weighs in favor of neither party.

C. Plaintiffs' choice of forum

Generally, courts afford considerable weight to a plaintiff's choice of forum in determining a motion to transfer, subject to various conditions. *SeePiper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). The plaintiff's choice is given less deference where, as here, the action is brought on behalf of a nationwide class. *SeeLou v. Belzberg,* 834 F.2d 730, 739 (9th Cir.1987); *Koster v. (American) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947) ( "where there are hundreds of potential plaintiffs ... the claim of any one plaintiff that a forum is appropriate merely because it is his home is considerably weakened.").

*4 The complaint admits that all potential class members "have been damaged in precisely the same fashion, by precisely the same conduct." Compl. ¶ 16. Interchangeable plaintiffs could be and have been found in several districts, including the Eastern District of New York, where the first cause of action was filed. Decl. of Schneider, Ex. A. Notably, in that case, the same counsel representing plaintiffs in the present action asserted that venue was proper in the Eastern District of New York because the defendants "may be found or transac[t] business" there, and "have marketed their charge card services ... to thousands of merchants within [the Eastern District]." Mot. to Transfer, Ex. A, *Phuong* Compl. ¶ 5. Here, the only contact between the proposed plaintiff class

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22682482 (N.D.Cal.)
(Cite as: 2003 WL 22682482 (N.D.Cal.))

Page 4

and this district is the individual named plaintiff's place of business. This contact is no more forceful than the link between the thousands of potential class members and their respective districts, a roster which surely includes every district court in the nation.

Furthermore, the Ninth Circuit has established that courts should disregard a plaintiff's forum choice where the suit is a result of forum-shopping. See *Alltrade, Inc., v. Uniweld Products, Inc.,* 946 F.2d 622, 628 (9th Cir.1991). One could rationally infer forum shopping here, based on plaintiffs' repeat filing and plaintiffs' admitted perceptions that California provides a more favorable rule of decision, as discussed below. Plaintiffs voluntarily dismissed the *Phuong* action one day before filing the first California case. Decl. of Schneider at 2. The first California case, in the Central District, was filed but never served on defendants. *Id.* Throughout this "odyssey," as defendants put it, the roster of plaintiffs' counsel has remained substantially the same. [FN1]

> FN1. One member of plaintiffs' local counsel was employed at a different firm in New York when the New York case was filed. *Id.* at Ex. A.

At oral argument, plaintiffs stated that they brought suit in California so as to avail themselves of the Ninth Circuit's disfavor of arbitration clauses within adhesion contracts. According to plaintiffs, the relocation became necessary after it came to their attention during the *Phuong* action that not all potential class members had signed identical merchant agreements. Merchants who signed on after a certain year were bound by a compulsory arbitration clause, while others were not bound. Plaintiffs stated that in order to serve their entire proposed class equitably, they sought a venue where the two groups of merchants would be treated identically as a matter of law, assuming a negation of the arbitration clause.

Pursuit of a venue where a class can be maintained without bifurcation is not a disfavored strategy per se, but this does not explain plaintiffs' forum shopping within California. Plaintiffs secured the perceived tactical gain they purportedly seek when they first filed suit in the Central District. If plaintiffs' sole objective in repeat filing was to accrue perceived benefits for their class as a whole, this does not explain why they filed complaints in both the Central

and Northern Districts. The Court's forum shopping concerns persist. Accordingly, plaintiffs' choice of forum is disregarded.

D. Respective parties' contacts with the forum

**\*5** Plaintiffs' contacts with the forum, as previously discussed, are of minimal value in a class action, especially in view of plaintiffs' forum shopping. In addition to their demographic analyses of credit card receivables as described in subsection (A) *supra,* which this Court rejects, plaintiffs also urge the Court to consider other lawsuits as contacts between the defendants and this forum. Opp'n. to Mot. to Transfer at 7. According to plaintiffs, one or more of the defendants is a party in 225 civil cases and more than 25,000 bankruptcy proceedings currently pending in California courts. Decl. of Zusman at 2. However, plaintiffs offer no source of law which instructs the Court to count unrelated lawsuits as contacts for the purposes of determining venue. Neither party has substantial contacts with the present forum.

E. Contacts relating to the plaintiff's cause of action in the chosen forum

Here, again, plaintiffs argue that this district is the most appropriate forum because Californians have more small businesses and hence have executed more American Express merchant contracts than any other state. Opp'n. to Mot. to Transfer at 7. Plaintiffs offer no evidence to show that per capita, California is significantly more affected by the contracts than other states, including New York. As in subsection (A), this argument finds no place here.

F. Difference in the cost of litigation

Litigation costs weigh heavily in favor of transfer to the Southern District of New York, with regard to both documentary and testamentary evidence. Documents pertaining to defendants' business practices are most likely to be found at their principal place of business. Although developments in electronic conveyance have reduced the cost of document transfer somewhat, the cost of litigation will be substantially lessened if the action is venued in the same district where most of the documentary evidence is found. A reduction in document sharing and litigation costs serves both parties as well as the public interest. Plaintiff Italian Colors, on the other hand, can be expected to contribute comparatively

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22682482 (N.D.Cal.)
(Cite as: 2003 WL 22682482 (N.D.Cal.))

little documentary evidence to the action. As explained above, its interests are entirely fungible with those of a potential class member in the Southern District of New York.

Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions. Beyond merely having a principal place of business in New York, defendants specifically name at least two individual American Express officers based in New York whose expertise and expected testimony is directly relevant to the claims. Mot. to Transfer at 9, citing*Maxon v. Jefferson Pilot Securities Corp.,* 2002 WL 523575, *4 (N.D.Cal. Apr. 2, 2002)* (relevant expertise of potential witnesses dispositive when transferring venue based on relative location of witnesses). Since the claims arise solely out of defendants' business practices, the parties would expect that most of the witnesses will be the defendants' employees. Accordingly, this factor weighs heavily in favor of transfer.

G. Availability of non-party witnesses

**\*6** Plaintiffs predict that the most "important" non-party witnesses are likely to be employees and officers of Visa U.S.A., which plaintiffs characterize as defendants' largest competitor. Opp'n to Mot. to Transfer at 1. Visa maintains offices within this district in San Francisco and Foster City. *Id.* As defendants point out, this approach comprises "an entirely different logic to [plaintiffs'] original choice of venue [New York]," which was premised on defendants' place of business. Reply in Supp. of Mot. to Transfer at 4. Further, plaintiffs appear to understate the value of non-party witnesses from MasterCard, another credit card competitor with its principal place of business in the Southern District of New York. *Id.* at 4; Supp. Schneider Decl. at Ex. 1. Plaintiffs do not attempt to explain how non-party witnesses from Visa would provide more probative information about the relevant market share and competitive business practices than those from MasterCard or any other non-party. This factor does not weigh in plaintiffs' favor.

H. Ease of access to sources of proof

This factor derives from the same operative facts as subsection (F) *supra,* and weighs heavily in favor of venue transfer.

I. Forum selection clause

As stated in *Jones,* the presence of a forum selection clause functions as a ninth factor weighing in favor of venue transfer. See*211 F.3d at 499.* In the instant case, the individual plaintiff signed a merchant agreement in 1993 that had a New York choice of law clause, but did not have a forum selection clause. Decl. of Alterman at 1, Ex. E. The most recent merchant agreement, dated May 2003, does contain a New York forum selection clause. *Id.,* Ex. F. It is unclear what year the forum selection clause first appeared on the merchant agreement. Plaintiffs argue that if the clause first appeared in 2003, the percentage of the potential class bound to it is a relatively small fraction, as most potential class members will have signed an earlier agreement. Even in the light most favorable to the plaintiff, assuming that the clause made its debut in 2003, and thereby applies to only a part of the proposed plaintiff class, this factor still leans in favor of venue transfer, since the clause never mentioned California or any other state.

J. Public policy

Lastly, plaintiffs urge the Court to consider the forum state's public policy interest in declining to enforce the merchant agreement's collective action waiver and compelled arbitration provisions. Opp'n. to Mot. to Transfer at 2-3. Plaintiffs rely on *Jones,* wherein the Ninth Circuit held that the forum selection clause of a franchise agreement, which would otherwise be honored under federal law, was precluded by California's strong public policy interest against such provisions. See*211 F.3d at 499. Jones,* however, is distinguishable from the instant action because the public policy at issue there concerned venue itself, rather than the merits of the claim. *Id.*

**\*7** Plaintiffs cite *Ting v. AT & T,* 319 F.3d 1126 (9th Cir.2003) and *Circuit City Stores, Inc. v. Mantor,* 335 F.3d 1101 (9th Cir.2003) as a source of California's public policy against anti-class action and compelled arbitration clauses. However, this is but one possible interpretation of public policy. As defendants point out, an equally plausible interpretation is that arbitration clauses do not offend the public policy of either New York, California, or federal common law--each of which has its own "well-developed bod[y] of law regarding arbitration." *Id.* More importantly, the

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22682482 (N.D.Cal.)
(Cite as: 2003 WL 22682482 (N.D.Cal.))

question of arbitration is not presently before the court; its invocation as a source of public policy is premature on a motion to transfer. In short, plaintiffs fail to illustrate how transfer will offend the public policy of this Court's forum state.

Plaintiffs' argument concerning California public policy is further weakened by the fact that plaintiffs filed, but did not serve and apparently did not intend to pursue, a claim in the Central District. In sum, all factors not neutral in disposition weigh in favor of venue transfer. Accordingly, defendants' motion to transfer venue is GRANTED and venue is hereby TRANSFERRED to the Southern District of New York.

II. Consolidation and appointment of lead counsel

[2] Even in the absence of venue transfer, consolidation under Federal Rule of Civil Procedure 42(a) is a device constricted in scope to multiple cases pending in the same district. Plaintiffs cite no authority by which this Court could divest other Article III courts of jurisdiction over matters pending before them. Only the presiding court can order transfer of venue. See 15 Fed. Prac. & Proc. Juris.2d § 3844. Moreover, appointment of lead counsel is premature before other counsel file cases on behalf of other clients. No competition exists among counsel that requires refereeing by the Court, and no class has yet been certified, or even proposed. If and when this becomes problematic, the Judicial Panel on MultiDistrict Litigation is the appropriate arbiter.

Having granted defendants' motion to transfer venue, however, plaintiffs' motion to consolidate and appoint lead counsel is DENIED as premature. This motion is not proper before the transferor court, and should be reserved for the transferee court.

CONCLUSION

For the foregoing reasons and for good cause shown:

(1) Defendants' motion to transfer venue is GRANTED and this action is TRANSFERRED to the Southern District of New York; and

(2) Plaintiffs' motion to consolidate and appoint lead counsel is denied.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2003 WL 22682482 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.