**Tab 37**

Westlaw.

Not Reported in F.Supp.2d                                                                                              Page 1
Not Reported in F.Supp.2d, 1999 WL 429549 (N.D.Cal.)
**(Cite as: 1999 WL 429549 (N.D.Cal.))**

**C**Only the Westlaw citation is currently available.

United States District Court, N.D. California.
JOE BOXER CORPORATION, Plaintiff,
v.
R. SISKIND & COMPANY, INC., Defendant.
**No. C 98-4899 SI.**

June 28, 1999.

ORDER DENYING DEFENDANT'S MOTION TO
DISMISS FOR LACK OF PERSONAL
JURISDICTION
AND VENUE; DENYING PLAINTIFF'S
COUNTER MOTION TO ENJOIN NEW YORK
ACTION;
GRANTING DEFENDANT'S MOTION TO
TRANSFER VENUE

ILLSTON, J.

*1 On May 28, 1999, the Court heard argument on defendant's motion to dismiss for lack of personal jurisdiction and venue, or in the alternative to change venue, and plaintiff's cross-motion to enjoin a later filed action between the parties currently pending in the Southern District of New York. Having carefully considered the arguments of the parties and the papers submitted, the Court DENIES defendant's motion to dismiss for lack of personal jurisdiction and venue, DENIES plaintiff's motion to enjoin the New York action, and GRANTS defendant's motion to change venue.

BACKGROUND

Plaintiff Joe Boxer Corporation (Boxer) is a clothing manufacturer based in San Francisco California. First Amended Complaint (FAC), ¶¶ 1, 5. Boxer also maintains a sales showroom in New York City where it employs between 15-20 employees. Sherry Depo., 55:18, Zeldin Decl., Exh. 4. Defendant R. Siskind & Company, Inc. (Siskind) is an off-price merchandise distributor based in New York City. Siskind purchases the excess inventories of brand name merchandise from clothing manufacturers and sells to approved distribution outlets. Id., ¶ 2, 6.

In late 1993, the parties began a long term commercial relationship whereby Siskind became the exclusive dealer of Boxer's excess inventory. Id., ¶ 7. The terms of the commercial relationship were negotiated, in part, during a meeting in San Francisco attended by representatives of Boxer and Siskind. [FN1] Leon Decl., ¶¶ 4-5. Sherry Depo., 64:21-65:4; 89:9-91:20, Zeldin Decl., Exh. A. The parties memorialized their understanding in an exclusivity agreement signed on December 7, 1993 at their respective headquarters. See contract, attached to FAC as Exh. A. The term of the agreement was for a period of nine months, and the parties renewed the exclusivity arrangement annually until the deterioration of their relationship in late 1998. Roseman Decl., ¶ 5.

> FN1. Siskind denies that any of its employees traveled to San Francisco for such a meeting. As a contact with the forum relevant to the personal jurisdiction analysis, the Court accepts Boxer's version of the meeting as true. AT & T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir.1996).

Over the course of the parties' relationship, Siskind purchased approximately $20,000,000 in excess inventory from Boxer. Roseman Decl., ¶ 7. The process by which the parties negotiated the terms of the merchandise orders depended on whether the product line was new or established. Boxer's established product lines had set prices on inventory lists that were sent between Boxer's San Francisco office and Siskind. Sherry Depo., 149:21-150:13, Zeldin Supp. Decl., Exh. 4; party correspondence dated November 5, 1998, Takano Decl., Exh. B. After receiving the inventory order from Siskind, Boxer's San Francisco office would then ship the merchandise FOB San Francisco.

New product lines did not have set prices, but rather were negotiated in New York between Siskind and Boxer's New York office. Id., ¶ 4, 8, 10; Sherry Depo., 66:4-11; 149:7-151:17, Zeldin Supp. Decl., Exh. 4. After negotiating the unit price and other terms of new merchandise orders with Boxer's New York office, Siskind then sent the purchase order to Boxer's headquarters in San Francisco for shipment FOB San Francisco. See Roseman Decl, ¶ 8; Sherry

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                          Page 2
Not Reported in F.Supp.2d, 1999 WL 429549 (N.D.Cal.)
**(Cite as: 1999 WL 429549 (N.D.Cal.))**

Depo., 66:4-11; 149:7-151:17, Zeldin Supp. Decl., Exh. 4; party correspondences, Roseman Supp. Decl., Exh's. 10, 12, 13, 15, 16, 17, 19; invoices providing "FOB San Francisco," Takano Decl., Exh. A. Boxer's San Francisco office then supervised the shipping and delivery of merchandise orders. Roseman Decl., ¶ 8; Roseman Supp. Decl., ¶¶ 2-4; Sherry Depo., 65:9-66:21, 149:17-151:17.

**\*2** As for other areas of the parties' commercial relationship, Boxer's San Francisco and New York office shared in the handling of Siskind's credit/payment terms (*see* party correspondence dated May 29, 1998, and Sherry Depo., 251:22-252:20, Zeldin Supp. Decl., Exh's 13, 21), while generally Boxer's San Francisco office became involved in disputes over the terms of merchandise orders after it became apparent that Boxer's New York office could not resolve the problem on its own. Roseman Decl., ¶ 8; Roseman Supp. Decl., ¶¶ 2-4; party correspondence dated July 29, 1998, Takano Decl., Exh J; Sherry Depo., 65:9-66:24. Boxer's New York office handled the primary negotiations with Siskind over approved retail outlets. Sherry Depo., 246:7-12, Zeldin Supp. Decl., Exh. 21; *see* party correspondence. Zeldin Supp. Decl., Exh's 5, 6, 9, 10.

In 1998, the parties' commercial relationship deteriorated. Boxer accused Siskind of selling Boxer merchandise to unapproved retailers, and Siskind accused Boxer of misrepresentations regarding Siskind's purchase of new merchandise from Boxer and two of Boxer's alleged ex-licensees. FAC, 9; Roseman Decl., ¶¶ 10-20.

Boxer claims that the disputes are based on Siskind's unilateral price reductions for allegedly defective merchandise and alleged shortages in quantities delivered. Langmaid Decl., ¶ 4. Siskind claims that the problems with Boxer arose largely from two series of purchases in which employees of Boxer's New York office induced Siskind to negotiate unprofitable merchandise orders by means of material misrepresentations. Roseman Decl., ¶¶ 11-20. The first series of transactions, which began in 1996, involved Siskind and two purported licensees of Boxer, Timex and Van Mar. According to Siskind, employees of Boxer's New York office induced Siskind to purchase inventory from these companies by falsely representing that the licenses of Timex and Van Mar were still in effect, thereby causing Siskind to negotiate these purchases at inflated prices. *Id.,* ¶ 20. The second transaction involved Siskind's

purchase of a new line of Boxer's apparel called "Activewear." According to Siskind, employees of Boxer's New York office falsely represented that the Activewear line would be continued in the following year, thus making it easier for Siskind to sell the unknown brand to its retail outlets. *Id.,* ¶¶ 12-17.

As a result of the disputes, the parties apparently terminated their relationship in November 1998, allegedly leaving Boxer with an unpaid balance of $553,094.67, and allegedly leaving Siskind with $5,000,000 of unsold merchandise. FAC, ¶¶ 10, 16; Roseman Decl., ¶ 23.

On December 23, 1998, Boxer filed the instant action in this district alleging contract claims to recover Siskind's outstanding balance and seeking a declaratory judgment regarding the parties' continuing rights and obligations. [FN2] On February 4, 1999, Siskind filed suit against Boxer in New York state court alleging fraud and breach of contract claims and seeking $5,000,000 in damages. *See* Zeldin Decl., ¶ 2. Boxer has since removed that action to federal district court in the Southern District of New York.

> FN2. Boxer amended its complaint on February 10, 1999 to include state tort claims alleging that Siskind spread false rumors about Boxer to various clothing retailers. The parties have stipulated, however, that these claims should not be considered for purposes of these motions. Sherry Depo., 230:16-231:5, Zeldin Supp. Decl., Exh. 4.

**\*3** Presently before this Court are 1) Siskind's motions to dismiss for lack of personal jurisdiction and lack of venue, or in the alternative for a transfer of venue to the Southern District of New York, and 2). Boxer's counter-motion to enjoin the action between the parties currently pending in the Southern District of New York. [FN3]

> FN3. The Court DENIES Siskind's motion to strike the declaration of Kathleen Sherry.

## DISCUSSION

1. Personal Jurisdiction

Siskind contends that it does not have sufficient contacts with California to be subject to personal

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 1999 WL 429549 (N.D.Cal.)
**(Cite as: 1999 WL 429549 (N.D.Cal.))**

jurisdiction in the state. Siskind points out that it is not registered to do business in California, nor does it have any offices, real property, bank accounts, phone listings or sales agents in California. Roseman Decl ., ¶ 2. Siskind argues that none of its agents came to California to negotiate or sign the exclusivity agreement between the parties, and that Siskind did not perform any of the activities in dispute in California.

Boxer counters that Siskind is subject to personal jurisdiction in California because Siskind traveled to Boxer's San Francisco headquarters to negotiate key terms of the exclusivity agreement prior to its execution in 1993, and Siskind accepted delivery of Boxer's merchandise in San Francisco throughout the course of their business relationship and specifically during the period at issue in this dispute. The Court agrees with Boxer and concludes that these contacts satisfy the due process requirements of specific jurisdiction.

In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proof on the necessary jurisdictional facts. _Ziegler v. Indian River County,_ 64 F.3d 470, 473 (9th Cir.1995). When a court rules on the basis of affidavits and discovery materials without holding an evidentiary hearing, plaintiff's burden is met with a simple prima facie showing of personal jurisdiction. _Fields v. Sedgwick Associated Risks, Ltd.,_ 796 F.2d 299, 301 (9th Cir.1986). In determining whether a plaintiff has met this burden, uncontroverted allegations in the plaintiff's complaint must be taken as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." _AT & T Co. v. Compagnie Bruxelles Lambert,_ 94 F.3d 586, 588 (9th Cir.1996) (internal citations and quotations omitted).

Personal jurisdiction must comport with the state long-arm statute, and with the constitutional requirements of due process. _Omeluk v. Langsten Slip and Batbyggeri A/S,_ 52 F.3d 267 (9th Cir.1995). citing _Chan v. Society Expeditions, Inc.,_ 39 F.3d 1398 (9th Cir.1994). California's long-arm statute permits this Court to exercise personal jurisdiction over nonresident defendants on any basis not inconsistent with the California or United States Constitution. California Code of Civil Procedure, § 410.10. Absent traditional bases for personal jurisdiction (physical presence, domicile or consent), due process requires that the defendant have certain minimum contacts

with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. _International Shoe Co. v. Washington,_ 326 U.S. 310, 316, 66 S.Ct. 154 (1945).

**\*4** The Court must determine whether sufficient minimum contacts between the moving defendants and the forum state exist to allow the exercise of personal jurisdiction over them. In this regard, courts may exercise either general or specific jurisdiction over nonresident defendants. _FDIC v. British-American Ins. Co., LTD.,_ 828 F.2d 1439, 1442 (9th Cir.1987).

General jurisdiction exists when the nonresident has substantial or systematic and continuous contacts with the forum state, and the exercise of jurisdiction satisfies traditional notions of fair play and substantial justice. _Ziegler,_ 64 F.3d 470 (9th Cir.1995). In order to support an exercise of specific personal jurisdiction, plaintiffs must demonstrate that defendants had purposeful contacts with California, that the present cause of action arose out of those contacts, and that exercising jurisdiction over defendants would not be unreasonable. Specific jurisdiction exists when the nonresident has purposeful contacts with California that are directly related to the subject matter of the litigation, and the exercise of jurisdiction is reasonable. _Id._

The Ninth Circuit has established a three-step test to determine whether the court may exercise specific jurisdiction over a nonresident defendant. _British-American,_ 828 F.2d at 1442;_Ziegler,_ 64 F.3d at 473. First, specific jurisdiction requires a showing that the out-of-state defendant purposefully directed its activities toward residents of the forum state or purposefully availed itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws. _Burger King Corp. v. Rudzewicz,_ 471 U.S. 462, 474-475, 105 S.Ct. 2174, 2183 (1985). Second, the controversy must be related to or "arise out of" defendant's contact with the forum. _Ziegler,_ 64 F.3d at 473. Third, the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. _British-American,_ 828 F.2d at 1442. Generally, the relationship between the defendant, the forum and the litigation is the essential foundation of personal jurisdiction. _Helicopteros Nacionales de Colombia, S.A. v. Hall,_ 466 U.S. 408, 414, 104 S.Ct. 1868, 1872 (1984), citing _Shaffer v. Heitner,_ 433 U.S. 186, 97 S.Ct. 2569 (1977).

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                Page 4
Not Reported in F.Supp.2d, 1999 WL 429549 (N.D.Cal.)
**(Cite as: 1999 WL 429549 (N.D.Cal.))**

A. Purposeful Availment

"The 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." _Ballard v. Savage_, 65 F.3d 1495, 1498 (9th Cir.1995). The existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident. _Burger King_, 471 U.S. at 478, 105 S.Ct. at 2185. However, _Burger King_ further stated that "with respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." _Id._ 471 U.S. at 473, 105 S.Ct. at 2182 (quoting _Travelers Health Ass'n v. Virginia_, 339 U.S. 643, 647, 70 S.Ct. 927, 929 (1950)).

**\*5** In contract cases, courts apply a "highly realistic" approach that examines the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing in determining whether a defendant has purposefully established minimum contacts within the forum." _Burger King_, 471 U.S. at 478, 105 S.Ct. at 2185.

In the case at bar, Siskind's agents came to Boxer's headquarters in California in late 1993 to negotiate key terms of the exclusivity agreement. Although Siskind denies this meeting ever took place, disputed jurisdictional facts must be construed in favor of Boxer in determining the existence of personal jurisdiction. _Compagnie Bruxelles Lambert_, 94 F.3d at 588. Traveling to the forum state to conduct contract negotiations is traditionally recognized as a contact sufficient to satisfy the purposeful availment requirement. See _Peterson v. Peterson_, 140 F.3d 1313, 1320 (9th Cir.1998) ( "Contract negotiations are classic examples of the sort of contact that can give rise to in personam jurisdiction.").

A less significant contact with the forum arose from the shipping designation assigned to the merchandise orders that were sent to Siskind in New York from Boxer's California headquarters. Siskind accepted delivery of Boxer's merchandise in San Francisco FOB, and arranged for shipment to its office in New

York and New Jersey. This constitutes another form of purposeful availment with the forum. See _Henry R. Jahn & Sons, Inc. v. Superior Court_, 49 Cal.2d 855, 861 (1958) (finding specific jurisdiction where defendant buyer took title to goods in California and arranged for their shipment).

It is doubtful that the contact created by the FOB term by itself would satisfy the purposeful availment requirement. See _Lakeside Bridge & Steel Co. v. Mountain State Construction Co._, 597 F.2d 596, 604 n. 14 (7th Cir.1979) (questioning the weight to be afforded the contract created by the FOB term in a personal jurisdiction analysis). This contact, however, together with the contract negotiations in California are sufficient to satisfy the purposeful availment requirement.

B. Arising out of forum-related activities

The Ninth Circuit relies on a "but for" test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction. _Ballard v. Savage_, 65 F.3d at 1500. The question therefore is: but for Siskind's contacts with California, would Boxer's claims against Siskind have arisen?

The Court concludes that there is a causal nexus between Siskind's contacts and Boxer's claims in the instant action. Boxer's breach of contract action would not have arisen but for the negotiation of the exclusivity agreement that formed the basis of the parties' commercial dealings.

C. Reasonableness

The third requirement under this Circuit's test for specific jurisdiction is that the exercise of jurisdiction must be reasonable. _Sinatra v. Nat'l Enquirer, Inc._, 854 F.2d 1191, 1195 (9th Cir.1988). "Once minimum contacts are shown, a rebuttable presumption arises that the exercise of jurisdiction is reasonable." _Id._ Since Boxer has demonstrated the requisite minimum contacts, Siskind bears the burden of ultimately proving that the exercise of jurisdiction is unreasonable. _Burger King_, 471 U.S. at 477-78, 105 S.Ct. at 2184-85. To avoid jurisdiction, defendants must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." _Id._, 471 U.S. at 477, 105 S.Ct. at 2185.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 429549 (N.D.Cal.)
(Cite as: 1999 WL 429549 (N.D.Cal.))

Page 5

**\*6** To determine whether the exercise of jurisdiction over non-resident defendants is reasonable, seven factors are considered: the extent of purposeful interjection; the burden on the defendant; the extent of conflict with sovereignty of the defendant's state; the forum state's interest in adjudicating the suit; the most efficient judicial resolution of the dispute; the convenience and effectiveness of relief for the plaintiff; and the existence of an alternative forum. *Sinatra*, 854 F.2d at 1198-99. While the court must balance these seven factors, "the application of these factors is not mechanical." *Id.*

The requirement of purposeful interjection is analogous to the requirement of purposeful availment, and here weighs in favor of reasonableness. With respect to the State of California's interest in providing a forum for Boxer's action, California law is in conflict as to whether the state has an interest in providing a forum for a private contractual dispute. Compare*Floyd J. Harkness Co. v. Amezcua*, 60 Cal.App.3d 687, 694 (1976) (expressing the concern that exercising jurisdiction in that case might have an adverse effect on interstate commerce) with*Rocklin De Mexico. S.A. v. Superior Court*, 157 Cal.App.3d 91, 96-97 (1984) (stating that it is irrelevant to consider whether declining jurisdiction would encourage out-of-state purchasers to do business in California). This factor is therefore neutral.

With respect to the most efficient forum for resolving the dispute, this factor weighs against reasonableness. Since the majority of relevant negotiations over merchandise orders now in dispute occurred between the parties' New York offices, it is likely that the bulk of discovery will need to be conducted in New York.

Balancing the factors set out above, the Court concludes that, while it is a very close question, Siskind has not overcome the presumption that the exercise of personal jurisdiction over it is reasonable. In light of its substantial commercial transactions with the forum, it would not be unreasonable to require Siskind to come to California to defend itself in this action.

After applying the three-part test for the exercise of limited personal jurisdiction to the facts of this case, the Court concludes that the exercise of limited

personal jurisdiction is consistent with due process. Accordingly, Siskind's motion to dismiss for lack of personal jurisdiction is DENIED.

2. Improper Venue

Siskind moves for dismissal based on improper venue. Venue, however, is proper in this district under 28 U.S.C. § 1391(b)(1), which authorizes venue "in a judicial district where any defendant resides, if all defendants reside in the same state." Siskind, as a corporate defendant, "resides" for venue purposes in any district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c). Since Siskind is subject to personal jurisdiction in this district, venue is therefore proper in this district. 28 U.S.C. § 1391(b)(1).

3. Transfer of Venue

**\*7** The parties dispute whether this action should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), where it could be consolidated with a related action filed by Siskind now pending in the Southern District of New York.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 809 (1964) (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26-27, 80 S.Ct. 1470, 1474-75 (1960)).

Section 1404(a) essentially is a codification of the common law doctrine of forum non conveniens that allows transfer, rather than requiring dismissal, where the alternative forum is another federal district. *Norwood v. Kirkpatrick*, 349 U.S. 29, 31, 75 S.Ct. 544, 546 (1955) (section 1404(a) "revis[ed] as well as codif[ied]" the doctrine of forum non conveniens). While the relevant factors to consider are the same, the district court's discretion to transfer under § 1404(a) is broader than its discretion to dismiss for forum non conveniens. See*id.*, 349 U.S. at 32, 75 S.Ct. at 546-47 ("Congress ... intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 429549 (N.D.Cal.)
(Cite as: 1999 WL 429549 (N.D.Cal.))

factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader."); see,e.g.,_Creative Technology, Ltd. v. Aztech Sys. Pte. Ltd._, 61 F.3d 696, 699 (9th Cir.1995) ( "The forum non conveniens determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.") (quoting _Piper Aircraft Co. v. Reyno_, 454 U.S. 235, 257, 102 S.Ct. 252, 266 (1981)).

To support a motion for transfer, the moving party must establish (1) that venue is proper in the transferor district, (2) that the transferee district is one where the action might have been brought, and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice. _Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp._, 820 F.Supp. 503, 506 (C.D.Cal.1992).

The Court has established that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1). Venue would also be proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) or (2) since Siskind resides in that district and a substantial part of the events giving rise to the current dispute occurred in that district.

**\*8** Having addressed these threshold questions, the Court turns to the central inquiry of a § 1404(a) motion: the convenience of the parties and witnesses and the interests of justice. The Ninth Circuit has described the "private" and "public" interest factors to be considered. _Decker Coal Co. v. Commonwealth Edison Co._, 805 F.2d 834, 843 (9th Cir.1986). The private interest factors relevant in this case include (1) convenience to the parties, (2) convenience to non-party witnesses, (3) relative ease of access to sources of proof, and (4) plaintiff's choice of forum. _Id._ The public interest factors include (1) judicial economy, (2) availability of compulsory process, (3) familiarity with governing state law, and (4) trial efficiency. _Id._ Ultimately, the court "must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." _Id._

A. Convenience of Parties

The majority of communications between the parties which are material to their dispute occurred between Siskind's New York office and Boxer's New York office. Negotiations over the terms of purchase orders now in controversy were conducted almost exclusively in New York. The parties' course of dealing indicates that Boxer's San Francisco headquarters was a secondary factor in these negotiations, and became involved only after the New York office was unable to resolve a matter. The key negotiations over Siskind's purchase of the Activewear line and Siskind's purchase of products manufactured by Boxer's allegedly terminated licensees, Van Mar and Timex, were carried out by Boxer's New York office, and it is these negotiations which are central to the parties' dispute.

Most of the material party witnesses to these dealings work and reside in the New York area. Boxer claims that it intends to call eight witnesses to testify in the California and New York actions, and that these witnesses all reside in California. _See_ Justman Decl., ¶ 2. Most of these witnesses, however, are peripheral to the underlying events, and the few witnesses listed who played a role in the disputed incidents became involved in the parties' conflict after the critical negotiations had taken place in New York. The factor of convenience to the parties weighs heavily in favor of transfer.

B. Convenience to non-party witnesses

Most of the events in dispute occurred in New York and it is therefore not surprising that most of the non-party witnesses work and reside in the New York area. For example, the parties dispute whether Boxer's New York employees misled Siskind by representing that the Activewear line would be carried the following season. New York-based retailers would be witnesses to whether and when the Activewear line was carried. With respect to the other alleged misrepresentation involving sales to terminated licensees, those alleged ex-licensees are also located in the New York area.

Another aspect of the parties' dispute relates to whether Boxer breached the exclusivity agreement by approaching other New York-based distributors to sell Boxer's excess inventory. These distributors would be witnesses with respect to this allegation. Finally, a determination of liability arising from the

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 429549 (N.D.Cal.)
(Cite as: 1999 WL 429549 (N.D.Cal.))

Page 7

New York negotiations may require reference to custom and practice in the New York garment trade. Witnesses who can testify competently to the commercial practices of the New York garment industry are also likely located in and around New York.

**\*9** The only non-party witness identified by Boxer is a former Boxer employee who last worked for Boxer in 1993, and now lives in Southern California. The relevance of this individual's testimony to the underlying disputes that all occurred after 1995 is uncertain. On balance, the factor of convenience to non-party witnesses weighs heavily in favor of transfer.

C. Relative ease of access to documents and proof

Relevant documents are located in Siskind's New York office and Boxer's New York and San Francisco offices. This factor is therefore neutral.

D. Plaintiff's choice of forum

Boxer has chosen this district as his preferred forum. Courts should afford considerable weight to a plaintiff's choice in determining a motion to transfer. See *Decker Coal*, 805 F.2d at 843. A plaintiff's choice of forum, however, is not dispositive, and must be balanced against other factors of convenience. *Id.* For example, where the transactions giving rise to the action lack a significant connection to the plaintiff's chosen forum, then the plaintiff's choice of forum is given considerably less weight, even if the plaintiff is a resident of the forum. Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial (TRG, 1985), § 4:284, citing *Chrysler Capital Corp. v. Woehling*, 663 F.Supp. 478 (D.De.1987) and *Hernandez v. Graebel VanLines*, 761 F.Supp. 983, 990 (E.D.N.Y.1991).

Here, Boxer's headquarters in San Francisco provides a meaningful connection to the forum. This connection, however, must be viewed in the context of a dispute whose center of gravity is in New York. [FN4]

> FN4. Siskind argues that Boxer's choice of forum should be afforded no weight because Boxer's action in San Francisco was an "improper anticipatory filing" designed to secure a more convenient forum at the

expense of ongoing settlement negotiations. See *Riviera Trading Corp. v. Oakley, Inc.*, 944 F.Supp. 1150, 1158 (S.D.N.Y.1996) (stating that exceptions to the first-filed rule include a defendant's good-faith attempts at settlement, judicial economy, a minimal time difference between the filing of two competing actions, and a lack of progress in either litigation).

After months of unsuccessful negotiations, Boxer sent Siskind a reconciliation letter on December 16, 1998. Langmaid Decl., ¶ 12; Roseman Decl., ¶ 36. The reconciliation letter provided a detailed accounting summary of Boxer's view of the status of Siskind's account. According to Boxer, Siskind was required to provide a written response to the reconciliation letter. *Id.* According to Siskind, Boxer promised to send its accounting people to New York along with the reconciliation letter to assist in the settlement of the parties' differences. Roseman Decl., ¶ 36. Boxer did not send any accounting people to New York, and Siskind did not provide a written response to the reconciliation letter. Seven days after sending the reconciliation letter, Boxer filed the instant action on December 23, 1998. While there is no evidence of bad faith on the part of Boxer in filing its complaint, it did occur while the parties were in the midst of settlement negotiations, Siskind had only recently received the reconciliation letter, and Siskind received no advance warning that Boxer would be filing suit.

E. Judicial economy

Judicial economy weighs in favor of transfer. Siskind's New York action certainly belongs in New York since Siskind's complaint alleges incidents that occurred exclusively in New York. It would be a waste of judicial resources to maintain two separate actions in different districts between the same parties involving the same underlying disputes.

F. Remaining factors

The availability of compulsory process weighs in favor of transfer since nearly every material non-party witness is located in the New York area. The congestion and delay in the court dockets does not appear to tip in either parties' favor. Familiarity with

Not Reported in F.Supp.2d                                                                    Page 8
Not Reported in F.Supp.2d, 1999 WL 429549 (N.D.Cal.)
**(Cite as: 1999 WL 429549 (N.D.Cal.))**

governing state law is also a neutral factor since the Uniform Commercial Code governs the parties' contract disputes.

In balancing these factors, the Court is mindful that Boxer's first filed action in this district should be afforded considerable deference. However, the material negotiations and transactions that form the gravamen of the parties' dispute did not occur in this district, but rather in New York between the parties' New York offices. The vast majority of all material party and non-party witnesses reside in New York, and finally, a related action is currently pending between the parties in the Southern District of New York. Under these circumstances, the most appropriate forum for the parties' dispute is not San Francisco, but the Southern District of New York. Accordingly, Siskind's motion to transfer venue to the Southern District of New York is GRANTED.

## CONCLUSION

**\*10** Defendant's motion to dismiss for lack of personal jurisdiction and venue is DENIED; plaintiff's motion to enjoin the New York action is DENIED; and defendant's motion to transfer venue of this action is GRANTED and this action is hereby ordered TRANSFERRED to the Southern District of New York.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 1999 WL 429549 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**Tab 38**

211 F.3d 495                                                                                                          Page 1
211 F.3d 495, 00 Cal. Daily Op. Serv. 3453, 2000 Daily Journal D.A.R. 4691
**(Cite as: 211 F.3d 495)**

▷United States Court of Appeals,
Ninth Circuit.
Charles B. JONES, Plaintiff-Appellee,
v.
GNC FRANCHISING, INC., a Pennsylvania
Corporation; and Does 1 through 50,
Defendant-Appellant.
**No. 99-55633.**

Argued and Submitted March 13, 2000
Filed May 3, 2000

Following removal of franchisee's suit against franchisor, franchisor moved to either dismiss or transfer venue pursuant to forum selection clause, or to transfer of venue for the convenience of the parties and witnesses, in the interests of justice. Motions were denied by the United States District Court for the Central District of California, Dickran M. Tevrizian, Jr., J., and permission was granted. The Court of Appeals, Politz, Circuit Judge, held that: (1) California statute expressed a strong public policy to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue, precluding enforcement of forum selection clause requiring litigation in Pennsylvania, and (2) trial court did not abuse its discretion in denying the motion to transfer venue to Pennsylvania for the convenience of the parties and witnesses.

Affirmed.

West Headnotes

**[1] Federal Courts** ⬤➔412.1
170Bk412.1Most Cited Cases
In diversity cases, federal law governs the analysis of the effect and scope of forum selection clauses.

**[2] Contracts** ⬤➔127(4)
95k127(4)Most Cited Cases
California statute voiding any clause in a franchise agreement limiting venue to a non-California forum for claims arising under or relating to a franchise located in California expresses a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California

venue, precluding enforcement under federal law of forum selection clause requiring litigation in Pennsylvania, which was franchisor's principal place of business. West's Ann.Cal.Bus. & Prof.Code § 20040.5.

**[3] Federal Courts** ⬤➔819
170Bk819Most Cited Cases
Order denying motion to transfer venue for the convenience of the parties and witnesses, in the interests of justice, was reviewable for abuse of discretion. 28 U.S.C.A. § 1404(a)

**[4] Federal Courts** ⬤➔101
170Bk101Most Cited Cases

**[4] Federal Courts** ⬤➔104
170Bk104Most Cited Cases

**[4] Federal Courts** ⬤➔105
170Bk105Most Cited Cases
Motions for transfer of venue for the convenience of the parties and witnesses, in the interests of justice, require individualized weighing of multiple factors, including: the location where the relevant agreements were negotiated and executed, the state that is most familiar with the governing law, plaintiff's choice of forum, the respective parties' contacts with the forum, the contacts relating to the plaintiff's cause of action in the chosen forum, differences in the costs of litigation in the two forums, availability of compulsory process to compel attendance of unwilling non-party witnesses, the ease of access to sources of proof, presence of a forum selection clause, and the relevant public policy, if any, of the forum state. 28 U.S.C.A. § 1404(a).

**[5] Federal Courts** ⬤➔109
170Bk109Most Cited Cases
In suit by California franchisee against Pennsylvania franchisor, the trial court did not abuse its discretion in denying the motion to transfer venue to Pennsylvania for the convenience of the parties and witnesses, in the interests of justice, though forum selection clause designated Pennsylvania as the exclusive forum, where the vast majority of the other agreements underlying franchisee's claims were negotiated and executed in California, franchisee's choice of California as the forum was supported by

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

211 F.3d 495                                                    Page 2
211 F.3d 495, 00 Cal. Daily Op. Serv. 3453, 2000 Daily Journal D.A.R. 4691
**(Cite as: 211 F.3d 495)**

California's strong public policy to provide a protective local forum for local franchisees, claims arose out of the construction and initial operation of a store located in California, the court concluded that the relative financial burdens of litigating in each of the forums favored California, and more of the relevant witnesses and other sources of proof were located in California. 28 U.S.C.A. § 1404(a).

**\*496** Philip A. Kramer.Michael A. Cabotaje, Kramer & Kaslow, Los Angeles, California, for the plaintiff-appellee.

Jonathan Solish, Law Offices of Garrett J. Zelen, Los Angeles, California, and Howard A. Kroll, Preston Gates & Ellis, Los Angeles, California, for the defendant-appellant.

Appeal from the United States District Court for the Central District of California.

Before: POLITZ, [FN1]REINHARDT, and HAWKINS, Circuit Judges.

> FN1. Honorable Henry A. Politz, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

POLITZ, Circuit Judge:

GNC Franchising, Inc., challenges the district court's refusal to enforce a forum selection clause in its franchise agreement with Charles B. Jones. The company contends that the court erred in denying its motion to either dismiss or transfer venue under 28 U.S.C. §§ 1404 and 1406. For the reasons assigned, we affirm.

## BACKGROUND

GNC, a subsidiary of General Nutrition Companies, Inc., is franchisor of General Nutrition Stores throughout the United States. The company's principal place of business is Pittsburgh, Pennsylvania. Jones is the franchisee of a GNC store in LaVerne, California.

In January 1995 and August 1996, the parties entered into written agreements, including an Option Agreement and a Franchise Agreement, for Jones' store. Each agreement contains a choice of law clause requiring that it be "interpreted and construed under the laws of the Commonwealth of Pennsylvania,

which laws shall prevail in the event of any conflict of law." Both agreements also contain a forum selection clause providing that any action instituted by a franchisee against GNC "in any court, whether federal or state, shall be brought only within the Commonwealth of Pennsylvania in the judicial district in which Franchisor has its principal place of business; and the parties waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision."

A dispute about the agreements arose and Jones filed suit in California state court alleging multiple causes of action. [FN2] GNC timely removed the litigation to federal court, invoking diversity jurisdiction. [FN3] The company subsequently moved to either dismiss or transfer venue to the Western District of Pennsylvania, citing 28 U.S.C. § 1406(a). [FN4] Alternatively, GNC **\*497** sought a transfer of venue under 28 U.S.C. § 1404(a). [FN5]

> FN2. Jones' claims include: (1) breach of written contract, (2) negligence, (3) breach of the covenant of good faith and fair dealing, (4) selling franchises by means of untrue or misleading statements, (5) intentional misrepresentation of fact, (6) negligent misrepresentation of fact, and (7) intentional interference with contractual relations.

> FN3. The district court *sua sponte* remanded the action to state court based upon lack of diversity jurisdiction after GNC's initial removal attempt. Upon GNC's second attempt at removal, the court determined that it had diversity jurisdiction.

> FN4. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

> FN5. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

211 F.3d 495                                                                                                          Page 3
211 F.3d 495, 00 Cal. Daily Op. Serv. 3453, 2000 Daily Journal D.A.R. 4691
(Cite as: 211 F.3d 495)

After considering the motions and Jones' response, the district court denied the motion to dismiss or transfer under § 1406(a), concluding that the forum selection clause was unenforceable because it contravened California's strong public policy against such provisions. The court also denied the motion to transfer under § 1404(a) after weighing the relevant factors under the requisite "interest of justice" analysis.

GNC petitioned for permission to appeal the district court's decision, citing 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5. Permission was granted.

## ANALYSIS
### I. Enforcement of the Forum Selection Clause under § 1406

[1] In diversity cases, federal law governs the analysis of the effect and scope of forum selection clauses. [FN6] We have held that the rule set forth by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.* [FN7] controls the consideration of a motion to dismiss for improper venue based upon a forum selection clause. [FN8]

> FN6.*Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 513 (9th Cir.1988)

> FN7.407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

> FN8.*Manetti-Farrow,* 858 F.2d at 513.

In *Bremen,* the Supreme Court held that a forum selection clause is presumptively valid and should not be set aside unless the party challenging the clause "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." [FN9] The court added, however, that a contractual forum selection clause is "unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." [FN10] Moreover, even though a clause is the product of a full and free bargaining process, and contravenes no public policy of the forum, it "may nevertheless be 'unreasonable' and unenforceable if the chosen forum is seriously inconvenient for the trial of the action." [FN11] The party challenging the forum selection

clause bears a "heavy burden" of establishing the existence of one of the aforementioned grounds for rejecting its enforcement. [FN12]

> FN9.407 U.S. at 15, 92 S.Ct. 1907.

> FN10.*Id.*

> FN11.*Id.* at 16, 92 S.Ct. 1907. "In such circumstances it should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 18, 92 S.Ct. 1907.

> FN12.*Fireman's Fund Ins. Co. v. M.V. DSR Atlantic,* 131 F.3d 1336, 1338 (9th Cir.), *cert. denied,*525 U.S. 921, 119 S.Ct. 275, 142 L.Ed.2d 227 (1998).

[2] The district court declined to enforce the parties' contractual forum selection clause, concluding that it contravened California's strong public policy against enforcing such clauses in franchise agreements, as expressed in § 20040.5 of the California Business and Professions Code.Section 20040.5 provides that "[a] provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." [FN13] The forum selection clause at bar would restrict venue to Pennsylvania courts. It is apparent that § 20040.5 is *498 intended to void this clause with respect to any claim arising under or relating to the agreement involving the franchise located in LaVerne, California. GNC, however, contends that the district court erred in concluding that the California statute embodies a strong public policy interest precluding enforcement of the clause under federal law.

> FN13.CAL. BUS. & PROF. CODE § 20040.5 (West 1997).

We find this contention to be without merit. *Bremen* teaches that a strong public policy may be "declared by statute." [FN14] By voiding any clause in a franchise agreement limiting venue to a non-California forum for claims arising under or relating to a franchise located in the state, § 20040.5 ensures that California franchisees may litigate disputes

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

211 F.3d 495                                                    Page 4
211 F.3d 495, 00 Cal. Daily Op. Serv. 3453, 2000 Daily Journal D.A.R. 4691
**(Cite as: 211 F.3d 495)**

regarding their franchise agreement in California courts. [FN15] We conclude and hold that § 20040.5 expresses a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue. A provision, therefore, that requires a California franchisee to resolve claims related to the franchise agreement in a non-California court directly contravenes this strong public policy and is unenforceable under the directives of *Bremen.* Accordingly, we affirm the district court's order denying GNC's motion to dismiss or transfer the action under § 1406(a).

FN14.*Bremen,* 407 U.S. at 15, 92 S.Ct. 1907.

FN15. The legislative history of § 20040.5 provides further evidence that the statutory prohibition against such forum selection clauses reflects a strong state public policy interest. The author of the bill that became § 20040.5 stated that the bill's purpose was "to ensure that California franchisees are not unfairly forced to litigate claims arising out of their franchise agreement in an out-of-state court at considerable expense, inconvenience, and possible prejudice to the California franchisee." Report to Senate Judiciary Committee, 1993-94 Regular Session, AB 1920 (Peace), at 1. The author was motivated by the concern that

[m]any franchise contracts contain clauses that require a civil action or proceeding arising under or relating to a franchise agreement to be commenced in a designated out-of-state venue, which is usually the state of the franchisor's headquarters. Few franchisees can easily afford to defend or prosecute their actions in another state. The author of AB 1920 contends that these contractual provisions put the California franchisee at a great disadvantage in pursuing meritorious actions against a franchisor. Moreover ... these provisions are usually part of the standard contract which the franchisee is offered on a "take-it or leave-it" basis. In the absence of arms length negotiations and equal bargaining position, such terms are usually unconscionable. The author asserts that it is in the state's interest and powers to void such contractual terms to protect its

residents.
*Id.* at 2, 92 S.Ct. 1907.

## II. Transfer of Venue under § 1404(a)

[3] GNC also claims error in the district court's denial of its motion to transfer venue to the Western District of Pennsylvania under the provisions of § 1404(a). We review that order for abuse of discretion. [FN16]

FN16.*Lou v. Belzberg,* 834 F.2d 730, 734 (9th Cir.1987), *cert. denied,*485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988).

[4] Under § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' " [FN17] A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case. [FN18] For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the **\*499** costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. [FN19] Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis. [FN20] We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing. [FN21]

FN17.*Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citation omitted).

FN18.*Id.*

FN19.*See, e.g., Stewart,* 487 U.S. at 29-31, 108 S.Ct. 2239;*Lou,* 834 F.2d at 739.

FN20.*Stewart,* 487 U.S. at 29, 108 S.Ct. 2239 (holding that § 1404(a) governed a forum non conveniens motion to transfer based upon a forum selection clause despite the current forum's public policy that "may

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

211 F.3d 495                                                                                      Page 5
211 F.3d 495, 00 Cal. Daily Op. Serv. 3453, 2000 Daily Journal D.A.R. 4691
**(Cite as: 211 F.3d 495)**

refuse to enforce" such provisions). A forum selection clause, however, is not dispositive. *Id.* at 31, 108 S.Ct. 2239.

FN21. Although the majority opinion in *Stewart* did not expressly state that the law of the forum is a relevant factor for consideration under § 1404(a), the Court noted that the district court must weigh "those public-interest factors of systemic integrity and fairness that ... come under the heading of 'the interest of justice.' " *Id.* at 30, 108 S.Ct. 2239. In a concurring opinion, Justice Kennedy and Justice O'Connor recognized that "state policies should be weighed in the balance." *Id.* at 33, 108 S.Ct. 2239. We conclude that the public policy of the forum is not dispositive in a § 1404(a) determination but, rather, it is another factor that should be weighed in the court's § 1404(a) "interest of justice" analysis.

[5] The district court weighed each of the aforementioned factors and concluded that GNC failed to meet its burden of showing that Pennsylvania was the more appropriate forum for the action. [FN22] Although the forum selection clause designates Pennsylvania as the exclusive forum, the court determined that other factors "clearly" demonstrated that California was more appropriate. For example, the court found that the vast majority of the other agreements underlying Jones' claims were negotiated and executed in California. The court noted that Jones chose California as the forum for his lawsuit, and his choice is supported by California's strong public policy to provide a protective local forum for local franchisees. The court further found that the extent of the parties' contacts with Pennsylvania and California clearly favored California, and that Jones' claims arose out of the construction and initial operation of the store located in LaVerne, California. The court also concluded that the relative financial burdens of litigating in each of the forums favored California. Finally, the court noted that more of the relevant witnesses and other sources of proof were located in California. Review of the relevant law and record on appeal persuades us that the trial court did not abuse its discretion in denying the motion to transfer venue under § 1404(a).

FN22. Under the doctrine of forum non conveniens, GNC bears the burden of proving that an adequate alternative forum exists. *Cheng v. Boeing Co.,* 708 F.2d 1406, 1411 (9th Cir.), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983).

The judgment appealed is, in all respects, AFFIRMED.

•Charles B. JONES, Plaintiff and Appellee, v. GNC FRANCHISING, INC., Defendant and Appellant., 1999 WL 33626000 (Appellate Brief) (C.A.9 October 29, 1999), Appellant's Opening Brief

•Charles B. JONES, Plaintiff and Appellee, v. GNC FRANCHISING, INC., Defendant and Appellant., 1999 WL 33626001 (Appellate Brief) (C.A.9 November 26, 1999), Appellee's Answering Brief

•Charles B. JONES, Plaintiff and Appellee, v. GNC FRANCHISING, INC., Defendant and Appellant., 2000 WL 33997752 (Appellate Brief) (C.A.9 January 7, 2000), Appellant's Reply Brief

211 F.3d 495, 00 Cal. Daily Op. Serv. 3453, 2000 Daily Journal D.A.R. 4691

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**Tab 39**

**Westlaw.**

177 F.Supp.2d 785                                                                                    Page 1
177 F.Supp.2d 785
**(Cite as: 177 F.Supp.2d 785)**

**C**United States District Court,
N.D. Illinois,
Eastern Division.
Paul A. MOORE and Phillip S. Magiera, Plaintiffs,
v.
AT & T LATIN AMERICA CORP., Defendant.
**No. 01 C 3013.**

Aug. 29, 2001.

Former directors of company taken over in merger brought action against surviving entity, alleging that its failure to allow directors to exercise stock options given to them under settlement agreement with their former company was breach of contract. Defendant moved to dismiss on basis of improper venue or, in the alternative, to transfer case to Southern District of Florida. The District Court, Plunkett, Senior District Judge, held that: (1) venue was proper in Illinois, but (2) transfer of action from Illinois to Florida was warranted on convenience grounds.

Motion to dismiss denied; motion to transfer granted.

West Headnotes

**[1] Federal Courts ☜76.5**
170Bk76.5Most Cited Cases
When determining proper venue in a federal case, which venue has the most substantial contacts is not dispositive. 28 U.S.C.A. § 1391(a).

**[2] Federal Courts ☜76.5**
170Bk76.5Most Cited Cases
Venue is proper in a federal case as long as the contacts in plaintiffs' chosen district are substantial, notwithstanding the possibility that defendants' activities may have been more substantial somewhere else. 28 U.S.C.A. § 1391(a)(2).

**[3] Federal Courts ☜89**
170Bk89Most Cited Cases
In action by former directors challenging merged company's refusal to exercise stock options given to them in settlement agreement with former company, venue was proper in Illinois; settlement and option agreements were negotiated in Illinois, sent to

plaintiffs' counsel in Illinois, and signed by plaintiffs in Illinois, and plaintiffs tried to exercise options through their counsel in Illinois. 28 U.S.C.A. § 1391(a)(2).

**[4] Federal Courts ☜144**
170Bk144Most Cited Cases
Party seeking transfer of venue for convenience has the burden of showing that the transferee forum is clearly more convenient. 28 U.S.C.A. § 1404(a).

**[5] Federal Courts ☜101**
170Bk101Most Cited Cases
Effect of a venue transfer for convenience cannot be a mere shift of inconveniences from one party to the other. 28 U.S.C.A. § 1404(a).

**[6] Federal Courts ☜109**
170Bk109Most Cited Cases
In action by former directors challenging merged company's refusal to exercise stock options given to them in settlement agreement with former company, transfer of venue from Illinois to Southern District of Florida was warranted for convenience of parties and witnesses; nine of twelve potential witnesses identified by defendants lived in Florida, plaintiffs identified no potential witnesses, and Florida law would apply to the case. 28 U.S.C.A. § 1404(a).

**[7] Federal Courts ☜101**
170Bk101Most Cited Cases

**[7] Federal Courts ☜104**
170Bk104Most Cited Cases

**[7] Federal Courts ☜105**
170Bk105Most Cited Cases
In determining whether to transfer venue in a federal case for convenience, court must consider: (1) the plaintiff's choice of forum; (2) the location of the material events; (3) the residence of the parties; (4) their ability to bear the expense of a trial in a particular forum; and (5) the relative ease of access to sources of proof in each forum, including the court's power to compel appearances of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses. 28 U.S.C.A. § 1404(a).

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

177 F.Supp.2d 785
177 F.Supp.2d 785
**(Cite as: 177 F.Supp.2d 785)**

Page 2

**[8] Federal Courts ☞101**
170Bk101Most Cited Cases
In resolving a motion to transfer venue in a federal case, the convenience of the witnesses is one of the most important factors to be considered. 28 U.S.C.A. § 1404(a).

**[9] Federal Courts ☞101**
170Bk101Most Cited Cases
In determining whether to transfer venue in a federal case based on convenience of the witnesses, court must consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues of the case; one key witness for one party can outweigh many less important witnesses for the other party. 28 U.S.C.A. § 1404(a).

**[10] Federal Courts ☞143**
170Bk143Most Cited Cases
When identifying potential witnesses in a federal case, for purposes of a request to transfer venue for convenience, a party must specify key witnesses and describe their testimony in a manner that goes beyond vague generalizations. 28 U.S.C.A. § 1404(a).
*787 Allan T. Slagel, Kim R. Walberg, Shefsky & Froelich Ltd., Chicago, IL, for plaintiffs.

James M. Miller, Samantha J. Kavanaugh, Walter C. Greenough, Schiff Hardin & Waite, Chicago, IL, for defendant.

### *MEMORANDUM OPINION AND ORDER*

PLUNKETT, Senior District Judge.

Plaintiffs Paul A. Moore and Phillip S. Magiera (collectively referred to as plaintiffs) have filed a four-count complaint against AT & T Latin America Corporation (AT & T Latin) alleging breach of contract and seeking a declaratory judgment. AT & T Latin has moved to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. (Rule) 12(b)(3) on the basis of improper venue or, assuming we find venue is proper in this district, to transfer this case to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). For the reasons stated herein, AT & T Latin's Rule 12(b)(3) motion to dismiss for improper venue is denied. However, its motion to transfer pursuant to 28 U.S.C. § 1404(a) is granted.

### *Facts* [FN1]

FN1. The following facts are taken from plaintiffs' complaint.

Plaintiff Moore resides in Lake Forest, Illinois, and plaintiff Magiera resides in Dover, Massachusetts. AT & T Latin, a wholly-owned subsidiary of AT & T Corporation, is a Delaware corporation, with its principal place of business in Coral Gables, Florida. FirstCom, which was formerly known as InterAmericas Communications Corporation (ICCA) merged with AT & T Latin in August of 2000. Until October of 1997, plaintiffs served as directors of ICCA.

In October of 1997, plaintiffs entered into a settlement agreement (the agreement) with ICCA in order to resolve a dispute concerning compensation for services they provided to ICCA. Pursuant to the agreement, plaintiffs were to receive 250,000 shares of common stock and an option to acquire another 250,000 shares of common stock at a price of $2.13 each. Plaintiffs had ten years upon which to exercise the options, provided they give ICCA written notice of the number of shares they desired. ICCA would then send stock certificates evidencing plaintiffs' ownership.

The agreement also outlined what effect a merger would have on plaintiffs' rights to exercise their options. In the event ICCA merged with another company, plaintiffs would be entitled to securities or property as if they had exercised their options immediately prior to the merger.

On November 1, 1999, FirstCom, formerly ICCA, merged with AT & T Latin. The merger was completed in late August of 2000. As a result of the merger, "each option to purchase Firstcom common stock was converted into one option or warrant to purchase a share of AT & T Latin America Class A stock." Therefore, according to plaintiffs, their outstanding stock options with FirstCom converted to options to purchase an equal number of shares of AT & T Latin.

When plaintiffs attempted to exercise their options to buy shares of AT & T Latin at $2.13, AT & T Latin refused. As a result, plaintiffs are suing AT & T Latin for breach of contract. In addition, they are

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

177 F.Supp.2d 785
(Cite as: 177 F.Supp.2d 785)

seeking a declaratory judgment requesting *788 that we find that the settlement agreement between plaintiffs and ICCA is enforceable against AT & T Latin according to its terms, and that plaintiffs have fulfilled their obligations under the settlement agreement, thereby entitling them to the AT & T Latin stock. We have jurisdiction pursuant to 28 U.S.C. § 1332, because the instant action is between citizens of different states and the amount in controversy exceeds $75,000.

## Discussion
### Is venue proper in this district?

In _First Health Group Corp. v. Sanderson Farms, Inc._, 2000 WL 139474, *2 (N.D.Ill.2000), Judge Manning laid out the standards applicable to a Rule 12(b)(3) motion. She stated:

> When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. A court may examine facts outside the complaint in order to determine whether venue is proper. Moreover, in resolving a motion to dismiss pursuant to Rule 12(b)(3), the court must resolve any factual conflicts in the parties' submissions in favor of the plaintiff and draw any reasonable inferences from those facts in the plaintiff's favor.

With these standards in mind, we turn to AT & T Latin's Rule 12(b)(3) motion to dismiss.

To determine whether we have proper venue, we must look to 28 U.S.C. § 1391(a). It states:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may be otherwise brought.

Because AT & T Latin is a Delaware corporation with its principal place of business in Florida, § 1391(a)(1) is inapplicable. Likewise, § 1391(a)(3) is inapplicable because the proposed transferee district, the Southern District of Florida, would be an appropriate venue for plaintiffs' cause of action. Therefore, our inquiry is limited to whether, under §

1391(a)(2), "a substantial part of the events or omissions giving rise to the claim" occurred in this district.

[1][2] Which venue has the most substantial contacts is not dispositive. _Pasulka v. Sykes_, 131 F.Supp.2d 988, 994 (N.D.Ill.2001). As long as the contacts in plaintiffs' chosen district are substantial, "venue is proper notwithstanding the possibility that defendants' activities may have been more substantial somewhere else." _Walron Films Ltd., LLC v. Cinequanon Pictures Int'l_, 1997 WL 779059, *2 (N.D.Ill.1997).

[3] The issues, therefore, are what contacts does plaintiffs' cause of action have with this district, and whether those contacts are substantial. In their response brief, plaintiffs allege the following contacts with this district: the settlement agreement and the option agreements were negotiated through plaintiffs in Illinois, sent to plaintiffs' counsel in Illinois, signed by plaintiffs in Illinois, and numerous communications were directed at plaintiffs and their counsel in Illinois. (Pls.' Resp. at 5.) In addition, plaintiffs attempted to exercise their options through their counsel in Illinois, and AT & T Latin refused to issue the stock to Moore in Illinois. (Id.)

*789 AT & T Latin claims that venue is improper here because the facts giving rise to plaintiffs' cause of action arose in Florida, not Illinois. Specifically, AT & T Latin's refusal to honor plaintiffs' exercise of their stock options was made by AT & T Latin in Florida. (Def.'s Reply at 3.) In addition, Illinois is the home forum of only one of the plaintiffs. (Id. at 4.)

We agree with plaintiffs that venue is proper in this district. Taken together, plaintiffs have demonstrated that a "substantial part of the events or omissions giving rise to the claim occurred" in this district. 28 U.S.C. § 1391(a). Specifically, the underlying contracts were negotiated through plaintiffs in Illinois, sent to plaintiffs' counsel in Illinois, signed by plaintiffs in Illinois, and numerous communications were directed at plaintiffs and their counsel in Illinois.

In addition, plaintiffs tried to exercise their options through their counsel in Illinois. The fact that the underlying contracts were entered into by ICCA as opposed to AT & T Latin is inconsequential because the focus of § 1391 is the nexus between the facts and

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

the cause of action, not the defendant and the cause of action. AT & T Latin's argument that the breach occurred from Florida has some appeal. However, the fact that the effect of its breach was felt by one of the plaintiffs in Illinois undercuts any weight that argument might otherwise have. *H & V Silver Mine, Inc. v. Cohen,* 1997 WL 639229, *4 (N.D.Ill.1997)*("Moreover, as it is the failure to perform a contractual duty in Illinois-namely, make the required payments-that gives rise to the breach of contract claim, venue is proper in this district.") Therefore, venue is proper in this district.

### Should this case be transferred to Florida?

[4][5] AT & T Latin argues that we should transfer this case pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of Florida. § 1404(a) states that a district court "[f]or the convenience of the parties and witnesses, in the interests of justice ... may transfer any civil action to any other district or division where it might have been brought." AT & T Latin has the burden of showing that "the transferee forum is clearly more convenient." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989)*citing Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir.1986). In addition, the effect of a transfer cannot be a mere shift of inconveniences from one party to the other. *Promatek Med. Sys., Inc. v. Ergometrics, Inc.,* 1990 WL 19491, *4 (N.D.Ill.1990).

[6] AT & T Latin contends, and plaintiffs agree, that venue would be proper in the Southern District of Florida. (AT & T Latin's Mot. Transfer at 4; Pls.' Resp. at 6.) Therefore, our analyses is limited to whether it would be convenient for the parties and witnesses, or in the interests of justice, to transfer this case to Florida.

[7] In making our determination, we must consider: (1) the plaintiff's choice of forum; (2) the location of the material events; (3) the residence of the parties; (4) their ability to bear the expense of a trial in a particular forum; (5) the relative ease of access to sources of proof in each forum, including the court's power to compel appearances of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses. *Heller Fin., Inc. v. Riverdale Auto Parts, Inc.,* 713 F.Supp. 1125, 1129 (N.D.Ill.1989).

First, plaintiffs have chosen this district as their forum. Although not dispositive, plaintiffs choice of forum must be given some weight. However, the weight accorded to plaintiffs' choice of forum is reduced by the fact that only one of the plaintiffs resides in Illinois. Second, location *790 of the material events favors neither party. While the contracts at issue may have been finalized in Florida, they were partially executed in Illinois. In addition, while the breach may have occurred from Florida, its effects were partially felt in Illinois. Third, the residence of the parties favors neither party. AT & T Latin is a Delaware corporation with its principal place of business in Florida. One of the plaintiffs resides in Illinois, and the other plaintiff resides in Massachusetts. Fourth, AT & T Latin can certainly absorb the expense of trial in either forum. But, considering the apparent sophistication of the plaintiffs, and considering plaintiff Magiera will have to travel regardless of which venue a trial is held, the fourth element favors neither party.

The fifth element, the relative ease of access to sources of proof in each forum, including the court's power to compel appearances of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses, requires a more in-depth analyses. In support of its motion to transfer, AT & T Latin contends that almost all of its potential witnesses reside in Florida. In response, plaintiffs claim that they have potential witnesses that reside in Illinois, namely plaintiff Moore and plaintiffs' former attorneys and, therefore, Florida is not clearly more convenient for the potential witnesses than Illinois. (Pls.' Resp. at 8.)

[8][9][10] "In resolving a motion to transfer, the convenience of the witnesses is one of the most important factors to be considered." *Dunn v. Soo Line R.R. Co.,* 864 F.Supp. 64, 65 (N.D.Ill.1994). However, we "must consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship (sic) to the issues of the case." *Midwest Precision Serv., Inc. v. PTM Indus. Corp.,* 574 F.Supp. 657, 659 (N.D.Ill.1983). "One key witness for one party can outweigh many less important witnesses for the other party." *Borg-Warner Acceptance Corp. v. Airport Luxury Suites, Ltd.,* 1986 WL 8358, *5 (N.D.Ill.1986). When identifying potential witnesses, a party must specify key witnesses and describe their testimony in a manner that goes beyond vague generalizations. *Kafka v.*

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

177 F.Supp.2d 785
177 F.Supp.2d 785
**(Cite as: 177 F.Supp.2d 785)**

Page 5

*Bellevue Corp.,* 1991 WL 49619, *3 (N.D.Ill.1991).

Of the twelve potential witnesses identified by AT & T Latin by affidavit, nine reside in the Miami-Dade County area, one resides in Chicago, one resides in Cleveland, and the whereabouts of the other potential witness are unknown. (AT & T Latin's Mot. Transfer at Ex. A.) Plaintiffs have identified no potential witnesses by affidavit. *See Midwest,* 574 F.Supp. at 659 ("In ruling upon a motion to transfer under 28 U.S.C. § 1404(a), the Court may consider only undisputed facts presented to the Court by affidavit, deposition, stipulation or other relevant documents.") The only mention of potential witnesses made by plaintiffs in their response brief was that plaintiff Moore and their attorneys are "likely to testify for Plaintiffs." (Pls.' Resp. at 10.) Plaintiffs assertion that Moore and their attorneys are likely to testify carries little weight because this evidence was not presented through affidavit. However, plaintiffs' failure to do so does not effect our finding that Florida is clearly more convenient.

Plaintiffs claim that AT & T Latin's list of potential witnesses "is duplicative and simply an attempt to create an impression that this case requires the testimony of numerous witnesses, when the case really involves a determination of the existence and performance of option contracts." (Pls.' Resp. at 9.) While we agree with plaintiffs that AT & T Latin's list may be duplicative insofar as not all of the twelve need testify, AT & T Latin has identified **\*791** key witnesses that reside in Florida that will almost certainly testify as to the formation and performance of the contracts at issue. For instance, Andrew Hulsh and Mario Fontes, both of whom reside in Miami-Dade County, acted as outside counsel for ICCA at the time the contracts were entered into. (*Id.* at Ex. A.) In addition, Cory Shade and Jose Segrera, both of whom reside in Miami-Dade County, were associated with FirstCom and have knowledge of the contracts at issue. (*Id.*) Although plaintiff Magiera and Douglas Gieb, a former employee of ICCA and FirstCom, do not reside in Miami-Dade County, because they would have to travel great distances even if Illinois were the appropriate forum, Florida no less inconvenient. Taken together, the fact that nine out of twelve of the AT & T Latin's potential witnesses reside in Miami-Dade County, many of whom appear to be key witnesses, demonstrate that Florida is a "clearly more convenient" forum for this case.

Plaintiffs also claim that according to *Kafka* the description of the testimony of AT & T Latin's proposed witnesses is too vague and generalized to be given any weight. *Kafka,* 1991 WL 49619 at *3. We disagree. When arguing that its proposed venue was clearly more convenient for its potential witnesses, the defendants in *Kafka* failed to specifically identify any material witnesses or the subject matter of their testimony. *Id.* In finding that the defendant had failed to meet its burden, Judge Conlon held that "[d]efendants were obligated to go beyond vague generalizations and specify key witnesses and describe their testimony." *Id.* Unlike the defendant in *Kafka,* AT & T Latin has specfically identified twelve potential witnesses, provided their current place of residence (with the exception of one), provided titles at the time the contracts were formed and allegedly breached, and given a basic description of what they can testify to. We find this sufficient under the facts of this case.

Contrary to plaintiffs' contention, transferring this case to the Southern District of Florida will not "merely shift the inconveniences from one party to the other." Nine of the twelve potential witnesses listed by AT & T Latin reside in Florida. Plaintiff Magiera and one of the other potential witnesses listed by AT & T Latin will have to travel a long distance regardless of whether this case is heard in Florida or Illinois. The only potential witnesses that reside in Illinois are plaintiff Moore, plaintiffs former attorney(s), and one of AT & T Latin's potential witnesses. As a result, Florida is clearly more convenient for the parties and witnesses than Illinois.

Other factors suggest that Florida is the proper venue. For instance, Florida law, not Illinois law, will be applied to this case. Plaintiffs correctly point out that a choice of law provision is not dispositive in determining where venue is appropriate. (Pls.' Resp. at 13 *citing Kafka,* 1991 WL 49619 at *5.) However, while we are confident that we could apply Florida law competently, we see no reason why we should do so when the transferee forum is clearly more convenient for the potential witnesses. *See Walter Latham Co. v. Amresco Residential Mortgage Corp.,* 1999 WL 160226, *4 (N.D.Ill.1999). Therefore, for the convenience of the parties and witnesses, and in the interests of justice, we transfer this case to the Southern District of Florida.

***Conclusion***

AT & T Latin's Rule 12(b)(3) motion to dismiss for

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

177 F.Supp.2d 785
177 F.Supp.2d 785
**(Cite as: 177 F.Supp.2d 785)**

Page 6

improper venue is denied.  However, its motion to
motion to transfer this case pursuant to 28 U.S.C. §
1404(a)*792 to the United States District Court for
the Southern District of Florida is granted.

 177 F.Supp.2d 785

END OF DOCUMENT

**Tab 40**

Westlaw.

102 S.Ct. 252                                                                                                Page 1
454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, 1982 A.M.C. 214
**(Cite as: 454 U.S. 235, 102 S.Ct. 252)**

▷Supreme Court of the United States
PIPER AIRCRAFT COMPANY, Petitioner,
v.
Gaynell REYNO, Personal Representative of the
Estate of William Fehilly, et al.
HARTZELL PROPELLER, INC., Petitioner,
v.
Gaynell REYNO, Personal Representative of the
Estate of William Fehilly, et al.
**Nos. 80-848, 80-883.**

Argued Oct. 14, 1981.
Decided Dec. 8, 1981.
Rehearing Denied Jan. 25, 1982.
See 455 U.S. 928, 102 S.Ct. 1296.

Wrongful death action, stemming from airplane
crash in Scotland, was brought in California state
court against Pennsylvania plane manufacturer and
Ohio propeller manufacturer. The action was
removed to federal district court which, in turn,
transferred the suit to Pennsylvania. The United
States District Court for the Middle District of
Pennsylvania, R. Dixon Herman, J., 479 F.Supp.
727, dismissed the action on ground of forum non
conveniens, and plaintiff appealed. The Court of
Appeals for the Third Circuit, 630 F.2d 149, reversed
and remanded. Certiorari was granted. The
Supreme Court, Justice Marshall, held that: (1)
plaintiffs may not defeat a motion to dismiss on
ground of forum non conveniens merely by showing
that the substantive law that would be applied in the
alternative forum is less favorable to the plaintiff than
that of the chosen forum; (2) the district court
properly decided that the presumption in favor of the
plaintiff's forum choice applied with less than
maximum force where the plaintiff or the real parties
in interest were foreign; (3) the district court did not
act unreasonably in concluding that fewer evidentiary
problems would be posed if the trial were held in
Scotland, a large proportion of the relevant evidence
being located there; and (4) the district court
properly determined that the public interest factors
favored trial in Scotland.

Reversed.

Justice White, concurred in part and dissented in part
with a statement.

Justice Stevens, with whom Justice Brennan joined,
dissented with an opinion.

West Headnotes

**[1] Federal Courts** ◐━145
170Bk145Most Cited Cases

**[1] Federal Courts** ◐━409.1
170Bk409.1Most Cited Cases
(Formerly 170Bk409)
District court ordinarily must apply choice-of-law
rules of state in which it sits; however, where case is
transferred under federal statute, court must apply
choice-of-law rules of state from which case was
transferred. 28 U.S.C.A. § 1404(a).

**[2] Federal Courts** ◐━480
170Bk480Most Cited Cases
Order limiting grant of certiorari does not operate as
jurisdictional bar, but rather, Supreme Court may
consider questions outside scope of limited order
when resolution of those questions is necessary for
proper disposition of case.

**[3] Federal Courts** ◐━45
170Bk45Most Cited Cases
Plaintiffs may not defeat motion to dismiss on ground
of forum non conveniens merely by showing that
substantive law that would be applied in alternative
forum is less favorable to plaintiff than that of present
forum; possibility of change in substantive law
should ordinarily not be given conclusive or even
substantial weight in forum non conveniens inquiry.

**[4] Federal Courts** ◐━45
170Bk45Most Cited Cases
Dismissal on ground of forum non conveniens will
ordinarily be appropriate where trial in plaintiff's
chosen forum imposes heavy burden on defendant or
court, and where plaintiff is unable to offer any
specific reasons of convenience supporting his
choice.

**[5] Federal Courts** ◐━45
170Bk45Most Cited Cases
If substantial weight were given to possibility of

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

102 S.Ct. 252
454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, 1982 A.M.C. 214
**(Cite as: 454 U.S. 235, 102 S.Ct. 252)**

Page 2

unfavorable change in law, dismissal on ground of forum non conveniens might be barred even when trial in chosen forum was plainly inconvenient.

**[6] Federal Courts** ☞**45**
170Bk45Most Cited Cases
If central emphasis were placed on any one factor, forum non conveniens doctrine would lose much of the very flexibility that makes it so valuable.

**[7] Federal Courts** ☞**45**
170Bk45Most Cited Cases
If conclusive or substantial weight were given to possibility of change in law, forum non conveniens doctrine would become virtually useless since, once jurisdiction and venue requirements were satisfied, plaintiffs could select that forum whose choice-of-law rules are most advantageous and dismissal would rarely be proper.

**[8] Federal Courts** ☞**45**
170Bk45Most Cited Cases
If possibility of change of law were given substantial weight, deciding motions to dismiss on ground of forum non conveniens would become extremely difficult since trial court would have to determine what law would apply if case were tried in chosen forum and what law would apply if case were tried in alternative forum, it would then have to compare rights, remedies and procedures available under law that would be applied in each forum and dismissal would be appropriate only if court concluded that law applied by alternative forum is as favorable to plaintiff as that of chosen forum.

**[9] Federal Courts** ☞**45**
170Bk45Most Cited Cases
Doctrine of forum non conveniens is designed in part to help courts avoid conducting complex exercises in comparative law.

**[10] Federal Courts** ☞**45**
170Bk45Most Cited Cases
If possibility of change in law were given substantial weight in deciding whether to dismiss case on ground of forum non conveniens, great practical problems could result in that American courts, which are already extremely attractive to foreign plaintiffs, would become even more attractive, increasing flow into American courts of litigation by foreign plaintiffs against American manufacturers.

**[11] Federal Courts** ☞**45**
170Bk45Most Cited Cases

**[11] Federal Courts** ☞**101**
170Bk101Most Cited Cases
Dismissals on ground of forum non conveniens and transfers between federal courts are not equivalent, since statute allowing transfers was enacted to permit change of venue between federal courts, and, although it was drafted in accordance with doctrine of forum non conveniens, it was intended to be revision rather than codification of common law by giving district court more discretion to transfer than they had to dismiss on grounds of forum non conveniens. 28 U.S.C.A. § 1404(a).

**[12] Federal Courts** ☞**45**
170Bk45Most Cited Cases
Although possibility of change of law should not be given substantial or controlling weight in determining whether to dismiss on grounds of forum non conveniens, if remedy provided by alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, unfavorable change in law may be given substantial weight and district court may conclude that dismissal would not be in interest of justice.

**[13] Federal Courts** ☞**45**
170Bk45Most Cited Cases
In wrongful death action arising out of airplane crash in Scotland that was brought against American manufacturers, fact that remedies that would be provided in Scottish courts were not as favorable as those in American courts did not preclude dismissal on grounds of forum non conveniens.

**[14] Federal Courts** ☞**45**
170Bk45Most Cited Cases
In determining whether to dismiss wrongful death action arising out of airplane crash in Scotland on ground of forum non conveniens, district court's distinction between resident or citizen plaintiff and foreign plaintiff was fully justified since, when plaintiff is foreign, assumption that choice of forum is convenient deserves less deference.

**[15] Federal Courts** ☞**45**
170Bk45Most Cited Cases

**[15] Federal Courts** ☞**813**
170Bk813Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

102 S.Ct. 252

Page 3

454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, 1982 A.M.C. 214
**(Cite as: 454 U.S. 235, 102 S.Ct. 252)**

Forum non conveniens determination is committed to sound discretion of trial court, and it may be reversed only when there has been clear abuse of discretion; where district court has considered all relevant public and private interest factors and where its balancing of those factors is reasonable, its decision deserves substantial deference.

**[16] Federal Courts ☞47.1**
170Bk47.1Most Cited Cases
(Formerly 170Bk47)
In wrongful death action arising out of airplane crash in Scotland brought on behalf of Scottish citizens against American manufacturers, district court did not act unreasonably in concluding that fewer evidentiary problems would be posed if trial were held in Scotland, since large proportion of relevant evidence was located in Great Britain.

**[17] Federal Courts ☞47.1**
170Bk47.1Most Cited Cases
(Formerly 170Bk47)
In wrongful death action arising out of airplane crash in Scotland brought on
behalf of Scottish citizens against American manufacturers, district court correctly concluded that problems posed by inability to implead potential third-party defendants clearly supported holding trial in Scotland.

**[18] Federal Courts ☞47.1**
170Bk47.1Most Cited Cases
(Formerly 170Bk47)
In wrongful death action arising out of airplane crash in Scotland brought on behalf of Scottish citizens against American manufacturers, district court properly considered problems in trial involving two separate laws with possibility that Pennsylvania law would apply to some parties and Scottish law to others.

**[19] Federal Courts ☞47.1**
170Bk47.1Most Cited Cases
(Formerly 170Bk47)
Public interest factors favored holding trial in Scotland of wrongful death action arising out of airplane crash in Scotland where accident occurred in Scottish airspace, all decedents were Scottish and, apart from two parties, all potential plaintiffs and defendants were either Scottish or English.

**[20] Federal Courts ☞47.1**

170Bk47.1Most Cited Cases
(Formerly 170Bk47)
American interest in ensuring that American manufacturers are deterred from producing defective products was insufficient to overcome Scottish interests which favored holding trial in Scotland of wrongful death action arising out of airplane crash in Scotland.

**\*\*255 Syllabus [FN\*]**

> FN\* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Lumber Co.*, 200 U.S. 321, 337, 26S.Ct. 282, 287, 50 L.Ed. 499.

**\*235** Respondent, as representative of the estates of several citizens and residents of Scotland who were killed in an airplane crash in Scotland during a charter flight, instituted wrongful-death litigation in a California state court against petitioners, which are the company that manufactured the plane in Pennsylvania and the company that manufactured the plane's propellers in Ohio. At the time of the crash the plane was registered in Great Britain and was owned and operated by companies organized in the United Kingdom. The pilot and all of the decedents' heirs and next of kin were Scottish subjects and citizens, and the investigation of the accident was conducted by British authorities. Respondent sought to recover from petitioners on the basis of negligence or strict liability (not recognized by Scottish law), and admitted that the action was filed in the United States because its laws regarding liability, capacity to sue, and damages are more favorable to respondent's position than those of Scotland. On petitioners' motion, the action was removed to a Federal District Court in California and was then transferred to the United States District Court for the Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a). The District Court granted petitioners' motion to dismiss the action on the ground of *forum non conveniens*. Relying on the test set forth in *Gulf Oil Corp. v.Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055, and analyzing the "private interest factors" affecting the litigants' convenience and the "public interest factors" affecting the the forum's convenience, as set forth in *Gilbert*, the District Court concluded that Scotland was the appropriate forum. However, the Court of Appeals reversed, holding that the District Court had abused its discretion in conducting the *Gilbert* analysis and that, in any event, dismissal is automatically barred where **\*236** the law of the

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

alternative forum is less favorable to the plaintiff than the law of the forum chosen by the plaintiff.

*Held*:

1. Plaintiffs may not defeat a motion to dismiss on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the chosen forum. The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry. *Canada Malting Co. v. Paterson Steamships, Ltd.*, 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837. Pp. 261-265.

(a) Under *Gilbert, supra*, dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a **256 heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice. If substantial weight were given to the possibility of an unfavorable change in law, however, dismissal might be barred even where trial in the chosen forum was plainly inconvenient, and the *forum non conveniens* doctrine would become virtually useless. Such an approach not only would be inconsistent with the purpose of the *forum non conveniens* doctrine, but also would pose substantial practical problems, requiring that trial courts determine complex problems in conflict of laws and comparative law, and increasing the flow into American courts of litigation by foreign plaintiffs against American manufacturers. Pp. 262-264.

(b) Nor may an analogy be drawn between *forum non conveniens* dismissals and transfers between federal courts pursuant to 28 U.S.C. § 1404(a), which was construed in *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945, as precluding a transfer if it resulted in a change in the applicable law. The statute was enacted to permit change of venue between federal courts, and although it was drafted in accordance with the doctrine of *forum non conveniens*, it was intended to be a revision rather than a codification of the common law. District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*. *Van Dusen v. Barrack, supra*, distinguished. Pp. 264-265.

2. The District Court properly decided that the

presumption in favor of the plaintiff's forum choice applied with less than maximum force when the plaintiff or (as here) the real parties in interest are foreign. When the plaintiff has chosen the home forum, it is reasonable to assume that the choice is convenient; but when the plaintiff or real parties in interest are foreign, this assumption is much less reasonable and the plaintiff's choice deserves less deference. Pp. 265-266.

*237 3. The *forum non conveniens* determination is committed to the trial court's sound discretion and may be reversed only when there has been a clear abuse of discretion. Here, the District Court did not abuse its discretion in weighing the private and public interests under the *Gilbert* analysis and thereby determining that the trial should be held in Scotland. Pp. 266-268.

(a) In analyzing the private interest factors, the District Court did not act unreasonably in concluding that fewer evidentiary problems would be posed if the trial were held in Scotland, a large proportion of the relevant evidence being located there. The District Court also correctly concluded that the problems posed by the petitioners' inability to implead potential Scottish third-party defendants--the pilot's estate, the plane's owners, and the charter company--supported holding the trial in Scotland. Pp. 266-268.

(b) The District Court's review of the factors relating to the public interest was also reasonable. Even aside from the question whether Scottish law might be applicable in part, all other public interest factors favor trial in Scotland, which has a very strong interest in this litigation. The accident occurred there, all of the decedents were Scottish, and apart from petitioners, all potential parties are either Scottish or English. As to respondent's argument that American citizens have an interest in ensuring that American manufacturers are deterred from producing defective products and that additional deterrence might be obtained by trial in the United States where they could be sued on the basis of both negligence and strict liability, any incremental deterrence from trial in an American court is likely to be insignificant and is not sufficient to justify the enormous commitment of judicial time and resources that would be required. Pp. 268-269.

630 F.2d 149, 3rd Cir. reversed.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

102 S.Ct. 252
454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, 1982 A.M.C. 214
**(Cite as: 454 U.S. 235, 102 S.Ct. 252)**

James M. FitzSimons, New York City, for Piper Aircraft.

**257 Warner W. Gardner, Washington, D. C., for Hartzell Propeller, Inc.

*238 Daniel C. Cathcart, Los Angeles, Cal., for respondents.

Justice MARSHALL delivered the opinion of the Court.

These cases arise out of an air crash that took place in Scotland. Respondent, acting as representative of the estates of several Scottish citizens killed in the accident, brought wrongful-death actions against petitioners that were ultimately transferred to the United States District Court for the Middle District of Pennsylvania. Petitioners moved to dismiss on the ground of *forum non conveniens*. After noting that an alternative forum existed in Scotland, the District Court granted their motions. 479 F.Supp. 727 (1979). The United States Court of Appeals for the Third Circuit reversed. 630 F.2d 149 (1980). The Court of Appeals based its decision, at least in part, on the ground that dismissal is automatically barred where the law of the alternative forum is less favorable to the plaintiff than the law of the forum chosen by the plaintiff. Because we conclude that the possibility of an unfavorable change in law should not, by itself, bar dismissal, and because we conclude that the District Court did not otherwise abuse its discretion, we reverse.

I
A

In July 1976, a small commercial aircraft crashed in the Scottish highlands during the course of a charter flight from *239 Blackpool to Perth. The pilot and five passengers were killed instantly. The decedents were all Scottish subjects and residents, as are their heirs and next of kin. There were no eyewitnesses to the accident. At the time of the crash the plane was subject to Scottish air traffic control.

The aircraft, a twin-engine Piper Aztec, was manufactured in Pennsylvania by petitioner Piper Aircraft Co. (Piper). The propellers were manufactured in Ohio by petitioner Hartzell Propeller, Inc. (Hartzell). At the time of the crash the aircraft was registered in Great Britain and was

owned and maintained by Air Navigation and Trading Co., Ltd. (Air Navigation). It was operated by McDonald Aviation, Ltd. (McDonald), a Scottish air taxi service. Both Air Navigation and McDonald were organized in the United Kingdom. The wreckage of the plane is now in a hangar in Farnsborough, England.

The British Department of Trade investigated the accident shortly after it occurred. A preliminary report found that the plane crashed after developing a spin, and suggested that mechanical failure in the plane or the propeller was responsible. At Hartzell's request, this report was reviewed by a three-member Review Board, which held a 9-day adversary hearing attended by all interested parties. The Review Board found no evidence of defective equipment and indicated that pilot error may have contributed to the accident. The pilot, who had obtained his commercial pilot's license only three months earlier, was flying over high ground at an altitude considerably lower than the minimum height required by his company's operations manual.

In July 1977, a California probate court appointed respondent Gaynell Reyno administratrix of the estates of the five passengers. Reyno is not related to and does not know any of the decedents or their survivors; she was a legal secretary to the attorney who filed this lawsuit. Several days after her appointment, Reyno commenced separate wrongful-*240 death actions against Piper and Hartzell in the Superior Court of California, claiming negligence and strict liability. [FN1] Air Navigation, McDonald, and the estate of the pilot are not parties to this litigation. The survivors of the five passengers whose estates are represented **258 by Reyno filed a separate action in the United Kingdom against Air Navigation, McDonald, and the pilot's estate. [FN2] Reyno candidly admits that the action against Piper and Hartzell was filed in the United States because its laws regarding liability, capacity to sue, and damages are more favorable to her position than are those of Scotland. Scottish law does not recognize strict liability in tort. Moreover, it permits wrongful-death actions only when brought by a decedent's relatives. The relatives may sue only for "loss of support and society." [FN3]

> FN1. Avco-Lycoming, Inc., the manufacturer of the plane's engines, was also named as a defendant. It was subsequently dismissed from the suit by

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

102 S.Ct. 252                                                                   Page 6
454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, 1982 A.M.C. 214
**(Cite as: 454 U.S. 235, 102 S.Ct. 252)**

stipulation.

FN2. The pilot's estate has also filed suit in the United Kingdom against Air Navigation, McDonald, Piper, and Hartzell.

FN3. See Affidavit of Donald Ian Kerr MacLeod, App. A19 (affidavit submitted to District Court by petitioners describing Scottish law). Suits for damages are governed by The Damages (Scotland) Act 1976.

On petitioners' motion, the suit was removed to the United States District Court for the Central District of California. Piper then moved for transfer to the United States District Court for the Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a). [FN4] Hartzell moved to dismiss for lack of personal jurisdiction, or in the alternative, to transfer. [FN5] In December 1977, the District Court quashed service on *241 Hartzell and transferred the case to the Middle District of Pennsylvania. Respondent then properly served process on Hartzell.

FN4.Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

FN5. The District Court concluded that it could not assert personal jurisdiction over Hartzell consistent with due process. However, it decided not to dismiss Hartzell because the corporation would be amenable to process in Pennsylvania.

**B**

In May 1978, after the suit had been transferred, both Hartzell and Piper moved to dismiss the action on the ground of *forum non conveniens.* The District Court granted these motions in October 1979. It relied on the balancing test set forth by this Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and its companion case, *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). In those decisions, the Court stated that a plaintiff's choice of forum should rarely be disturbed. However, when an alternative forum has jurisdiction to hear the case,

and when trial in the chosen forum would "establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience," or when the "chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems," the court may, in the exercise of its sound discretion, dismiss the case. *Koster, supra,* at 524, 67 S.Ct., at 831-832. To guide trial court discretion, the Court provided a list of "private interest factors" affecting the convenience of the litigants, and a list of "public interest factors" affecting the convenience of the forum. *Gilbert, supra,* 330 U.S. at 508- 509, 67 S.Ct., at 843. [FN6]

FN6. The factors pertaining to the private interests of the litigants included the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert,* 330 U.S., at 508, 67 S.Ct., at 843. The public factors bearing on the question included the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.,* at 509, 67 S.Ct., at 843.

*242 After describing our decisions in *Gilbert* and *Koster,* the District Court analyzed the facts of these cases. It began by observing that an alternative forum existed in **259 Scotland; Piper and Hartzell had agreed to submit to the jurisdiction of the Scottish courts and to waive any statute of limitations defense that might be available. It then stated that plaintiff's choice of forum was entitled to little weight. The court recognized that a plaintiff's choice ordinarily deserves substantial deference. It noted, however, that Reyno "is a representative of foreign citizens and residents seeking a forum in the United States because of the more liberal rules concerning products liability law," and that "the courts have been

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

less solicitous when the plaintiff is not an American citizen or resident, and particularly when the foreign citizens seek to benefit from the more liberal tort rules provided for the protection of citizens and residents of the United States." _479 F.Supp., at 731._

The District Court next examined several factors relating to the private interests of the litigants, and determined that these factors strongly pointed towards Scotland as the appropriate forum. Although evidence concerning the design, manufacture, and testing of the plane and propeller is located in the United States, the connections with Scotland are otherwise "overwhelming." _Id.,_ at 732. The real parties in interest are citizens of Scotland, as were all the decedents. Witnesses who could testify regarding the maintenance of the aircraft, the training of the pilot, and the investigation of the accident--all essential to the defense--are in Great Britain. Moreover, all witnesses to damages are located in Scotland. Trial would be aided by familiarity with Scottish topography, and by easy access to the wreckage.

The District Court reasoned that because crucial witnesses and evidence were beyond the reach of compulsory process, and because the defendants would not be able to implead potential Scottish third-party defendants, it would be "unfair to make Piper and Hartzell proceed to trial in this forum." ***243**_Id.,_ at 733. The survivors had brought separate actions in Scotland against the pilot, McDonald, and Air Navigation. "[I]t would be fairer to all parties and less costly if the entire case was presented to one jury with available testimony from all relevant witnesses." _Ibid._ Although the court recognized that if trial were held in the United States, Piper and Hartzell could file indemnity or contribution actions against the Scottish defendants, it believed that there was a significant risk of inconsistent verdicts. [FN7]

> FN7. The District Court explained that inconsistent verdicts might result if petitioners were held liable on the basis of strict liability here, and then required to prove negligence in an indemnity action in Scotland. Moreover, even if the same standard of liability applied, there was a danger that different juries would find different facts and produce inconsistent results.

[1] The District Court concluded that the relevant

public interests also pointed strongly towards dismissal. The court determined that Pennsylvania law would apply to Piper and Scottish law to Hartzell if the case were tried in the Middle District of Pennsylvania. [FN8] As a result, "trial in this forum would be hopelessly complex and confusing for a jury." _Id.,_ at 734. In addition, the court noted that it was unfamiliar with Scottish law and thus would have to rely upon experts from that country. The court also found that the trial would be enormously costly and time-consuming; ***260** that it would be unfair to burden citizens with jury duty when the Middle District *244 of Pennsylvania has little connection with the controversy; and that Scotland has a substantial interest in the outcome of the litigation.

> FN8. Under _Klaxon v. Stentor Electric Mfg. Co.,_ 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), a court ordinarily must apply the choice-of-law rules of the State in which it sits. However, where a case is transferred pursuant to 28 U.S.C. § 1404(a), it must apply the choice-of-law rules of the State from which the case was transferred. _Van Dusen v. Barrack,_ 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1946). Relying on these two cases, the District Court concluded that California choice-of-law rules would apply to Piper, and Pennsylvania choice-of-law rules would apply to Hartzell. It further concluded that California applied a "governmental interests" analysis in resolving choice-of-law problems, and that Pennsylvania employed a "significant contacts" analysis. The court used the "governmental interests" analysis to determine that Pennsylvania liability rules would apply to Piper, and the "significant contacts" analysis to determine that Scottish liability rules would apply to Hartzell.

In opposing the motions to dismiss, respondent contended that dismissal would be unfair because Scottish law was less favorable. The District Court explicitly rejected this claim. It reasoned that the possibility that dismissal might lead to an unfavorable change in the law did not deserve significant weight; any deficiency in the foreign law was a "matter to be dealt with in the foreign forum." _Id.,_ at 738.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

102 S.Ct. 252
454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, 1982 A.M.C. 214
(Cite as: 454 U.S. 235, 102 S.Ct. 252)

### C

On appeal, the United States Court of Appeals for the Third Circuit reversed and remanded for trial. The decision to reverse appears to be based on two alternative grounds. First, the Court held that the District Court abused its discretion in conducting the *Gilbert* analysis. Second, the Court held that dismissal is never appropriate where the law of the alternative forum is less favorable to the plaintiff.

The Court of Appeals began its review of the District Court's *Gilbert* analysis by noting that the plaintiff's choice of forum deserved substantial weight, even though the real parties in interest are nonresidents. It then rejected the District Court's balancing of the private interests. It found that Piper and Hartzell had failed adequately to support their claim that key witnesses would be unavailable if trial were held in the United States: they had never specified the witnesses they would call and the testimony these witnesses would provide. The Court of Appeals gave little weight to the fact that Piper and Hartzell would not be able to implead potential Scottish third-party defendants, reasoning that this difficulty would be "burdensome" but not "unfair," 639 F.2d, at 162. [FN9] Finally, the court stated that resolution of the suit *245 would not be significantly aided by familiarity with Scottish topography, or by viewing the wreckage.

> FN9. The court claimed that the risk of inconsistent verdicts was slight because Pennsylvania and Scotland both adhere to principles of res judicata.

The Court of Appeals also rejected the District Court's analysis of the public interest factors. It found that the District Court gave undue emphasis to the application of Scottish law: " 'the mere fact that the court is called upon to determine and apply foreign law does not present a legal problem of the sort which would justify the dismissal of a case otherwise properly before the court.' " *Id.*, at 163 (quoting *Hoffman v. Goberman*, 420 F.2d 427 (CA3 1970)). In any event, it believed that Scottish law need not be applied. After conducting its own choice-of-law analysis, the Court of Appeals determined that American law would govern the actions against both Piper and Hartzell. [FN10] The same choice-of-law analysis apparently led it to conclude that Pennsylvania and Ohio, rather than Scotland, are the jurisdictions with the greatest policy interests in the dispute, and that all other public interest factors

favored trial in the United States. [FN11]

> FN10. The Court of Appeals agreed with the District Court that California choice-of-law rules applied to Piper, and that Pennsylvania choice-of-law rules applied to Hartzell, see n. 8, *supra.* It did not agree, however, that California used a "governmental interests" analysis and that Pennsylvania used a "significant contacts" analysis. Rather, it believed that both jurisdictions employed the "false conflicts" test. Applying this test, it concluded that Ohio and Pennsylvania had a greater policy interest in the dispute than Scotland, and that American law would apply to both Piper and Hartzell.

> FN11. The court's reasoning on this point is somewhat unclear. It states:
> "We have held that under the applicable choice of law rules Pennsylvania and Ohio are the jurisdictions with the greatest policy interest in this dispute. It follows that the other public interest factors that should be considered under the Supreme Court cases of *Gilbert* and *Koster* favor trial in this country rather than Scotland." 630 F.2d, at 171.
> The Court of Appeals concluded as part of its choice-of-law analysis that the United States had the greatest policy interest in the dispute. See n. 10, *supra.* It apparently believed that this conclusion necessarily implied that the *forum non conveniens* public interest factors pointed toward trial in the United States.

*246**261 In any event, it appears that the Court of Appeals would have reversed even if the District Court had properly balanced the public and private interests. The court stated:

"[I]t is apparent that the dismissal would work a change in the applicable law so that the plaintiff's strict liability claim would be eliminated from the case. But ... a dismissal for forum non conveniens, like a statutory transfer, 'should not, despite its convenience, result in a change in the applicable law.' Only when American law is not applicable, or when the foreign jurisdiction would, as a matter of its own choice of law, give the plaintiff the benefit of the claim to which she is entitled here, would dismissal be justified." 630 F.2d, at 163-164 (footnote omitted) (quoting *DeMateos v.*

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

102 S.Ct. 252
454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, 1982 A.M.C. 214
(Cite as: 454 U.S. 235, 102 S.Ct. 252)

_Texaco, Inc._, 562 F.2d 895, 899 (CA3 1977), cert. denied, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978)).
In other words, the court decided that dismissal is automatically barred if it would lead to a change in the applicable law unfavorable to the plaintiff.

[2] We granted certiorari in these cases to consider the questions they raise concerning the proper application of the doctrine of _forum non conveniens._450 U.S. 909, 101 S.Ct. 1346, 67 L.Ed.2d 333 (1981). [FN12]

> FN12. We granted certiorari in No. 80-848 to consider the question "[w]hether, in an action in federal district court brought by foreign plaintiffs against American defendants, the plaintiffs may defeat a motion to dismiss on the ground of _forum non conveniens_ merely by showing that the substantive law that would be applied if the case were litigated in the district court is more favorable to them than the law that would be applied by the courts of their own nation." We granted certiorari in No. 80-883 to consider the question whether "a motion to dismiss on grounds of _forum non conveniens_ [should] be denied whenever the law of the alternate forum is less favorable to recovery than that which would be applied by the district court."

In this opinion, we begin by considering whether the Court of Appeals properly held that the possibility of an unfavorable change in law automatically bars dismissal. Part II, _infra._ Since we conclude that the Court of Appeals erred, we then consider its review of the District Court's _Gilbert_ analysis to determine whether dismissal was otherwise appropriate. Part III, _infra._ We believe that it is necessary to discuss the _Gilbert_ analysis in order to properly dispose of the cases.
The questions on which certiorari was granted are sufficiently broad to justify our discussion of the District Court's _Gilbert_ analysis. However, even if the issues we discuss in Part III are not within the bounds of the questions with respect to which certiorari was granted, our consideration of these issues is not inappropriate. An order limiting the grant of certiorari does not operate as a jurisdictional bar. We may

consider questions outside the scope of the limited order when resolution of those questions is necessary for the proper disposition of the case. See _Olmstead v. United States_, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928); _McCandless v. Furlaud_, 293 U.S. 67, 55 L.Ed. 42, 79 L.Ed. 202 (1934); _Redrup v. New York_, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967).

## *247 II

[3] The Court of Appeals erred in holding that plaintiffs may defeat a motion to dismiss on the ground of _forum non conveniens_ merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum. The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the _forum non conveniens_ inquiry.

We expressly rejected the position adopted by the Court of Appeals in our decision in _Canada Malting Co. v. Paterson Steamships, Ltd._, 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837 (1932). That case arose out of a collision between two vessels in American waters. The Canadian owners of cargo lost in the accident sued the Canadian owners of one of the vessels in Federal District Court. The cargo owners chose an American court in large part because the relevant American liability rules were more favorable than the Canadian rules. The District Court dismissed on grounds of _forum non conveniens._ The plaintiffs argued **262 that dismissal was inappropriate because Canadian laws were less favorable to them. This Court nonetheless affirmed:
"We have no occasion to enquire by what law the rights of the parties are governed, as we are of the opinion *248 that, under any view of that question, it lay within the discretion of the District Court to decline to assume jurisdiction over the controversy.... '[T]he court will not take cognizance of the case if justice would be as well done by remitting the parties to their home forum.' " _Id._, at 419-420, 52 S.Ct., at 414, quoting _Charter Shipping Co. v. Bowring, Jones & Tidy_, 281 U.S. 515, 517, 50 S.Ct. 400, 414, 74 L.Ed. 1008 (1930).
The Court further stated that "[t]here was no basis for the contention that the District Court abused its discretion." 285 U.S., at 423, 52 S.Ct., at 415-16.

[4][5] It is true that _Canada Malting_ was decided before _Gilbert_, and that the doctrine of _forum non_

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

102 S.Ct. 252
454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, 1982 A.M.C. 214
**(Cite as: 454 U.S. 235, 102 S.Ct. 252)**

Page 10

*conveniens* was not fully crystallized until our decision in that case. [FN13] However, *Gilbert* in no way affects the validity of *Canada Malting*. Indeed, **\*249** by holding that the central focus of the *forum non conveniens* inquiry is convenience, *Gilbert* implicitly recognized that dismissal may not be barred solely because of the possibility of an unfavorable change in law. [FN14] Under *Gilbert*, dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice. [FN15] If substantial weight were given to the possibility of an unfavorable change in law, however, dismissal might be barred even where trial in the chosen forum was plainly inconvenient.

> FN13. The doctrine of *forum non conveniens* has a long history. It originated in Scotland, see Braucher, The Inconvenient Federal Forum, 60 Harv.L.Rev. 908, 909-911 (1947), and became part of the common law of many States, see *id.*, at 911-912; Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Colum.L.Rev. 1 (1929). The doctrine was also frequently applied in federal admiralty actions. See, *e. g., Canada Malting Co. v. Paterson Steamships, Ltd.*; see also Bickel, The Doctrine of Forum Non Conveniens As Applied in the Federal Courts in Matters of Admiralty, 35 Cornell L.Q. 12 (1949). In *Williams v. Green Bay & Western R. Co., 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 311 (1946)*, the Court first indicated that motions to dismiss on grounds of *forum non conveniens* could be made in federal diversity actions. The doctrine became firmly established when *Gilbert* and *Koster* were decided one year later.
> In previous *forum non conveniens* decisions, the Court has left unresolved the question whether under *Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)*, state or federal law of *forum non conveniens* applies in a diversity case. *Gilbert, 330 U.S., at 509, 67 S.Ct., at 843; Koster, 330 U.S., at 529, 67 S.Ct., at 834; Williams v. Green Bay & Western R. Co., supra, 326 U.S., at 551, 558-559, 66 S.Ct., at 288-289.* The Court did not decide this issue because the same result would have been reached in each case

under federal or state law. The lower courts in these cases reached the same conclusion: Pennsylvania and California law on *forum non conveniens* dismissals are virtually identical to federal law. See 630 F.2d, at 158. Thus, here also, we need not resolve the *Erie* question.

> FN14. See also *Williams v. Green Bay & Western R. Co., supra, 326 U.S., at 555, n. 4, 66 S.Ct., at 287, n. 4* (citing with approval a Scottish case that dismissed an action on the ground of *forum non conveniens* despite the possibility of an unfavorable change in law).

> FN15. In other words, *Gilbert* held that dismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to harass the defendant or take advantage of favorable law. This is precisely the situation in which the Court of Appeals' rule would bar dismissal.

[6] The Court of Appeals' decision is inconsistent with this Court's earlier *forum non conveniens* decisions in another respect. Those decisions have repeatedly emphasized the need to retain flexibility. In *Gilbert*, the Court refused to identify specific circumstances "which will justify or require either grant or denial of remedy." 330 U.S., at 508, 67 S.Ct., at 843. Similarly, in *Koster*, the Court rejected the contention that where a trial would involve inquiry into the internal affairs of a foreign corporation, dismissal was always appropriate. **\*\*263** "That is one, but only one, factor which may show convenience." 330 U.S., at 527, 67 S.Ct., at 833. And in *Williams v. Green Bay & Western R. Co., 326 U.S. 549, 557, 66 S.Ct. 284, 288, 90 L.Ed. 311 (1946)*, we stated that we would not lay down a rigid rule to govern discretion, and that "[e]ach case turns on its facts." If central emphasis were **\*250** placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable.

[7] In fact, if conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless. Jurisdiction and venue requirements are often easily satisfied. As a result, many plaintiffs are able to choose from among several forums.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Ordinarily, these plaintiffs will select that forum whose choice-of-law rules are most advantageous. Thus, if the possibility of an unfavorable change in substantive law is given substantial weight in the *forum non conveniens* inquiry, dismissal would rarely be proper.

Except for the court below, every Federal Court of Appeals that has considered this question after *Gilbert* has held that dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery. See, *e. g., Pain v. United Technologies Corp.*, 205 U.S.App.D.C. 229, 248-249, 637 F.2d 775, 794-795 (1980); *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (CA2 1975), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976); *Anastasiadis v. S.S. Little John*, 346 F.2d 281, 283 (CA5 1965), cert. denied, 384 U.S. 920, 86 S.Ct. 1368, 16 L.Ed.2d 440 (1966). [FN16] Several courts have relied expressly on *Canada Malting* to hold that the possibility of an unfavorable change of law should not, by itself, bar dismissal. See **251*Fitzgerald v. Texaco, Inc., supra; Anglo-American Grain Co. v. The S/T Mina D'Amico*, 169 F.Supp. 908 (ED Va.1959).

> FN16. Cf. *Dahl v. United Technologies Corp.*, 632 F.2d 1027, 1032 (CA3 1980) (dismissal affirmed where "Norwegian substantive law will predominate the trial of this case and the mere presence of a count pleaded under Connecticut law but which may have little chance of success does not warrant a different conclusion"). But see *DeMateos v. Texaco, Inc.*, 562 F.2d 895, 899 (CA3 1977) (dictum) (principle that § 1404(a) transfer should not result in change in law is no less applicable to dismissal on grounds of *forum non conveniens* ), cert. denied, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978). The court below relied on the dictum in *DeMateos* in reaching its decision. See *infra*, at 264-265.

[8][9] The Court of Appeals' approach is not only inconsistent with the purpose of the *forum non conveniens* doctrine, but also poses substantial practical problems. If the possibility of a change in law were given substantial weight, deciding motions to dismiss on the ground of *forum non conveniens* would become quite difficult. Choice-of-law analysis would become extremely important, and the

courts would frequently be required to interpret the law of foreign jurisdictions. First, the trial court would have to determine what law would apply if the case were tried in the chosen forum, and what law would apply if the case were tried in the alternative forum. It would then have to compare the rights, remedies, and procedures available under the law that would be applied in each forum. Dismissal would be appropriate only if the court concluded that the law applied by the alternative forum is as favorable to the plaintiff as that of the chosen forum. The doctrine of *forum non conveniens*, however, is designed in part to help courts avoid conducting complex exercises in comparative law. As we stated in *Gilbert*, the public interest factors point towards dismissal where the court would be required to "untangle problems in conflict of laws, and in law foreign to itself." 330 U.S., at 509, 67 S.Ct., at 843.

[10] Upholding the decision of the Court of Appeals would result in other practical problems. At least where the foreign plaintiff named an American manufacturer **264 as defendant, [FN17] a court could not dismiss the case on grounds of *forum non***252conveniens* where dismissal might lead to an unfavorable change in law. The American courts, which are already extremely attractive to foreign plaintiffs, [FN18] would become even more attractive. The flow of litigation into the United States would increase and further congest already crowded courts. [FN19]

> FN17. In fact, the defendant might not even have to be American. A foreign plaintiff seeking damages for an accident that occurred abroad might be able to obtain service of process on a foreign defendant who does business in the United States. Under the Court of Appeals' holding, dismissal would be barred if the law in the alternative forum were less favorable to the plaintiff--even though none of the parties are American, and even though there is absolutely no nexus between the subject matter of the litigation and the United States.

> FN18. First, all but 6 of the 50 American States--Delaware, Massachusetts, Michigan, North Carolina, Virginia, and Wyoming-- offer strict liability. 1 CCH Prod. Liability Rep. § 4016 (1981). Rules roughly equivalent to American strict liability are effective in France, Belgium, and

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

102 S.Ct. 252                                                                                     Page 12
454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, 1982 A.M.C. 214
**(Cite as: 454 U.S. 235, 102 S.Ct. 252)**

Luxembourg. West Germany and Japan have a strict liability statute for pharmaceuticals. However, strict liability remains primarily an American innovation. Second, the tort plaintiff may choose, at least potentially, from among 50 jurisdictions if he decides to file suit in the United States. Each of these jurisdictions applies its own set of malleable choice-of-law rules. Third, jury trials are almost always available in the United States, while they are never provided in civil law jurisdictions. G. Gloss, Comparative Law 12 (1979); J. Merryman, The Civil Law Tradition 121 (1969). Even in the United Kingdom, most civil actions are not tried before a jury. 1 G. Keeton, The United Kingdom: The Development of its Laws and Constitutions 309 (1955). Fourth, unlike most foreign jurisdictions, American courts allow contingent attorney's fees, and do not tax losing parties with their opponents' attorney's fees. R. Schlesinger, Comparative Law: Cases, Text, Materials 275-277 (3d ed. 1970); Orban, Product Liability: A Comparative Legal Restatement--Foreign National Law and the EEC Directive, 8 Ga.J.Int'l & Comp.L. 342, 393 (1978). Fifth, discovery is more extensive in American than in foreign courts. R. Schlesinger, *supra*, at 307, 310, and n. 33.

FN19. In holding that the possibility of a change in law unfavorable to the plaintiff should not be given substantial weight, we also necessarily hold that the possibility of a change in law favorable to defendant should not be considered. Respondent suggests that Piper and Hartzell filed the motion to dismiss, not simply because trial in the United States would be inconvenient, but also because they believe the laws of Scotland are more favorable. She argues that this should be taken into account in the analysis of the private interests. We recognize, of course, that Piper and Hartzell may be engaged in reverse forum-shopping. However, this possibility ordinarily should not enter into a trial court's analysis of the private interests. If the defendant is able to overcome the presumption in favor of plaintiff by showing that trial in the chosen

forum would be unnecessarily burdensome, dismissal is appropriate-- regardless of the fact that defendant may also be motivated by a desire to obtain a more favorable forum. Cf. *Kloeckner Reederei und Kohlenhandel v. A/S Hakedal, 210 F.2d 754, 757 (CA2)* (defendant not entitled to dismissal on grounds of *forum non conveniens* solely because the law of the original forum is less favorable to him than the law of the alternative forum), cert. dism'd by stipulation, 348 U.S. 801, 75 S.Ct. 17, 99 L.Ed. 633 (1954).

[11]*253 The Court of Appeals based its decision, at least in part, on an analogy between dismissals on grounds of *forum non conveniens* and transfers between federal courts pursuant to § 1404(a). In *Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)*, this Court ruled that a § 1404(a) transfer should not result in a change in the applicable law. Relying on dictum in an earlier Third Circuit opinion interpreting *Van Dusen,* the court below held that that principle is also applicable to a dismissal on *forum non conveniens* grounds. 630 F.2d, at 164, and n. 51 (citing *DeMateos v. Texaco, Inc., 562 F.2d, at 899).* However, § 1404(a) transfers are different than dismissals on the ground of *forum non conveniens.*

Congress enacted § 1404(a) to permit change of venue between federal courts. Although the statute was drafted in accordance with the doctrine of *forum non conveniens,* see Revisor's Note, H.R.Rep. No. 308, 80th Cong., 1st Sess., A132 (1947); H.R.Rep. No. 2646, 79th Cong., 2d Sess., A127 (1946), it was intended to be a revision rather than a codification of the common law. **265*Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955).* District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens. Id.,* at 31-32, 75 S.Ct., at 546.

The reasoning employed in *Van Dusen v. Barrack* is simply inapplicable to dismissals on grounds of *forum non conveniens.* That case did not discuss the common-law doctrine. Rather, it focused on "the construction and application" of § 1404(a). 376 U.S., at 613, 84 S.Ct., at 807-08. [FN20] Emphasizing the remedial *254 purpose of the statute, *Barrack* concluded that Congress could not have intended a transfer to be accompanied by a change in law. *Id.,* at 622, 84 S.Ct., at 812. The statute was designed as a

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Case 3:07-cv-03539-SI    Document 40-4    Filed 11/16/2007    Page 36 of 40

102 S.Ct. 252                                                                                    Page 13
454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, 1982 A.M.C. 214
**(Cite as: 454 U.S. 235, 102 S.Ct. 252)**

"federal housekeeping measure," allowing easy change of venue within a unified federal system. *Id., at 613, 84 S.Ct., at 807-08.* The Court feared that if a change in venue were accompanied by a change in law, forum-shopping parties would take unfair advantage of the relaxed standards for transfer. The rule was necessary to ensure the just and efficient operation of the statute. [FN21]

> FN20.*Barrack* at least implicitly recognized that the rule it announced for transfer under § 1404(a) was not the common-law rule. It cited several decisions under § 1404(a) in which lower courts had been "strongly inclined to protect plaintiffs against the risk that transfer might be accompanied by a prejudicial change in applicable state laws." 376 U.S., at 630, n. 26, 84 S.Ct., at 816, n. 26. These decisions frequently rested on the assumption that a change in law would have been unavoidable under common law *forum non conveniens*, but could be avoided under § 1404(a). See, *e. g., Greve v. Gibraltar Enterprises, Inc.*, 85 F.Supp. 410, 414 (NM 1949).

> FN21. The United States Court of Appeals for the Second Circuit has expressly rejected the contention that rules governing transfers pursuant to § 1404(a) also govern *forum non conveniens* dismissals. *Schertenleib v. Traum,* 589 F.2d 1156 (1978).

[12][13] We do not hold that the possibility of an unfavorable change in law should *never* be a relevant consideration in a *forum non conveniens* inquiry. Of course, if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight; the district court may conclude that dismissal would not be in the interests of justice. [FN22] In these cases, however, the remedies that *255 would be provided by the Scottish courts do not fall within this category. Although the relatives of the decedents may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly.

> FN22. At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative

forum. Ordinarily, this requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction. *Gilbert,* 330 U.S., at 506-507, 67 S.Ct., at 842. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute. Cf. *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.,* 78 F.R.D. 445 (Del.1978) (court refuses to dismiss, where alternative forum is Ecuador, it is unclear whether Ecuadorean tribunal will hear the case, and there is no generally codified Ecuadorean legal remedy for the unjust enrichment and tort claims asserted).

### III

The Court of Appeals also erred in rejecting the District Court's *Gilbert* analysis. The Court of Appeals stated that more weight should have been given to the plaintiff's choice of forum, and criticized the District Court's analysis of the private and public interests. However, we believe that the District Court's decision regarding the deference due plaintiff's choice of forum was appropriate. Furthermore, we do not believe that the District Court abused its discretion in weighing the private and public interests.

### A

The District Court acknowledged that there is ordinarily a strong presumption in **266 favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum. It held, however, that the presumption applies with less force when the plaintiff or real parties in interest are foreign.

[14] The District Court's distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. In *Koster,* the Court indicated that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. 330 U.S., at 524, 67 S.Ct., at 831-832. [FN23] When the home forum has *256 been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Case 3:07-cv-03539-SI    Document 40-4    Filed 11/16/2007    Page 37 of 40

102 S.Ct. 252                                                                      Page 14
454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, 1982 A.M.C. 214
(Cite as: 454 U.S. 235, 102 S.Ct. 252)

central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference. [FN24]

FN23. In *Koster*, we stated that "[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." 330 U.S., at 524, 67 S.Ct., at 831-832. See also *Swift & Co. Packers v. Compania Colombiana del Caribe*, 339 U.S. 684, 697, 70 S.Ct. 861, 869, 94 L.Ed. 1206 (1950) ("suit by a United States citizen against a foreign respondent brings into force considerations very different from those in suits between foreigners"); *Canada Malting Co. v. Paterson Steamships, Ltd.*, 285 U.S., at 421, 52 S.Ct., at 415 ("[t]he rule recognizing an unqualified discretion to decline jurisdiction in suits in admiralty between foreigners appears to be supported by an unbroken line of decisions in the lower federal courts"). As the District Court correctly noted in its opinion, 479 F.Supp., at 731; see also n. 10, *supra*, the lower federal courts have routinely given less weight to a foreign plaintiff's choice of forum. See, *e. g.*, *Founding Church of Scientology v. Verlag*, 175 U.S.App.D.C. 402, 408, 536 F.2d 429, 435 (1976); *Paper Operations Consultants Int'l, Ltd. v. SS Hong Kong Amber*, 513 F.2d 667, 672 (CA9 1975); *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 451 (CA2 1975), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976); *Mobil Tankers Co. v. Mene Grande Oil Co.*, 363 F.2d 611, 614 (CA3), cert. denied, 385 U.S. 945, 87 S.Ct. 318, 17 L.Ed.2d 225 (1966); *Ionescu v. E. F. Hutton & Co. (France)*, 465 F.Supp. 139 (SDNY 1979); *Michell v. General Motors Corp.*, 439 F.Supp. 24, 27 (ND Ohio 1977).
A citizen's forum choice should not be given dispositive weight, however. See *Pain v. United Technologies Corp.*, 205 U.S.App.D.C. 229, 252-253, 637 F.2d 775, 796-797 (1980); *Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*, 556 F.2d 975 (CA9 1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 770, 54 L.Ed.2d 783 (1978). Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should

not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.

FN24. See *Pain v. United Technologies Corp., supra*, 205 U.S.App.D.C. at 253, 637 F.2d, at 797 (citizenship and residence are proxies for convenience); see also Note, Forum Non Conveniens and American Plaintiffs in the Federal Courts, 47 U.Chi.L.Rev. 373, 382-383 (1980).
Respondent argues that since plaintiffs will ordinarily file suit in the jurisdiction that offers the most favorable law, establishing a strong presumption in favor of both home and foreign plaintiffs will ensure that defendants will always be held to the highest possible standard of accountability for their purported wrongdoing. However, the deference accorded a plaintiff's choice of forum has never been intended to guarantee that the plaintiff will be able to select the law that will govern the case. See *supra*, at 261-262.

### *257 B

[15] The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference. *Gilbert*, 330 U.S., at 511-512, 67 S.Ct., at 844-845; *Koster*, 330 U.S., at 531, 67 S.Ct., at 835. Here, the Court of Appeals expressly acknowledged that the standard of review was one of abuse of discretion. In examining the District Court's analysis of the public and private interests, however, the Court of Appeals seems to have lost sight of this rule, **267 and substituted its own judgment for that of the District Court.

### (1)

[16] In analyzing the private interest factors, the District Court stated that the connections with Scotland are "overwhelming." 479 F.Supp., at 732. This characterization may be somewhat exaggerated. Particularly with respect to the question of relative ease of access to sources of proof, the private interests point in both directions.

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

As respondent emphasizes, records concerning the design, manufacture, and testing of the propeller and plane are located in the United States. She would have greater access to sources of proof relevant to her strict liability and negligence theories if trial were held here. [FN25] However, the District Court did not act *258 unreasonably in concluding that fewer evidentiary problems would be posed if the trial were held in Scotland. A large proportion of the relevant evidence is located in Great Britain.

> FN25. In the future, where similar problems are presented, district courts might dismiss subject to the condition that defendant corporations agree to provide the records relevant to the plaintiff's claims.

The Court of Appeals found that the problems of proof could not be given any weight because Piper and Hartzell failed to describe with specificity the evidence they would not be able to obtain if trial were held in the United States. It suggested that defendants seeking *forum non conveniens* dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum. Such detail is not necessary. [FN26] Piper and Hartzell have moved for dismissal precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview. Requiring extensive investigation would defeat the purpose of their motion. Of course, defendants must provide enough information to enable the District Court to balance the parties' interests. Our examination of the record convinces us that sufficient information was *259 provided here. Both Piper and Hartzell submitted affidavits describing the evidentiary problems they would face if the trial were held in the United States. [FN27]

> FN26. The United States Court of Appeals for the Second Circuit has expressly rejected such a requirement. *Fitzgerald v. Texaco, Inc., supra,* at 451, n. 3. In other cases, dismissals have been affirmed despite the failure to provide detailed affidavits. See *Farmanfarmaian v. Gulf Oil Corp.,* 437 F.Supp. 910, 924 (SDNY 1977), aff'd., 588 F.2d 880 (CA2 1978). And in a decision handed down two weeks after the decision in this case, another Third Circuit panel affirmed a dismissal without mentioning

such a requirement. See *Dahl v. United Technologies Corp.,* 632 F.2d 1027 (1980).
The Court of Appeals apparently relied on an analogy to motions to transfer under 28 U.S.C. § 1404(a). 630 F.2d, at 160-161. It cited *Marbury-Pattillo Construction Co. v. Bayside Warehouse Co.,* 490 F.2d 155, 158 (CA5 1974), and *Texas Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 148 (CA10 1967), which suggest an affidavit requirement in the § 1404(a) context. As we have explained, however, dismissals on grounds of *forum non conveniens* and § 1404(a) transfers are not directly comparable. See *supra,* at 264-265.

> FN27. See Affidavit of Ronald C. Scott, App. to Pet. for Cert. of Hartzell Propeller, Inc., A75; Affidavit of Charles J. McKelvey, App. to Pet. for Cert. of Piper Aircraft Co. 1f. The affidavit provided to the District Court by Piper states that it would call the following witnesses: the relatives of the decedents; the owners and employees of McDonald; the persons responsible for the training and licensing of the pilot; the persons responsible for servicing and maintaining the aircraft; and two or three of its own employees involved in the design and manufacture of the aircraft.

[17] The District Court correctly concluded that the problems posed by the inability to implead potential third-party defendants clearly supported holding the trial in Scotland. Joinder of the pilot's estate, Air Navigation, and McDonald is crucial to the presentation of petitioners' defense. If Piper and Hartzell can show that the accident was caused not by a design defect, but rather by the negligence of the pilot, the plane's owners, or the charter company, they will be relieved of all liability. It is **268 true, of course, that if Hartzell and Piper were found liable after a trial in the United States, they could institute an action for indemnity or contribution against these parties in Scotland. It would be far more convenient, however, to resolve all claims in one trial. The Court of Appeals rejected this argument. Forcing petitioners to rely on actions for indemnity or contributions would be "burdensome" but not "unfair." 630 F.2d, at 162. Finding that trial in the plaintiff's chosen forum would be burdensome, however, is sufficient to support dismissal on grounds of *forum non conveniens*. [FN28]

Case 3:07-cv-03539-SI    Document 40-4    Filed 11/16/2007    Page 39 of 40

102 S.Ct. 252                                                                                                                    Page 16
454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, 1982 A.M.C. 214
(Cite as: 454 U.S. 235, 102 S.Ct. 252)

FN28. See *Pain v. United Technologies Corp.*, 205 U.S.App.D.C., at 244, 637 F.2d, at 790 (relying on similar argument in approving dismissal of action arising out of helicopter crash that took place in Norway).

(2)

[18] The District Court's review of the factors relating to the public interest was also reasonable. On the basis of its *260 choice-of-law analysis, it concluded that if the case were tried in the Middle District of Pennsylvania, Pennsylvania law would apply to Piper and Scottish law to Hartzell. It stated that a trial involving two sets of laws would be confusing to the jury. It also noted its own lack of familiarity with Scottish law. Consideration of these problems was clearly appropriate under *Gilbert* ; in that case we explicitly held that the need to apply foreign law pointed towards dismissal. [FN29] The Court of Appeals found that the District Court's choice-of-law analysis was incorrect, and that American law would apply to both Hartzell and Piper. Thus, lack of familiarity with foreign law would not be a problem. Even if the Court of Appeals' conclusion is correct, however, all other public interest factors favored trial in Scotland.

FN29. Many *forum non conveniens* decisions have held that the need to apply foreign law favors dismissal. See, *e. g.*, *Calavo Growers of California v. Belgium*, 632 F.2d 963, 967 (CA2 1980), cert. denied, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981); *Schertenleib v. Traum*, 589 F.2d, at 1165. Of course, this factor alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate. See, *e. g.*, *Founding Church of Scientology v. Verlag*, 175 U.S.App.D.C., at 409, 536 F.2d, at 436;*Burt v. Isthmus Development Co.*, 218 F.2d 353, 357 (CA5), cert. denied, 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955).

[19][20] Scotland has a very strong interest in this litigation. The accident occurred in its airspace. All of the decedents were Scottish. Apart from Piper and Hartzell, all potential plaintiffs and defendants are either Scottish or English. As we stated in *Gilbert*, there is "a local interest in having localized controversies decided at home." 330 U.S., at 509, 67

S.Ct., at 843. Respondent argues that American citizens have an interest in ensuring that American manufacturers are deterred from producing defective products, and that additional deterrence might be obtained if Piper and Hartzell were tried in the United States, where they could be sued on the basis of both negligence and strict liability. However, the incremental deterrence that would be gained if this trial were held in an *261 American court is likely to be insignificant. The American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here.

IV

The Court of Appeals erred in holding that the possibility of an unfavorable change in law bars dismissal on the ground of *forum non conveniens*. It also erred in rejecting the District Court's *Gilbert* analysis. The District Court properly decided that the presumption in favor of the respondent's forum choice applied with less than maximum force because the real parties in interest are foreign. It did not act unreasonably in deciding that the private interests pointed towards trial in Scotland. Nor did it act unreasonably in deciding that the public interests favored trial in Scotland. **269 Thus, the judgment of the Court of Appeals is

*Reversed.*

Justice POWELL took no part in the decision of these cases.

Justice O'CONNOR took no part in the consideration or decision of these cases.

Justice WHITE, concurring in part and dissenting in part.

I join Parts I and II of the Court's opinion. However, like Justice BRENNAN and Justice STEVENS, I would not proceed to deal with the issues addressed in Part III. To that extent, I am in dissent.

Justice STEVENS, with whom Justice BRENNAN joins, dissenting.

In No. 80-848, only one question is presented for review to this Court:

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

"Whether, in an action in federal district court brought by foreign plaintiffs against American defendants, the plaintiffs may defeat a motion to dismiss on the ground of ***262** *forum non conveniens* merely by showing that the substantive law that would be applied if the case were litigated in the district court is more favorable to them than the law that would be applied by the courts of their own nation." Pet. for Cert. in No. 80-848, p. i.

In No. 80-883, the Court limited its grant of certiorari, see 450 U.S. 909, 101 S.Ct. 1346, 67 L.Ed.2d 33, to the same question:

"Must a motion to dismiss on grounds of *forum non conveniens* be denied whenever the law of the alternate forum is less favorable to recovery than that which would be applied by the district court?" Pet. for Cert. in No. 80-883, p. i.

I agree that this question should be answered in the negative. Having decided that question, I would simply remand the case to the Court of Appeals for further consideration of the question whether the District Court correctly decided that Pennsylvania was not a convenient forum in which to litigate a claim against a Pennsylvania company that a plane was defectively designed and manufactured in Pennsylvania.

For U.S. Supreme Court Briefs See:

1981 WL 390478 (Appellate Brief), Brief for Petitioner Piper Aircraft Company, (May 8, 1981)

1981 WL 390479 (Appellate Brief), Brief for Respondent Gaynell Reyno, (July 13, 1981)

1981 WL 390480 (Appellate Brief), Reply Brief for Petitioner Hartzell Propeller, Inc, (August 14, 1981)

1981 WL 390484 (Appellate Brief), Reply Brief of Petitioner, (January 19, 1981)

1981 WL 390485 (Appellate Brief), Brief for Petitioner Hartzell Propeller, Inc, (May 8, 1981)

1981 WL 390481 (Appellate Brief), Motion for Leave to File Brief of Amici Curiae Brief for the Boeing Company, Lockheed Corporation, McDonnell Douglas Corporation, as Amici Curiae in Support of Petitioners, (May 9, 1981)

1981 WL 390482 (Appellate Brief), Opposition to Motion of the Boeing Company, Lockheed Corporation, and McDonnell Douglas Corporation for Leave to File Brief of Amici Curiae, (May 16, 1981)

1981 WL 390483 (Appellate Brief), Motion for Leave to File Brief for an Amicus Curiae in Support of Respondent Brief for Amicus Curiae in Support of Respondent, (July 10, 1981)

454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419, 1982 A.M.C. 214

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.